UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------X
                            :

SIBYL COLON,                       :

                         :

                   Plaintiff,    :

                         :

        - against -        :

                         :

THE CITY OF NEW YORK, NEW YORK  :

CITY HOUSING AUTHORITY, NEW YORK :

CITY COUNCIL SPEAKER MELISSA    :

MARK-VIVERITO, MICHAEL KELLY and :

BRIAN CLARKE,               :

                         :

                 Defendants.  :

                         :

---------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: __3/26/2018__

16-CV-4540 (VSB)

**OPINION & ORDER**

Appearances:

Marcel Florestal
Florestal Law Firm, PLLC
New York, New York
*Counsel for Plaintiff*

Jane Elizabeth Lippman
Donna Marie Murphy
New York City Housing Authority
New York, New York
*Counsel for Defendants NYCHA, Michael Kelly, and Brian Clarke*

Heather Marie Martone
New York City Law Department
New York, New York
*Counsel for Defendants the City of New York and
New York City Council Speaker Melissa Mark-Viverito*

VERNON S. BRODERICK, United States District Judge:

       Plaintiff Sibyl Colon brings this action alleging: (1) retaliation in violation of Title VII of

the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the New York State Human Rights Law

("NYSHRL"), N.Y. Exec. Law § 296 *et seq.*, and the New York City Human Rights Law

("NYCHRL"), N.Y.C. Admin. Code § 8-107 *et seq.*; (2) hostile work environment based on age, race, and gender; (3) violation of 42 U.S.C. § 1983; (4) violation of 42 U.S.C. § 1985; (5) First Amendment retaliation; (6) aiding and abetting; (7) violation of her Fourteenth Amendment Due Process rights; and (8) intentional infliction of emotional distress ("IIED"). Before me are two separate motions to dismiss—the first filed by Defendants New York City Housing Authority ("NYCHA"), Michael Kelly, and Brian Clarke (collectively, "NYCHA Defendants"), and the second filed by Defendants City of New York (the "City") and New York City Council Speaker Melissa Mark-Viverito (the "Council Speaker," and together with the City, "City Defendants"). For the reasons that follow, the NYCHA Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART, and the City Defendants' motion to dismiss is GRANTED in its entirety.

## I.  **Background**[1]

Plaintiff began her employment with NYCHA in August 1985, and after a series of promotions, advanced to become the Director of the Optimal Property Management Department ("OPMD") in 2015. (Compl. ¶ 12.)[2]  OPMD manages NYCHA housing projects located in Bronx, New York,[3] and Kings Counties. (*See id.* ¶ 20.)  NYCHA hired Plaintiff to become the Director of OPMD to "turn OPMD around." (*Id.*)  During her time as Director of OPMD, Plaintiff improved OPMD's service level performance measure and decreased the amount of

---

[1] The following factual summary is drawn from the allegations of the Complaint, unless otherwise indicated, which I assume to be true for purposes of this motion. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). My references to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

[2] "Compl." refers to Plaintiff's Complaint, filed June 17, 2016. (Doc. 1.)

[3] The Complaint refers to "Manhattan," (Compl. ¶ 20), which is a borough of the City of New York, and is synonymous to New York County, *see* City of New York, *New York City Counties*, www1.nyc.gov/nyc-resources/service/2123/new-york-city-counties.

time it took for OPMD to take certain responsive actions. (*Id.* ¶¶ 21–22.) Plaintiff's employment record was unblemished, and included several commendations and no disciplinary actions. (*Id.* ¶ 13.)

On July 30, 2015, the Senior Vice President for Property Management Brian Clarke sent an email to Plaintiff instructing her to attend a meeting at the Council Speaker's Bronx Office that day. (*Id.* ¶ 23.) Upon receiving the meeting request, Plaintiff was "very nervous and afraid." (*Id.* ¶ 24.) When Plaintiff arrived at the meeting, several individuals were already present, including the Council Speaker; Allison Williams, the Manager of the Bronx Millbrook Houses; James Artis, the Bronx Regional Manager; Pamela Jamerson, the Resident Association President; Brian Honan, the Intergovernmental Director; Gloria Cruz, a member of the Council Speaker's staff; an unknown Hispanic man from the Council Speaker's staff; and Clarke, who participated in the meeting by telephone. (*Id.* ¶ 25.)

At the beginning of the meeting, the Council Speaker asked how the group was handling the Spanish-speaking residents at the Millbrook Houses. (*Id.* ¶ 26.) After Artis responded that the Millbrook Houses followed NYCHA's written policy, requiring a language bank containing NYCHA certified translators, the Council Speaker slammed her hands on the table and exclaimed "that's unacceptable!" (*Id.* ¶¶ 27–28.) The Council Speaker then stated she was unhappy with the management of the Millbrook Houses and wanted to replace the manager—Williams—with a "Spanish Manager." (*Id.* ¶ 29.) After Plaintiff asked the Council Speaker if she had received any complaints against Williams, Cruz responded that there had been a single repair complaint. (*Id.* ¶ 30.) Plaintiff alleges that despite the fact that Williams had only received one complaint, the Council Speaker "made it clear" that she thought the language bank was unacceptable and she wanted a Spanish-speaking manager; indeed, after Plaintiff asked

Williams if she used the language bank to help her communicate with residents, the Council Speaker stated "you are not hearing me, I want a Spanish Manager." (*Id.* ¶ 31.)

Following the meeting, Plaintiff immediately set up another meeting with Clarke to express her concerns—Plaintiff did not think that it was "the correct, or legal, thing to do" to remove Williams from her position because she did not speak Spanish. (*Id.* ¶ 32.) At their meeting the next day, Clarke told Plaintiff that he would be on vacation the following week, and indicated that Plaintiff should, among other tasks, terminate Williams from her position, transfer her, and "replace her with a Latino Manager" before he returned. (*Id.* ¶ 33.) Clarke also told Plaintiff she should reach out to Louis Ponce, the Senior Vice President of Operations Support, and Sheila Pinckney, Clarke's Senior Advisor, if she was having difficulty with the termination and required assistance. (*Id.* ¶ 34.) He also asked Plaintiff to contact the Human Resources ("HR") Director, Kenya Salaudeen, to inform Salaudeen that both Michael Kelly, the General Manager and Chief Operating Officer of the NYCHA, as well as the Council Speaker, had requested that Williams's employment be terminated immediately because of the "cultural sensitivity" needs of the residents. (*Id.* ¶ 35.)

After Plaintiff contacted Salaudeen on August 5, 2015, Salaudeen told Plaintiff that the stated course of action was illegal and that Plaintiff could be sued. (*Id.* ¶¶ 36–37.) Despite her warning, Salaudeen set up a meeting between Plaintiff and HR Deputy Director Richard Bennardo. (*Id.* ¶ 37.) Plaintiff spoke with Bennardo and HR Disciplinary Unit Coordinator Marla Edmondson that same day and communicated the same information she had communicated to Salaudeen. (*Id.* ¶ 38.) Bennardo and Edmondson both said the transfer would be illegal, but asked Plaintiff to send them statistics regarding the ethnic breakdown of the Millbrook Houses. (*Id.* ¶ 39.)

Plaintiff then called Ponce and "complained to him that she was having difficulty following . . . Clarke's instructions to terminate [Williams]" because Bennardo, Edmondson, and Salaudeen had all told her it was illegal and "she didn't want to do it and get into legal trouble." (*Id.* ¶ 40.)  In response, Ponce said he would contact Bennardo directly.  (*Id.*)  The next day, August 6, 2015, Artis informed Plaintiff that the Inspector General's ("IG") office had informed him that they had "initiated an active investigation" against Williams, and that Plaintiff should take no further action against Williams until the IG's investigation was complete.  (*Id.* ¶¶ 40–41.) Given Williams' "employment record did not have infractions that would warrant an IG investigation," Plaintiff believes that the Council Speaker's office instructed the IG's office to become involved.  (*Id.* ¶ 41.)  Plaintiff informed Bennardo of the investigation, and Bennardo replied that the investigation was "good" because Plaintiff may be able to terminate Williams's employment based on the results of that investigation.  (*Id.* ¶ 42.)

That same day, Plaintiff received an email from Pinckney, copying Clarke and Ponce, stating that Clarke had asked Pinckney to follow up with Plaintiff with respect to whether Williams had been removed from her position at the Millbrook Houses.  (*Id.* ¶ 43; *see also id.* Ex. A.)  Plaintiff responded by telling Pinckney that she had spoken to Ponce and HR about terminating Williams's employment, that HR needed more information, that there was an IG investigation pending, and that she had "informed HR of the urgency of the move."  (*Id.* Ex. B; *see also id.* ¶ 44.)  Plaintiff then met with Ponce on August 7, 2015, and during that meeting Ponce acknowledged that it would be illegal to terminate Williams without cause, but stated that there had been an allegation that Williams had made a derisive remark in front of some Latino employees that could possibly be used as grounds for removal.  (*Id.* ¶ 46.)  Ponce could not provide any specific details with respect to the alleged event.  (*Id.*)  Plaintiff further believes that

the meeting with Ponce was arranged at the request of Clarke.  (*Id.*)

Plaintiff alleges that following these events, she felt her job would be in jeopardy if she did not terminate Williams's employment, and, although she opposed the termination, sent an email to Clarke informing him of her meeting with Ponce and reassuring him that she was doing everything she could.  (*Id.* ¶ 48.)  Upon Clarke's return from vacation on August 12, 2015, Plaintiff sent him another email informing him that she was having difficulty terminating and transferring Williams, that HR had requested information that she had been unable to provide, that the IG's office had informed her to "not do any further action as they were in the middle of an investigation," and that she had reached out to the Council Speaker's office but that the office had not provided any "complaint documentation or specifics."  (*Id.* Ex. C; *see also id.* ¶ 49.) Clarke then contacted Plaintiff, saying she had "failed him."  (*Id.* ¶ 50.)  When Plaintiff explained to Clarke that she had been advised it would be illegal to remove Williams, Clarke yelled at her, telling her that she "ha[d] to do this" because  "Manager Kelley and the Council Speaker want it done!"  (*Id.*)

After "breaking down emotionally," Plaintiff contacted Artis and ordered him to look through Williams's folder to find negative infractions and to go to the Council Speaker's office to see if there had been any new complaints.  (*Id.* ¶ 51.)  Later that day Artis called Plaintiff and complained that he felt Plaintiff was sending him on a "fishing expedition" because there were no infractions in Williams's folder that would warrant termination.  (*Id.* ¶ 52.)  He also explained that the Counsel Speaker's assistant had only been able to provide "a report from a tenant complaining about a refrigerator that needed repair."  (*Id.*)

Concerned for her own health, Plaintiff decided to take her scheduled vacation time from August 17, 2015 through August 21, 2015.  (*Id.* ¶ 53.)  Upon her return, on August 25, 2015,

Plaintiff received an email from Clarke that, among other things, asked whether or not Williams had been removed from her position. (*Id.* ¶ 54, *see also id.* Ex. D.) Plaintiff responded on the same day explaining the steps she had taken to try to effectuate the removal of Williams. (*Id.* ¶ 55, *see also id.* Ex. E.)

The next day, Kelly's office contacted Plaintiff requesting that Plaintiff attend a meeting with Kelly and Clarke on August 28, 2015. (Id. ¶ 56.) During that meeting, Plaintiff's employment as Director of OPMD was summarily terminated. (*Id.* ¶ 57.) Kelly explained that he was hiring a woman from Chicago, Janet Abrahams, to replace her, and that Plaintiff's removal had nothing to do with her job performance. (*Id.*) Kelly further instructed Clarke to reassign her, and Clarke reassigned Plaintiff to a position as Senior Administrator in the Management Services Department. (*Id.* ¶ 58.) Plaintiff alleges that the new position was much less prestigious; that Plaintiff had helped create the very department to which she was being transferred; that her new superior had been at NYCHA for only 13 years in contrast to Plaintiff's 30 years; that her pay was cut by $13,000; and that Janet Abrahams ultimately came in as Vice President, whereas Plaintiff's former subordinate replaced Plaintiff as Director of OPMD. (*Id.* ¶ 59.) Fearing that her NYCHA career was over and that she would be sabotaged by Kelly and Clarke, and in further consideration of the health problems she had developed, Plaintiff declined her demotion, and immediately resigned. (*Id.* ¶ 60.)

Plaintiff describes how during the relevant time period, she visited the doctor on five separate occasions—specifically, on August 12 and 21, and on September 4, 9, and 11, 2015— and was diagnosed with depression, anxiety, and insomnia. (*Id.* ¶ 47.) Plaintiff also described how she suffered from extreme chest pain, recurring diarrhea, vomiting, palpitations, headaches, and abdominal cramps, and that her doctor advised to admit herself into the hospital on

September 11, 2015.  (*Id.*)

## II.    **Procedural History**

Plaintiff commenced this action by filing her complaint on June 17, 2016.  (Doc. 1.)  On September 12, 2016, the NYCHA Defendants and the City Defendants, respectively, submitted pre-motion letters in anticipation of filing motions to dismiss, (Docs. 18, 19), and on September 15, 2016, Plaintiff submitted her responses, (Docs. 20, 21).[4]  On October 26, 2016, I held a pre-motion conference to discuss Defendants' anticipated motions.  (Dkt. Entry Oct. 26, 2016.)  In accordance with the deadlines set at that conference, the NYCHA Defendants submitted their motion to dismiss on December 12, 2016, (Docs. 24–26), as did the City Defendants, (Docs. 27–29).  Plaintiff filed her opposition to both motions on January 26, 2017.  (Doc. 34.)  The NYCHA Defendants filed a reply on February 8, 2017, (Doc. 35), as did the City Defendants, (Doc. 36).  Plaintiff submitted a letter supplementing the case law relevant to my consideration of the motions on May 9, 2017, (Doc. 37), and the City Defendants submitted their response on May 11, 2017, (Doc. 38).

## III.    **Legal Standard**

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint is "deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)).

---

[4] Plaintiff filed an amended response to the NYCHA letter on September 16, 2016.  (Doc. 22.)

A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor. *Kassner*, 496 F.3d at 237. A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.*

## IV.    Discussion

Although Defendants' motions sought full dismissal of Plaintiff's claims, in her opposition, Plaintiff withdrew (1) all claims against the City; (2) her § 1983 and § 1985 claims against NYCHA; (3) her Due Process Clause claim; and (4) her Title VII claims based on sex and gender discrimination. (Pl.'s Opp. 5.)[5] Therefore, I dismiss Plaintiff's withdrawn claims without prejudice, and address only the remaining claims in this decision.

---

[5] "Pl.'s Opp." refers to Plaintiff's Memorandum of Law in Opposition to Defendants' Motions to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6), filed January 26, 2017. (Doc. 34.) Plaintiff further confirmed that she was not asserting claims against the City or NYCHA for IIED, and that she was not bringing claims against Kelly, Clarke, or the Council Speaker under Title VII, the NYSHRL, or the NYCHRL, except for her aiding and abetting claims. (*Id.* at 5.)

The remaining claims are Plaintiff's (1) retaliation claims under Title VII, NYHRL, and NYCHRL against NYCHA; (2) Section 1983 claims against Kelly, Clarke, and the Council Speaker (the "Individual Defendants"); (3) hostile work environment claims against the Council Speaker and NYCHA Defendants; (4) aiding and abetting claims under NYSHRL against the Individual Defendants; (5) Section 1985 claims against the Individual Defendants, (6) First Amendment retaliation claim against NYCHA; and (7) intentional infliction of emotional distress claims against the Individual Defendants. I will analyze each in turn below.

## A. *Plaintiff's Retaliation Claims (First, Second, Third, and Fifth Claims)*

### 1. Title VII and NYSHRL Claims Against NYCHA (First and Second Claims)

Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a). The NYSHRL "contains similar language." *McMenemy v. City of Rochester*, 241 F.3d 279, 283 n.2 (2d Cir. 2001). To survive a motion to dismiss a retaliation claim brought under Title VII or the NYSHRL, a plaintiff "must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against him, (2) 'because' he has opposed any unlawful employment practice." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015) (quoting 42 U.S.C. § 2000e-3(a)); *see also McMenemy*, 241 F.3d at 282–83 & n.1 (noting that the retaliation analysis under Title VII and the NYSHRL is the same).

"[I]n the context of a Title VII retaliation claim, an adverse employment action is any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Vega*, 801 F.3d at 90 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)). With respect to the causation element, "a plaintiff must plausibly plead a

connection between the act and his engagement in protected activity." *Id.* Although this can be shown indirectly by demonstrating a temporal proximity between the protected activity and the alleged adverse action, the plaintiff "must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action," and it is "not enough that retaliation was a 'substantial' or 'motivating' factor in the employer's decision." *Id.* at 90–91.

With respect to protected activities, Title VII includes both an "opposition clause" and a "participation clause." *Littlejohn v. City of New York*, 795 F.3d 297, 316 (2d Cir. 2015). Of relevance here, "[t]he opposition clause makes it unlawful for an employer to retaliate against an individual because she 'opposed any practice' made unlawful by Title VII." *Id.* The Second Circuit has held that:

> To the extent an employee is required as part of her job duties to report or investigate other employees' complaints of discrimination, such reporting or investigating by itself is not a protected activity under § 704(a)'s opposition clause, because merely to convey others' complaints of discrimination is not to oppose practices made unlawful by Title VII. But if an employee—even one whose job responsibilities involve investigating complaints of discrimination—actively "supports" other employees in asserting their Title VII rights or personally "complains" or is "critical" about the "discriminatory employment practices" of her employer, that employee has engaged in a protected activity under § 704(a)'s opposition clause.

*Id.* at 318. Noting that Plaintiff merely conveyed the concerns of others and attempted to comply with the directive to terminate Williams' employment, the NYCHA Defendants assert that Plaintiff fails to adequately plead that she engaged in a protected activity. (NYCHA Mem. 6–9.)[6]

---

[6] "NYCHA Mem." refers to the Memorandum of Law in Support of Defendants New York City Housing Authority, Michael Kelly, and Brian Clarke's Motion to Dismiss the Complaint. (Doc. 25.)

Here, Plaintiff alleges that immediately after the meeting with the Council Speaker, she set up a meeting to "express her concerns" because "she did not think that [terminating Williams] was the correct, or legal, thing to do." (Compl. ¶ 32.) Plaintiff separately describes various exchanges where she told Clarke that she had "been advised" that it would be illegal to or that she should not remove Williams, (*see, e.g.*, *id.* ¶¶ 50, 55), and also alleges facts demonstrating that she took steps to "effectuate the removal of Ms. Williams," (*see, e.g.*, *id.* ¶ 55). After one such exchange between Plaintiff and Clarke on or about August 12, 2015, Clarke contacted Plaintiff and told her she had "failed him." (*Id.* ¶ 50.) When Plaintiff explained that she "had been advised it would be illegal to remove Ms. Williams," Clarke also yelled, "What's in her folder, you have to do this. Manager Kelley and the Council Speaker want it done!" (*Id.*) Less than a month later, Plaintiff's employment as Director of OPMD was summarily terminated, (*id.* ¶¶ 56–57), and she was told that she would be reassigned to a position as Senior Administrator in the Management Services Department, (*id.* ¶ 58).

I find that Plaintiff's allegations and the reasonable inferences that can be drawn from them—including the timing of the termination of her employment as Director of OPMD—are sufficient at this stage of the proceedings to plausibly allege that she personally complained or was critical of the alleged discriminatory employment practices. Accordingly, the NYCHA Defendants' motion to dismiss Plaintiff's Title VII and NYSHRL retaliation claims is denied.

### 2. NYCHRL Claims Against NYCHA (Third Claim)

Retaliation claims brought under the NYCHRL are subject to a lower standard. "[T]o prevail on a retaliation claim under the NYCHRL, the plaintiff must show that she took an action opposing her employer's discrimination and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Mihalik v. Credit*

*Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 112 (2d Cir. 2013) (citations omitted); *see also*

*Chen v. City Univ. of N.Y.*, 805 F.3d 59, 76 (2d Cir. 2015).  Given that I have already found that

Plaintiff satisfies the more stringent standard applied to retaliation claims brought under Title VII

and the NYSHRL, I find that Plaintiff has adequately stated a claim against NYCHA for

retaliation under the NYCHRL.  Thus, the NYCHA Defendants' motion to dismiss Plaintiff's

NYCHRL retaliation claims is likewise denied.

### B.     *Section 1983 Claims Against the Individual Defendants (Fifth Claim)*

Because the Fourteenth Amendment establishes the right for public employees to be free

from discrimination, public employees may bring suit under § 1983 "against any responsible

persons acting under color of state law."  *Vega*, 801 F.3d at 87.  A § 1983 claim requires both the

"violation of a right secured by the Constitution and laws of the United States" and a

"deprivation . . . committed by a person acting under color of state law."  *Id.* at 87–88 (quoting

*Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004)).  Thus, in order for a § 1983

discrimination claim to survive a motion to dismiss, a plaintiff must plausibly allege both (1) a

Title VII claim and (2) that the adverse actions underlying the Title VII claim were taken by

someone acting under color of state law.  *See id.*  Further, "[o]nce the color of law requirement is

met, a plaintiff's 'equal protection claim [under § 1983] parallels his Title VII claim,' except that

a § 1983 claim, unlike a Title VII claim, can be brought against an individual."  *Id.* at 88

(quoting *Feingold*, 366 F.3d at 159).[7]  Additionally, any "state employee acting in his official

---

[7] Although the NYCHA Defendants argue that Plaintiff asserts that the Individual Defendants are "acting under color of state law and are subject to claims under section 1983 for violation of Plaintiff's First Amendment rights," (Pl.'s Opp. 18), for the first time in her opposition, (*see* NYCHA Reply 5), the Complaint references retaliatory conduct, as well as NYCHA's agents acting "under color of state law," in the context of Plaintiff's § 1983 claim, (Compl. ¶¶ 77–78).  "NYCHA Reply" refers to the NYCHA Defendants' Reply Memorandum of Law in Support of Defendants New York City Housing Authority, Michael Kelly, and Brian Clarke's Motion to Dismiss the Complaint, filed February 8, 2017.  (Doc. 35)

capacity is acting 'under color of state law.'" *Id.* (quoting *Feingold*, 366 F.3d at 159).

Here, because I have found above that Plaintiff does plausibly allege a Title VII retaliation claim against the NYCHA, Plaintiff's § 1983 claim will survive the NYCHA Defendants' motion to dismiss if Plaintiff can plausibly allege that the adverse actions were taken by an actor acting "under color of state law." *See id.* Because Kelly and Clarke were both acting in their official capacities as NYCHA employees when they took adverse action by terminating Plaintiff's employment as Director of OPMD and transferring her to a less prestigious and lower-paying position, (*see* Compl. ¶¶ 56–60), the NYCHA Defendants' motion to dismiss Plaintiff's § 1983 claim is denied.

With regard to Plaintiff's § 1983 claim against the Council Speaker,[8] Plaintiff has not plausibly alleged any Title VII retaliation claim and thus cannot establish a "violation of a right secured by the Constitution." *Vega*, 801 F.3d at 87. There are no allegations demonstrating that the Council Speaker took an adverse employment action against Plaintiff—the only interaction alleged between Council Speaker and Plaintiff is during the meeting on July 30, 2015. (*See* Compl. ¶¶ 23–31.) Because Plaintiff cannot establish any adverse action taken by the Council Speaker against her, I grant City Defendants' motion to dismiss Plaintiff's § 1983 claim and dismiss the § 1983 claim against the Council Speaker.

     **C.**     ***Plaintiff's Hostile Work Environment Claims Against NYCHA and the Counsel Speaker (Fourth Claim)***

Plaintiff further alleges that she was subject to a hostile work environment under Title VII, the NYSHRL, and the NYCHRL. To establish a hostile work environment under Title VII or the NYSHRL, "a plaintiff must show that 'the workplace is permeated with discriminatory

---

[8] As noted above, all claims against the City were withdrawn. (Pl.'s Opp. 5.)

intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Littlejohn*, 795 F.3d at 320–21 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)); *see also Lenart v. Coach, Inc.*, 131 F. Supp. 3d 61, 66 (S.D.N.Y. 2015) (applying same standard under NYSHRL).

"This standard has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Littlejohn*, 795 F.3d at 321 (quoting *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014)). Plaintiff must allege that the incidents were "more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Id.* (quoting *Raspardo*, 770 F.3d at 114). "Hostile work environment claims are meant to protect individuals from abuse and trauma that is severe. They are not intended to promote or enforce civility, gentility or even decency." *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 579 (S.D.N.Y. 2011) (quoting *Ennis v. Sonitrol Mgmt. Corp.*, No. 02-CV-9070 (TPG), 2006 WL 177173, at *9 (S.D.N.Y. Jan. 25, 2006)). A court is required to consider the totality of the circumstances in evaluating a hostile work environment claims, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris,* 510 U.S. at 23.

A plaintiff must also plausibly allege "that the hostile work environment was caused by animus towards her as a result of her membership in a protected class." *Bermudez*, 783 F. Supp. 2d at 578 (quoting *Sullivan v. Newburgh Enlarged Sch. Dist.*, 281 F. Supp. 2d 689, 704 (S.D.N.Y. 2003)). "It is 'axiomatic that mistreatment at work, whether through subjection to a hostile environment or through other means, is actionable . . . only when it occurs because of an

employee's protected characteristic,' such as race or gender." *Lloyd v. Holder*, No. 11 Civ. 3154(AT), 2013 WL 6667531, at *11 (S.D.N.Y. Dec. 17, 2013) (quoting *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001)); *see also Rogers v. Fashion Inst. of Tech.*, No. 14 Civ. 6420 (AT), 2016 WL 889590, at *8 (S.D.N.Y. Feb. 26, 2016) ("Plaintiff must plausibly allege a basis to infer that Defendants took these unfavorable actions against him because of his race.").

The Complaint here alleges only that the Council Speaker slammed her hands down at a meeting, exclaimed "that's unacceptable," and told Plaintiff "you are not hearing me, I want a Spanish Manager," (Compl. ¶¶ 28–29, 31), and that Clarke told Plaintiff she had "failed him" and yelled "What's in her folder, you have to do this. Manager Kelley and the Council Speaker want it done," (*id.* ¶ 50).

As an initial matter, the Council Speaker was not Plaintiff's employer or supervisor, and Plaintiff only had one interaction with the Council Speaker. Moreover, Plaintiff's allegations do not support a finding of a hostile work environment that is "so severe or pervasive as to have altered the conditions of [the plaintiff's] environment." *Littlejohn*, 795 F.3d at 321 (finding that allegations that an employer made negative statements about plaintiff, was impatient and used harsh tones with plaintiff, distanced herself and declined to meet with plaintiff, required plaintiff to recreate work, wrongfully reprimanded plaintiff, increased plaintiff's schedule, and was sarcastic to plaintiff, could not support a finding of a severe or pervasive hostile work environment); *Fleming v. MaxMara USA, Inc.*, 371 F. App'x 115, 118–19 (2d Cir. 2010) (summary order) (affirming dismissal of hostile work environment claim where defendants excluded plaintiff from meetings, excessively criticized her work, refused to answer her work-related questions, imposed additional duties on her, threw books, and sent rude emails to her); *Davis-Molinia v. Port Auth. of N.Y. & N.J.,* No. 08 CV 7586(GBD), 2011 WL 4000997, at *11

(S.D.N.Y. Aug. 19, 2011) (finding no hostile work environment where plaintiff was excluded from meetings, deliberately avoided, yelled at, and talked down to), *aff'd,* 488 F. App'x 530 (2d Cir. 2012).  In addition, even if the actions of the Counsel Speaker and the NYCHA Defendants were sufficient to plausibly allege a hostile work environment—which they decidedly are not—Plaintiff fails to allege any facts supporting an inference that these actions were motivated by discriminatory animus towards her.  As a result, I grant City Defendants' and the NYCHA Defendants' motions to dismiss Plaintiff's hostile work environment claims under Title VII and the NYSHRL, and these claims are dismissed.

With regard to Plaintiff's hostile work environment claims under the NYCHRL, although some courts have explained that to plead such a claim under the NYCHRL, a plaintiff need only allege "the existence of unwanted gender-based [or race-based] conduct," *Bermudez*, 783 F. Supp. 2d at 579, "district courts must be mindful that the NYCHRL is not a 'general civility code' . . . [and t]he plaintiff still bears the burden of showing that the conduct is caused by a discriminatory motive,'" *Mihalik*, 715 F.3d at 110 (citation omitted).  Plaintiff's allegations fail to satisfy even the more permissive NYCHRL standard, because the allegations in the Complaint do not support an inference that the actions of the Counsel Speaker or the Individual Defendants were motivated by Plaintiff's protected characteristics.  Therefore, the City Defendants' and the NYCHA Defendants' motions to dismiss are granted and Plaintiff's hostile work environment claims are dismissed under the NYCHRL as well.

***Aiding and Abetting Under the NYSHRL Against the Individual***
          ***Defendants (Eighth Claim)*[9]**

The NYSHRL provides that "[i]t shall be an unlawful discriminatory practice for any

person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this

article, or to attempt to do so."  N.Y. Exec. Law § 296(6).  "It is the employer's participation in

the discriminatory practice which serves as the predicate for the imposition of liability on others

for aiding and abetting."  *DeWitt v. Lieberman*, 48 F. Supp. 2d 280, 293 (S.D.N.Y. 1999)

(quoting *Murphy v. ERA United Realty*, 674 N.Y.S.2d 415, 417 (2d Dep't 1998)).

Notably, the NYSHRL "makes it unlawful for an *employer* to discriminate."  *Feingold*,

366 F.3d at 157 (emphasis added).  Section 296(6) states that it shall be an unlawful

discriminatory practice for "any person" to aid or abet, and the Second Circuit has held that this

permits a "co-worker who 'actually participates in the conduct giving rise to a discrimination

claim' to be held liable under the NYSHRL even though that co-worker lacked the authority to

either hire or fire the plaintiff."  *Id.* at 158 (quoting *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317

(2d Cir. 1995)).

Here, both the NYCHA Defendants and the City Defendants have moved to dismiss

Plaintiff's aiding and abetting claim.  Plaintiff has not alleged any facts or identified any case

law that supports a finding that the Council Speaker qualifies as a person who may be held liable

for aiding and abetting under the NYSHRL—as noted above, the Council Speaker did not

---

[9] For the first time in her opposition, Plaintiff brings a claim for aiding and abetting under the NYCHRL.  (*Compare* Compl. *with* Pl.'s Opp. 24.)  However, any legal arguments beyond the scope of the complaint are inappropriate for consideration on a motion to dismiss.  *See In re UBS Auction Rate Sec. Litig.*, No. 08 Civ. 2967(LMM), 2010 WL 2541166, at *16 (S.D.N.Y. June 10, 2010); *Southwick Clothing LLC v. GFT (USA) Corp.*, No. 99 CV 10452(GBD), 2004 WL 2914093, at *6 (S.D.N.Y. Dec. 15, 2004) ("A complaint cannot be amended merely by raising new facts and theories in plaintiffs' opposition papers, and hence such new allegations and claims should not be considered in resolving the motion.").  Therefore, I will only consider the claim alleged in the Complaint—that is, aiding and abetting under the NYSHRL.

participate in conduct giving rise to a discrimination claim, and in any event, is not the "co-worker" of anyone whose conduct gives rise to a discrimination claim. Therefore, the City Defendants' motion to dismiss Plaintiff's aiding and abetting claim against the Council Speaker is granted, and that claim is dismissed.

On the other hand, Plaintiff has alleged sufficient conduct by Clarke and Kelly, who played a role in terminating Plaintiff's employment as Director of OPMD, and whose conduct I found above may plausibly give rise to a discrimination claim. (*See, e.g.*, Compl. ¶¶ 35, 50, 56–57, 73.) As such, the NYCHA Defendants' motion to dismiss Plaintiff's aiding and abetting claim against Clarke and Kelly is denied.

### E. *Section 1985 Claims Against the Individual Defendants (Sixth Claim)*

"To make out a claim under Section 1985(3), a plaintiff must show: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States." *Miller v. N.Y.C. Dep't of Educ.*, 71 F. Supp. 3d 376, 386 (S.D.N.Y. 2014), *aff'd*, 622 F. App'x 38 (2d Cir. 2015). "In order to maintain an action under Section 1985, a plaintiff 'must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end.'" *Webb v. Goord*, 340 F.3d 105, 110–11 (2d Cir. 2003) (quoting *Romer v. Morgenthau*, 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000)). Additionally, "the conspiracy must be motivated by 'some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action.'" *Miller*, 71 F. Supp. 3d at 386 (quoting *United Bhd. of Carpenters & Joiners of Am., Local 610 v. Scott*, 463 U.S. 825, 829 (1983)).

Plaintiff has not alleged the necessary meeting of the minds to sustain her § 1985 conspiracy claim. Indeed, Plaintiff alleges merely that the Council Speaker stated a desire to replace Williams with a Spanish-speaking individual, and that Clarke later stated to Plaintiff that "[Kelly] and the Council Speaker want it done!" (Compl. ¶¶ 29, 50.) Plaintiff's claims of conspiracy are thus "vague and provide no basis in fact," and must be dismissed. *Conway v. Garvey*, No. 03 Civ. 7958(DC), 2003 WL 22510384, at *3 (S.D.N.Y. Nov. 5, 2003), *aff'd*, 117 F. App'x 792 (2d Cir. 2004); *see also Webb*, 340 F.3d at 111 ("The plaintiffs have not alleged, except in the most conclusory fashion, that any such meeting of the minds occurred among any or all of the defendants. Their conspiracy allegation must therefore fail."). Thus, the motions to dismiss Plaintiff's § 1985 claims by the NYCHA Defendants and the City Defendants are granted, and all of Plaintiff's § 1985 claims are dismissed.

## F. *First Amendment Retaliation Claim Against NYCHA (Seventh Claim)*

The First Amendment "protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006). "In order to establish a First Amendment retaliation claim, plaintiffs must prove that: (1) they engaged in constitutionally protected speech because they spoke as citizens on a matter of public concern; (2) they suffered an adverse employment action; and (3) the speech was a 'motivating factor' in the adverse employment decision." *Looney v. Black*, 702 F.3d 701, 717 (2d Cir. 2012) (quoting *Skehan v. Village of Mamaroneck*, 465 F.3d 96, 106 (2d Cir. 2006), *overruled on other grounds by Appel v. Spiridon*, 531 F.3d 138 (2d Cir. 2008) (per curiam)). The balancing involved in First Amendment retaliation claims requires first "determining whether the employee spoke as a citizen on a matter of public concern," as opposed to speaking pursuant to his or her official duties on private matters and, if so, questioning whether the

governmental entity had an "adequate justification for treating the employee differently from any other member of the general public." *Garcetti*, 547 U.S. at 410.

Whether an employee spoke as a citizen is "largely a question of law for the court." *Jackler v. Byrne*, 658 F.3d 225, 237 (2d Cir. 2011). "[S]peech can be 'pursuant to' a public employee's official job duties even though it is not required by, or included in, the employee's job description, or in response to a request by the employer." *Weintraub v. Bd. of Educ.*, 593 F.3d 196, 203 (2d Cir. 2010) (finding that the plaintiff's grievance—filed after the administration did not properly react to a student throwing a textbook at the teacher in class—was pursuant to his official duties because it was "part-and-parcel of his concerns about his ability to properly execute his duties" by maintaining classroom discipline, "an indispensable prerequisite to effective teaching and classroom learning" (citation and internal quotation marks omitted)). Importantly, if speech is made "pursuant to" an employee's job duties—which is defined as "speech that owes its existence to a public employee's professional responsibilities"—the employee is not speaking "as a citizen." *Id.* at 201 (quoting *Garcetti*, 547 U.S. at 421).

The NYCHA Defendants maintain that Plaintiff has not adequately alleged that she spoke as a citizen. (*See* NYCHA Mem. 16–18.) I agree. Here, Plaintiff alleges that she (1) was instructed to attend the July 30, 2015 meeting, (Compl. ¶ 23); (2) received a directive to remove Williams and then set up a meeting with Clarke because "she did not think that was the correct, or legal, thing to do," (*id.* ¶ 32); (3) was told by Clarke at that meeting to terminate and transfer Williams, (*id.* ¶ 33); (4) made efforts to comply with Clarke's instructions but was told that the requested termination was illegal and that she could be sued, (*id.* ¶¶ 34–39); (5) complained to Ponce that she was told that terminating Williams's employment would be illegal and was thus having difficulty following Clarke's instructions, (*id.* ¶ 40); (6) updated Clarke through his

senior advisor as to the steps she had taken, (*id.* ¶ 43–44; *see also id.* Exs. A–B); (7) updated Clarke upon his return from vacation as to the steps she had taken, (*id.* ¶ 49; *see also id.* Ex. C); and (8) later informed Clarke that "she had been advised it would be illegal to remove Williams," (*id.* ¶ 50). The Complaint's allegations demonstrate that Plaintiff's speech would not exist but for Plaintiff's assigned responsibilities. *See Weintraub*, 593 F.3d at 201; *Williams v. Bd. of Educ.*, 519 F. App'x 18, 19 (2d Cir. 2013) (summary order) (finding that the plaintiff did not speak as a citizen where she objected to her supervisor's instruction to alter payroll documentation because the speech owed its existence to her payroll responsibilities). On this basis, the NYCHA Defendants' motion to dismiss Plaintiff's First Amendment claim is granted, and Plaintiff's First Amendment retaliation claim is dismissed.

> ### G. *Intentional Infliction of Emotional Distress Claims Against the Individual Defendants (Tenth Claim)*

"Under New York Law, to establish a cause of action for IIED, a plaintiff must prove: '(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing severe emotional distress; (iii) a causal connection between the conduct and the injury; and (iv) severe emotional distress.'" *Cowan v. City of Mount Vernon*, 95 F. Supp. 3d 624, 656 (S.D.N.Y. 2015) (quoting *Carroll v. Bayerische Landesbank*, 150 F. Supp. 2d 531, 538 (S.D.N.Y. 2001)).

The standard for establishing an IIED claim is extremely difficult. *See id.* As such, "New York courts regularly deny intentional infliction of emotional distress claims in employment discrimination cases." *Daniels v. Health Ins. Plan of Greater N.Y.*, No. 02CIV6054MBM, 2005 WL 1138492, at *3 (S.D.N.Y. May 12, 2005). Indeed, "[i]n the rare instances where the New York courts have found the complaint sufficient to state a claim for intentional infliction of emotional distress in the employment context, the claims have been

accompanied by allegations of sex discrimination, and more significantly, battery." *Cowan*, 95 F. Supp. 3d at 656 (quoting *Daniels*, 2005 WL 1138492, at \*3).

Plaintiff here has not alleged facts supporting the extreme and outrageous conduct necessary to support an IIED claim. *See Daniels*, 2005 WL 1138492, at \*3 (dismissing an IIED claim where plaintiff alleged rude and unfair treatment, extra work, failure to accommodate her disability, and discriminatory termination). As such, both the NYCHA Defendants' and the City Defendants' motions to dismiss Plaintiff's IIED claim are granted, and Plaintiff's IIED claims are dismissed.

## V. <u>Conclusion</u>

For the reasons stated above, the City Defendants' motion to dismiss, (Doc. 27), is GRANTED in its entirety, and all claims against the City Defendants are dismissed. Additionally, the NYCHA Defendants' motion to dismiss, (Doc. 24), is GRANTED IN PART and DENIED IN PART. The NYCHA Defendants' motion to dismiss is DENIED as to Plaintiff's (1) retaliation claims brought under Title VII, the NYSHRL, and the NYCHRL against NYCHA; (2) retaliation claim brought under § 1983 against Kelly and Clarke, and (3) aiding and abetting claim brought under the NYSHRL against Kelly and Clarke. The NYCHA Defendants' motion to dismiss is GRANTED as to Plaintiff's (1) hostile work environment claim against NYCHA; (2) Section 1985 claim against Kelly and Clarke; (3) First Amendment retaliation claim against the NYCHA; and (4) IIED claim against Kelly and Clarke.

The Clerk of Court is respectfully directed to terminate the open motions, (Docs. 24, 27), and to terminate Defendants City of New York and Council Speaker Melissa Mark-Viverito from this case. The remaining Defendants—NYCHA, Kelly, and Clarke—are directed to meet and confer with Plaintiff regarding a proposed date for the remaining Defendants to file their

answers as well as the scheduling of discovery. The parties are directed to submit a joint letter addressing these issues, as well as a proposed Case Management Plan and Scheduling Order, on or before April 10, 2018.

SO ORDERED.

Dated: March 26, 2018
      New York, New York

Vernon S. Broderick
United States District Judge