```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

SIBYL COLON,

                Plaintiff,

         v.                              16 CV 4540(VSB)(OTW)

NEW YORK CITY HOUSING
AUTHORITY, et al.,

                Defendants..

------------------------------x
                                         New York, N.Y.
                                         February 6, 2019
                                         11:10 a.m.

Before:

                    HON. ONA T. WANG,

                                     Magistrate Judge

                       APPEARANCES

FLORESTAL LAW FIRM
     Attorneys for Plaintiff
BY:  MARCEL FLORESTAL

NEW YORK CITY HOUSING AUTHORITY
     Attorneys for Defendants
BY:  JANE E. LIPPMAN
     J. CORBIN CARTER
```

1                    (In open court; case called)
2                    THE LAW CLERK:  Colon v. City of New York.
3                    Counsel, please state your name for the record.
4                    MR. FLORESTAL:  Mark Florestal for the plaintiff.
5                    MS. LIPPMAN:  Good morning, your Honor.  Jane Lippman
6      for the New York City Housing Authority Law Department for
7      Defendants Michael Kelley and Brian Clarke.
8                    MR. CARTER:  Good morning, your Honor.  John Carter
9      with Corporation Counsel for the City of New York for
10     Defendants City of New York and Melissa Mark-Viverito.
11                   THE COURT:  Good morning.  Please be seated.
12                   I might have explained this to you before, but if not
13     you can address me from a seated position in this discovery
14     conference.  Just make sure the court reporter can hear you.
15                   We're here on some discovery issues.  Shall we talk
16     about the tax returns first?  Is someone seeking a motion to
17     compel or is someone seeking a protective order?
18                   Either of you can go first.
19                   MR. FLORESTAL:  I can go first, your Honor.
20                   Good morning.  I apologize for not saying good morning
21     in advance.
22                   Your Honor, we provided defendants with everything
23     that they requested.  We provided them with the W-2s -- the
24     relevant W-2s.  They requested a lot of unnecessary
25     documentation from us.  For example 1040s.  They are requesting

1   for 1040s.  1040s have a slew of extraneous information that
2   they really don't need.  I think their goal is just to make
3   sure that my client mitigated her damages, which we provided
4   them with all the information, all the necessary W-2s.
5           There was one year that my client received a 1099 and
6   she filed a Schedule C and we provided them with that Schedule
7   C, too, and they have a copy of that 10909 I believe.  They are
8   requesting 1099-Rs for whatever reason.  I don't understand.
9   1099-Rs as you may know reflects distributions for pension
10  distributions.  First of all, my client is not even 59 and a
11  half so she doesn't receive 1099-Rs on a regular basis.  We
12  really don't know why they are requesting all this extraneous
13  information and we have not turned them over.
14          THE COURT:  So she has not passively turned them over?
15          MR. FLORESTAL:  Yes.
16          THE COURT:  Wait.  You said she doesn't get 1099-Rs.
17          MR. FLORESTAL:  She received one 1099-R in one year in
18  relation to some previous work that she did.  Off the top of my
19  head, I cannot recall which year that was; but she does not
20  receive 1099-Rs on a regular basis.
21          THE COURT:  Tell me about the Form 1040.
22          MR. FLORESTAL:  So the Form 1040 as you know has a
23  slew of information, but what is relevant for them is how much
24  income she had earned in that particular snapshot in time.
25          THE COURT:  Right.

1           MR. FLORESTAL:  Which we provided them with.  We
2    provided them with all of the relevant W-2s but yet they still
3    insist on receiving Form 1040s without any justification as to
4    relevance and materiality.
5           THE COURT:  I am sure I will hear some from defense
6    counsel.  So the only tax forms at issue now are 1099-Rs and
7    Form 1040s.
8           Ms. Lippman or Mr. Carter.
9           MS. LIPPMAN:  Your Honor, as Mr. Florestal correctly
10   stated, defendants are entitled to know whether and how
11   plaintiff has mitigated her damages.  I think the issue with
12   respect to the returns, the 1040s, is that we -- I was somewhat
13   confused by Mr. Florestal's statement in the joint letter that
14   there was information that was not material and then in his
15   follow-up letter on December 20th that they produced all
16   relevant Form W-2s.  So there was some ambiguity at least in my
17   mind as to what had been produced.
18          With respect to the 1099-Rs -- and by the way the
19   request for production is broader than just 1099-Rs.  It is for
20   copies of any documents related to benefits generally.
21   Defendants are entitled to this information as well.  Plaintiff
22   is claiming constructive discharge.  She was in a managerial
23   position and was entitled to something called a management
24   benefits fund.  We have not received any tax forms related to
25   distributions to that.

1         One thing I might suggest is *in camera* review.  I have
2    some concern there might be information not related to
3    mitigation.  We're not interested in that.
4         THE COURT:  Typically what we do is we get some form
5    of protective order entered on consent and it can be as
6    protective as attorneys eyes only or it can just be a fairly
7    simple protective order.  I am inclined to direct the
8    production of those documents pursuant to a valid Court entered
9    protective order.  So what I would like the parties to do is
10   work together on a protective order and submit it by one week
11   from today.  Submit your proposed protective order.  It does
12   not need to be filed on the docket.  And then we'll review it
13   and if it is fine, we will enter it and then you'll be directed
14   to produce the documents.
15        Okay, Mr. Florestal?
16        MR. FLORESTAL:  Yes, your Honor.
17        MS. LIPPMAN:  Sorry, your Honor.  For clarification,
18   will be that be submitted to your Honor via email?
19        THE COURT:  Yes.  Yes, to the chamber's email address.
20   We'll review it and if it is fine, we'll enter it and you'll
21   see it hit the docket at which point, Mr. Florestal, you should
22   produce documents.
23        MS. LIPPMAN:  Thank you, your Honor.
24        THE COURT:  The next issue is the physician and
25   healthcare professionals who treated plaintiff for her

1  posttraumatic distress order and other potential disorders that
2  occurred and during her leave between 2003 and 2009.
3        I am inclined to go along with Ms. Lippman or
4  Mr. Carter.  You have to show me why you need that.  If
5  plaintiff's argument is that -- I mean, if defendants had to
6  find plaintiff as she is or where she is, I guess I am trying
7  to understand why you would need those records since they
8  predate the events in this case.
9        MS. LIPPMAN:  Your Honor, if I might address that?
10       THE COURT:  Yes.
11       MS. LIPPMAN:  I think the issue here is that the
12  complaint does allege very clearly emotional pain, emotional
13  distresses and manifestations from that.  I think the law in
14  the Second Circuit is clear, and we cited a couple of cases,
15  that where the plaintiff puts her emotional state directly at
16  issue as the plaintiff has done in this case, defendant has a
17  right to discovery of past psychotherapy records to show that
18  alleged emotional distress was caused at least in part by
19  things that happened in the past and that were not job-related.
20        Plaintiff had a very, very long worker's compensation
21  leave.  At least some component of that was for psychological
22  symptoms.  Therefore, in seeking these documents, defendants
23  are trying to get records to show that whatever plaintiff
24  alleges are her emotional distresses now may be attributed to
25  something in the past.

1           THE COURT:  This seems to fall right into the eggshell
2   plaintiff issue; right?  If she had PTSD and it was, I don't
3   know if the correct term is dormant or not, not really
4   manifesting itself until the events in this complaint, I am
5   just not understanding.  Is it that you will be trying to
6   establish a baseline or is it --
7           MS. LIPPMAN:  I think it would depend on what the
8   records show.  Without seeing the records, I couldn't
9   speculate.
10          In terms of the eggshell rule, I don't think plaintiff
11  cited any case law for the New York eggshell rule, which I am
12  not familiar with off the top of my head.  I practiced for a
13  long time in California, but I sort of know generally what he
14  means, but there is nothing cited for that.  The cases from the
15  Second Circuit that I cite don't address the eggshell rule.
16  One is from the Southern district, the *Sidor* case.
17          THE COURT:  Mr. Florestal.
18          MR. FLORESTAL:  As your Honor just aptly put, the
19  opposition is the eggshell rule.  You are right we did cite a
20  case in regards to the eggshell rule; but in the State of New
21  York, the rule is you take a plaintiff as you find him or her
22  past issues notwithstanding.  So we still don't see why
23  defendants would need medical records predating the incident
24  close to 10 years.
25          THE COURT:  I guess from the defendants, is this

1   really an issue about reducing or setting a ceiling on the

2   level of damages, or is it about foreclosing recovery at all?

3   It would be one thing if her treatment for her PTSD and other

4   issues was temporally closer to the events in question in the

5   complaint.  I am trying to understand where this fits into the

6   defenses.

7          MS. LIPPMAN:  The argument, your Honor, is if there is

8   some underlying condition, there was some past trauma to the

9   plaintiff that has some sort of long-term manifestation that

10  would be relevant to whether the alleged emotional distress in

11  this case is attributed to the alleged events or not.  I refer

12  your Honor to the *Sidor* case where the court specifically held

13  that the defense counsel has a right to inquire into

14  plaintiff's past.

15         THE COURT:  Mr. Florestal, other than the eggshell

16  plaintiff, what else do you have?

17         MR. FLORESTAL:  That's the basis, your Honor.  Nothing

18  that I am hearing here from the defendant's counsel nullifies

19  the eggshell rule.  As you intimated a little while ago, it

20  plays right into it.  There is absolutely no value in her

21  finding out whether or not an incident that happened 10 years

22  ago affected the plaintiff in 2015.  There is no value

23  whatsoever.

24         THE COURT:  Here is what I think we'll do:  As the

25  parties are working to work on a stipulated protective order

1 governing the tax forms, I want you to meet and confer on
2 whether these medical records may be provided pursuant to the
3 protective order as well and what level of protection you might
4 need.
5     Mr. Florestal, I am very sensitive to the idea that
6 defendants find the plaintiff as she is and I am a little bit
7 concerned about the time difference between her prior treatment
8 and the events in this case particularly if her medical records
9 throughout show that it's not as if her PTSD or other disorders
10 for which she had the leave from 2003 to 2009 were continuing
11 until the events alleged in the compliant.
12     Do you know what I am saying?
13     MR. FLORESTAL: Yes.
14     THE COURT: So what we'll do is I would like you to
15 work together to see if you can produce those. It does not in
16 any way foreclose your ability to make any motions to exclude
17 consideration of any of that at a later date. Right now I am
18 not necessarily seeing it, but I also hear from Ms. Lippman
19 that if you put that in issue there might be a need or under
20 certain circumstances where some of that information might be
21 relevant.
22     So if you cannot agree by the time the 13th on whether
23 those documents can be produced under the protective order,
24 what I am going to put you on a briefing schedule. Actually, I
25 will put you on a briefing schedule.

1              Whose motion is it?  Is it a motion to compel or a
2     motion for protective order?
3              MR. FLORESTAL:  I would think compel.
4              THE COURT:  You both know what the legal issues are
5     here.  If you are not able to agree on whether you can produce
6     the medical records under the protective order, then I will
7     have you file a three-page letters with a bit more on the law
8     simultaneously on the 20th.  If I need further briefing or
9     argument, I will make that decision after I see what you
10    submitted on the 20th.  My hope is that you can work it out.
11             Because even production of the documents isn't going
12    to foreclose you, Mr. Florestal, from making future motions to
13    have anything included or even not considered.
14             Okay?
15             MR. FLORESTAL:  Yes, your Honor.
16             THE COURT:  Anything else on discovery?
17             MS. LIPPMAN:  Yes, your Honor.
18             THE COURT:  Is it in the joint letter?
19             MS. LIPPMAN:  No, your Honor.  I think there are some
20    issues related to discovery that have arisen recently that we
21    would like to address.
22             MR. CARTER:  So, your Honor, speaking for defendant
23    Mark-Viverito who is still in the companion case, Williams,
24    these cases have been consolidated for discovery purposes and
25    the current fact discovery deadline is set for March 1st from

1     the previous Colon schedule.
2              Ms. Mark-Viverito to still awaiting a decision from
3     Judge Broderick on a motion for reconsideration which was
4     submitted in October as to the sole remaining claim against
5     Defendant Mark-Viverito.  I guess we are still awaiting a
6     decision on that, but there was no separate discovery schedule
7     set in the Williams case.  So we're both seeking I think with
8     consent of both parties an extension of fact discovery until
9     such time as a decision comes down on that motion.  And also
10    for purposes of deposing Ms. Williams, who is a plaintiff in
11    her own action but also a witness in the Colon action, an
12    enlargement of time from this typical seven hours to
13    potentially nine hours so that all defendants can have a proper
14    amount of time to depose Ms. Williams.
15             THE COURT:  So set a deposition of Ms. Williams of
16    nine hours instead of seven; is that on consent?
17             As far as extending the deposition of Ms. Williams to
18    nine hours instead of seven; is there consent, Mr. Florestal?
19             MR. FLORESTAL:  I am inclined to oppose, your Honor,
20    because when we conduct these depositions, the City is present
21    and they have the opportunity to question whomever is being
22    deposed.  If they chose not to, it is on them.
23             MR. CARTER:  Your Honor, respectfully, we are choosing
24    to depose Ms. Williams because Ms. Williams is a claimant in
25    the suit in which we are still a defendant.  Defendant

1  Mark-Viverito has been completely terminated from the Colon
2  case. So with deposition of Sibyl Colon, which has already
3  occurred, there was no further questioning from the City or
4  from the Defendant Mark-Viverito. However, with Defendant
5  Williams that will be a different case.
6          THE COURT: Because Ms. Mark-Viverito is still a party
7  in the Williams case pending a motion for reconsideration?
8          MR. CARTER: That's correct, your Honor.
9          THE COURT: So I understand procedurally in the
10 Williams case, Judge Broderick's initial decision kept her in
11 the case and you moved to reconsider?
12         MR. CARTER: That's correct.
13         THE COURT: I am going to allow Ms. Williams'
14 deposition to go for nine hours instead of seven. If for some
15 reason it turns out that she is not physically able to do all
16 nine hours in one sitting, then you should find a way to make
17 that amount of time work. It does not have to be in one day if
18 there is a reason or if it is difficult for Ms. Williams to
19 manage that in her schedule. I expect the parties to work
20 together on this and to work in good faith on this.
21         The difference between seven and nine hours, Mr.
22 Florestal, is not huge and I am hoping with efficient
23 questioning that it will be closer to seven than to nine. I am
24 going to let this go on for now.
25         As to the fact discovery deadline of March 1st, are

1   you seeking an extension only as to Ms. Mark-Viverito or as to
2   everyone?
3           MR. CARTER:  I believe as to everyone.
4           MS. LIPPMAN:  Your Honor, the parties are progressing
5   with discovery in the two cases which were consolidated.  I
6   deposed Ms. Colon in earlier in January.  I think the parties
7   need more time.  We eventually received some deposition notices
8   from the plaintiff.  A number of them scheduling can be an
9   issue.  I think we just need some more time.  I will also point
10  out to your Honor that the plaintiff moved for a
11  reconsideration as to the former speaker in the Colon case last
12  spring and that is also still pending.
13          THE COURT:  Okay.
14          MS. LIPPMAN:  The former speaker is not currently a
15  party in the Colon action and there was motion practice on that
16  that has been pending for quite some time.
17          THE COURT:  Ms. Mark-Viverito was kept in the Williams
18  case.  There is a motion for reconsideration by the City on
19  that one but then she was dismissed from the Colon case but
20  there is a motion for reconsideration by plaintiff on that one?
21          MR. FLORESTAL:  Yes, your Honor.
22          THE COURT:  How much time do you need?
23          MS. LIPPMAN:  Your Honor, the current deadline is
24  March 1st.  I think probably another three months will be
25  reasonable.

J266COLC

1           THE COURT:  Mr. Florestal?
2           MR. FLORESTAL:  I would agree, your Honor.
3           THE COURT:  June 1st is a Saturday.  Why don't we make
4   it June 3rd on consent.
5           Is there anything else anybody needs today?
6           MS. LIPPMAN:  Your Honor, I will point out with
7   respect to the scheduling order, there are other deadlines.  I
8   don't know if your Honor wants to go through them now.  I have
9   the current schedule with me.
10          THE COURT:  Okay.  I can take a look at that.
11          MR. FLORESTAL:  June 3rd all discovery must be due.
12  So that has to be pushed up.
13          THE COURT:  Wait.  Wait.  Wait a second.  I am looking
14  at the Colon schedule, which says that -- oh, I see.  All fact
15  discovery was supposed to be completed by March 1st with all
16  discovery to be completed by June 3rd; right?
17          MS. LIPPMAN:  Yes.
18          THE COURT:  All of the discovery related dates in the
19  prior order will be pushed back three months approximately.
20          MS. LIPPMAN:  Okay.
21          THE COURT:  Should we have another status conference
22  or would you rather be given a schedule for a joint status
23  letter on discovery?
24          MR. FLORESTAL:  I think a conference will be good.
25          MS. LIPPMAN:  I think a conference would be good, too.

J266COLC

1           THE COURT:  We're taking the dental plan approach on
2    this case.
3           How much time would you want for the next conference?
4           MS. LIPPMAN:  Maybe May.
5           MR. FLORESTAL:  Yes.
6           THE COURT:  Okay.  You heard it from the deputy,
7    May 14th, 15th or 16th.  Do you have any preference?
8           MR. FLORESTAL:  16th.
9           THE COURT:  Does that work for you all?
10          MS. LIPPMAN:  Yes.
11          THE COURT:  May 16th 10:00 a.m.
12          Since we have a date for the next status conference, I
13   will also direct that a joint status letter indicating where
14   you are in discovery and so on be submitted to chambers one
15   week before the conference.  Of course if you have trouble
16   resolving anything else between February 20th and May, you are
17   welcome and free to write it and let me know and we can get you
18   in earlier or I can resolve things on papers as well
19          Anything else?
20          MS. LIPPMAN:  No.  Thank you very much, your Honor.
21          MR. FLORESTAL:  Thank you, your Honor.
22          THE COURT:  Thank you all.
23          One more thing.  The parties are directed to order the
24   transcript and share the costs.
25                              o0o