**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
SIBYL COLON,

                      Plaintiff,                  No. 16-CV-4540 (VSB) (OTW)

       -against-                            **OPINION & ORDER**

NEW YORK CITY HOUSING AUTHORITY, et al.,

                      Defendants.
-------------------------------------------------------------x

**ONA T. WANG, United States Magistrate Judge:**

Plaintiff Sibyl Colon ("Plaintiff") brings discrimination and retaliation claims against, *inter alia*, Defendants New York City Housing Authority ("NYCHA") and Michael Kelly (collectively "NYCHA Defendants") for being demoted for refusing to comply with Defendants' personnel order. *See* Complaint ("Compl.") (ECF 1). Plaintiff alleges that Defendants directed her to replace Allison Williams, the African-American manager of the Bronx Millbrook Houses, with a Spanish-speaking manager to better facilitate relationships with its Spanish-speaking residents. Compl. ¶¶ 25-32. After consulting with NYCHA's human resources department, Plaintiff refused to transfer Ms. Williams because she felt that doing so would be illegal. Compl. ¶ 40. Plaintiff was then terminated from her position as Director and offered a less senior position. Compl. ¶ 57. Before the Court is Plaintiff's letter motion seeking: (1) to compel a second deposition of Defendant Michael Kelly, a general manager at NYCHA; (2) sanctions in the form of attorney's fees and costs related to both the first deposition and anticipated second deposition of Mr. Kelly; and (3) an order striking any allegation in Defendants' pleadings that Janet Abrahams, a NYCHA employee, was hired to replace Plaintiff. (ECF 94).

I.   **Background**

Plaintiff's letter motion is only the latest in a series of contentious disputes between Plaintiff and the NYCHA Defendants[1] regarding this deposition. At the March 6, 2019 Discovery Conference, the parties disputed whether Plaintiff could question NYCHA's 30(b)(6) witness about Ms. Abrahams's work duties and performance. (ECF 94-1 at 15:8-19:13). Plaintiff argued that Ms. Abrahams's employment was relevant in light of the NYCHA Defendants' assertion that Ms. Abrahams was hired to replace Plaintiff. *Id*. at 16:4-8. The NYCHA Defendants responded that Ms. Abrahams was initially hired for a different job title from Plaintiff's and thus her employment was irrelevant to this matter. *Id*. at 18:8-16. The Court ultimately ruled that Ms. Abrahams's role at NYCHA was a "perfectly valid topic" on which to propound questions, but that the NYCHA Defendants were free to object to the questions at the deposition. *Id*. at 18:17-19:5.

On May 3, 2019, the parties called the Court from the 30(b)(6) deposition of Mr. Kelly as a NYCHA representative, with the NYCHA Defendants arguing that Mr. Kelly should not be required to answer questions in his individual capacity. The Court ordered the parties to complete NYCHA's 30(b)(6) deposition and to subsequently schedule another deposition for Mr. Kelly in his individual capacity as a named defendant. (ECF 86).

Plaintiff noticed Mr. Kelly's deposition in his individual capacity for June 13, 2019, but after the deposition of Defendant Brian Clarke earlier that day went over time, Mr. Kelly's

---

[1] Defendant Mark-Viverito is represented by separate counsel and appears to be uninvolved in this particular discovery dispute.

deposition was postponed to July 3, 2019.[2] (ECF 93 at 2). The motion currently before the Court stems from this July 3 deposition.[3]

## II.     Motion to Compel Second Deposition

At Mr. Kelly's deposition on July 3, 2019, the NYCHA Defendants' counsel, Ms. Lippman, repeatedly instructed Mr. Kelly not to answer the questions posed, and ultimately walked out of the deposition with Mr. Kelly before the deposition's conclusion. July 3, 2019 Dep. of Michael Kelly Tr. ("Kelly Tr.") at 34:11-15, 66:9-10, 67:14-17, 72:2-7. Plaintiff argues that the instructions not to answer and the premature ending of the deposition frustrated her ability to take the deposition. *Id*. at 6. As a result, Plaintiff seeks sanctions under Federal Rule of Civil Procedure 30(d)(2) and Rule 37(b). *Id*. at 4-5.

Rule 30(c)(2) expressly limits the instances in which a deponent can be instructed not to answer a question: "when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)[4]." Absent those situations, "the examination still proceeds; the testimony is taken subject to the objection." Fed. Rule Civ. Proc. 30(c)(2); s*ee also* 8A C. Wright, A. Miller, & A. Marcus, Federal Practice and Procedure § 2113, p. 556 (3d ed. 2010) (noting limitation on instructions to not answer because of potential disruptiveness); *Nat'l Microsales Corp. v. Chase Manhattan Bank, N.A.*, 761 F. Supp. 304, 307

---

[2] Although this July 3 deposition was scheduled for Mr. Kelly in his individual capacity, it appears that Mr. Kelly was still asked questions in his Rule 30(b)(6) capacity. *See, e.g.*, Kelly Tr. at 52:6-9 ("I asked him as the 30B6 [sic] witness.").

[3] The NYCHA Defendants argue that because Plaintiff's application was filed a week after the discovery deadline, it should not be considered. (ECF 96 at 1). The subject of the motion to compel, Mr. Kelly's deposition, was within the discovery period and Plaintiff's delay was not substantial. Accordingly, the Court will exercise its discretion and accept the untimely letter motion. *See generally Wills v. Amerada Hess Corp.*, 379 F.3d 32, 41 (2d Cir. 2004) (noting district court's "broad discretion" to manage discovery).

[4] Federal Rule of Civil Procedure 30(d)(3) allows for a party to move for the termination or limitation of the deposition if it is being conducted in bad faith. Nowhere in the deposition transcript does either counsel invoke Rule 30(d)(3), nor was such a motion ever made, so this factor is not relevant to this discussion.

(S.D.N.Y. 1991) (noting the proper procedure for non-privilege objections "is for the attorney who raises the objection to note his objection but to allow the question to be answered.").

As the Court already warned counsel at the March 6, 2019 discovery conference, instructions not to answer should be used sparingly, and counsel should otherwise "make your objections so that you make your record and you move on." Mar. 6, 2019 Disc. Conf. Tr. (ECF 77) at 18:25-19:2. Both counsel were specifically warned that an objection that a question is irrelevant or outside the scope of noticed topics is not a reason to instruct the witness to not answer the question. *Id*. at 19:2-3.

### A. "Pending Government Investigation" Objection

Ms. Lippman's first instruction not to answer was based on a "pending government investigation," as follows:

> Q. Walk me through the testing part of it. How simple is lead paint testing; to test an apartment for lead paint, how simple a task?
>
> A. I didn't say simple. It requires -- well, there's different forms of identification beginning with the visual inspection of peeling paint and to the use of a -- I forget the acronym -- XRF machine; a larger machine that can identify lead much more accurately than a usual inspection, are I believe the two major type of ways lead can be identified. Testing though, forgive me for not answering the question specifically, has to be done through some sort of a machine.
>
> Q. Was NYCHA in possession of the testing machines in 2015?
>
> MS. LIPPMAN: Objection. I'm instructing the witness not to answer this. There's a pending government investigation on lead. You will have to take this to the judge.
>
> MR. FLORESTAL: I will.

Kelly Tr. at 34:11-15. Ms. Lippman was not invoking a Court order or attorney-client privilege. In her two letters to the Court following the Kelly deposition, Ms. Lippman objected that Plaintiff

4

attempted to ask questions involving attorney-client privilege and attorney work product, but notably did not mention this exchange as one of the potentially privileged questions. (ECF 93, 96).

Even if a government investigation may involve communications between the subject of the investigation and its attorneys, Ms. Lippman did not invoke the attorney-client privilege at the deposition, nor did she state that the requested information was connected to any communications with attorneys. The mere fact that there is a pending government investigation does not presumptively confer privilege on any deposition topic related to the investigation. *See generally In re Qwest Commc'ns Intern. Inc.*, 450 F.3d 1179 (10th Cir. 2006) (rejecting proposal to create a "government-investigation privilege"). Accordingly, this instruction not to answer was improper.

### B. "Legal Conclusion" Objection

Ms. Lippman's next instruction not to answer arose from a question asking Mr. Kelly to comment on Ms. Lippman's earlier argument to the Court. As described above, Ms. Lippman previously argued to the Court that Ms. Abrahams's employment was not relevant to this matter because she was not hired to replace Plaintiff. Plaintiff sought to question Mr. Kelly, on behalf of NYCHA, whether he agreed with that assessment, as follows, in part:

> Q: Ms. Lippman on line ten states, Your Honor, we strongly dispute the relevance of this topic. First of all, NYCHA did not claim Ms. Abraham took over for Ms. Colon. Ms. Abraham was brought in a month, and she began working a month after Ms. Colon resigned from NYCHA at a higher title. We are not predicating Ms. Abraham's job performance. She started after Ms. Colon resigned. Do you see what I'm reading here, sir?
>
> A: Yes, sir.
>
> MS. LIPPMAN: Objection.

5

> Q: Do you agree with that statement, sir?
>
> MS. LIPPMAN: Objection. I'm instructing the witness not to answer.
>
> MR. FLORESTAL: Based on what?
>
> MS. LIPPMAN: Based on it's improper that you are asking him to form a legal conclusion --
>
> MR. FLORESTAL: Legal conclusion?
>
> MS. LIPPMAN: Take it up with the judge. He's not answering that.

Kelly Tr. at 65:21-66:18. Although seeking a legal conclusion may be a valid objection, it is not a listed basis under Rule 30(c)(2) to instruct the deponent to not answer. Accordingly, Ms. Lippman's instruction not to answer here was also improper.

### C. Various Belated Objections

After reading the Court's previous admonition to the parties that Plaintiff may ask questions related to whether Ms. Abrahams was hired to replace Plaintiff, Plaintiff's counsel continued questioning Mr. Kelly about this topic.

> Q. Ms. Colon needs an answer that binds NYCHA as to whether or not she did her job. I'm asking you, sir, was Ms. Abraham brought in to do Ms. Colon's job?
>
> MS. LIPPMAN: Objection. I'm not having him comment on counsel's argument. No. You can take it to the judge. Don't answer.
>
> Q. Was Ms. Colon brought in to do -- are you instructing –
>
> MS. LIPPMAN: Yeah. I'm instructing him not to answer.

Kelly Tr. at 67:10-21.

In their opposition to Plaintiff's motion to compel, filed more than three weeks after the deposition, the NYCHA Defendants assert for the first time that because their previous

arguments to the Court were made following attorney-client consultation, any questions regarding NYCHA's position involves attorney-client privilege and work product protection. (ECF 96 at 4).[5] As an initial matter, attorney-client privilege and work product protection were not asserted as the basis for Ms. Lippman's initial instruction not to answer. *See* 8A C. Wright, A. Miller, & A. Marcus, Federal Practice and Procedure § 2113, p. 546 (3d ed. 2010) (noting a party waives an objection "by failing to note the objection at the taking of the deposition").

Even if Ms. Lippman had preserved her objection, by this logic, any deposition question about a party's arguments would be privileged. That is not the case. *See* Fed. Rule Civ. Proc. 26(b)(3)(B) (protecting mental processes "of a party's attorney"); 2 C. Mueller and L. Kirkpatrick, Federal Evidence § 5:17 (4th ed.) (limiting attorney-client privilege to "confidential communications"). The question did not seek information regarding communications or reasons on how NYCHA came to take the position that Ms. Abrahams was not hired to replace Plaintiff, but rather only asked if NYCHA still agreed with that position, a topic the Court expressly permitted to be asked of the deponent. *See* Mar. 6, 2019 Disc. Conf. Tr. at 16:19-17:9 (warning that the issue of whether Ms. Abrahams was hired to replace Ms. Colon is a proper 30(b)(6) question). Although a change in NYCHA's position may affect their credibility, the NYCHA Defendants may not seek to hide behind the attorney-client privilege where no such privilege exists. Accordingly, Ms. Lippman's instruction not to answer the question about Ms. Abrahams was improper.

---

[5] The NYCHA Defendants also newly assert in their opposition that the question was improper because it was already asked and answered. Not only is this not a valid reason under Rule 30(c)(2) to instruct not to answer, Ms. Lippman did not even assert that objection at the deposition.

### D. Premature Termination of the Deposition

By the Court's count, Plaintiff proceeded to ask the same question about Ms. Abrahams's hiring another four times, each of which was met by an instruction to not answer. Kelly Tr. at 68:2-70:4. Eventually, Ms. Lippman threatened to leave the deposition if Plaintiff did not ask a different question. *Id*. at 70 at 19-21. Part of the ending exchange between counsel is as follows:

> MS. LIPPMAN: Do you have anything else. We will not leave if you have other topics.
>
> MR. FLORESTAL: Ma'am, you just ended -- you just instructed your client not to answer a deposition question.
>
> MS. LIPPMAN: Just like you did with Ms. Williams.
>
> MR. FLORESTAL: Oh, really. Let's see how the judge decided on that. 354 pages -- this is off the record –
>
> MS. LIPPMAN: No, we are on the record.
>
> MR. FLORESTAL: Actually, no. That's my reporter. We are off the record – [6]
>
> MS. LIPPMAN: We are leaving, bye.

Kelly Tr. at 70:19-71:14. Ms. Lippman's departure from the deposition with Mr. Kelly prematurely ended the deposition and lacked any justification. Because Plaintiff was deprived of an opportunity to fully conduct the deposition, the NYCHA Defendants shall produce Mr. Kelly, or an alternative 30(b)(6) witness, for a follow-up deposition, not to exceed five hours, on the topics noticed for Mr. Kelly's July 3, 2019 deposition, as attached at ECF 94-2.

---

[6] The parties are reminded that any colloquy regarding objections needs to be on the record. Otherwise, the Court will not have the benefit of the transcript to understand the context of the dispute.

### III. Sanctions

Federal Rule of Civil Procedure 30(d)(2) permits the Court to award attorney's fees and costs against an individual who "impedes, delays, or frustrates the fair examination of the deponent." Although not every improper objection warrants sanctions, sanctions are appropriate where the attorney's conduct "essentially destroys a deposition." *See Cameron Industries, Inc. v. Mothers Work, Inc.*, No. 06-CV-1999 (BSJ) (HBP), 2007 WL 1649856, at *5 (S.D.N.Y. June 6, 2007) (quoting *Am. Fun & Toy Creators, Inc. v. Gemmy Indus., Inc.*, No. 96-CV-0799 (AGS) (JCF), 1997 WL 482518, at *8 (S.D.N.Y. Aug. 21, 1997)). Not only did Ms. Lippman's instructions prevent the answering of Plaintiff's questions, Ms. Lippman unilaterally ended the deposition, creating the necessity for yet another deposition. As the above-quoted colloquies show, Ms. Lippman lacked substantial justification for escalating the argument and for repeatedly directing the deponent not to answer. Accordingly, the NYCHA Defendants[7] shall be jointly & severally liable[8] for the reasonable attorney's fees and costs of the follow-up deposition, as well as the fees incurred in bringing this motion. After the completion of the now-ordered second deposition, Plaintiff shall file billing records in support of the reasonable costs and fees incurred for that deposition and for bringing this motion. At that time, the Court will determine the specific amount for which the NYCHA Defendants will be liable.

Plaintiff also seeks an order under Rule 37(b)(2)(A) striking portions of Defendants' pleadings and/or prohibiting certain claims or defenses. (ECF 94 at 5). Rule 37(b)(2)(A) permits the Court to issue further sanctions, *e.g.*, foreclosing certain defenses or dismissal of the action,

---

[7] This does not include Defendant Brian Clarke or Defendant Mark-Viverito.
[8] Although Ms. Lippman could be sanctioned personally for the misconduct, the Court finds that the conduct in this case has not risen to that level (yet).

9

where a party "fails to obey an order to provide or permit discovery." Plaintiff does not point to any specific Court order violated by the NYCHA Defendants nor does she explain why these more drastic sanctions are appropriate for violations that can be remedied with a second deposition. *See Daval Steel Prods v. M/V Fakredine*, 951 F.2d 1357, 1367 (2d Cir. 1991) ("Strong sanctions should be imposed only for serious violations of discovery orders"). Accordingly, the Court finds that the awarding of expenses is sufficient at this time and denies without prejudice Plaintiff's request for further non-monetary sanctions.

IV. **Conclusion**

For the aforementioned reasons, discovery shall be re-opened for the limited purpose of permitting the follow-up deposition of Michael Kelly, or another suitable 30(b)(6) witness. By **September 16, 2019**, the parties shall file a letter informing the Court of the date of the new deposition. Absent extraordinary circumstances, the follow-up deposition shall be completed by **October 4, 2019**. One week after the completion of this new deposition, Plaintiff shall submit billing records for the total fees and costs for this new deposition and for bringing the motion. The Clerk of Court is directed to close ECF 94.

**SO ORDERED.**

Dated: September 11, 2019
New York, New York

*s/ Ona T. Wang*
**Ona T. Wang**
United States Magistrate Judge