16 Civ. 4540 (VSB)(OTW)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SIBYL COLON,

                                                                Plaintiff,

                              -against-

THE CITY OF NEW YORK, NEW YORK CITY
HOUSING AUTHORITY, NEW YORK CITY
COUNCIL SPEAKER MELISSA MARK-
VIVERITO, MICHAEL KELLY, and BRIAN
CLARKE,

                                                                Defendants.

**DEFENDANT MARK-VIVERITO'S
MEMORANDUM OF LAW IN SUPPORT OF
HER MOTION FOR
SUMMARY JUDGMENT**

*JAMES E. JOHNSON*
*Corporation Counsel of the City of New York*
*Attorney for Defendant Mark-Viverito*
*100 Church Street, Room 2-197*
*New York, N.Y. 10007-2601*

*Of Counsel:  Natalie S. Marcus*
*Telephone:  (212) 356-2629*

*Matter No. 2016-023153*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT ....................................................................................... 1

STATEMENT OF FACTS ............................................................................................... 2

ARGUMENT

        SUMMARY JUDGMENT SHOULD BE GRANTED DISMISSING PLAINTIFF'S RETALIATION CLAIM .......................................... 2

    A.    The General Summary Judgment Standard ..................................................... 2

    B.    Plaintiff's Retaliation Claim Must Be Dismissed ........................................... 3

        1.    Plaintiff Did Not Engage in a Protected Activity ................................. 4

        2.    Plaintiff Has Failed to Establish Causation ........................................... 8

        3.    Plaintiff Cannot Show That Defendants' Employment Actions Were Pretextual .................................. 11

    C.    The Aiding and Abetting Claim Against Mark-Viverito Should Be Dismissed .................................................................................. 12

CONCLUSION ............................................................................................................. 14

## TABLE OF AUTHORITIES

<u>**Cases**</u>                                                                                          <u>**Pages**</u>

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)......................................................................................................2

*Blanc v. Sagem Morpo, Inc.*,
    394 Fed. Appx. 808 (2d Cir. 2010)...............................................................................4

*Bowen Hooks v. City of New York*,
    13 F.Supp.3d 179 (E.D.N.Y. 2014) ........................................................................4, 5, 7

*Brantman v. Fortistar Capital, Inc.*,
    No. 15 Civ. 4774 (NSR), 2017 WL 3172864
    (S.D.N.Y. July 21, 2017) ..........................................................................................4, 7

*Brown v. Xerox Corp.*,
    170 F.Supp.3d 518 (W.D.N.Y. 2016) ............................................................................7

*Burlington N. & Santa Fe Ry. Co. v. White*,
    548 U.S. 53 (2006).........................................................................................................3

*Butts v. N. Y. City Dep't of Hous. Pres. & Dev.*,
    No. 00 Civ. 6307 (KMK), 2007 WL 259937 (S.D.N.Y. Jan. 29, 2007),
    *aff'd*, 307 Fed. Appx. 596 (2d Cir. 2009) ..................................................................8

*Camarda v. City of New York*,
    No. 11 Civ. 2629 (RRM)(VMS), 2015 WL 5458000
    (E.D.N.Y. Sept. 16, 2015),
    *aff'd*, 673 Fed. Appx. 26 (2d Cir. 2016) ....................................................................3

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)......................................................................................................2

*Colon v. City of New York*,
    No. 16 Civ. 4540 (VSB), 2018 U.S. Dist. LEXIS 49582
    (S.D.N.Y. Mar. 26, 2018) .............................................................................................1

*Colon v. City of New York*,
    No. 16 Civ. 4540 (VSB), 2019 U.S. Dist. LEXIS 48188
    (S.D.N.Y. Mar. 22, 2019) .............................................................................................1

*Cruz v. Coach Stores, Inc.*,
    202 F.3d 560 (2d Cir. 2000)..........................................................................................4

**Cases**                                                                                                    **Pages**

*D'Amico v. City of New York*,
    132 F.3d 145 (2d Cir. 1998),
    *cert denied*, 524 U.S. 911 (1998)...................................................................................2

*DiGianni v. N.Y. State Dept. of Educ.*,
    No. 08 Civ. 762 (RJD)(LB), No. 08 Civ. 923 (RJD)(LB),
    2010 WL 10706590 (E.D.N.Y. Feb. 4, 2010)....................................................8

*Falchenberg v. New York State Dept. of Educ.*,
    338 F. App'x 11 (2d Cir. 2009) ......................................................................12

*Feingold v. New York*,
    366 F.3d 138 (2d Cir. 2004)........................................................................12, 13

*Filippi v. Elmont Union Free Sch. Dist. Bd. of Educ.*,
    No. 09 Civ. 4675 (JFB)(ARL), 2012 WL 4483046
    (E.D.N.Y. Sept. 27, 2012)..............................................................................4, 5

*Fincher v. Depository Trust & Clearing Corp.*,
    604 F.3d 712 (2d Cir. 2010)....................................................................3, 4, 11

*Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*,
    136 F.3d 276 (2d Cir. 1998)............................................................................7, 8

*Int'l Healthcare Exch., Inc. v. Glob. Healthcare Exch., LLC*,
    470 F. Supp. 2d 345 (S.D.N.Y. 2007)................................................................8

*Irons v. Bedford-Stuyvesant Cmt. Legal Servs.*,
    No. 13 Civ. 4467 (MKB), 2015 WL 5692860
    (E.D.N.Y. Sept. 28, 2015)..............................................................................12

*Kasner v. HSH Nordbank AG*,
    680 F.Supp.2d 502 (S.D.N.Y. 2010).................................................................7

*Kelly v. Howard I. Shapiro & Assoc*,
    716 F.3d 10 (2d Cir. 2013)................................................................................5

*Lee v. Sony BMG Music Entm't Inc.*,
    No. 07 Civ. 6733 (CM), 2010 WL 743948 (S.D.N.Y. Mar. 3, 2010)...................7

*Long v. Marubeni America Corp.*,
    No. 05 Civ. 0639, 2006 WL 547555 (S.D.N.Y. Mar. 6, 2006) ........................12-13

*Matsushita Elec. Indust. Co., Ltd. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)..........................................................................................3

**Cases**                                                                                    **Pages**

*McNutt v. Nasca*,
   No. 10 Civ. 1301 (MAD)(RFT), 2013 WL 209469
   (N.D.N.Y Jan. 17, 2013) ..............................................................................7

*Natofsky v. City of New York*,
   921 F.3d 337 (2d Cir. 2019).........................................................................10

*Panjwani v. Jet Way Sec. & Investigations*,
   No. 13 Civ. 7186 (SLT)(VMS), 2016 WL 3675331
   (E.D.N.Y. Feb. 26, 2016),
   *adopted by*, 2016 WL 3702969 (E.D.N.Y. July 6, 2016) .........................13

*Rojas v. Roman Catholic Diocese of Rochester*,
   660 F.3d 98 (2d Cir. 2011).........................................................................4-5

*Schanfield v. Sojitz Corp. of Am.*,
   663 F. Supp. 2d 305 (S.D.N.Y. 2009)..........................................................12

*Simpson v. MTA/New York City Transit Auth.*,
   No. 16 Civ. 3783 (MKB), 2016 WL 8711077
   (E.D.N.Y. Aug. 26, 2016) ..............................................................................5

*Sista v. CDC Ixis N. Am., Inc.*,
   445 F.3d 161 (2d Cir. 2006).........................................................................8

*Soberal-Perez v. Heckler*,
   717 F.2d 36 (2d Cir. 1993)............................................................................6

*Springs v. City of New York*,
   No. 17 Civ. 451 (AJN), 2019 WL 1429567 (S.D.N.Y. Mar. 29, 2019) .................................13

*Sumner v. United States Postal Service*,
   899 F.2d 203 (2d Cir. 1990).........................................................................8

*Taylor v. Seamen's Soc'y for Children*,
   No. 112 Civ. 3713 (PAE), 2013 WL 6633166 (S.D.N.Y. Dec. 16, 2013) ...............................3

*Univ. of Tex. SW Med. Ctr. v. Nassar*,
   133 S. Ct. 2517 (2013)...........................................................................3, 11

*Velasquez v. Goldwater Mem. Hosp.*,
   88 F. Supp. 2d 257 (S.D.N.Y. 2000)..............................................................6

**Cases**                                                                 **Pages**

*Ying Jing Gan v. City of New York*,
  996 F.2d 522 (2d Cir. 1993)...................................................................................2

**Statutes**

Fed. R. Civ. P. 56........................................................................................................1

Fed. R. Civ. P. 56(c)...................................................................................................2

Fed. R. Civ. P. 56(e)...................................................................................................2

Defendant Melissa Mark-Viverito ("Mark-Viverito") submits this Memorandum of Law, together with her Notice of Motion, Defendant's Local Rule 56.1 Statement of Undisputed Material Facts ("56.1 Statement"), Declaration of Assistant Corporation Counsel Natalie S. Marcus, dated January 17, 2020, (the "Marcus Decl."), and any and all prior pleadings and proceedings had herein, in support of her summary judgment motion on all remaining claims alleged in the Complaint, dated June 17, 2016, in its entirety pursuant to Federal Rule of Civil Procedure 56 together with such other and further relief as the Court deems just and proper.

## PRELIMINARY STATEMENT

Plaintiff Sibyl Colon claims that she was subject to retaliation in violation of the New York State Human Rights Law ("SHRL") and that defendant Mark-Viverito aided and abetted such retaliation. Specifically, plaintiff alleges that she was removed from her position as Director of the Optimal Property Management Operating Model Program ("OPMOM") because of her purported opposition to the transfer of a manager out of the Mill Brook Houses ("Mill Brook").

By motion, the City of New York was dismissed from the action as were all the claims that were brought against defendant Mark-Viverito. *See Colon v. City of New York*, No. 16 Civ. 4540 (VSB), 2018 U.S. Dist. LEXIS 49582 (S.D.N.Y. Mar. 26, 2018). Plaintiff moved for reconsideration of that decision and the Court reinstated the SHRL aiding and abetting retaliation claim against defendant Mark-Viverito. *See Colon v. City of New York*, No. 16 Civ. 4540 (VSB), 2019 U.S. Dist. LEXIS 48188 (S.D.N.Y. Mar. 22, 2019).

Defendant Mark-Viverito now moves for summary judgment on plaintiff's surviving claim. As set forth below, plaintiff's SHRL retaliation claim must be dismissed because plaintiff has failed to establish that she engaged in a protected activity or that there was a causal connection between the protected activity and the purported retaliatory action. Plaintiff's

aiding and abetting claim similarly misses the mark because plaintiff has failed to establish a claim for retaliation or that Mark-Viverito in any way aided and abetted any alleged retaliation. Accordingly, defendant Mark-Viverito is entitled to summary judgment on plaintiff's aiding and abetting claim.

## STATEMENT OF FACTS

For its statement of facts, defendant Mark-Viverito respectfully refers the Court to Defendant's Local Civil Rule 56.1 Statement of Undisputed Facts ("Def. 56.1"), dated January 17, 2020, and the exhibits and deposition transcripts upon which it is based.

## ARGUMENT

## SUMMARY JUDGMENT SHOULD BE GRANTED DISMISSING PLAINTIFF'S RETALIATION CLAIM

### A.    The General Summary Judgment Standard

Summary judgment should be granted in favor of the moving party "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998), *cert denied*, 524 U.S. 911 (1998). Once the moving party meets its initial burden, the nonmoving party must come forward with specific facts to show there is a genuine issue of material fact that must be resolved at trial. *See Celotex*, 477 U.S. at 324; *Ying Jing Gan v. City of New York*, 996 F.2d 522, 532 (2d Cir. 1993) (*citing* Fed. R. Civ. P. 56(e)). Although the Court must construe the facts in the light most favorable to the plaintiff, a "mere scintilla" of evidence is insufficient to meet plaintiff's burden to establish a genuine issue of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-252 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the

nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted).

**B.      Plaintiff's Retaliation Claim Must Be Dismissed**

Plaintiff's retaliation claim under the SHRL is governed by the *McDonnell Douglas* burden-shifting analytical framework. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 61-67 (2006); *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (Title VII and SHRL retaliation claims analyzed under same framework); *Camarda v. City of New York*, No. 11 Civ. 2629 (RRM)(VMS), 2015 WL 5458000, at *8 (E.D.N.Y. Sept. 16, 2015), *aff'd*, 673 Fed. Appx. 26 (2d Cir. 2016) ("Title VII and SHRL retaliation claims are…evaluated identically.")

To state a claim for retaliation, a plaintiff must establish (1) participation in a protected activity; (2) defendant's knowledge of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action.  In the retaliation context, such an adverse employment action is an act "that could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 53.  In establishing the fourth element of plaintiff's *prima facie* case, the plaintiff must show that his protected activity was the "but-for" cause of the adverse action against her.  *Univ. of Tex. SW Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013); *Taylor v. Seamen's Soc'y for Children*, No. 112 Civ. 3713 (PAE), 2013 WL 6633166, at *23 (S.D.N.Y. Dec. 16, 2013) ("The 'but for' causation standard from *Nassar* applies to Taylor's Title VII and NYSHRL retaliation claim").

If plaintiff establishes a *prima facie* case of retaliation, the burden shifts to defendant to articulate a legitimate non-retaliatory reason for the alleged adverse action.  If

defendant satisfies this burden, plaintiff must then demonstrate that this reason was pretexual. *Blanc v. Sagem Morpo, Inc.*, 394 Fed. Appx. 808 (2d Cir. 2010); *Fincher*, 604 F.3d at 720.

Here, plaintiff's retaliation claim under the SHRL fails as a matter of law because plaintiff cannot establish that she engaged in a protected activity; consequently, she cannot prove that a causal connection exists between her purportedly protected activities and any allegedly adverse action.

### 1.  Plaintiff Did Not Engage in a Protected Activity

A protected activity occurs when an employee takes action to protest or oppose prohibited discrimination.  The challenged actions need not be unlawful as long as the employee had a "good faith, reasonable belief" that that challenged actions were statutorily prohibited.  *See Filippi v. Elmont Union Free Sch. Dist. Bd. of Educ.*, No. 09 Civ. 4675 (JFB)(ARL), 2012 WL 4483046, at *16 (E.D.N.Y. Sept. 27, 2012) (internal quotations and citations omitted).  "The reasonableness of plaintiff's belief that the underlying employment practice was unlawful is to be evaluated from the perspective of a reasonable, similarly situated person and assessed considering the totality of the circumstances."  *Brantman v. Fortistar Capital, Inc.*, No. 15 Civ. 4774 (NSR), 2017 WL 3172864, at *5 (S.D.N.Y. July 21, 2017) (internal quotation marks and citations omitted).

The employee's complaint can be formal or informal and can range from "making complaints to management, writing critical letters, and expressing support of co-workers who have filed formal charges." *Bowen Hooks v. City of New York*, 13 F.Supp.3d 179, 222 (E.D.N.Y. 2014), *quoting*, *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000).  Whether the complaint is formal or informal, however, it cannot be so generalized, vague or ambiguous that the employer could not have reasonably understood that the employee was complaining about statutorily prohibited conduct.  *See Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98,

108 (2d Cir. 2011)(internal citation omitted); *Simpson v. MTA/New York City Transit Auth.*, No. 16 Civ. 3783 (MKB), 2016 WL 8711077, at *5 (E.D.N.Y. Aug. 26, 2016).  "The onus is on the speaker to clarify to the employer that he is complaining of unfair treatment due to his membership in a protected class and that he is not complaining of unfair treatment generally." *Filippi*, 2012 WL 4483046, at *16; *Bowen-Hooks*, 13 F.Supp.3d at 224; *Simpson*, 2016 WL 8711077, at *4.

As an initial matter, plaintiff did not have a good faith, objectively reasonable belief that she was acting in opposition to discrimination, and her actions demonstrate that. In fact, the July 30, 2015 meeting, concerned language access for Spanish-speaking individuals at Mill Brook and plaintiff's actions in the immediate aftermath of that meeting establish that plaintiff did not believe that the request to transfer Williams was allegedly discriminatory.  For example, after the July 30, 2015 meeting, plaintiff and James Artis (the Bronx Manager for OMPOM) had a discussion and came to the conclusion that Mark-Viverito wanted a Spanish speaking manager at Mill Brook.  (56.1 Statement ¶ 113, Ex. J to Marcus Decl.)  Moreover, two days after the July 30 meeting, plaintiff attended a meeting with Williams, Artis, and others during which Williams told plaintiff that she had felt bullied at the July 30 meeting because she did not speak Spanish.  (56.1 Statement ¶ 113, Ex. H to Marcus Decl.).  Both Artis and plaintiff herself stated in response that Williams was not being bullied.  (56.1 Statement ¶ 134, Ex. H to Marcus Decl.).  The facts here resemble *Kelly v. Howard I. Shapiro & Assoc,* where the plaintiff alleged that she was terminated in retaliation for complaining that a coworker's affair had created a hostile work environment.  716 F.3d 10, 14 (2d Cir. 2013).  The Second Circuit found that plaintiff lacked a good faith, reasonable belief that discrimination had occurred as she "made no complaints that suggested she was being discriminated against on the basis of any trait, protected

or otherwise." *Id.*  Consequently, the Second Circuit dismissed the plaintiff's complaint.  *Id.*
Here, plaintiff herself disagreed with Williams' characterization of her treatment and concluded
with a colleague that a Spanish-*speaking* (not specifically Latino) manager was needed.

Furthermore, plaintiff testified that when Mark-Viverito allegedly said that she
wanted a "Spanish manager" it was plaintiff's own understanding that Mark-Viverito wanted a
manager that spoke the Spanish language.  (56.1 Statement ¶ 83, Ex. B to Marcus Decl.).  It is
undisputed that the ability to speak Spanish is not tied to any particular race or nationality.
Therefore, such a request cannot reasonably be interpreted as discriminatory because
"[c]lassification on the basis of language does not by itself 'identify members of a suspect class'
and would not support an inference of intentional national origin discrimination." *Velasquez v.
Goldwater Mem. Hosp.*, 88 F. Supp. 2d 257, at 262 (S.D.N.Y. 2000) (quoting *Soberal-Perez v.
Heckler*, 717 F.2d 36, 41 (2d Cir. 1993).  In fact, plaintiff and Williams both testified that an
individual of any race or nationality can speak Spanish. (56.1 Statement ¶¶ 83, 101-102, Exs. B,
C to Marcus Decl.)  Further, as is well-evidenced in the record, plaintiff was quite aware of the
difficulties facing Spanish-speaking residents at Mill Brook – she knew about incidents like
residents having to call the Spanish-speaking Mill Brook superintendents to translate; plaintiff
herself even offered to contact human resources to try and get a bilingual housing assistant. (56.1
Statement ¶¶ 80, 90-92, Exs. B, M to Marcus Decl.)  Therefore, under these circumstances a
reasonable similarly situated person would not conclude that a request to have a NYCHA
employee at Mill Brook who could communicate with its Spanish-speaking residents was
discriminatory.

Even if plaintiff had a subjective good faith belief that she was opposing
discrimination, there is no evidence that plaintiff engaged in a protected activity.  To the extent

plaintiff argues in opposition that she engaged in protected activities during her August 24 and August 26, 2015 conversations with Brian Clarke (the NYCHA Senior Vice President of Operations for Property Management) such an argument must fail.  Plaintiff testified that on August 24, 2015, she told Clarke that the request to transfer Williams was "illegal." (56.1 Statement ¶ 162, Ex. B to Marcus Decl.)  But plaintiff admits that she did not provide Clarke with any explanation as to why the transfer was "illegal."   (56.1 Statement ¶ 162, Ex. B to Marcus Decl.)  In another instance, plaintiff also claims that she told Clarke on August 26, 2015 that the transfer was "illegal" and "it was along those lines that it was racial."  (56.1 Statement ¶ 166, Ex. B to Marcus Decl.)

These statements are exactly the type of vague, ambiguous conduct that courts within this Circuit have held are not protected activities.  *See Brantman*, 2017 WL 3172864, at *7-8; *Brown v. Xerox Corp.*, 170 F.Supp.3d 518, 526-527 (W.D.N.Y. 2016); *Bowen-Hooks*, 13 F.Supp.3d at 223-224; *McNutt v. Nasca*, No. 10 Civ. 1301 (MAD)(RFT), 2013 WL 209469, at *16-17 (N.D.N.Y Jan. 17, 2013); *Kasner v. HSH Nordbank AG*, 680 F.Supp.2d 502, 520-521 (S.D.N.Y. 2010).

Finally, it is well settled that a complaint cannot serve as a basis for a retaliation claim where management could not have understood that plaintiff's opposition was directed at statutorily prohibited conduct.  *See Lee v. Sony BMG Music Entm't Inc.*, No. 07 Civ. 6733 (CM), 2010 WL 743948, at *11 (S.D.N.Y. Mar. 3, 2010) (citing *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998)) (finding no protected activity when plaintiff never suggested to anyone at her workplace that she was complaining about race discrimination). Assuming that plaintiff made these statements to Clarke, he could not have "reasonably understood" that plaintiff was opposing discrimination.  *Galdieri-Ambrosini*, 136 F.3d at 292.

Her mere assertion that the transfer was "illegal" and vaguely "racial" is insufficient as ambiguous complaints that do not make the employer aware of alleged discriminatory misconduct "do not constitute protected activity" as a matter of law. *Int'l Healthcare Exch., Inc. v. Glob. Healthcare Exch*., LLC, 470 F. Supp. 2d 345, 357 (S.D.N.Y. 2007) (finding no protected activity where plaintiff never explicitly raised the issue of gender discrimination). Therefore, plaintiff's retaliation claim must be dismissed.

### 2.      Plaintiff Has Failed to Establish Causation

In order to establish a *prima facie* case of retaliation under the SHRL, plaintiff must show that a causal connection exists between the protected activity and the adverse action, *i.e.*, that a retaliatory motive played a part in the adverse employment action. *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 177 (2d Cir. 2006). Causation may be established by showing that the retaliatory action was close in time to the protected activity; that other similarly situated employees were treated differently; or with direct proof of retaliatory animus. *See Sumner v. United States Postal Service*, 899 F.2d 203, 209 (2d Cir. 1990); *Butts v. N. Y. City Dep't of Hous. Pres. & Dev.*, No. 00 Civ. 6307 (KMK), 2007 WL 259937, at *7 (S.D.N.Y. Jan. 29, 2007), *aff'd* 307 Fed. Appx. 596 (2d Cir. 2009). Based on the record, plaintiff cannot satisfy this burden as a matter of law.

Similar to other cases within the Second Circuit, the record contains "*no factual support whatsoever* for the assertion that retaliatory animus played any role in" the allegedly adverse action about which plaintiff complains. *See DiGianni v. N.Y. State Dept. of Educ.*, No. 08 Civ. 762 (RJD)(LB), No. 08 Civ. 923 (RJD)(LB), 2010 WL 10706590, at *4 (E.D.N.Y. Feb. 4, 2010)(emphasis in original) (finding that there was no link between the denial of alternative testing accommodation by the state and plaintiff's other pending ADA lawsuits). Plaintiff maintains that she engaged in protected activities on August 24 and August 26, 2015 and as a

consequence of engaging in these activities she was removed as Director of OPMOM.  (56.1 Statement ¶¶ 161-162, 166, Ex. B to Marcus Decl.)  But the evidence in the record demonstrates to the contrary.

In November 2014, NYCHA had already begun considering hiring another person (Janet Abrahams) to oversee the OPMOM Program. (56.1 Statement ¶¶ 38-39, Exs. D, JJ to Marcus Decl.)  For a variety of reasons, including the departure of the General Manager from NYCHA who was overseeing the recruitment efforts, Abrahams was not hired at that time.  (56.1 Statement ¶ 46, Ex. D to Marcus Decl.)  The General Manager left NYCHA in April 2015 and the Chair of NYCHA went on maternity leave that same month.  (56.1 Statement ¶¶ 46, 50, Ex. D to Marcus Decl.)  When the Chair of NYCHA returned from maternity leave in July 2015, she restarted the recruitment effort.  (56.1 Statement ¶ 61, Ex. D to Marcus Decl.)  The process to set up an interview with Abrahams began before the July 30, 2015 meeting with Mark-Viverito.  (56.1 Statement ¶¶ 61-66, Exs. D, MM, NN to Marcus Decl.)

Notably, on August 18, 2015, Kelly emailed Payamps-Roure "Let's find out where we are with [Abrahams's] start date and our move with sybil [sic]."  (56.1 Statement ¶ 153, Ex. XX to Marcus Decl.) (emphasis added).  Contrary to plaintiff's characterization, plaintiff did not engage in her first purported protected activity until nearly a week later on August 24, 2015.  (56.1 Statement ¶¶ 161-162, Exs. B to Marcus Decl.)  Furthermore, Abrahams was offered a position with NYCHA before plaintiff engaged in any protected activity.  (56.1 Statement ¶ 155, Exs. D, ZZ to Marcus Decl.)  Abrahams was formally offered a job on August 20, 2015.  (56.1 Statement ¶ 155, Ex. D, ZZ to Marcus Decl.)  Again, plaintiff engaged in her first purported protected activity four days later on August 24, 2015.  (56.1 Statement ¶¶ 161-162, Ex. B to Marcus Decl.)  Therefore, any protected activity occurred after the adverse action

and, thus, plaintiff cannot establish a causal connection between a protected activity and an adverse action.

To the extent plaintiff contends that she was replaced by Hayward, the evidence also demonstrates to the contrary.  Hayward was appointed as the Director of OPMOM in May 2016.  (56.1 Statement ¶ 172, Ex. CCC to Marcus Decl.)  That was more than one year after plaintiff was removed from the director position.  (56.1 Statement ¶ 171, Ex. B to Marcus Decl.)

Finally, there is no evidence in the record that Kelly, who oversaw plaintiff's removal as Director of OPMOM, had any knowledge that plaintiff told Clarke that the request to transfer Williams was "illegal."   Nor is there any evidence that Clarke was involved in the decision to interview or hire Abrahams much less remove plaintiff from her Director of OPMOM position.  (56.1 Statement ¶¶ 157-160, Ex. F to Marcus Decl.)  Rather, the evidence demonstrates that the NYCHA Chair and General Manager determined that Abrahams was a better suited candidate than plaintiff to oversee OPMOM and to help transition the pilot program to a NYCHA-wide program.  (56.1 Statement ¶¶ 38, 63-64, Exs. D, JJ to Marcus Decl.)  For instance, Abrahams was very well-regarded by her prior employers at the Chicago Housing Authority, and had demonstrated experience in implementing programs like OPMOM for the Newark and Chicago housing authorities. (56.1 Statement ¶¶ 41-44, 64, Exs. D, KK to Marcus Decl.)

The facts here resemble *Natofsky*, where the plaintiff claimed that his hearing disability was the actual but-for cause for a negative employment action (demotion).  *Natofsky v. City of New York*, 921 F.3d 337, 351 (2d Cir. 2019)*.*  The Second Circuit found that there was no basis to tie his demotion to his disability because there was "ample reason" to think that the plaintiff's performance was deficient and demoted him on that basis (it also noted that there was a new administration looking to restructure his office) and therefore upheld the granting of

summary judgment. *Id.* Here, it is evident that other factors unrelated to plaintiff's unsupported claims were the cause of her planned replacement by Abrahams (which, as noted above, was already in motion *before* plaintiff performed her purported protected activity). (56.1 Statement ¶¶ 152-153, Exs. D, XX to Marcus Decl.)

Moreover, as an at-will employee, it was permissible to transfer plaintiff and hire Abrahams to oversee the entire program. (56.1 Statement ¶ 65, Ex. D to Marcus Decl.) Because plaintiff cannot establish that retaliatory animus was the but-for reason for the action taken against her, plaintiff's retaliation claim must be dismissed. *Univ. of Texas S.W. Medical Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013).

### 3. Plaintiff Cannot Show That Defendants' Employment Actions Were Pretextual

Defendant has articulated legitimate non-retaliatory reasons for the employment actions at issue which plaintiff cannot show to be pretext. Specifically, NYCHA hired Abrahams to oversee OPMOM based on her impressive credentials in the public housing arena. (56.1 Statement ¶¶ 42-43, 63-64, Exs. D, KK to Marcus Decl.) The evidence demonstrates that the effort to hire Abrahams began well before plaintiff engaged in any protected activity. (56.1 Statement ¶¶ 61-62, Ex. D to Marcus Decl.) Abrahams was NYCHA's first choice to oversee the OPMOM program and was more than qualified to help grow the OPMOM program from a pilot program to a NYCHA-wide program. (56.1 Statement ¶ 47, Ex. D to Marcus Decl.). Since defendant has articulated legitimate non-retaliatory reasons for the employment actions at issue which plaintiff cannot show to be pretext, plaintiff's retaliation claim under the SHRL must be dismissed. *See Fincher*, 604 F.3d at 720.

Plaintiff has not adduced, and cannot adduce, any evidence that shows that any defendant was motivated by retaliatory animus in taking any action. Plaintiff can only point to her conclusory allegations to support her contention that any alleged action was a retaliatory

response to her complaints.  Therefore, plaintiff cannot rebut the proffered legitimate non-discriminatory reasons, and her unsupported speculation does not suffice to create a material issue of fact warranting trial.  Accordingly, defendant is entitled to summary judgment.

**C.      The Aiding and Abetting Claim Against Mark-Viverito Should Be Dismissed**

An individual defendant may be held liable under § 296(6) of the SHRL for aiding and abetting a violation of the laws "if he participates in the conduct giving rise to the discrimination claim."  *See Schanfield v. Sojitz Corp. of Am.*, 663 F. Supp. 2d 305, 344 (S.D.N.Y. 2009).  "The same standards of analysis used to evaluate aiding and abetting claims under the NYSHRL apply to such claims under the NYCHRL because the language of the two laws is virtually identical."  *Feingold v. New York*, 366 F.3d 138, 158 (2d Cir. 2004).  However, an aiding and abetting claim is only viable when an underlying violation has taken place.  *See Falchenberg v. New York State Dept. of Educ.*, 338 F. App'x 11, 14 (2d Cir. 2009); *Irons v. Bedford-Stuyvesant Cmt. Legal Servs.*, No. 13 Civ. 4467 (MKB), 2015 WL 5692860, at *32 (E.D.N.Y. Sept. 28, 2015) ("liability as an aider and abettor under section 296(6) can only attach when liability has been established at to the employer or another individual).

Consequently, since plaintiff cannot establish liability against defendants NYCHA, Clarke, or Kelly, plaintiff's claims against defendant Mark-Viverito must also be dismissed.  Moreover, an individual cannot be held liable as an "aider and abettor" if it is shown that she did not actively participate in the discriminatory conduct.  Courts have interpreted this aider and abettor language to require a showing that the defendant "actually participated in the conduct giving rise to the claim of discrimination."  *Long v. Marubeni America Corp.*, No. 05 Civ. 0639, 2006 WL 547555, at *4 (S.D.N.Y. Mar. 6, 2006) *quoting Feingold v. New York*, 366 F.3d 138, 157-159 (2d Cir. 2004).  As explained in detail above, there is no evidence in the record that defendant Mark-Viverito aided and abetted any retaliatory conduct.

During the July 2015 meeting, Mark-Viverito raised concerns with NYCHA based on the Mill Brook residents' complaints that they were unable to communicate their housing needs to the Mill Brook office. (56.1 Statement ¶¶ 52-59, Exs. I, K to Marcus Decl.). There is no evidence that Mark-Viverito requested that Williams be replaced with a Latino manager much less that she took any steps after the meeting to have Williams transferred from her position at Mill Brook.  "Indeed, where the challenged conduct relates to the language an employee speaks, '[a] classification is implicitly made, but it is on the basis of language, *i.e.*, English-speaking versus non-English-speaking individuals, and not on the basis of race [] or national origin.  Language, by itself, does not identify members of a suspect class." *Panjwani v. Jet Way Sec. & Investigations*, No. 13 Civ. 7186 (SLT)(VMS), 2016 WL 3675331, at *13 (E.D.N.Y. Feb. 26, 2016), *adopted by*, 2016 WL 3702969 (E.D.N.Y. July 6, 2016) (internal citations omitted.)

Nor is there any evidence in the record that Mark-Viverito had any role in the decision to remove the plaintiff from her director position much less that she was aware that plaintiff engaged in any protected activity.  *See Springs v. City of New York*, No. 17 Civ. 451 (AJN), 2019 WL 1429567, at *15 (S.D.N.Y. Mar. 29, 2019) (individual defendants were "entitled to summary judgment on Plaintiff's claims of aiding and abetting retaliation under NYSHRL and NYCHRL because plaintiff has pointed to no evidence in the record to suggest that they were even indirectly involved in the retaliatory acts.")  Accordingly, the Court should grant summary judgment to defendant Mark-Viverito on plaintiff's aiding and abetting claims under the SHRL.

13

## <u>CONCLUSION</u>

For the foregoing reasons, defendant Mark-Viverito requests that the Court issue

an order granting defendant's motion for summary judgment and dismissing plaintiff's complaint

in its entirety together with such other and further relief as the Court deems just and proper.

Dated:   New York, New York
         January 17, 2020

> **JAMES E. JOHNSON**
> Corporation Counsel of the
>    City of New York
> Attorney for Defendant Mark-Viverito
> 100 Church Street, Rm. 2-197
> New York, New York 10007-2601
> (212) 356-2629
> nmarcus@law.nyc.gov
>
>
> By:  _____/s/Natalie S. Marcus_____
>                       Natalie S. Marcus
>                   Assistant Corporation Counsel

14