UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| SIBYL COLON, | No. 16-CV-4540 |
| Plaintiff, | (VSB)(OTW) |
| - against - | **DECLARATION OF HARVEY CHAITOFF IN SUPPORT OF THE NYCHA DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AGAINST PLAINTIFFS SIBYL COLON AND ALLISON WILLIAMS** |
| THE CITY OF NEW YORK, *et al.*, | |
| Defendants. | |
| ALLISON WILLIAMS, | |
| Plaintiff, | No. 16-CV-8193 (VSB)(OTW) |
| - against- | Consolidated for Pre-Trial Purposes |
| THE CITY OF NEW YORK, *et al.*, | |
| Defendants. | |

---

Harvey Chaitoff declares, pursuant to 28 U.S.C. § 1746, as follows:

1. I am a Deputy Assistant Director in the Human Resources Department of Defendant New York City Housing Authority ("NYCHA"). I submit this declaration in support of the NYCHA Defendants' Motions for Summary Judgment against Plaintiff Sibyl Colon ("Ms. Colon") and Plaintiff Allison Williams ("Ms. Williams") based upon my personal knowledge of the matters asserted herein and the business records of NYCHA.

2. I have been employed by NYCHA since 1994. I have worked in the Human Resources Department since 2000 and currently hold the title of Deputy Assistant Director. In my capacity as Deputy Assistant Director, I supervise Human Resources staff to ensure the

accurate and timely processing of personnel actions related to the filling of approximately 1,500 plus vacancies per year; review employment documents (new hire packages, title changes, reassignments, etc.); monitor compliance with civil service rules and regulations, and city, state, and federal employment laws and contractual obligations; monitor Human Resources databases and set up and maintain controls for tracking personnel actions; train Human Resources staff to ensure they follow best practices to fill approved vacancies; serve as liaison to NYCHA Central Office, Community Operations, and Management Operations to facilitate the filling of vacancies; serve as liaison with the Budget Department in order to determine the accuracy of budgeted vacancies; and coordinate the duties of Human Resources staff involved with candidate qualification reviews, employment verifications, vacancy postings, and transfer programs.

3. In or around late January 2015, two Director positions at NYCHA became vacant: Director of the Manhattan Property Management Department and Director of the Mixed Finance Department. A Borough Director job posting, reporting to the Senior Vice President for Operations, Job ID 181950, was used to advertise these vacancies; a typographical error in the first Borough Director job posting resulted in the issuance of a second, identical Borough Director job posting, marked "Revised." I understand these Borough Director job postings are attached to the Declaration of Jane E. Lippman in Support of the NYCHA Defendants' Motion for Summary Judgment Against Plaintiff Sibyl Colon ("Lippman Colon Declaration") as Exhibit 23.

4. In or around spring 2015, the Director of the Optimal Property Management Department ("OPMD" or "OPMOM") position became vacant. The same Borough Director job posting, Job ID 181950, was used to advertise this position, which was filled by Ms. Colon. Ms.

Colon commenced working as Director of the OPMD on June 1, 2015 and was retroactively given status in that title to May 12, 2015.

5. A job posting specifically for an OPMD Director position, Job ID 240332, was not posted until May 2016, and this posting specified that the OPMD Director would report to the Vice President for the OPMD. The OPMD Director position reporting to the OPMD Vice President was a new, vacant line with no incumbent and was filled by Octavia Hayward in late May 2016; Ms. Hayward previously held the title of Regional Asset Manager. I understand this job posting is attached to the Lippman Colon Declaration as Exhibit 23.

6. In September 2015, Janet Abrahams became the Vice President for the OPMD. Ms. Abrahams was an external candidate who was hired for a new position.

7. In October 2016, Janet Abrahams was promoted to Senior Vice President for Next Generation Operations. This was an internal promotion and was not filled through a job posting. Janet Abrahams left NYCHA in July 2017, and at that time, the position of Senior Vice President for Next Generation Operations was posted to fill the vacancy, Job ID 294819. I understand this job posting is attached to the Lippman Colon Declaration as Exhibit 23.

8. NYCHA employees may obtain permanent status in a civil service title by appointment from a civil service list established through competitive examination administered by the Department of Citywide Administrative Services and by subsequently passing a probationary period.

9. I reviewed the Human Resources record card for Ms. Colon, which I understand is attached to the Lippman Colon Declaration as Exhibit 4. A Human Resources record card contains the employment information for a NYCHA employee, including title, civil service appointment status, department, dates of employment, and civil service and office titles and level

changes. Permanent civil service appointment status in a title is designated with a "C" on the Human Resources record card in the "CS" column.

10. Ms. Colon's Human Resources record card reflects that Ms. Colon did not hold permanent civil service appointment status in the title of Administrative Housing Manager, which was the underlying civil service title for the office title of Director of the OPMD. Rather, Ms. Colon served on a provisional basis in the civil service title of Administrative Housing Manager, office title Director of the OPMD, as indicated with a "J" on her Human Resources record card.

11. Employees such as Ms. Colon who serve in civil service titles on a provisional basis have no tenure in these titles and, instead, are employed in those titles at will. They are not entitled under New York State Civil Service Law to notice, pre-termination hearings, or due process of any kind before removal from their title. Furthermore, because employees who serve in civil service titles on a provisional basis are employed in these titles at will, they may be removed from these titles without cause. In contrast, NYCHA employees with permanent civil service appointment status have due process rights, and if they engage in misconduct or are incompetent they may be subject to disciplinary action in the form of local disciplinary hearings and general trials pursuant to Section 75 of the New York Civil Service Law and may not be terminated without due process.

12. No due process of any kind was required to remove Ms. Colon from her OPMOM Director position. This is because Ms. Colon did not hold permanent civil service status in the Administrative Housing Manager title, which was the civil service title corresponding with the office title of Director of the OPMD. She was therefore at will and could therefore be removed as Director without cause and without a reason, consistent with her at will status.

13. I understand that Ms. Colon claims in her lawsuit that she should not have been removed from her position as Director of the OPMD in the absence of a disciplinary proceeding or service of counseling memoranda to advise her of performance deficiencies. This claim reveals a misunderstanding of Ms. Colon's at will status as Director. As I explained above, because Ms. Colon served provisionally as Director of the OPMD, she was at will and could be removed from that title without cause or a showing of performance deficiencies and without due process.

14. Furthermore, because Ms. Colon did not have due process rights and was at will in the Director title, it was unnecessary to document Ms. Colon's performance deficiencies through the issuance of counseling memoranda or in any other manner. A counseling memorandum may record particular events or conduct that could be construed as misconduct or incompetent performance and can serve as evidence that an employee was put on notice regarding specific misconduct or incompetent job performance; an instructional memorandum provides formal written instructions to an employee. Counseling and instructional memoranda are not disciplinary actions.

15. I did Janet Abrahams' on-boarding when she joined NYCHA in September 2015. By onboarding, I mean that I met with Ms. Abrahams at the NYCHA Human Resources office and provided her with various hiring documents. Ms. Abrahams completed her e-hire employment application online in the New York City Automated Personnel System ("NYCAPS"). Ms. Abrahams' e-hire application shows that she self-identifies as "Black or African American."

I declare under penalty of perjury that the foregoing is true and correct. Executed on January 13, 2020.

_____
Harvey Chaitoff