UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

SIBYL COLON,

                            **Plaintiff,**

       -against-

THE CITY OF NEW YORK, *et al.*,

                            **Defendants.**
-------------------------------------------------------------------X

PLAINTIFF'S STATEMENT PURSUANT TO LOCAL CIVIL RULE 56.1

CV-16-04540 (VSB)

      Pursuant to Rule 56.1 of the Local Civil Rules of the United States District Court for the Southern District of New York, Plaintiff Sibyl Colon ("Colon"), by and through her undersigned counsel, submits the following statement of material facts as to which Plaintiff contends there is no genuine dispute to be tried in support of Plaintiff's motion for summary judgment awarding judgment to Plaintiff on her Second Claim for Relief for retaliation under the New York State Human Rights Law, Third Claim for Relief for retaliation under the New York City Administrative Code, Fifth Claim for Relief under 42 U.S.C. § 1983, and Eighth Claim for Relief for aiding and abetting under the New York State Human Rights Law.

      All referenced exhibits are attached to the Declaration of Marcel Florestal dated January 17, 2020, which is submitted herewith.

      1.    Colon is 58 years old, widowed, and resides at 40 Waterside Plaza, New York, New York with her son, aged 32. Exhibit 4, Colon Tr. at 3, 16.

1

2. Colon is of African-American descent. Exhibit 1, Complaint, ¶ 6; Exhibit 2, Answer of Defendants' New York City Housing Authority ("NYCHA"), Michael Kelly and Brian Clarke ("NYCHA Answer"), ¶ 6.

3. Colon received a Bachelor of Arts degree from SUNY, New Paltz, in 1983, with a major in communications and sociology. Exhibit 4, Colon Tr. at 17; Exhibit 21, Colon Resume, NYCHA 884-86; Exhibit 1, Complaint, ¶ 12; Exhibit 2, NYCHA Answer, ¶ 12.

4. Colon began working for defendant New York City Housing Authority ("NYCHA") in 1985. Exhibit 4, Colon Tr. at 21.

5. Colon began her NYCHA employment as a Housing Assistant/Eligibility Interviewer in the Housing Applications Department (1985-87), followed by positions as a Training Supervisor in the Housing Applications Department (1987-91), Coordinator-Community Operations in the Resident Programs Division (1991-95), Assistant Property Manager-Lillian Wald Houses (1995-97), Property Manager-Surfside Gardens, Wagner Houses (1997-2000), Management Trainer in the Staff Development Department (2000-02), Property Manager-Baruch Houses (2002-03), Borough Administrator in the Brooklyn Management Department (2003-04), Property Manager-Jacob Riis Houses (2009-15), and Director, Optimal Property Management Department ("OPMOM") (June 2015-August 2015). Exhibit 21, Colon Resume, NYCHA 884-86; Exhibit 4, Colon Tr. at 23-24, 59-61; Exhibit 1, Complaint, ¶ 12; Exhibit 2, NYCHA Answer, ¶ 12.

2

6. Colon was on medical/worker compensation leave from July 2003 through August 2009 following an automobile accident while working. Exhibit 21, Colon Resume, NYCHA 884-86; Exhibit 4, Colon Tr. at 28-31.

7. During her employment by NYCHA, Colon received many commendations for her performance, and she was never the subject of any disciplinary action. Exhibit 1, Complaint, ¶ 13; Exhibit 2, NYCHA Answer, ¶ 13; Exhibit 19, Colon Commendations.

8. On August 28, 2015, Colon was demoted from the position of the Director of OPMOM to the position of senior administrator in the management services department, a position and title that had not existed previously. Exhibit 4, Colon Tr. at 242-45.

9. In her position as Director of OPMOM, Colon had 3 Regional Asset Managers ("RAMs"), 18 managers, and 18 supervisors, all of whom reported to her directly, and a total of approximately 800 people who reported to her either directly or indirectly. Declaration of Sibyl Colon dated January 17, 2020, which is submitted herewith; Exhibit 35, email from Sibyl Colon dated August 28, 2015.

10. In the position to which she was demoted, Colon had a reporting staff of zero. Exhibit 4, Colon Tr. at 244-45.

11. In her position as Director of OPMOM, Colon's compensation was $135,000. Exhibit 4, Colon Tr. at 61.

12. In the position to which she was demoted, Colon's salary would have been cut 10% to approximately $122,000. Exhibit 4, Colon Tr. at 244-45.

13. On August 28, 2015, NYCHA General Manager Michael Kelly ("General Manager Kelly" or "Kelly") demoted Colon from her position as Director of OPMOM, and

3

Kelly told her that the demotion had nothing to do with her performance.  Exhibit 17, 50-h Hearing Tr. at 43-48; Exhibit 4, Colon Tr. at 39, 43-44, 249-52; Exhibit 5, Clarke Tr. 1 at 52-53; Exhibit 7, Kelly Tr. 2 at 47; Exhibit 13, Ponce Tr. at 61;  Exhibit 10, Artis Tr. at 39-40.

14. Colon did not accept the resignation, and she resigned on the same day, August 28, 2015.  Exhibit 17, 50-h hearing at 29-35; Exhibit 4, Colon Tr. at 249-50, 304; Exhibit 34, resignation notice of Sibyl Colon.

15. At a NYCHA Board of Directors meeting held on September 30, 2015, a General Manager's Report noted that scorecards used to monitor progress in the OPMOM program showed promising results from January 2015 through August 2015 in the management of work orders and apartment prep time and turnaround.  Exhibit 39, NYCHA Board of Directors Meeting excerpt, September 30, 2015;  Exhibit 5, Clarke Tr. 1 at 76-86.

16. The scorecards used to monitor progress in the OPMOM program showed promising improvement during the period between June 1, 2015 and August 30, 2015, while Colon was the Director of OPMOM for virtually that entire period.  Exhibit 40, excerpts of testimony by Shola Olatoye, NYCHA Chair and CEO, October 1, 2015, with excerpt of 100 Days Next Gen Fact Sheet; Exhibit 32, email from Sibyl Colon concerning SLA scores, dated August 25, 2015; Exhibit 26, email from Sibyl Colon to Kathie Shoulders and others with attached SLA statistics dated August 3, 2015; Exhibit 6, Clarke Tr. 2 at 39-43; Exhibit 10, Artis Tr. at 39-40.

17. Colon was told by General Manager Kelly that she was being replaced in her position as Director of OPMOM by a person known to Kelly and to Shola Olatoye, NYCHA's Chair and CEO, Janet Abrahams ("Abrahams").  Exhibit 4, Colon Tr. at 239-42; Exhibit 5, Clarke Tr. 1 at 50-58; Exhibit 7, Kelly Tr. 2 at 34-37.

18. Abrahams did not replace Colon as Director of OPMOM.  Exhibit 16, Transcript of conference before Magistrate Judge Ona T. Wang, March 6, 2019, at 15-19; Exhibit 8, Kelly Tr. 3 at 72.

19. Upon Colon's removal from her position as Director of OPMOM, the position of Director of OPMOM was vacant.  Exhibit 8, Kelly Tr. 3 at 33, 39-41; Exhibit 10, Artis Tr. at 56-57.

20. Abrahams was never Director of OPMOM.  Exhibit 8, Kelly Tr. 3 at 25, 71-72, 80-81; Exhibit 10, Artis Tr. at 56-57.

21. Abrahams was considered by NYCHA as early as December 2014 for a senior operations position.  Exhibit 20, email from Todd Gomez to Shola Olatoye, dated December 5, 2014.

22. Abrahams was interviewed by NYCHA in July 2015 for the position of Executive Vice President of Operations.  Exhibit 23, email from Kilsys Payamps-Roure to Juanita Acosta dated July 27, 2015.

23. Abrahams was hired by NYCHA effective September 28, 2015 as Vice President, OPMOM.  Exhibit 39, excerpt of NYCHA Board of Directors Minutes, September 30, 2015, at page 12; Exhibit 5, Clarke Tr. 1 at 76, 82-86; Exhibit 7, Kelly Tr.

2 at 57; Exhibit 8, Kelly Tr. 3 at 39-41, 154-55; Exhibit 29, email concerning Janet Abrahams from Natalie Rivers to Kilsys Payamps-Roure dated August 20, 2015.

24. Abrahams was promoted to Senior Vice President, OPMOM, in the summer of the following year, in June, July or August of 2016.  Exhibit 8, Kelly Tr. 3 at 78, 154-55.

25. Octavia Hayward became the Director of OPMOM effective May 23, 2016. Exhibit 8, Kelly Tr. 3 at 22-23, 59-61; Exhibit 42, email from Lorraine Roman to multiple recipients dated May 20, 2016 concerning OPMOM staff changes, including the appointment of Octavia Hayward as the new Director of the OPMOM Pilot with attached Job Posting Notice.

26. Octavia Hayward reported to Colon as a RAM.  Exhibit 4, Colon Tr. at 79.

27. Octavia Hayward required disciplining when she reported to Colon.  Exhibit 4, Colon Tr. at 80.

28. New York City Council Speaker Melissa Mark-Viverito ("Council Speaker" or "Viverito") requested and hosted a meeting held in the Council Speaker's office on Thursday, July 30, 2015, attended by representatives of NYCHA, the Council Speaker, and others, including Viverito, her assistant, Gloria Cruz, Brian Honan, Marcela Medina, Princella Jamerson, Colon, Artis, Williams, and Clarke (by speakerphone).  Exhibit 4, Colon Tr. at 127-32; Exhibit 22, email from Brian Honan to Brian Clarke and Luis Ponce dated July 1, 2015; Exhibit 1, Complaint, ¶ 25; Exhibit 2, NYCHA Answer, ¶ 25.

29. At the meeting, Council Speaker Viverito asked that NYCHA effect changes to address alleged communication issues between the Spanish-speaking, Latino residents

at Mill Brook Houses and the NYCHA office at Mill Brook Houses, that was led by Allison Williams as Manager, an African-American who did not speak Spanish.  Exhibit 25, Marcela Medina notes of meeting at Council Speaker's office on July 30, 2015; Exhibit 4, Colon Tr. at 132-38, 142, 146; Exhibit 10, Artis Tr. at 26-38, 44-45; Exhibit 11, Edmonson Tr. at 10-11; Exhibit 9, Viverito Tr. at 14-15, 19-27, 38-39; Exhibit 12, Medina Tr. at 51-54.

30. Based on the most recent Census data, published in 2013, approximately 2% of African-Americans over five years of age with no Spanish lineage speak Spanish in their homes in the United States.  Exhibit 18, United States Census publication on Language Use in the United States, 2011, Table 3, at page 9.

31. Colon perceived the Council Speaker's request as a demand for a change in the position of manager at Mill Brook Houses.  Exhibit 4, Colon Tr. at 135-37, 156.

32. Artis perceived the Council Speaker's request as a demand for a change in the position of manager at Mill Brook Houses.  Exhibit 10, Artis Tr. at 37-38.

33. The Council Speaker was informed that NYCHA utilizes a language bank for purposes of interpretation services as required. Exhibit 4, Colon Tr. at 132-38; Exhibit 10, Artis Tr. at 28-30, 44.

34. The Council Speaker rejected the suggestions made by NYCHA at the meeting, including particularly the standard policy employed by NYCHA, i.e., use of a language bank.  Exhibit 4, Colon Tr. at 132-38; Exhibit 10, Artis Tr. at 28-34; Exhibit 15, Williams Tr. 1 at 211-12, 300-02; Exhibit 9, Viverito Tr. at 20-21, 29, 38-39.

35. At the time of the meeting, the superintendent for Mill Brook Houses, Rafael Martinez, who worked in the Mill Brook Houses' management office and in the field, was a Latino who spoke Spanish, and the Supervisor of caretakers at Mill Brook Houses, Mitchell Ramos, was a Latino who spoke Spanish, but was not in the management office. Exhibit 4, Colon Tr. at 136-37; Exhibit 10, Artis Tr. at 31-33, 54-55; Exhibit 15, Williams Tr. 1 at 211-13.

36. At the meeting, Cruz referred only to one refrigerator complaint at Mill Brook Houses. Exhibit 31, email from Sibyl Colon to Brian Clarke dated August 25, 2015; Exhibit 4, Colon Tr. at 137-38, 223, 228-29; Exhibit 10, Artis Tr. at 45-47.

37. Princella Jamerson, the President of the residents' association at Mill Brook Houses, had no issues with the management staff, including the manager, Allison Williams, or the superintendent, Rafael Martinez. Exhibit 25, Marcela Medina notes of meeting at the Council Speaker's office on July 30, 2015; Exhibit 12, Medina Tr. at 47-48, 66-67.

38. Jamerson also stated that she had seen an improvement in the speed of repairs at Mill Brook Houses and things were getting done faster. Exhibit 25, Marcela Medina notes of meeting at the Council Speaker's office on July 30, 2015; Exhibit 12, Medina Tr. at 46.

39. Colon, Artis and Williams, who are all African-American, were disturbed by the hostility of the Speaker's comments; Colon and Artis perceived the comments as racist; and Williams perceived that she was being bullied because of her ethnicity. Exhibit 4, Colon Tr. at 135-37, 154-58; Exhibit 10, Artis Tr. at 33-34, 38-39; Exhibit 15, Williams Tr. 1 at 213-14, 294-97.

40. On July 30, 2015, after the meeting at the Council Speaker's office, Colon asked to see Kelly regarding the meeting. Exhibit 4, Colon Tr. at 159-60.

41. On Friday, July 31, 2015, Colon met with Clarke before he left for vacation starting the following Monday, August 3, 2015, and Clarke directed her to remove Williams from her position as Manager of Mill Brook Houses before he returned from vacation. Exhibit 4, Colon Tr. at 159-61; Exhibit 13, Ponce Tr. at 38-39.

42. Clarke told Colon he had spoken to Kenya Salaudeen ("Salaudeen"), NYCHA's Director of Human Resources, and informed her that he and Kelly wanted Williams removed from her position as Manager of Mill Brook Houses. Exhibit 4, Colon Tr. at 159-61; Exhibit 14, Salaudeen Tr. at 7, 10-11.

43. As a result of Clarke's directive to her, Colon felt tense, anxious, intimidated and in fear of losing her job if she did not perform what she perceived as an illegal and discriminatory act to transfer Williams from her position as manager of Mill Brook Houses. Exhibit 17, 50-h Hearing Tr. at 29-35; Exhibit 4, Colon Tr. at 207-08, 214-17.

44. As a result of Clarke's directive to her, Colon incurred various physical and mental injuries that required medical treatment. Exhibit 17, 50-h Hearing Tr. at 33-35, 53-56; Exhibit 4, Colon Tr. at 211-12, 323-25, 328-29.

45. While he was on his vacation, Clarke asked Luis Ponce, NYCHA's Senior Vice President for Operations, to follow through with the transfer of Williams from her position as Manager of Mill Brook Houses. Exhibit 13, Ponce Tr. at 11, 38, 39.

46. Clarke told Colon that she should tell Salaudeen that the transfer should be made for the cultural sensitivity needs of the development. Exhibit 4, Colon Tr. at 160-61;

Exhibit 36, emails concerning followup on Mill Brook Manager, with a cover email from Richard Bennardo to Natalie Rivers, dated August 31, 2015; Exhibit 37, emails concerning Allison Williams with a cover email from Brian Clarke to Natalie Rivers dated September 1, 2015.

47. Colon understood that Clarke's use of the phrase cultural sensitivity was a code word for racism.  Exhibit 4, Colon Tr. at 173-75.

48. Colon called Salaudeen on Monday, August 4, 2015, and discussed the July 30, 2015 meeting and the directives from Clarke and Kelly to remove Williams from her position as Manager of Mill Brook Houses.  Exhibit 4, Colon Tr. at 165-66.

49. Salaudeen, who is black, told Colon that the request to remove Williams from her position as Manager of Mill Brook Houses was racist, discriminatory and illegal. Exhibit 4, Colon Tr. at 166-71.

50. Salaudeen asked Colon to contact Richard Bennardo ("Bennardo"), another representative in NYCHA's Human Resources department.  Exhibit 4, Colon Tr. at 169-71.

51. Colon contacted Bennardo shortly thereafter, and he asked Colon to obtain the racial breakdown of Mill Brook Houses.  Exhibit 4, Colon Tr. at 173-75, 203; Exhibit 28, emails concerning demographic data for Mill Brook Houses with a cover email from Sybille Louis to Sibyl Colon and Laurence Wilensky dated August 7, 2015.

52. Colon forwarded demographic information, including a racial breakdown of the residents at Mill Brook Houses to Bennardo and Marla Edmonson, another member of NYCHA's Human Resources department, on August 7, 2015.  Exhibit 4, Colon Tr. at 176;

Exhibit 28, emails concerning demographic data for Mill Brook Houses with a cover email from Sybille Louis to Sibyl Colon and Laurence Wilensky dated August 7, 2015.

53. Salaudeen did not recall the request for a racial breakdown or specific events related to this action. Exhibit 14, Salaudeen Tr. at 8-12, 25-37, 51-55.

54. As the former Director of NYCHA's Human Resources Department, Salaudeen did not understand why the Human Resources Department would need to obtain the racial breakdown of the residents at any of NYCHA's developments. Exhibit 14, Salaudeen Tr. at 30-37.

55. Artis supervised Williams as her RAM since January 2015. Exhibit 4, Colon Tr. at 106-08; Exhibit 10, Artis Tr. at 7-10, 15-16, 18-22.

56. Colon asked Artis to review Williams' location folder for any counseling memoranda. Exhibit 1, Complaint, ¶ 51; Exhibit 2, NYCHA Answer, ¶ 51.

57. Artis informed Colon that he could not find any infractions except one missing training class in Williams' file. Exhibit 4, Colon Tr. at 106-08, 207-10; Exhibit 10, Artis Tr. at 42-43; Exhibit 11, Edmonson Tr. at 12, 43.

58. Colon asked Artis to inquire with the Council Speaker's office regarding any complaints from Mill Brook Houses residents. Exhibit 1, Complaint, ¶ 51; Exhibit 2, NYCHA Answer, ¶ 51.

59. Artis never received any further information about resident complaints from the Council Speaker's office. Exhibit 10, Artis Tr. at 46-47; Exhibit 31, email from Sibyl Colon to Brian Clarke dated August 25, 2015.

60. Edmonson informed Colon that Williams could not be removed from her position as Manager of Mill Brook Houses because there was no information to support this action, particularly no counseling memoranda. Exhibit 11, Edmonson Tr. at 10-12.

61. On August 12, 2015, Colon responded to Kelly's inquiry regarding the status of the transfer of Allison Williams. Exhibit 29, email concerning the Manager of Mill Brook Houses from Sibyl Colon to Brian Clarke dated August 12, 2015.

62. On August 24, 2015, upon Colon's return from a one-week vacation during the week of August 17, 2015, Clarke again instructed Colon to remove Williams from her position as Manager of Mill Brook Houses. Exhibit 4, Colon Tr. at 214-216.

63. Throughout the month of August 2015, Colon continued to perceive Clarke's instruction as aggressive and as requesting her to do something that was illegal. Exhibit 4, Colon Tr. at 216-217; Exhibit 17, 50-h Tr. at 36-38.

64. Williams did not have transfer rights and could have been moved to another NYCHA property by NYCHA management absent a discriminatory or other illegal act. Exhibit 5, Clarke Tr. 1 at 139-40; Exhibit 4, Colon Tr. at 104.

65. Artis' perception of Clarke's treatment of Williams in the meeting referenced in the preceding paragraph was the same way he perceived the Council Speaker's treatment of himself at the meeting at the Council Speaker's office. Exhibit 10, Artis Tr. at 49.

66. In response to an August 25, 2015 email from Clarke requesting information on the status of the transfer, Colon responded by email regarding the status. Exhibit 31, email with the subject heading of East River Plan of Action from Sibyl Colon to Brian Clarke dated August 25, 2015.

67. At a meeting between Colon and Clarke on August 26, 2015, following a directors' meeting, Colon told Clarke that the proposed removal of Williams was illegal and could not be done. Exhibit 4, Colon Tr. at 216-17, 233-34.

68. At the time of the August 26, 2015 meeting between Colon and Clarke, Colon again perceived a lot of hostility from Clarke due to her opposition to the proposed removal of Williams from her position as Manager of Mill Brook Houses. Exhibit 4, Colon Tr. at 216-20, 233-34.

69. During a meeting on August 28, 2015 that included Clarke, Williams and Artis, when the subject of a Spanish-speaking manager for Mill Brook Houses came up, Artis perceived that Clarke treated Williams roughly, with contempt. Exhibit 10, Artis Tr. at 47-49; Exhibit 15, Williams Tr. 1 at 232-45.

70. Artis did not perceive that Colon made any effort to remove Williams from her position as Manager of Mill Brook Houses. Exhibit 10, Artis Tr. at 39.

71. Shortly after Colon told Clarke that the proposed removal of Williams from her position as Manager of Mill Brook Houses could not be done, Colon received an email requesting Colon to meet with Kelly and Clarke on August 28, 2015 at Kelly's office. Exhibit 4, Colon Tr. at 237-38.

72. Williams became the Housing Manager for Mill Brook Houses in 2006. Exhibit 43, Amended Complaint in Williams v. The City of New York, 16-cv-08193, ¶ 12; Exhibit 44, Viverito Answer in Williams v. The City of New York, 16-cv-08193, ¶ 12; Exhibit 15, Williams Tr. 1 at 24-28, 304.

73. Williams continued as the Housing Manager at Mill Brook Houses until her

retirement from NYCHA on May 1, 2017.  Exhibit 15**,** Williams Tr. 1 at 43, 260, 304.

74.     In 2016, Colon was hired by Prestige Management in June 2017 in a senior management position at a salary of $80,000.  Exhibit 4, Colon Tr. at 304-05.

Dated:  New York, New York
            January 17, 2019

                                                Respectfully submitted,

                                                /s/Marcel Florestal, Esq.
                                                FLORESTAL LAW FIRM, PLLC
                                                *Trial Counsel for Plaintiff*
                                                48 Wall Street, Suite 11
                                                New York, NY 10005
                                                (212) 918-4416  - Voice
                                                (646) 417-7777  - Fax