**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**
X-------------------------------------------------------------X

   SIBYL COLON,

                        Plaintiff,

               -against-

   THE CITY OF NEW YORK, *et al.*,

                        Defendants.

   X-------------------------------------------------------------X

**PLAINTIFF'S**
**RESPONSE TO THE**
**NYCHA DEFENDANTS'**
**STATEMENT**
**PURSUANT TO**
<u>**LOCAL RULE 56.1**</u>

**CV-16-04540 (VSB)**

      Plaintiff Sibyl Colon ("Colon"), by and through her counsel, submits the following response to the Local Rule 56.1 Statement in Support of the NYCHA Defendants' Motion for Summary Judgment Against Plaintiff Sibyl Colon filed on January 17, 2020 ("NYCHA 56.1 Statement").

      References to exhibits in the responses are to the exhibits attached to the Declaration of Jane E. Lippman filed on January 17, 2020 in this action ("Lippman Dec."), and the Declaration of Marcel Florestal filed on April 17, 2020 ("Florestal Dec.").

<u>**NYCHA Statement**</u>

      1.    NYCHA is a public benefit corporation organized under the New York State Public Housing Law.  As of 2019, NYCHA has 173,762 public housing apartments in 2,351 residential buildings in 316 individual developments throughout the five boroughs. Declaration of Jane E. Lippman in Support of the NYCHA Defendants' Motion for Summary Judgment ("Lippman Dec."), Exhibit 2 (The NYCHA Defendants' Answer at ¶ 8);

https://www1.nyc.gov/assets/nycha/downloads/pdf/NYCHA-Fact-Sheet_2019_08-01.pdf.

**Plaintiff's Response**

      1.      Not disputed.

**NYCHA Statement**

      2.      Defendant Michael Kelly was the General Manager of NYCHA between 2009 and 2012 and between 2015 and 2018.  In that capacity, Kelly oversaw the day-to-day operations of the agency, including property management, administration, resident services, and maintenance.  Lippman Dec., Exhibit 7 (May 3, 2019 Deposition Transcript of Michael Kelly ("May 3, 2019 Kelly Dep. Tr.") at 7:15-8:3, 9:7-20); Exhibit 9 (September 23, 2019 Deposition Transcript of Michael Kelly ("Sept. 23, 2019 Kelly Dep. Tr.") at 7:14-9:2).

**Plaintiff's Response**

      2.      Not disputed.

**NYCHA Statement**

      3.      Defendant Brian Clarke was employed by NYCHA for 22 years in various titles, and in 2015, his title was Senior Vice President of Operations for Property Management.  In that capacity, Clarke supervised multiple departments and reported to the General Manager. Lippman Dec., Exhibit 10 (June 13, 2019 Deposition Transcript of Brian Clarke ("June 13, 2019 Clarke Dep. Tr.") at 7:8-8:24, 9:11-12, 10:15, 25:12-20); Declaration of Brian Clarke ("Clarke Dec.") at ¶¶ 2-3.

**Plaintiff's Response**

      3.      Not disputed.

**NYCHA Statement**

      4.      At all relevant times herein, Defendant Melissa Mark-Viverito (the "Former Speaker") served as Council Speaker of the New York City Council.  In that capacity, the

Former Speaker represented and advocated for her constituents.  Lippman Dec., Exhibit 3 (Defendant Melissa Mark-Viverito's Answer at ¶ 9); Exhibit 12 (Deposition Transcript of Melissa Mark-Viverito ("Mark-Viverito Dep. Tr.") at 35:21-23).

**Plaintiff's Response**

4.       Not disputed.

**NYCHA Statement**

5.       Colon is an African-American woman and former NYCHA employee.  Lippman Dec., Exhibit 1 (Complaint at ¶¶ 6, 60).

**Plaintiff's Response**

5.       Not disputed.

**NYCHA Statement**

6.       Between June 1, 2015 and her resignation from NYCHA on August 28, 2015, Colon was the Director of the NYCHA Optimal Property Management Department, or "OPMD." Lippman Dec., Exhibit 5 (Deposition Transcript of Colon ("Colon Dep. Tr.") at 55:9-18, 60:7-24, 233:6-19, 250:6-7); Exhibit 1 (Complaint at ¶¶ 18, 57-60).

**Plaintiff's Response**

6.       Disputed only to the extent that Plaintiff was formally appointed as Director of OPMOM on May 12, 2015, but commenced work on June 1, 2015.  Lippman Dec., Exhibit 5, Colon Tr. at 59-61, Exhibit 1, Complaint, ¶ 12, Exhibit 2, NYCHA Answer, ¶ 12.

**NYCHA Statement**

7.       Allison Williams ("Williams") is an African-American woman and retired NYCHA Housing Manager.  Lippman Dec., Exhibit 32 (Williams Amended Complaint at ¶ 6);

Exhibit 6 (Deposition Transcript of Williams ("Williams Dep. Tr.") at 23:4-6, 27:16-18, 232:2-12).

**Plaintiff's Response**

7.      Not disputed.

**NYCHA Statement**

8.      Between 2006 and her retirement on May 1, 2017, Williams was the Housing Manager at Mill Brook Houses, a NYCHA development in the Bronx.  She was not demoted or transferred from Mill Brook to another NYCHA development.  Lippman Dec., Exhibit 6 (Williams Dep. Tr. at 23:4-13, 232:2-12, 28:6-7, 232:1-12, 260:8-9).

**Plaintiff's Response**

8.      Not disputed.

**NYCHA Statement**

9.      In 2014, NYCHA began preparing for a property management model pilot program called the Optimal Property Management Operating Model, or "OPMOM."  These preparations included training for staff and putting together the project plan.  The OPMD oversaw OPMOM.[1]  Lippman Dec., Exhibit 10 (June 13, 2019 Clarke Dep. Tr. at 92:11-94:13); Exhibit 6 (Williams Dep. Tr. at 38:10-39:12); Exhibit 18 (OPMOM Informational Document and NYCHA News Releases).

**Plaintiff's Response**

9.      Not disputed.

---

[1] "OPMD" and "OPMOM" are used interchangeably in the record.

**NYCHA Statement**

10.     OPMOM was "about implementing asset management – true asset management based on the HUD[2] structure . . . what [NYCHA] really wanted to do was to, one, put the resources and responsibilities and the accountability at the local level, at the property management level, and reduce, as much as [NYCHA] could, central office control."  Lippman Dec., Exhibit 10 (June 13, 2019 Clarke Dep. Tr. at 20:12-21:4); Exhibit 18 (OPMOM Informational Document and NYCHA News Releases).

**Plaintiff's Response**

10.     Not disputed.

**NYCHA Statement**

11.     Under the HUD model of asset management, costs are determined at the property management level.  The HUD formula for finance and budgeting allocates 70 percent of the budget to the property and 30 percent to central administrative costs.  Lippman Dec., Exhibit 10 (June 13, 2019 Clarke Dep. Tr. at 21:5-20 and errata sheet); Exhibit 18 (OPMOM Informational Document and NYCHA News Releases).

**Plaintiff's Response**

11.     Not disputed.

**NYCHA Statement**

12.     OPMOM was launched into operation in January 2015.  The original 18 OPMOM developments were in Brooklyn, the Bronx, and Manhattan, and there was a Regional Asset Manager ("RAM") assigned to each borough.  Mill Brook Houses was one of the original 18

_____

[2] HUD refers to the United States Department of Housing and Urban Development, which oversees public agencies, including NYCHA.

OPMOM developments.  Lippman Dec., Exhibit 10 (June 13, 2019 Clarke Dep. Tr. at 83:21-84:9); Exhibit 6 (Williams Dep. Tr. at 34:3-8); Exhibit 18 (OPMOM Informational Document and NYCHA News Releases).

**Plaintiff's Response**

12.    Not disputed.

**NYCHA Statement**

13.    At the 18 developments that were part of OPMOM, the Managers "had the opportunity to identify the needs that they had at the property and put into the budget the number of positions they felt they needed by – by title."  "[T]he housing manager had the discretion to set up their property . . . for the number of positions that they felt they needed . . . for the properties in OPMOM program."  Lippman Dec., Exhibit 11 (July 1, 2019 Clarke Dep. Tr. at 29:16-22, 35:12-19); Exhibit 6 (Williams Dep. Tr. at 35:20-36:17, 36:25-38:9).

**Plaintiff's Response**

13.    Not disputed.

**NYCHA Statement**

14.    The 18 OPMOM developments received disproportionately more money and resources to operate compared to other NYCHA developments.  Lippman Dec., Exhibit 8 (July 3, 2019 Deposition Transcript of Michael Kelly ("July 3, 2019 Kelly Dep. Tr.") at 25:6-10); Exhibit 11 (July 1, 2019 Clarke Dep. Tr. at 43:14-18); Clarke Dec. at ¶¶ 15, 17.

**Plaintiff's Response**

14.    Not disputed.

**NYCHA Statement**

15.     OPMOM was part of a long term strategic plan called Next Generation or

NextGen NYCHA.  NYCHA's goal was to eventually incorporate its entire portfolio into

NextGen.  Lippman Dec., Exhibit 5 (Colon Dep. Tr. at 67:1-18); Exhibit 18 (OPMOM

Informational Document and NYCHA News Releases).

**Plaintiff's Response**

15.     Not disputed.

**NYCHA Statement**

16.     On November 7, 2014, NYCHA Executive Vice-President Cathy Pennington

emailed General Manager Cecil House and strongly recommended Janet Abrahams, her former

colleague at the Newark Housing Authority, for "new executive leadership" and attached

Abrahams' resume to the email.  Lippman Dec., Exhibit 19 (November 7, 2014 Email from

Cathy Pennington to Cecil House attaching Janet Abrahams' Resume); Exhibit 8 (July 3, 2019

Kelly Dep. Tr. at 34:19-35:6).

**Plaintiff's Response**

16.     Not disputed.

**NYCHA Statement**

17.     At the time Pennington emailed Cecil House, Janet Abrahams had been the Chief

Operating Officer of the Newark Housing Authority since 2006.  Even prior to working at the

Newark Housing Authority, Abrahams had an extensive background in public housing and real

estate asset management, as well as numerous certifications and extensive training and education

in her field.  Lippman Dec., Exhibit 19 (November 7, 2014 Email from Cathy Pennington to

Cecil House attaching Janet Abrahams' Resume).

**Plaintiff's Response**

      17.    Not disputed.

**NYCHA Statement**

      18.    Abrahams was operating a public housing asset management model for the Newark Housing Authority that was very similar to OPMOM.  Abrahams also previously ran a public housing asset management model for the Chicago Housing Authority, where she worked prior to the Newark Housing Authority.  Lippman Dec., Exhibit 8 (July 3, 2019 Kelly Dep. Tr. at 36:10-24); Exhibit 19 (Janet Abrahams' Resume attached to November 7, 2014 Email from Cathy Pennington to Cecil House).

**Plaintiff's Response**

      18.    Not disputed.

**NYCHA Statement**

      19.    On November 9, 2014, Pennington emailed House, "Cecil I spoke with Janet this weekend and would like to fill you in on her situation and why I think she would be a great addition to your PH team."  On November 10, 2014, House responded to Pennington, "I am interested.  Let's talk."  Lippman Dec., Exhibit 19 (November 9 and 10, 2014 Emails between Cathy Pennington and Cecil House).

**Plaintiff's Response**

      19.    Not disputed.

**NYCHA Statement**

      20.    Abrahams and her background and qualifications in asset management, which were the "princip[les] of OPMOM," were brought to [NYCHA] Chair's [Shola Olatoye ("the Chair")] attention at this time, and Abrahams was considered to be "an excellent candidate to

8

manage the OPMOM Program."  Lippman Dec., Exhibit 8 (July 3, 2019 Kelly Dep. Tr. at 34:17-35:3).

**Plaintiff's Response**

20.     Not disputed.

**NYCHA Statement**

21.     Abrahams and her background and qualifications in asset management, which were the "princip[les] of OPMOM," were brought to [NYCHA] Chair's [Shola Olatoye ("the Chair")] attention at this time, and Abrahams was considered to be "an excellent candidate to manage the OPMOM Program."  Lippman Dec., Exhibit 8 (July 3, 2019 Kelly Dep. Tr. at 34:17-35:3).

**Plaintiff's Response**

21.     Not disputed.

**NYCHA Statement**

22.     On December 5, 2014, the Chair emailed Todd Gomez, an Executive at Bank of America Merrill Lynch and Janet Abrahams' reference, to ask him whether he had, "Any thoughts on [Abrahams] as a strong senior operations colleague?"  In response to the Chair's inquiry regarding Janet Abrahams, Gomez confirmed that Abrahams "was an excellent potential candidate."  Lippman Dec., Exhibit 8 (July 3, 2019 Kelly Dep. Tr. at 35:2-11); Exhibit 21 (December 5, 2015 Email Chain Between Shola Olatoye and Todd Gomez).

**Plaintiff's Response**

22.     Not disputed.

9

**NYCHA Statement**

23.     Chair Olatoye emailed Gomez back, "Fantastic news.  She had a good interview.  I like her.  Wanted to gut check."  Lippman Dec., Exhibit 21 (December 5, 2015 Email Chain Between Shola Olatoye and Todd Gomez).

**Plaintiff's Response**

23.     Not disputed.

**NYCHA Statement**

24.     Cecil House's negotiations with Janet Abrahams regarding taking the job as "OPMOM vice president" were not consummated due to a disagreement over salary.  Lippman Dec., Exhibit 8 (July 3, 2019 Kelly Dep. Tr. at 35:11-14, 39:6-9).

**Plaintiff's Response**

24.     Objection.  The cited testimony is speculative and without foundation.

**NYCHA Statement**

25.     In late January 2015, Cecil House appointed Kevin Norman, Director of Mixed Finance, as the Director of OPMOM.  Lippman Dec., Exhibit 18 (OPMOM Informational Document and NYCHA News Releases at NYCHA 2).[3]

**Plaintiff's Response**

25.     Not disputed.

---

[3] NYCHA followed by a number indicates the Bates number of a document produced by the NYCHA Defendants.

**NYCHA Statement**

26.     Kevin Norman reported to Cecil House, although he may have briefly reported to Brian Clarke when House left NYCHA.  Lippman Dec., Exhibit 10 (June 13, 2019 Clarke Dep. Tr. at 15:3-15).

**Plaintiff's Response**

26.     Not disputed.

**NYCHA Statement**

27.     Cecil House and Kevin Norman left NYCHA in March or April 2015.  Lippman Dec., Exhibit 10 (June 13, 2019 Clarke Dep. Tr. at 14:5-13, 27:7-13); Exhibit 8 (July 3, 2019 Kelly Dep. Tr. at 35:14-18).

**Plaintiff's Response**

27.     Not disputed.

**NYCHA Statement**

28.     Colon commenced working at NYCHA in 1985 as a Housing Assistant and held several other titles during her NYCHA career.  Lippman Dec., Exhibit 4 (Colon's Human Resources Record Card).

**Plaintiff's Response**

28.     Not disputed.

**NYCHA Statement**

29.     Colon held the title of Housing Manager longer than any other title during her NYCHA employment and held civil service status in that title.  Lippman Dec., Exhibit 5 (Colon Dep. Tr. at 42:4-6); Exhibit 4 (Colon's Human Resources Record Card).

**Plaintiff's Response**

      29.      Not disputed.

**NYCHA Statement**

      30.      According to the resume Colon submitted for the OPMOM Director position on April 8, 2015, as a Housing Manager, she, "Managed a large size housing development"; "Supervised project personnel"; "Secured public and private agency cooperation and kept financial records and accounts"; "Planned the assignment of apartments and the collection of rents"; and "Prepared reports and budgets."  Lippman Dec., Exhibit 22 (April 8, 2015 Email Attaching Colon's Resume).

**Plaintiff's Response**

      30.      Not disputed.

**NYCHA Statement**

      31.      Although the resume Colon submitted for the OPMOM Director position states that she was a Borough Administrator in the Brooklyn Property Management Department from 2003 to 2004, she was a Borough Administrator in Brooklyn for only three months; Colon was on workers' compensation leave from July 2003 until August 2009 as the result of a car accident. Lippman Dec., Exhibit 5 (Colon Dep. Tr. at 27:15-28:4, 28:21-23, 29:20-30:1); Exhibit 4 (Colon's Human Resources Record Card); Exhibit 22 (April 8, 2015 Email Attaching Colon's Resume).

**Plaintiff's Response**

      31.      Not disputed.

**NYCHA Statement**

32.     Colon was a Borough Administrator in the Manhattan Property Management Department for one year before she applied for the OPMOM Director position.  As a Borough Administrator, Colon supervised property managers and superintendents, although she does not recall the number of her direct reports.  Lippman Dec., Exhibit 5 (Colon Dep. Tr. at 31:5-22); Exhibit 4 (Colon's Human Resources Record Card).

**Plaintiff's Response**

32.     Not disputed.

**NYCHA Statement**

33.     Colon earned $100,000 as a Borough Administrator.  Lippman Dec., Exhibit 5 (Colon Dep. Tr. at 61:12-62:15, 246:2-8).

**Plaintiff's Response**

33.     Not disputed.

**NYCHA Statement**

34.     Colon has no education or training in asset management.  Lippman Dec., Exhibit 5 (Colon Dep. Tr. at 18:4-6).

**Plaintiff's Response**

34.     Not disputed.

**NYCHA Statement**

35.     When Kevin Norman left NYCHA, Brian Clarke was tasked with filling three Director vacancies as quickly as possible: Director of Manhattan Property Management, Director of OPMOM, and Director of Mixed Finance.  A Borough Director job description, reporting to the Senior Vice President for Operations and originally posted in January 2015, was used for all

13

three positions.  Lippman Dec., Exhibit 10 (June 13, 2019 Clarke Dep. Tr. at 27:20-28:4);

Exhibit 23 (Borough Director Job Posting Notices Dated January 27, 2015); Declaration of

Harvey Chaitoff ("Chaitoff Dec.") at ¶¶ 3-4.

**Plaintiff's Response**

35.    Not disputed.

**NYCHA Statement**

36.    A job posting specifically for an OPMD Director position was not posted until

May 2016, and this posting specified that the OPMD Director would report to the Vice President

for the OPMD.  At that point, Janet Abrahams was the Vice President for the OPMD.  Lippman

Dec., Exhibit 23 (Director for OPMOM Job Posting Notice Dated May 23, 2016); Chaitoff Dec.

at ¶¶ 5-6.

**Plaintiff's Response**

36.    Disputed to the extent that the statement is inconsistent with statement no. 35

that "[a] Borough Director job description . . . posted in January 2015, was used for" three

positions, including Director of OPMOM.

**NYCHA Statement**

37.    The Manhattan Director position was filled first, and the Mixed Finance Director

position was filled second.  The OPMOM Director position was filled last.  Lippman Dec.,

Exhibit 10 (June 13, 2019 Clarke Dep. Tr. at 28:18-29:3, 30:19-31:5 and errata sheet).

**Plaintiff's Response**

37.    Not disputed.

**NYCHA Statement**

38.     Human Resources reviewed resumes first, and if the candidate met the minimum criteria, the resumes would be sent to Brian Clarke's office, and his office would review the resumes and "figure out which candidates we would interview."  After reviewing resumes, Clarke and his office "would put together a list and schedule interviews" with a panel.  Lippman Dec., Exhibit 10 (June 13, 2019 Clarke Dep. Tr. at 29:8-30:14).

**Plaintiff's Response**

38.     Not disputed.

**NYCHA Statement**

39.     Colon claims she saw a posting for the OPMOM Director position in October 2014 on a "bulletin board."  However, there was no job posting for the OPMOM Director position in October 2014, and a Borough Director job description was not posted until January 2015.  Lippman Dec., Exhibit 5 (Colon Dep. Tr. at 49:10-25); Chaitoff Dec. at ¶¶ 4-5.

**Plaintiff's Response**

39.     Objection.  The use of the term "claims" is inappropriate in a Rule 56.1 statement.  Not otherwise disputed.

**NYCHA Statement**

40.     Colon claims she saw a posting for the OPMOM Director position in October 2014 on a "bulletin board."  However, there was no job posting for the OPMOM Director position in October 2014, and a Borough Director job description was not posted until January 2015.  Lippman Dec., Exhibit 5 (Colon Dep. Tr. at 49:10-25); Chaitoff Dec. at ¶¶ 4-5.

**Plaintiff's Response**

40.      Objection.  The use of the term "claims" is inappropriate in a Rule 56.1 statement.  Not otherwise disputed.

**NYCHA Statement**

41.      Colon emailed Brian Clarke on April 8, 2015, stating, "As per my conversation with Sheila Pinckney, I've attached my resume in desirous [sic] of an interview for the Borough Director's position."  By "Borough Director," Colon claims she was applying for the OPMOM Director position.  Lippman Dec., Exhibit 5 (Colon Dep. Tr. at 24:14-25:4); Exhibit 22 (April 8, 2015 Email Attaching Colon's Resume).

**Plaintiff's Response**

41.      Not disputed.

**NYCHA Statement**

42.      Colon recalls that the panel who interviewed her in May was composed of Brian Clarke, Human Resources Director Kenya Salaudeen, and Cal Bruno, who was "the director of the budgeting department.  Something to that affect [sic]."  Lippman Dec., Exhibit 5 (Colon Dep. Tr. at 58:14-59:7).

**Plaintiff's Response**

42.      Not disputed.

**NYCHA Statement**

43.      Brian Clarke recalls reviewing Colon's resume, although in reviewing her resume again during his deposition, he "thought she had actually been a borough administrator longer than what [Colon's] resume reflects," and he noted that "the OPMOM Director position was a

two-step promotion."  Lippman Dec., Exhibit 10 (June 13, 2019 Clarke Dep. Tr. at 34:14-35:19

and errata sheet).

**Plaintiff's Response**

43.    Not disputed.

**NYCHA Statement**

44.    Colon does not know whether any external candidates were ever under

consideration for the OPMOM Director position.  Lippman Dec., Exhibit 5 (Colon Dep. Tr. at

231:18-232:4).

**Plaintiff's Response**

44.    Not disputed.

**NYCHA Statement**

45.    Colon was selected by the majority of the panel and commenced working as

OPMOM Director on June 1, 2015 at a salary of $135,000.  Lippman Dec., Exhibit 10 (June 13,

2019 Clarke Dep. Tr. at 32:17-23); Exhibit 5 (Colon Dep. Tr. at 61:9-11, 269:17-19).

**Plaintiff's Response**

45.    Not disputed.

**NYCHA Statement**

46.    Michael Kelly was not involved in the hiring of Colon, and he did not review her

resume before her hiring.  Lippman Dec., Exhibit 7 (May 3, 2019 Kelly Dep. Tr. at 13:20-15:6).

**Plaintiff's Response**

46.    Disputed.

NYCHA sought a candidate for Director of OPMOM at least as of March 2015.

Lippman Dec., Exhibit 10 at 27:4-31:17.

Sheila Pinckney, Brian Clarke's Senior Advisor, asked Plaintiff "out of the blue" to submit an application for the Director of OPMOM position, and she confirmed that Plaintiff should submit an application with Brian Clarke.  Lippman Dec., Exhibit 5 at 24:14-27:1.

Plaintiff applied for the position on April 8, 2015.  Florestal Dec., Exhibit 1 at 23:1-24:25; Lippman Dec., Exhibit 5 at 24:1-25:8; Lippman Dec., Exhibit 22.

Brian Clarke testified that the panel's practice was that the general manager would interview the individual recommended by the panel and would accept or reject the recommendation.  Lippman Dec., Exhibit 10 at 32:5-32:9.  Michael Kelly was the general manager as of March 2015.  Lippman Dec., Exhibit at 9:7-9:11.

Plaintiff was selected the Director of OPMOM directly after her interview, and Michael Kelly met with Plaintiff and Brian Clarke shortly after her selection.  Lippman Dec., Exhibit 5, 59:17-60:4.

**NYCHA Statement**

47.     As OPMOM Director, Colon reported to Brian Clarke.  She never reported directly to Michael Kelly.  Lippman Dec., Exhibit 10 (June 13, 2019 Clarke Dep. Tr. at 11:22-12:2, 51:9-10); Exhibit 7 (May 3, 2019 Kelly Dep. Tr. at 13:11-19); Exhibit 5 (Colon Dep. Tr. at 83:7-10).

**Plaintiff's Response**

47.     Not disputed.

**NYCHA Statement**

48.     Colon does not know whether she had tenure rights in her position as Director of OPMOM.  Lippman Dec., Exhibit 5 (Colon Dep. Tr. at 62:20-63:21).

**Plaintiff's Response**

48.     Not disputed.

**NYCHA Statement**

49.     Colon felt there needed to be a "process" before she could be dismissed or demoted from the OPMOM Director position without warning or cause.  However, Plaintiff never saw any policy specific to a Director title regarding this "process."  Lippman Dec., Exhibit 5 (Colon Dep. Tr. at 63:22-65:4).

**Plaintiff's Response**

49.     Not disputed.

**NYCHA Statement**

50.     Colon never asked anyone whether she had the right to a "process" before she could be demoted or dismissed as Director OPMOM, and her understanding of her rights in that position was based on her previous experience in other titles at NYCHA.  Lippman Dec., Exhibit 5 (Colon Dep. Tr. at 64:16-65:4, 66:7-13).

**Plaintiff's Response**

50.     Not disputed.

**NYCHA Statement**

51.     Colon claims that she could not be demoted from the Director position without having received a counseling memorandum.  Colon believes she had to have "done" something "wrong" in order to be removed as Director of OPMOM without "due process."  Lippman Dec., Exhibit 5 (Colon Dep. Tr. at 291:11-292:5); Exhibit 13 (Deposition Transcript of Luis Ponce ("Ponce Dep. Tr.") at 59:15-60:2).

**Plaintiff's Response**

      51.     Not disputed.

**NYCHA Statement**

      52.     NYCHA employees may obtain permanent status in a civil service title by appointment from a civil service list established through competitive examination administered by the Department of Citywide Administrative Services and subsequently by successfully passing a probationary period.  Chaitoff Dec. at ¶ 8.

**Plaintiff's Response**

      52.     Not disputed.

**NYCHA Statement**

      53.     Colon did not have civil service status as Director of OPMOM.  Colon served on a provisional basis in the civil service title of Administrative Housing Manager and in the business capacity as Director of OPMOM.  Lippman Dec., Exhibit 5 (Colon Dep. Tr. at, 62:16-19); Chaitoff Dec. at ¶¶ 9-10.

**Plaintiff's Response**

      53.     Not disputed.

**NYCHA Statement**

      54.     Employees such as Colon who serve in civil service titles on a provisional basis have no tenure in these titles and, as such, are employed in these titles at will.  They are not entitled under New York State Civil Service Law to notice, pre-termination hearings, or due process of any kind before removal from their title.  Chaitoff Dec. at ¶¶ 11-12.

**Plaintiff's Response**

      54.     Not disputed.

**NYCHA Statement**

55.     Because employees who serve in civil service titles on a provisional basis are employed in these titles at will, they may be removed from these titles without cause and without a reason.  Chaitoff Dec. at ¶¶ 11-12.

**Plaintiff's Response**

55.     Not disputed.

**NYCHA Statement**

56.     No due process of any kind was required to remove Colon from her OPMOM Director position, which Colon held provisionally.  She could therefore be removed as Director of OPMOM without cause or a showing of performance deficiencies and without due process, consistent with her at will status.  Nor was it necessary for NYCHA to provide Colon with notice of performance deficiencies through the issuance of counseling memoranda or in any other manner, as she could be removed without cause.  Chaitoff Dec. at ¶¶ 12-14; Exhibit 17 (Deposition Transcript of Kenya Salaudeen ("Salaudeen Dep. Tr.") at 58:11-18).

**Plaintiff's Response**

56.     Not disputed.

**NYCHA Statement**

57.     A counseling memorandum may record particular events or conduct that could be construed as misconduct or incompetent performance and can serve as evidence that an employee was put on notice regarding specific misconduct or incompetent job performance. Chaitoff Dec. at ¶ 14.

**Plaintiff's Response**

57.     Not disputed.

**NYCHA Statement**

58.     Colon never saw any written standards by which her performance as the OPMOM Director would be judged and did not know whether she would receive any sort of performance review.  Lippman Dec., Exhibit 5 (Colon Dep. Tr. at 65:16-66:6).

**Plaintiff's Response**

58.     Objection.  The statement is immaterial; there was no issue with Plaintiff's performance, as stated to her by Michael Kelly on the date she was demoted from her position as Director of OPMOM: "This has nothing to do with your job performance.  You're doing a great job."  Florestal Dec., Exhibit 1 at 239:1-241:5, Exhibits 19 and 20.

Not otherwise disputed.

**NYCHA Statement**

59.     Colon never spoke to the previous OPMOM Director regarding the responsibilities and requirements of the position.  Lippman Dec., Exhibit 5 (Colon Dep. Tr. at 56:13-57:3).

**Plaintiff's Response**

59.     Objection.  The statement is immaterial; there was no issue with Plaintiff's performance, as stated to her by Michael Kelly on the date she was demoted from her position as Director of OPMOM: "This has nothing to do with your job performance.  You're doing a great job."  Florestal Dec., Exhibit 1 at 239:1-241:5, Exhibits 19 and 20.

Not otherwise disputed.

**NYCHA Statement**

60.     Colon does not know how many NYCHA developments were intended to be included in OPMOM over time or the timeline for expansion.  Lippman Dec., Exhibit 5 (Colon Dep. Tr. at 70:12-16, 73:9-15).

**Plaintiff's Response**

60.     Objection.  The statement is immaterial.  There was no issue with Plaintiff's performance, as stated to her by Michael Kelly on the date she was demoted from her position as Director of OPMOM: "This has nothing to do with your job performance.  You're doing a great job."  Florestal Dec., Exhibit 1 at 239:1-241:5, Exhibits 19 and 20.

Objection.  The statement is made for the purpose of undermining Plaintiff's credibility, which is inappropriate for a motion for summary judgment.

Not otherwise disputed.

**NYCHA Statement**

61.     Colon does not know whether the OPMOM developments were given more resources and does not know whether the OPMOM developments used the same formula for budgeting as other NYCHA developments.  Lippman Dec., Exhibit 5 (Colon Dep. Tr. at 70:17-22, 71:5-8, 73:22-74:24).

**Plaintiff's Response**

61.     Objection.  The statement is immaterial.  There was no issue with Plaintiff's performance, as stated to her by Michael Kelly on the date she was demoted from her position as Director of OPMOM: "This has nothing to do with your job performance.  You're doing a great job."  Florestal Dec., Exhibit 1 at 239:1-241:5.  The improvements in OPMOM's performance

were recognized by NYCHA's Board of Directors, Chair Shola Olatoye and General Manager Michael Kelly.  Florestal Dec., Exhibits 19 and 20.

Objection.  The statement is made for the purpose of undermining Plaintiff's credibility, which is inappropriate for a motion for summary judgment.

**NYCHA Statement**

62.     Colon saw her role as OPMOM Director as limited to a "mentoring, guidance sort of role," and she had "constant meetings" with her staff to discuss "[a]ny issues that they were having and ways [she] can help them perform."  Lippman Dec., Exhibit 5 (Colon Dep. Tr. at 75:18-76:10).

**Plaintiff's Response**

62.     Disputed.  The statement distorts the witness' testimony.  Plaintiff did not testify that her role as Director of OPMOM was "limited" to these activities.  She testified that this was how Brian Clarke described her job, which is also consistent with the job description for the Director of OPMOM posted by NYCHA in 2016.  Lippman Dec., Exhibit 5 at 75:18-76:10, 89:9-91:17, Exhibit 23 ("The Director will also provide guidance, coaching and support as needed to help the OPMOM team achieve success.  The essential responsibilities of the Director include, but are not limited to . . .").

**NYCHA Statement**

63.     Colon would analyze performance indicators, speak to her team, and "just point out things the way [she] can help them to become better."  When asked for examples of the "things" she would point out to her team, Colon testified, "For example if their rent collection numbers were high.  Did you do early intervention procedure?  Did you do the chronic rent delinquency procedure?  Did you follow the procedures and policies of the Housing Authority to

help improve your performance indicators[?]"  Lippman Dec., Exhibit 5 (Colon Dep. Tr. at 77:3-78:1).

**Plaintiff's Response**

63.     Objection.  The statement is immaterial.  There was no issue with Plaintiff's performance, as stated to her by Michael Kelly on the date she was demoted from her position as Director of OPMOM: "This has nothing to do with your job performance.  You're doing a great job."  Florestal Dec., Exhibit 1 at 239:1-241:5.   The improvements in OPMOM's performance were recognized by NYCHA's Board of Directors, Chair Shola Olatoye and General Manager Michael Kelly.  Florestal Dec., Exhibits 19 and 20.

Objection.  The statement is made for the purpose of undermining Plaintiff's credibility, which is inappropriate for a motion for summary judgment.

**NYCHA Statement**

64.     Three Regional Asset Managers, or "RAMs," reported directly to Colon: James Artis in the Bronx, Octavia Hayward in Brooklyn, and Shinay Jones in Manhattan.  The RAMS supervised the field staff, oversaw the developments, and provided guidance and support to the development Managers.  Lippman Dec., Exhibit 5 (Colon Dep. Tr. at 78:17-79:21).

**Plaintiff's Response**

64.     Not disputed.

**NYCHA Statement**

65.     Colon felt that it was her responsibility to provide guidance to the development Managers and to the RAMs because "[she] is an expert at what [she] does."  According to Colon, "The way OPMOM was set up it was more of a guidance and support, encouragement, strategic

initiative to help guide and support the locations to their best performance."  Lippman Dec.,

Exhibit 5 (Colon Dep. Tr. at 79:18-80:7).

**Plaintiff's Response**

65.     Objection.  The statement is immaterial.  There was no issue with Plaintiff's

performance, as stated to her by Michael Kelly on the date she was demoted from her position as

Director of OPMOM: "This has nothing to do with your job performance.  You're doing a great

job."  Florestal Dec., Exhibit 1 at 239:1-241:5.   The improvements in OPMOM's performance

were recognized by NYCHA's Board of Directors, Chair Shola Olatoye and General Manager

Michael Kelly.  Florestal Dec., Exhibits 19 and 20.

Objection.  The statement is made for the purpose of undermining Plaintiff's

credibility, which is inappropriate for a motion for summary judgment.

Disputed.  The statement distorts the witness' testimony.  Plaintiff did not testify

that her role as Director of OPMOM was "limited" to these activities.  She testified that this was

how Brian Clarke described her job, which is also consistent with the job description for the

Director of OPMOM posted by NYCHA in 2016.  Lippman Dec., Exhibit 5 at 75:18-76:10,

89:9-91:17, Exhibit 23 ("The Director will also provide guidance, coaching and support as

needed to help the OPMOM team achieve success.  The essential responsibilities of the Director

include, but are not limited to . . .").

**NYCHA Statement**

66.     The only other example Colon could provide at her deposition of providing

coaching, guidance, and support to the RAMS besides chronic rent delinquency tips was with

respect to how to conduct local disciplinary hearings.  Lippman Dec., Exhibit 5 (Colon Dep. Tr.

at 80:8-83:6).

**Plaintiff's Response**

66.     Objection.  The statement is immaterial.  There was no issue with Plaintiff's performance, as stated to her by Michael Kelly on the date she was demoted from her position as Director of OPMOM: "This has nothing to do with your job performance.  You're doing a great job."  Florestal Dec., Exhibit 1 at 239:1-241:5.   The improvements in OPMOM's performance were recognized by NYCHA's Board of Directors, Chair Shola Olatoye and General Manager Michael Kelly.  Florestal Dec., Exhibits 19 and 20.

Objection.  The statement is made for the purpose of undermining Plaintiff's credibility, which is inappropriate for a motion for summary judgment.

**NYCHA Statement**

67.     On July 24, 2015, Colon emailed Brian Clarke and stated, "I am still struggling with identifying my role/boundaries within the OPMD model.  I am trying not to overstep the boundaries, while also empowering the Managers and to help them find solutions."  Lippman Dec., Exhibit 24 (July 24, 2015 Email from Colon to Brian Clarke).

**Plaintiff's Response**

67.     Objection.  The statement is immaterial.  There was no issue with Plaintiff's performance, as stated to her by Michael Kelly on the date she was demoted from her position as Director of OPMOM: "This has nothing to do with your job performance.  You're doing a great job."  Florestal Dec., Exhibit 1 at 239:1-241:5.   The improvements in OPMOM's performance were recognized by NYCHA's Board of Directors, Chair Shola Olatoye and General Manager Michael Kelly.  Florestal Dec., Exhibits 19 and 20.

Objection.  The statement is made for the purpose of undermining Plaintiff's credibility, which is inappropriate for a motion for summary judgment.

**NYCHA Statement**

68.     Colon sent her July 24, 2015 email to Clarke about "struggling" with her "role/boundaries" notwithstanding her claim that on July 9, 2015, she felt she had been given a "clearer mandate" by Brian Clarke regarding her job responsibilities.  Lippman Dec., Exhibit 5 (Colon Dep. Tr. at 89:9-91:5); Clarke Dec. at ¶ 10.

**Plaintiff's Response**

68.     Objection.  The statement is immaterial.  There was no issue with Plaintiff's performance, as stated to her by Michael Kelly on the date she was demoted from her position as Director of OPMOM: "This has nothing to do with your job performance.  You're doing a great job."  Florestal Dec., Exhibit 1 at 239:1-241:5.   The improvements in OPMOM's performance were recognized by NYCHA's Board of Directors, Chair Shola Olatoye and General Manager Michael Kelly.  Florestal Dec., Exhibits 19 and 20.

Objection.  The statement is made for the purpose of undermining Plaintiff's credibility, which is inappropriate for a motion for summary judgment.

Disputed.  The statement distorts the witness' testimony and omits critical testimony. Plaintiff testified that "once they [the managers] started to see the result and see the plan was working, it was great."  Lippman Dec., Exhibit 5 at 91:6-91:24.

**NYCHA Statement**

68.     On July 27, 2015, Colon learned that an apartment at Wagner Houses, where a bedridden, disabled tenant lived with another adult and four children, had become flooded with raw sewage.  Lippman Dec., Exhibit 5 (Colon Dep. Tr. at 93:21-96:4).

**Plaintiff's Response**

69.    Objection.  The statement is immaterial.  There was no issue with Plaintiff's performance, as stated to her by Michael Kelly on the date she was demoted from her position as Director of OPMOM: "This has nothing to do with your job performance.  You're doing a great job."  Florestal Dec., Exhibit 1 at 239:1-241:5.   The improvements in OPMOM's performance were recognized by NYCHA's Board of Directors, Chair Shola Olatoye and General Manager Michael Kelly.  Florestal Dec., Exhibits 19 and 20.

Objection.  The statement is made for the purpose of undermining Plaintiff's credibility, which is inappropriate for a motion for summary judgment.

**NYCHA Statement**

70.    Although Colon had previously served three counseling memoranda on RAM Shinay Jones – including one for failing to answer her blackberry and emails – Colon relied on Jones to "go and put her eyes on the situation."  Jones did not respond to Colon's requests and did not visit the apartment.  Lippman Dec., Exhibit 5 (Colon Dep. Tr. at 94:21-96:4, 98:20-99:16); Exhibit 25 (August 3, 2015 Request for Termination of Employment).

**Plaintiff's Response**

70.    Objection.  The statement is immaterial.  There was no issue with Plaintiff's performance, as stated to her by Michael Kelly on the date she was demoted from her position as Director of OPMOM: "This has nothing to do with your job performance.  You're doing a great job."  Florestal Dec., Exhibit 1 at 239:1-241:5.   The improvements in OPMOM's performance were recognized by NYCHA's Board of Directors, Chair Shola Olatoye and General Manager Michael Kelly.  Florestal Dec., Exhibits 19 and 20.

Objection.  The statement is made for the purpose of undermining Plaintiff's credibility, which is inappropriate for a motion for summary judgment.

**NYCHA Statement**

71.     Colon then waited until July 29, 2015 to visit the sewage flooded apartment herself and assess the situation and the needs of the tenant and other residents in the apartment. Lippman Dec., Exhibit 5 (Colon Dep. Tr. at 97:28-99:16); Exhibit 25 (July 29, 2015 Email from Colon to Brian Clarke).

**Plaintiff's Response**

71.     Objection.  The statement is immaterial.  There was no issue with Plaintiff's performance, as stated to her by Michael Kelly on the date she was demoted from her position as Director of OPMOM: "This has nothing to do with your job performance.  You're doing a great job."  Florestal Dec., Exhibit 1 at 239:1-241:5.   The improvements in OPMOM's performance were recognized by NYCHA's Board of Directors, Chair Shola Olatoye and General Manager Michael Kelly.  Florestal Dec., Exhibits 19 and 20.

Objection.  The statement is made for the purpose of undermining Plaintiff's credibility, which is inappropriate for a motion for summary judgment.

Objection.  The use of the term "waited" is argumentative and inappropriate in a Rule 56.1 statement.

Disputed.  Plaintiff relied on her managerial experience to contact staff members who were close to the scene, including directly across the street, to assess and report on the issue. Lippman Dec., Exhibit 5 at 97:28-99:16; Exhibit 25 (July 29, 2015 Email from Colon to Brian Clarke).

**NYCHA Statement**

72.     Brian Clarke believed that the Wagner Houses situation was "poorly handled at the local level, at the regional asset level and at the director level within the OPMOM program." Lippman Dec., Exhibit 11 (July 1, 2019 Clarke Dep. Tr. at 62:21-63:9).

**Plaintiff's Response**

72.     Objection.  The statement is immaterial.  There was no issue with Plaintiff's performance, as stated to her by Michael Kelly on the date she was demoted from her position as Director of OPMOM: "This has nothing to do with your job performance.  You're doing a great job."  Florestal Dec., Exhibit 1 at 239:1-241:5.   The improvements in OPMOM's performance were recognized by NYCHA's Board of Directors, Chair Shola Olatoye and General Manager Michael Kelly.  Florestal Dec., Exhibits 19 and 20.

Objection.  The statement is made for the purpose of undermining Plaintiff's credibility, which is inappropriate for a motion for summary judgment.

**NYCHA Statement**

73.     During Colon's tenure as OPMOM Director, Brian Clarke received "a lot of complaints" from development resident leaders who "felt that they were sold a bill of goods. That they were told that they were going to be involved in key decisions and things like that, and that didn't happen."  These complaints reflected on Colon's performance during her three-month tenure as OPMOM Director.  Lippman Dec., Exhibit 10 (June 13, 2019 Clarke Dep. Tr. at 126:2-131:23).

**Plaintiff's Response**

73.     Objection.  The statement is immaterial.  There was no issue with Plaintiff's performance, as stated to her by Michael Kelly on the date she was demoted from her position as

Director of OPMOM: "This has nothing to do with your job performance.  You're doing a great job."  Florestal Dec., Exhibit 1 at 239:1-241:5.   The improvements in OPMOM's performance were recognized by NYCHA's Board of Directors, Chair Shola Olatoye and General Manager Michael Kelly.  Florestal Dec., Exhibits 19 and 20.

Objection.  There is no foundation for the statement.

Objection.  The statement is made for the purpose of undermining Plaintiff's credibility, which is inappropriate for a motion for summary judgment.

Objection.  The statement's reference to complaints is inadmissible hearsay.

## NYCHA Statement

74.     Brian Clarke observed that Colon did not have a clear understanding of how OPMOM differed from NYCHA's traditional, centralized operating model, did not have a clear understanding of her role as Director, and did not know how to achieve OPMOM's asset management goals within the OPMOM framework.  Colon also struggled with conflict resolution and problem-solving.  In light of these deficiencies, he recommended to NYCHA Human Resources Director Kenya Salaudeen that Colon receive additional training.  However, Colon resigned before she could receive additional training.  Clarke Dec. at ¶¶ 7-12.

## Plaintiff's Response

74.     Objection.  The statement is immaterial.  There was no issue with Plaintiff's performance, as stated to her by Michael Kelly on the date she was demoted from her position as Director of OPMOM: "This has nothing to do with your job performance.  You're doing a great job."  Florestal Dec., Exhibit 1 at 239:1-241:5.   The improvements in OPMOM's performance were recognized by NYCHA's Board of Directors, Chair Shola Olatoye and General Manager Michael Kelly.  Florestal Dec., Exhibits 19 and 20.

Objection.  There is no foundation for the statement.

Objection.  The statement is made for the purpose of undermining Plaintiff's credibility, which is inappropriate for a motion for summary judgment.

**NYCHA Statement**

75.      The Complaint alleges that prior to Colon's hiring as OPMOM Director, OPMOM developments were "ranked dead last in NYCHA division rankings."  By "division rankings," Colon first testified she was referring to "borough offices," and then testified that she was referring to "performance indicators."  However, Colon concedes that only some OPMOM developments were "dead last" in "certain performance indicators."  Lippman Dec., Exhibit 1 (Complaint at ¶ 20); Exhibit 5 (Colon Dep. Tr. at 268:20-270:17).

**Plaintiff's Response**

75.      Objection.  The statement is immaterial.  There was no issue with Plaintiff's performance, as stated to her by Michael Kelly on the date she was demoted from her position as Director of OPMOM: "This has nothing to do with your job performance.  You're doing a great job." Florestal Dec., Exhibit 1 at 239:1-241:5.   The improvements in OPMOM's performance were recognized by NYCHA's Board of Directors, Chair Shola Olatoye and General Manager Michael Kelly.  Florestal Dec., Exhibits 19 and 20.

Objection.  The statement is made for the purpose of undermining Plaintiff's credibility, which is inappropriate for a motion for summary judgment.

Objection.  The use of the term "concedes" is argumentative and inappropriate in a Rule 56.1 statement.

**NYCHA Statement**

76.     Colon claims that during her tenure as OPMOM Director in June, July, and August 2015, she was responsible for improving various metrics in OPMOM developments, including the Service Level Agreement ("SLA") and apartment turnover and renovation times. Lippman Dec., Exhibit 1 (Complaint at ¶¶ 20-22).

**Plaintiff's Response**

76.     Objection.  The statement is immaterial.  There was no issue with Plaintiff's performance, as stated to her by Michael Kelly on the date she was demoted from her position as Director of OPMOM: "This has nothing to do with your job performance.  You're doing a great job."  Florestal Dec., Exhibit 1 at 239:1-241:5.   The improvements in OPMOM's performance were recognized by NYCHA's Board of Directors, Chair Shola Olatoye and General Manager Michael Kelly.  Florestal Dec., Exhibits 19 and 20.

Objection.  The statement is made for the purpose of undermining Plaintiff's credibility, which is inappropriate for a motion for summary judgment.

Objection.  The use of the term "claims" is argumentative and inappropriate in a Rule 56.1 statement.

Not otherwise disputed.

**NYCHA Statement**

77.     Metrics are reflected on a balanced scorecard, which shows various measurements on a monthly basis.  The measurements are computed by the NYCHA Research Department.  Lippman Dec., Exhibit 10 (June 13, 2019 Clarke Dep. Tr. at 80:2-10, 88:6-9, 98:6-11).

**Plaintiff's Response**

77.     Not disputed.

**NYCHA Statement**

78.     An SLA score represents the time it takes to perform ordinary routine repairs performed by maintenance workers; however, Colon could not give an example of a routine repair during her deposition.  NYCHA's goal was to have a seven-day service level for the entire agency.  Lippman Dec., Exhibit 5 (Colon Dep. Tr. at 266:12-267:14); Exhibit 8 (July 3, 2019 Kelly Dep. Tr. at 29:3-8); Exhibit 10 (June 13, 2019 Clarke Dep. Tr. at 60:13-61:8, 64:2-65:2, 81:3-4); Exhibit 14 (Deposition of James Artis ("Artis Dep. Tr.") at 10:15-11:19, 24:22-25:14).

**Plaintiff's Response**

78.     Objection.  The statement is immaterial.  There was no issue with Plaintiff's performance, as stated to her by Michael Kelly on the date she was demoted from her position as Director of OPMOM: "This has nothing to do with your job performance.  You're doing a great job."  Florestal Dec., Exhibit 1 at 239:1-241:5.   The improvements in OPMOM's performance were recognized by NYCHA's Board of Directors, Chair Shola Olatoye and General Manager Michael Kelly.  Florestal Dec., Exhibits 19 and 20.

Objection.  The statement is made for the purpose of undermining Plaintiff's credibility, which is inappropriate for a motion for summary judgment.

**NYCHA Statement**

79.     Colon does not know how any of the metrics on a development scorecard were calculated, and she never calculated an SLA score.  Lippman Dec., Exhibit 5 (Colon Dep. Tr. at 263:9-264:23, 265:20-266:1).

**Plaintiff's Response**

79.     Objection.  The statement is immaterial.  There was no issue with Plaintiff's performance, as stated to her by Michael Kelly on the date she was demoted from her position as Director of OPMOM: "This has nothing to do with your job performance.  You're doing a great job."  Florestal Dec., Exhibit 1 at 239:1-241:5.   The improvements in OPMOM's performance were recognized by NYCHA's Board of Directors, Chair Shola Olatoye and General Manager Michael Kelly.  Florestal Dec., Exhibits 19 and 20.

        Objection.  The statement is made for the purpose of undermining Plaintiff's credibility, which is inappropriate for a motion for summary judgment.

**NYCHA Statement**

80.     Repairs performed by the skilled trades and outside vendors were not included in the SLA score but were represented on a balanced scorecard.  Colon could not give an example of a repair done by an outside vendor during her deposition.  Lippman Dec., Exhibit 5 (Colon Dep. Tr. at 268:15-19, 276:10-25).

**Plaintiff's Response**

80.     Objection.  The statement is immaterial.  There was no issue with Plaintiff's performance, as stated to her by Michael Kelly on the date she was demoted from her position as Director of OPMOM: "This has nothing to do with your job performance.  You're doing a great job."  Florestal Dec., Exhibit 1 at 239:1-241:5.   The improvements in OPMOM's performance were recognized by NYCHA's Board of Directors, Chair Shola Olatoye and General Manager Michael Kelly.  Florestal Dec., Exhibits 19 and 20.

        Objection.  The statement is made for the purpose of undermining Plaintiff's credibility, which is inappropriate for a motion for summary judgment.

**NYCHA Statement**

81.     Colon does not know what a statistically sufficient period of time would be to judge at trend in the performance of a development, and she does not know what the NYCHA Research Department would consider a sufficient period of time to judge a trend in the performance of a development,  Rather, she "look[s] for positive trends in the direction the development needs to go.  It's not for [her] a time frame."  Lippman Dec., Exhibit 5 (Colon Dep. Tr. at 261:14-262:11, 262:22-263:6).

**Plaintiff's Response**

81.     Objection.  The statement is immaterial.  There was no issue with Plaintiff's performance, as stated to her by Michael Kelly on the date she was demoted from her position as Director of OPMOM: "This has nothing to do with your job performance.  You're doing a great job."  Florestal Dec., Exhibit 1 at 239:1-241:5.   The improvements in OPMOM's performance were recognized by NYCHA's Board of Directors, Chair Shola Olatoye and General Manager Michael Kelly.  Florestal Dec., Exhibits 19 and 20.

Objection.  The statement is made for the purpose of undermining Plaintiff's credibility, which is inappropriate for a motion for summary judgment.

**NYCHA Statement**

82.     Colon alleges that the SLA score for OPMOM developments was 27 days before she became Director of the OPMD.   However, the OPMOM balanced scorecard shows that in January 2015, when OPMOM began, the SLA score (listed as Maintenance Service Level on the scorecard) was 21.5 days, and when Colon became Director in June 2015, it was 24.1 days.  Colon claims that the Director of the NYCHA Research Department, Sybille Luis, provided her with a different balanced scorecard or "chart"; however, Plaintiff did not produce any such

"chart" in discovery.  Lippman Dec., Exhibit 1 (Complaint at ¶ 22); Exhibit 5 (Colon Dep. Tr. at

277:17-280:20); Exhibit 26 (Magnified OPMOM Balanced Scorecard January-July 2015).

**Plaintiff's Response**

82.    Objection.  The statement is immaterial.  There was no issue with Plaintiff's

performance, as stated to her by Michael Kelly on the date she was demoted from her position as

Director of OPMOM: "This has nothing to do with your job performance.  You're doing a great

job."  Florestal Dec., Exhibit 1 at 239:1-241:5.   The improvements in OPMOM's performance

were recognized by NYCHA's Board of Directors, Chair Shola Olatoye and General Manager

Michael Kelly.  Florestal Dec., Exhibits 19 and 20.

Objection.  The statement is made for the purpose of undermining Plaintiff's

credibility, which is inappropriate for a motion for summary judgment.

**NYCHA Statement**

83.    Colon alleges that during her tenure as Director of the OPMD, "the amount of

time it took for the OPMD to effectuate the apartment turnover process decreased from 89 days

to 48 days."  In fact, when Colon became the Director in June 2015, the apartment turnover time

(listed as Apartment Turnaround on the scorecard) had already decreased from 89.8 days in

January 2015 to 55.8 days in May and 50.5 days in June 2015, and Colon concedes this.

Lippman Dec., Exhibit 1 (Complaint at ¶ 22); Exhibit 5 (Colon Dep. Tr. at 281:12-283:19);

Exhibit 26 (Magnified OPMOM Balanced Scorecard January-July 2015).

**Plaintiff's Response**

83.    Objection.  The statement is immaterial.  There was no issue with Plaintiff's

performance, as stated to her by Michael Kelly on the date she was demoted from her position as

Director of OPMOM: "This has nothing to do with your job performance.  You're doing a great

job." Florestal Dec., Exhibit 1 at 239:1-241:5.   The improvements in OPMOM's performance

were recognized by NYCHA's Board of Directors, Chair Shola Olatoye and General Manager

Michael Kelly.  Florestal Dec., Exhibits 19 and 20.

   Objection.  The statement is made for the purpose of undermining Plaintiff's

credibility, which is inappropriate for a motion for summary judgment.

   Objection.  The use of the term "concedes" is argumentative and inappropriate

for a motion for summary judgment.

**NYCHA Statement**

  84. Colon alleges that during her tenure as Director, "the amount of time it took for

OPMD to renovate an apartment for a new tenant to move into decreased from 62 days to 48

days."  In fact, when Colon became the Director in June 2015, the renovation time (listed as Apt.

Prep. Time on the scorecard) had already decreased from 48.5 days in January 2015 to 34.3 days

in May and 26.3 days in June.  Colon claimed she had a "chart" that showed different numbers,

but no such "chart" was produced in discovery.  Lippman Dec., Exhibit 1 (Complaint at ¶ 22);

Exhibit 5 (Colon Dep. Tr. at 283:20-284:17); Exhibit 26 (Magnified OPMOM Balanced

Scorecard January-July 2015).

**Plaintiff's Response**

  84. Objection.  The statement is immaterial.  There was no issue with Plaintiff's

performance, as stated to her by Michael Kelly on the date she was demoted from her position as

Director of OPMOM: "This has nothing to do with your job performance.  You're doing a great

job." Florestal Dec., Exhibit 1 at 239:1-241:5.   The improvements in OPMOM's performance

were recognized by NYCHA's Board of Directors, Chair Shola Olatoye and General Manager

Michael Kelly.  Florestal Dec., Exhibits 19 and 20.

Objection. The statement is made for the purpose of undermining Plaintiff's credibility, which is inappropriate for a motion for summary judgment.

Objection. The use of the term "claims" is argumentative and inappropriate for a motion for summary judgment.

**NYCHA Statement**

85. In its early stages of operating with 18 units, OPMOM "received a disproportionate amount of money to operate." According to Kelly, "[S]o consequently service level response times and regarding the variety of the other issues that show on the balance[d] scoresheet, that there was improvement compared to the rest of the portfolio is not a surprise to [Kelly] considering that those 18 units were allocated a higher budget to manage than the rest of the portfolio," and improvements were "actually fueled or funded with a disproportionate amount of resources." Lippman Dec., Exhibit 8 (July 3, 2019 Kelly Dep. Tr. at 25:6-22); Clarke Dec. at ¶ 17.

**Plaintiff's Response**

85. Objection. The statement is immaterial.

Objection. There is no foundation for the statement.

**NYCHA Statement**

86. The initial OPMOM developments not only had "additional resources," but "additional manpower for the 18 sites. They had additional maintenance workers specifically." Lippman Dec., Exhibit 8 (July 3, 2019 Kelly Dep. Tr. at 43:22-44:6); Clarke Dec. at ¶¶ 15, 17.

**Plaintiff's Response**

86. Objection. The statement is immaterial.

Objection. There is no foundation for the statement.

40

**NYCHA Statement**

87.      The NYCHA performance metrics must be evaluated on a "cumulative average through the course of the year and on a year-to-year basis."  Lippman Dec., Exhibit 8 (July 3, 2019 Kelly Dep. Tr. at 11:20-12:18, 16:7-12, 17:15-21); Clarke Dec. at ¶ 16.

**Plaintiff's Response**

87.      Objection.  The statement is immaterial.  There was no issue with Plaintiff's performance, as stated to her by Michael Kelly on the date she was demoted from her position as Director of OPMOM: "This has nothing to do with your job performance.  You're doing a great job."  Florestal Dec., Exhibit 1 at 239:1-241:5.   The improvements in OPMOM's performance were recognized by NYCHA's Board of Directors, Chair Shola Olatoye and General Manager Michael Kelly.  Florestal Dec., Exhibits 19 and 20.

Objection.  The statement is made for the purpose of undermining Plaintiff's credibility, which is inappropriate for a motion for summary judgment.

Objection.  The use of the term "must" is argumentative and inappropriate in a Rule 56.1 statement.

Disputed.  NYCHA's Board of Directors recognized improvements in the OPMOM performance in less than annual parameters, including "the last four months," a period that coincided with Plaintiff's leadership of the OPMOM program, from June 1 through August 28, 2015.  Florestal Dec.,  Exhibits 17, 18, 19 and 20.

Lippman Dec., Exhibit 5 at 60.

**NYCHA Statement**

88.      Around August or September 2015, "there was a shift" in the way NYCHA approached maintenance work to provide better customer service.  Rather than having an

inspector identify the service need and then enter that information into a work order system, a maintenance worker would go to the apartment, "identify the work needed to be done," "carry with them a tool kit and replacement parts for as much as they could possibly do, and open and close a work order in realtime.  So on balance what used to take 20 or 30 days, would take an hour or two.  This was a shift not only for OPMOM, but the entire agency.  "That effort caused the service level [days] for the entire agency to drop dramatically during the latter part of 2015." Lippman Dec., Exhibit 8 (July 3, 2019 Kelly Dep. Tr. at 30:12-33:12).

**Plaintiff's Response**

88.     Objection.  The statement is immaterial to the extent it pertains to September 2015, after Plaintiff left OPMOM.

Not otherwise disputed.

**NYCHA Statement**

89.     Any improvement – or lack of improvement – in the scorecard metrics would not have been the only factor in Brian Clarke's evaluation of Colon's performance as Director of the OPMD.  Since Colon was Director of the OPMD for only three months, Clarke did not complete an annual performance review for her.  Clarke Dec. at ¶¶ 7, 13-15.

**Plaintiff's Response**

89.     Objection.  The statement is immaterial.  There was no issue with Plaintiff's performance, as stated to her by Michael Kelly on the date she was demoted from her position as Director of OPMOM: "This has nothing to do with your job performance.  You're doing a great job."  Florestal Dec., Exhibit 1 at 239:1-241:5.   The improvements in OPMOM's performance were recognized by NYCHA's Board of Directors, Chair Shola Olatoye and General Manager Michael Kelly.  Florestal Dec., Exhibits 19 and 20.

Objection.  The statement is made for the purpose of undermining Plaintiff's credibility, which is inappropriate for a motion for summary judgment.

**NYCHA Statement**

90.     In October 2014, NYCHA received an email from Gloria Cruz, the Former Speaker's staff member, regarding a complaint from a Mill Brook resident that he felt "like he's being bullied by management because he cannot speak English.  This issue is making him sick and upset please can you help us with this issue."  Colon was unaware of this complaint. Lippman Dec., Exhibit 5 (Colon Dep. Tr. at 116:16-117:17); Exhibit 28 (October 30, 2014 Email).

**Plaintiff's Response**

90.     Objection.  Exhibit 28 contains inadmissible hearsay.

**NYCHA Statement**

91.     In the spring of 2015, Marcela Medina, the State Legislative Affairs Officer in the NYCHA Intergovernmental Department whose responsibilities included interacting with elected officials, learned from one of the Former Speaker's staff members, Diana Ayala, that during a tenant association meeting, Williams told the Mill Brook Houses residents that she did not want to hear any "mira mira talk."  Many, if not most, of the Mill Brook residents were Hispanic, and some had limited or no English language proficiency.  Williams' no "mira mira talk" comment was offensive and inappropriate.  Medina's supervisor, Brian Honan, was also made aware of this comment.  Declaration of Marcela Medina ("Medina Dec.") at ¶ 4; Lippman Dec., Exhibit 16 (Deposition Transcript of Marcela Medina ("Medina Dep. Tr.") at 6:11-8:13, 10:3-24).

**Plaintiff's Response**

91.     Objection.  Any reference to "'mira mira' talk" or "meda meda" is speculative and inadmissible hearsay.

Disputed.  The alleged "'mira mira' talk" or "meda meda" remark was never confirmed by NYCHA.  Luis Ponce, who first told Plaintiff about this alleged remark, "couldn't tell me a time, a place, a location or who allegedly made the remark."  Lippman Dec., Exhibit 5 at 110:18-111:8.

**NYCHA Statement**

92.     On May 14, 2015, Brian Honan, the Director of State and City Legislative Affairs for NYCHA and Marcela Medina's supervisor, emailed the Chair stating, "The manager at Mill Brook is making it very difficult for [the Former Speaker] to support OPMOM. Yesterday I heard from three of her staff members who complained about a recent meeting at the development.  The manager told residents that OPMOM makes it easier for her to evict tenants, so people need to pay their rent (she said that she would evict people for owing as little as 35 dollars); and she make [sic] a very insensitive remark about Spanish speaking residents." Lippman Dec., Exhibit 27 (May 14, 2015 Email Chain Between Brian Honan and Shola Olatoye); Exhibit 16 (Medina Dep. Tr. at 17:11-16).

**Plaintiff's Response**

92.     Objection.  Exhibit 27 contains inadmissible hearsay.

Objection.  Any reference to "'mira mira' talk" or "meda meda" is speculative and inadmissible hearsay.

Disputed.  The alleged "'mira mira' talk" or "meda meda" remark was never confirmed by NYCHA.  Luis Ponce, who first told Plaintiff about this alleged remark, "couldn't

tell me a time, a place, a location or who allegedly made the remark.  Lippman Dec., Exhibit 5 at

110:18-111:8.  There is likewise no confirmation about any of the other alleged remarks by the

manager of Mill Brook Houses.

**NYCHA Statement**

93.      Luis Ponce, a NYCHA Senior Vice President, told Colon that Williams had told

the Mill Brook Houses residents "no meda meda speaking in here."  Lippman Dec., Exhibit 5

(Colon Dep. Tr. at 110:18-111:4; 185:9-186-8, 187:2-7, 190:15-21, 198:2-6).

**Plaintiff's Response**

93.      Objection.  Any reference to "'mira mira' talk" or "meda meda" is speculative

and inadmissible hearsay.

Disputed.  The alleged "'mira mira' talk" or "meda meda" remark was never

confirmed by NYCHA.  Luis Ponce, who first told Plaintiff about this alleged remark, "couldn't

tell me a time, a place, a location or who allegedly made the remark.  Lippman Dec., Exhibit 5 at

110:18-111:8.

**NYCHA Statement**

94.      Colon did not know at any time during her NYCHA employment that the office

of the Former Speaker had received complaints about Williams' treatment of Mill Brook Houses

residents.  Lippman Dec., Exhibit 5 (Colon Dep. Tr. at 105:23-106:4).

**Plaintiff's Response**

94.      Not disputed.

**NYCHA Statement**

95.      The Former Speaker requested a meeting with NYCHA "based on complaints

from constituents that their needs were not being met" by NYCHA.  The Former Speaker "got a

lot of constituents and residents from Mill Brook that were coming physically to [her] office to

ask for [their] intervention, because they were complaining that Spanish speaking residents that

their issues were not being addressed by the management office at Mill Brook.  So, the staff

raised this as a growing issue; and so we kept – the staff kept asking NYCHA to address these

concerns, and at that point, no changes were happening.  So, [the Former Speaker] requested a

meeting with NYCHA."  Lippman Dec., Exhibit 12 (Mark-Viverito Dep. Tr. at 15:6-24); Exhibit

28 (October 30, 2014 Email; List of Complaints Made to the Former Speaker's Office).

**Plaintiff's Response**

95.    Objection.  The cited testimony and Exhibit 28 constitute inadmissible hearsay.

Disputed.  The Speaker's Office never provided any information in response to

Plaintiff's discovery requests about the alleged complaints other than a refrigerator complaint.

Florestal Dec., Exhibit 1 at 137:14-138:17; Lippman Dec., Exhibit 5 at 153:11-153:24.  James

Artis testified that Gloria Cruz did not appear to have any documents in her hands at the meeting

that pertained to Mill Brook Houses.  Florestal Dec., Exhibit 4 at 45:24-47:8.  Plaintiff asked the

Former Speaker to produce copies of all complaints in the Former Speaker's files relating to Mill

Brook Houses.  The only document produced was Exhibit 28, which as noted above contains

inadmissible hearsay.

**NYCHA Statement**

96.    Gloria Cruz, who managed constituent services in the Former Speaker's office,

made it clear to the Former Speaker that there were many constituents who were Spanish-

speaking residents of Mill Brook, who were coming to the Former Speaker's office with

concerns regarding repairs or other issues.  These Spanish-speaking Mill Brook residents were

"not feeling welcome in the management office" and were having a hard time communicating

because the management office did not have a bilingual employee.  These Spanish-speaking residents "would come to [the Former Speaker's office], knowing that [they] have a fully bilingual staff."  The Spanish-speaking residents at Mill Brook were "not able to communicate effectively with the NYCHA management office" due to a "language barrier."  Lippman Dec., Exhibit 12 (Mark-Viverito Dep. Tr. at 16:12-17:2, 18:25-19:12, 37:12-38:3, 43:19-22); Exhibit 28 (October 30, 2014 Email; List of Complaints Made to the Former Speaker's Office).

**Plaintiff's Response**

96.     Objection.  The cited testimony and Exhibit 28 constitute inadmissible hearsay.

Objection.  The statement omits critical testimony.  The management office at Mill Brook Houses had a bilingual staff, including a superintendent and a supervisor of caretakers that spoke Spanish and who could be called upon to translate any issues raised by residents.  Lippman Dec., Exhibit 5 at 136:22-137:13, 153:6-153:8, Exhibit 6 at 211:4-213:9, 224:14-224:18; Florestal Dec., Exhibit 4 at 31:13-33:13; Marcus Dec., Exhibit H at 85.

Disputed.  The Speaker's Office never provided any information in response to Plaintiff's discovery requests about the alleged complaints other than a refrigerator complaint.  Florestal Dec., Exhibit 1 at 137:14-138:17; Lippman Dec., Exhibit 5 at 153:11-:24.  James Artis testified that Gloria Cruz did not appear to have any documents in her hands at the meeting that pertained to Mill Brook Houses.  Florestal Dec., Exhibit 4 at 45:24-47:8.  Plaintiff asked the Former Speaker to produce copies of all complaints in the Former Speaker's files relating to Mill Brook Houses.  The only document produced was Exhibit 28, which as noted above contains inadmissible hearsay.

**NYCHA Statement**

97.     Spanish-speaking Mill Brook Houses residents "felt that they were made to feel ashamed if they did not speak English.  And that was consistent.  It was not one or two occurrences.  This is reason for [the Former Speaker's] intervention; it was becoming a very prominent feature, and [the Former Speaker's office] were becoming a de facto NYCHA office for Mill Brook – for the Spanish-speaking residents.  So, that was going to be unsustainable, and as a representative, [the Former Speaker] had to advocate for [her] constituents that were making those expressions.  So, the meeting [with NYCHA] was to share what [the Former Speaker's office's] experiences had been, and obviously, since the management office was not addressing those concerns, that was the reason" that the Former Speaker wanted to meet with NYCHA. "[A]gain, what was NYCHA going to do to . . . about the lack of responsiveness?  What were they going to do about it?"  Lippman Dec., Exhibit 12 (Mark-Viverito Dep. Tr. at 18:12-21, 19:12-20, 22:2-27:2, 27:11-22, 36:13-37:11); Exhibit 28 (October 30, 2014 Email; List of Complaints Made to the Former Speaker's Office).

**Plaintiff's Response**

97.     Objection.  The cited testimony and Exhibit 28 constitute inadmissible hearsay.

Disputed.  The Speaker's Office never provided any information in response to Plaintiff's discovery requests about the alleged complaints other than a refrigerator complaint. Florestal Dec., Exhibit 1 at 137:14-138:17; Lippman Dec., Exhibit 5 at 153:11-:24.  James Artis testified that Gloria Cruz did not appear to have any documents in her hands at the meeting that pertained to Mill Brook Houses.  Florestal Dec., Exhibit 4 at 45:24-47:8.  Plaintiff asked the Former Speaker to produce copies of all complaints in the Former Speaker's files relating to Mill

Brook Houses.  The only document produced was Exhibit 28, which as noted above contains inadmissible hearsay.

## NYCHA Statement

98.     The constituents from Mill Brook Houses who were complaining to the Former Speaker's office were "Spanish-speaking."  The Former Speaker has never "indicated what their background, race, or their ethnicity is.  Those that came to [the Former Speaker's] office that were Spanish-dominant and Spanish-speaking, had concerns.  [The Former Speaker's] questions to NYCHA [in the meeting] were constantly about Spanish-speaking, Spanish-dominant residents, what are you doing to address their concerns."  Lippman Dec., Exhibit 12 (Mark-Viverito Dep. Tr. at 33:19-34:19); Exhibit 28 (October 30, 2014 Email; List of Complaints Made to the Former Speaker's Office).

## Plaintiff's Response

98.     Objection.  The cited testimony and Exhibit 28 constitute inadmissible hearsay.

Disputed.  The Speaker's Office never provided any information in response to Plaintiff's discovery requests about the alleged complaints other than a refrigerator complaint. Florestal Dec., Exhibit 1 at 137:14-138:17; Lippman Dec., Exhibit 5 at 153:11-:24.  James Artis testified that Gloria Cruz did not appear to have any documents in her hands at the meeting that pertained to Mill Brook Houses.  Florestal Dec., Exhibit 4 at 45:24-47:8.  Plaintiff asked the Former Speaker to produce copies of all complaints in the Former Speaker's files relating to Mill Brook Houses.  The only document produced was Exhibit 28, which as noted above contains inadmissible hearsay.

**NYCHA Statement**

99.     The Former Speaker's staff was constantly communicating with NYCHA management at Mill Brook to address the concerns of the residents that were coming to them. Constituents were "consistently coming to [the Former Speaker's office] and saying that there was a challenge that they were having with the management office.  The meeting was for [NYCHA] to hear us out, to then process that information, and address the concerns that were being raised.  That's what [the Former Speaker does] as an advocate.  That's what the [Former Speaker does] as a City Council member: Representation of [her] constituents."  Lippman Dec., Exhibit 12 (Mark-Viverito Dep. Tr. at 35:2-36:12); Exhibit 28 (October 30, 2014 Email; List of Complaints Made to the Former Speaker's Office).

**Plaintiff's Response**

99.     Objection.  The cited testimony and Exhibit 28 constitute inadmissible hearsay.

Disputed.  The Speaker's Office never provided any information in response to Plaintiff's discovery requests about the alleged complaints other than a refrigerator complaint. Florestal Dec., Exhibit 1 at 137:14-138:17; Lippman Dec., Exhibit 5 at 153:11-:24.  James Artis testified that Gloria Cruz did not appear to have any documents in her hands at the meeting that pertained to Mill Brook Houses.  Florestal Dec., Exhibit 4 at 45:24-47:8.  Plaintiff asked the Former Speaker to produce copies of all complaints in the Former Speaker's files relating to Mill Brook Houses.  The only document produced was Exhibit 28, which as noted above contains inadmissible hearsay.

**NYCHA Statement**

100.     Because the Spanish-speaking Mill Brook Houses residents complained to the Speaker's office that they were unable to communicate with the staff in the Mill Brook

management office, the Manager of Mill Brook would not have received these complaints.  The

Former Speaker's office was "now serving as a de facto management office, racking up the

complaints from the constituents, and having to express those concerns to the management

office," and that was not the role of the Former Speaker's office.  Lippman Dec., Exhibit 12

(Mark-Viverito Dep. Tr. at 42:10-43:5, 45:5-24); Exhibit 28 (October 30, 2014 Email; List of

Complaints Made to the Former Speaker's Office).

**Plaintiff's Response**

100.     Objection.  The cited testimony and Exhibit 28 constitute inadmissible hearsay.

Disputed.  The Speaker's Office never provided any information in response to

Plaintiff's discovery requests about the alleged complaints other than a refrigerator complaint.

Florestal Dec., Exhibit 1 at 137:14-138:17; Lippman Dec., Exhibit 5 at 153:11-:24.  James Artis

testified that Gloria Cruz did not appear to have any documents in her hands at the meeting that

pertained to Mill Brook Houses.  Florestal Dec., Exhibit 4 at 45:24-47:8.  Plaintiff asked the

Former Speaker to produce copies of all complaints in the Former Speaker's files relating to Mill

Brook Houses.  The only document produced was Exhibit 28, which as noted above contains

inadmissible hearsay.

**NYCHA Statement**

101.     Williams was not aware that in the spring of 2015, the Former Speaker's office

received complaints that Williams had been disrespectful to Spanish speaking tenants.  Lippman

Dec., Exhibit 6 (Williams Dep. Tr. at 159:7-18).

**Plaintiff's Response**

101.     Not disputed.

**NYCHA Statement**

102.     Williams concedes that it makes sense that residents who felt that she had been disrespectful to them would go to the Former Speaker's office with complaints instead of to her. However, Williams thinks that the Former Speaker's office should have called her and told her "if you said that, tone it down."  Lippman Dec., Exhibit 6 (Williams Dep. Tr. at 159:19-160:3).

**Plaintiff's Response**

102.     Objection.  The use of the term "concedes" is argumentative and is inappropriate in a Rule 56.1 statement.

     Objection.  The statement is made for the purpose of undermining Plaintiff's credibility, which is inappropriate for a motion for summary judgment.

**NYCHA Statement**

103.     NYCHA's Intergovernmental Office handled the arrangements for the meeting with the Former Speaker.  One of the core functions of the Intergovernmental Department "was to assist elected officials with any issue, case, concern they may have going forward."  Lippman Dec., Exhibit 10 (June 13, 2019 Clarke Dep. Tr. at 41:19-23); Exhibit 16 (Medina Dep. Tr. at 14:2-7).

**Plaintiff's Response**

103.     Not disputed.

**NYCHA Statement**

104.     On July 29, 2015, Brian Honan emailed Brian Clarke to remind him that the Former Speaker wanted to meet with the Mill Brook Manager the following day and asked him to make sure the Manager was there.  Brian Clarke responded that Colon and Regional Asset Manager James Artis would also attend the meeting.  Colon forwarded the email chain to

Williams.  Lippman Dec., Exhibit 29 (July 29 and July 30, 2015 Email Chain Regarding Meeting with Former Speaker); Exhibit 10 (June 13, 2019 Clarke Dep. Tr. at 132:6-20).

**Plaintiff's Response**

104.    Not disputed.

**NYCHA Statement**

105.    In response to Brian Honan's email regarding the July 30, 2015 meeting with the Former Speaker, Brian Clarke emailed Honan that he, James Artis, and Sibyl Colon would attend the meeting.  Clarke recalls several reasons for the July 30, 2015 meeting with the Former Speaker: During a tenant association meeting at Mill Brook Houses, "tenants were not allowed to speak in the language they were most comfortable speaking.  There were customer services issues with the office, and there were also maintenance issues with the property."  Lippman Dec., Exhibit 10 (June 13, 2019 Clarke Dep. Tr. at 42:5-43:5, 134:20-135:23); Exhibit 29 (July 29 and July 30, 2015 Email Chain Between Brian Clarke, Brian Honan, James Artis, Sibyl Colon, and Williams Regarding Meeting with Former Speaker).

**Plaintiff's Response**

105.    Objection.  The sentences beginning with the words "Clarke recalls" are based on speculation and inadmissible hearsay.

Disputed.  The Speaker's Office never provided any information in response to Plaintiff's discovery requests about the alleged complaints other than a refrigerator complaint.  Florestal Dec., Exhibit 1 at 137:14-138:17; Lippman Dec., Exhibit 5 at 153:11-:24.  James Artis testified that Gloria Cruz did not appear to have any documents in her hands at the meeting that pertained to Mill Brook Houses.  Florestal Exhibit 3 at 45:24-47:8.  Plaintiff asked the Former Speaker to produce copies of all complaints in the Former Speaker's files relating to Mill Brook

Houses.  The only document produced was Exhibit 28, which as noted above contains inadmissible hearsay.

No dispute as to the first sentence of the statement.

**NYCHA Statement**

106.     Brian Clarke recalls, "Specifically at a [Mill Brook Houses] tenant association meeting that was attended by the manager [Williams], she – the way that I understood it, she told folks not to speak to her or try to communicate with her in Spanish.  I think she said something like 'no mira, mira, mira here,' kind of in a derogatory way, and an offensive manner."  Lippman Dec., Exhibit 10 (June 13, 2019 Clarke Dep. Tr. at 135:24-136:13); Clarke Dec. at ¶ 19.

**Plaintiff's Response**

106.     Objection.  The statement is based on speculation and inadmissible hearsay.

Disputed.  The alleged "'mira mira' talk" or "meda" remark was never confirmed by NYCHA.  Luis Ponce, who first told Plaintiff about this alleged remark, "couldn't tell me a time, a place, a location or who allegedly made the remark.  Lippman Dec., Exhibit 5 at 110:18-111:8.

Additionally, the Speaker's Office never provided any information in response to Plaintiff's discovery requests about the alleged complaints other than a refrigerator complaint. Florestal Dec., Exhibit 1 at 137:14-138:17; Lippman Dec., Exhibit 5 at 153:11-:24.  James Artis testified that Gloria Cruz did not appear to have any documents in her hands at the meeting that pertained to Mill Brook Houses.  Florestal Dec., Exhibit 4 at 45:24-47:8.  Plaintiff asked the Former Speaker to produce copies of all complaints in the Former Speaker's files relating to Mill Brook Houses.  The only document produced was Exhibit 28, which as noted above contains inadmissible hearsay.

**NYCHA Statement**

107.     While he was a RAM, Artis supervised five developments in the Bronx,

including Mill Brook Houses.  Artis was responsible for "supervising the managers at those

developments and overseeing those developments."  Lippman Dec., Exhibit 14 (Artis Dep. Tr. at

9:16-10:14).

**Plaintiff's Response**

107.     Not disputed.

**NYCHA Statement**

108.     Colon did not know the purpose of the meeting and did not try to find out other

than calling Clarke, who was unavailable.  Lippman Dec., Exhibit 5 (Colon Dep. Tr. at 117:18-

119:8, 121:17-122:14, 124:14-17).

**Plaintiff's Response**

108.     Not disputed.

**NYCHA Statement**

109.     Williams did not know and did not ask anyone the purpose of the meeting.

Lippman Dec., Exhibit 6 (Williams Dep. Tr. at 190:16-191:8).

**Plaintiff's Response**

109.     Not disputed.

**NYCHA Statement**

110.     Marcela Medina attended the July 30, 2015 meeting at the office of the Former

Speaker and took notes.  Colon and Williams do not know who Medina is.  Lippman Dec.,

Exhibit 16 (Medina Dep. Tr. at 17:11-13, 20:17-21:21, 65:23-25); Declaration of Marcela

Medina ("Medina Dec.") at ¶ 3; Exhibit 30 (Marcela Medina's Notes); Exhibit 5 (Colon Dep. Tr. at 129:3-6); Exhibit 6 (Williams Dep. Tr. at 193:10-194:2).

**Plaintiff's Response**

110.    Not disputed.

**NYCHA Statement**

111.    Marcela Medina attended the July 30, 2015 meeting with her supervisor Brian Honan.  Medina recalls that the Former Speaker, Brian Honan, James Artis, Colon, the tenant association president Princella Jamerson, Allison Williams, and a staff member from the Former Speaker's office were present at the meeting.  Brian Clarke attended the meeting via telephone. Lippman Dec., Exhibit 16 (Medina Dep. Tr. at 17:11-13, 20:17-21:21, 35:15-36:9).

**Plaintiff's Response**

111.    Not disputed.

**NYCHA Statement**

112.    Michael Kelly did not attend the July 30, 2015 meeting with the Former Speaker. Lippman Dec., Exhibit 8 (July 3, 2019 Kelly Dep. Tr. at 54:9-55:2).

**Plaintiff's Response**

112.    Not disputed.

**NYCHA Statement**

113.    During the July 30, 2015 meeting, the Former Speaker expressed that she was not happy with the language access barriers NYCHA residents were encountering, and there were long waits for a translator through the language bank.  Lippman Dec., Exhibit 16 (Medina Dep. Tr. at 25:10-26:3, 46:19-47:8); Exhibit 30 (Marcela Medina's Notes); Medina Dec. at ¶ 3.

**Plaintiff's Response**

113.     Objection.  The statement is based on speculation and inadmissible hearsay.

Disputed.  The alleged remark was never confirmed by NYCHA.  Luis Ponce, who first told Plaintiff about this alleged remark, "couldn't tell me a time, a place, a location or who allegedly made the remark.  Lippman Dec., Exhibit 5 at 110:18-111:8.

Additionally, the Speaker's Office never provided any information in response to Plaintiff's discovery requests about the alleged complaints other than a refrigerator complaint. Florestal Dec., Exhibit 1 at 137:14-138:17; Lippman Dec., Exhibit 5 at 153:11-:24.  James Artis testified that Gloria Cruz did not appear to have any documents in her hands at the meeting that pertained to Mill Brook Houses.  Florestal Dec., Exhibit 4 at 45:24-47:8.  Plaintiff asked the Former Speaker to produce copies of all complaints in the Former Speaker's files relating to Mill Brook Houses.  The only document produced was Exhibit 28, which as noted above contains inadmissible hearsay.

**NYCHA Statement**

114.     During the July 30, 2015 meeting, the Former Speaker expressed that she was not happy with the language access barriers NYCHA residents were encountering, and there were long waits for a translator through the language bank.  Lippman Dec., Exhibit 16 (Medina Dep. Tr. at 25:10-26:3, 46:19-47:8); Exhibit 30 (Marcela Medina's Notes); Medina Dec. at ¶ 3.

**Plaintiff's Response**

114.     Objection.  The statement is based on speculation and inadmissible hearsay.

**NYCHA Statement**

115. The Former Speaker "spoke about various hurdles that NYCHA residents have experienced," such as, "Elderly residents having to wait in the management office for hours before someone could assist them in their language," and "Residents taking off from work because they were not clear whether somebody was going to visit their unit to make a repair, or whatever issue they may have had, to address any issue they may have had due to a language barrier." Lippman Dec., Exhibit 16 (Medina Dep. Tr. at 28:3-15); Exhibit 30 (Marcela Medina's Notes); Medina Dec. at ¶ 3.

**Plaintiff's Response**

115.      Objection.  The statement is based on speculation and inadmissible hearsay.

Disputed.  The Speaker's Office never provided any information in response to Plaintiff's discovery requests about the alleged complaints other than a refrigerator complaint. Florestal Dec., Exhibit 1 at 137:14-138:17; Lippman Dec., Exhibit 5 at 153:11-:24.  James Artis testified that Gloria Cruz did not appear to have any documents in her hands at the meeting that pertained to Mill Brook Houses.  Florestal Dec., Exhibit 4 at 45:24-47:8.  Plaintiff asked the Former Speaker to produce copies of all complaints in the Former Speaker's files relating to Mill Brook Houses.  The only document produced was Exhibit 28, which as noted above contains inadmissible hearsay.

**NYCHA Statement**

116.      During the meeting, the tenant association president at Mill Brook Houses, Princella Jamerson indicated that she was "concerned that residents who did not speak English primarily were not getting the assistance they required."  Lippman Dec., Exhibit 16 (Medina Dep. Tr. at 36:3-37:4); Exhibit 30 (Marcela Medina's Notes); Medina Dec. at ¶ 3.

**Plaintiff's Response**

116.   Objection.  The statement is based on speculation and inadmissible hearsay.

Disputed.

The Speaker's Office never provided any information in response to Plaintiff's discovery requests about the alleged complaints other than a refrigerator complaint.  Florestal Dec., Exhibit 1 at 137:14-138:17; Lippman Dec., Exhibit 5 at 153:11-:24.  James Artis testified that Gloria Cruz did not appear to have any documents in her hands at the meeting that pertained to Mill Brook Houses.  Florestal Dec., Exhibit 4 at 45:24-47:8.  Plaintiff asked the Former Speaker to produce copies of all complaints in the Former Speaker's files relating to Mill Brook Houses.  The only document produced was Exhibit 28, which as noted above contains inadmissible hearsay.

**NYCHA Statement**

117.   An overview of OPMOM was also discussed during the July 30, 2015 meeting with the Former Speaker.  Lippman Dec., Exhibit 16 (Medina Dep. Tr. at 44:11-45:5, 48:22-49:18); Exhibit 30 (Marcela Medina's Notes); Medina Dec. at ¶ 3.

**Plaintiff's Response**

117.   Objection.  The statement is based on speculation and inadmissible hearsay.

Not otherwise disputed.

**NYCHA Statement**

118.   During the July 30, 2015 meeting, the Former Speaker also noted that Mill Brook Houses staff was "rude" to the Mill Brook residents.  Lippman Dec., Exhibit 16 (Medina Dep. Tr. at 46:2-7); Exhibit 30 (Marcela Medina's Notes); Medina Dec. at ¶ 3.

**Plaintiff's Response**

118.    Objection.  The statement is based on speculation and inadmissible hearsay.

**NYCHA Statement**

119.    During the July 30, 2015 meeting, the Former Speaker inquired whether NYCHA "ever assigned staff based on language access needs to the developments where [NYCHA] had data on the languages spoken by the residents, and she specifically said, 'for example, housing assistant.'"  Lippman Dec., Exhibit 16 (Medina Dep. Tr. at 49:19-50:3 and errata sheet); Exhibit 30 (Marcela Medina's Notes); Medina Dec. at ¶ 3.

**Plaintiff's Response**

119.    Objection.  The statement is based on speculation and inadmissible hearsay.

**NYCHA Statement**

120.    In response to the Former Speaker's inquiry, "NYCHA stated that information is collected on the language that residents speak.  And [the Former Speaker] brought up a suggestion, which was if NYCHA has these stats, is it possible when redirecting staff or hiring new staff, to hire positions within the management office where the staffing or the staff person could speak the language – any of the languages needed within these developments.  Again, making a connection between NYCHA having statistics and making an effort."  Lippman Dec., Exhibit 16 (Medina Dep. Tr. at 53:12-21); Exhibit 30 (Marcela Medina's Notes); Medina Dec. at ¶ 3.

**Plaintiff's Response**

120.    Objection.  The statement is based on speculation and inadmissible hearsay.

**NYCHA Statement**

121.     Medina thought that a bilingual Housing Assistant "would be a great role" at Mill Brook that "meets the resident's [sic] language needs."  Housing Assistants interact with residents on a "constant basis."  Lippman Dec., Exhibit 16 (Medina Dep. Tr. at 50:4-9, 53:22-25); Exhibit 30 (Marcela Medina's Notes; July 31, 2015 Email Chain Between Marcela Medina and Jennifer Montalvo); Medina Dec. at ¶¶ 3-4; Exhibit 31 (Housing Assistant (Bilingual) Job Specification).

**Plaintiff's Response**

121.     Objection.  The statement is based on speculation and inadmissible hearsay.

Objection.  Ms. Medina's opinion is not material.

**NYCHA Statement**

122.     "[U]nder OPMOM, one of the interesting good things of the program . . . was that developments could hire staff to meet all sorts of needs, and this went from staff at the management office to staff on the grounds to the staff that dealt with what [NYCHA] call[s] skill[ed] trades. . . and one of the takeaways from the [July 30, 2015] meeting was that NYCHA would look into securing an additional line for someone within the management office who spoke Spanish to be hired.  Lippman Dec., Exhibit 16 (Medina Dep. Tr. at 59:24-60:10).

**Plaintiff's Response**

122.     Objection.  The statement is based on speculation and inadmissible hearsay. Additionally, no foundation is provided to establish any basis for Medina's purported knowledge about the OPMOM program.

**NYCHA Statement**

123.     Bilingual Housing Assistant is a civil service job title.  Oral proficiency in a foreign language must be demonstrated by passing a test.  Lippman Dec., Exhibit 31 (Housing Assistant (Bilingual) Job Specification); Exhibit 5 (Colon Dep. Tr. at 145:2-147:7).

**Plaintiff's Response**

123.     Not disputed.

**NYCHA Statement**

124.     The meeting concluded "in NYCHA agreeing to look at the general language access policy.  For Mill Brook specifically, it was to see about a Spanish bilingual line for someone in the management office."  Lippman Dec., Exhibit 16 (Medina Dep. Tr. at 69:9-19 and errata sheet).

**Plaintiff's Response**

124.     Objection.  The statement is based on speculation and inadmissible hearsay.

**NYCHA Statement**

125.     NYCHA could not create a new, budgeted position at Mill Brook for a bilingual Housing Assistant; there had to be a vacancy in the position.  After Janet Abrahams became Vice President of the OPMD, the OPMD was no longer under the purview of Brian Clarke.  It would then have been the responsibility of the Mill Brook Houses Property Manager or RAM to request a bilingual Housing Assistant to fill any Housing Assistant vacancy.  Clarke Dec. at ¶¶ 12, 21.

**Plaintiff's Response**

125.     Objection. The statement is based on speculation, and is without foundation.

**NYCHA Statement**

126.     Brian Clarke denies that the Former Speaker or anyone else requested that he "remove the manager at Mill Brook Houses," and the Former Speaker never requested a "Spanish manager" at Mill Brook Houses.  Lippman Dec., Exhibit 10 (June 13, 2019 Clarke Dep. Tr. at 136:22-137:4); Clarke Dec. at ¶¶ 18, 20.

**Plaintiff's Response**

126.     Disputed.

The Former Speaker demanded a "Spanish manager" at Mill Book Houses. Lippman Dec., Exhibit 5 at 135:24-137:20.  Plaintiff, Allison Williams and James Artis met directly after the meeting at the Former Speaker's office and agreed that what the Former Speaker requested was "racist," i.e., she wanted "a Spanish manager," and that "it was heartbreaking that I [Plaintiff] was being directed to discriminate."  Florestal Dec., Exhibit 1 at 156:4-158:6, Exhibit 4 at 37:15-39:4.

**NYCHA Statement**

127.     James Artis recalls that during the July 30, 2015 meeting with the Former Speaker, the Former Speaker asked what NYCHA does when there is a language barrier at a development between the management office and the residents.  Artis responded that "when we have a language barrier, what we normally do is we have what is called a language bank where we contact the language bank and they provide us with a Spanish speaking person over the phone."  Lippman Dec., Exhibit 14 (Artis Dep. Tr. at 25:16-19, 29:24-30:11).

**Plaintiff's Response**

127.     Not disputed.

**NYCHA Statement**

128.    James Artis recalls that during the July 30, 2015 meeting, the Former Speaker wasn't "yelling," "but she was excited and passionate about the fact that that [the language bank] was unacceptable and she was adamant about there should be a Spanish speaking individual in the office."  Lippman Dec., Exhibit 14 (Artis Dep. Tr. at 30:19-23).

**Plaintiff's Response**

128.    Disputed.  As testified by Plaintiff, the Former Speaker "slammed her fist," "she said that she wanted a Spanish manager about three times," and was "very hostile, very angry, again screamed 'that's unacceptable I want a Spanish manager.'"  Florestal Dec., Exhibit 1 at 135:24-137:20.  As testified by James Artis, "the way she addressed me, she was being disrespectful. . . Tone and her basic demeanor . . . wasn't nice. . .  Her tone and manner was biting, sharp and she just . . . dismissed me."  *Id.* Exhibit 4 at 33:23-35:8, 37:15-39:4.

**NYCHA Statement**

129.    James Artis recalls that at no time during the July 30, 2015 meeting with the Former Speaker did "anybody request a Spanish manager."  "What was requested was a Spanish speaking – somebody that spoke Spanish."  Lippman Dec., Exhibit 14 (Artis Dep. Tr. at 26:24-27:3).

**Plaintiff's Response**

129.    Disputed.  The Former Speaker "slammed her fist," "she said that she wanted a Spanish manager about three times," and was "very hostile, very angry, again screamed 'that's unacceptable I want a Spanish manager.'"  Florestal Dec., Exhibit 1 at 135:24-137:20, Exhibit 4 at 37:15-39:4.

**NYCHA Statement**

130.     The Former Speaker recalls that Gloria Cruz and Diana Ayala from her staff and Princella Jamerson attended the meeting.  Lippman Dec., Exhibit 12 (Mark-Viverito Dep. Tr. at 15:25-17:2, 18:4-8).

**Plaintiff's Response**

130.     Not disputed.

**NYCHA Statement**

131.     The Former Speaker was not previously aware that NYCHA used a language bank and does not recall anyone raising the language bank during the July 30, 2015 meeting. However, the Former Speaker believes that "the use of a language bank is not an effective way to communicate with constituents."  This is because "you are not physically with the room in the person [sic], and a lot of nuance is left.  It's leaving it up to the translator to figure things out. It's not an effective way of providing services to the constituents of New York City."  Lippman Dec., Exhibit 12 (Mark-Viverito Dep. Tr. at 21:3-8, 29:11-15, 38:13-39:4).

**Plaintiff's Response**

131.     Not disputed.

**NYCHA Statement**

132.     Colon recalls that the Former Speaker, James Artis, Allison Williams, the Former Speaker's aide Gloria Cruz, the Tenant Association President Princella Jamerson, and a "young Hispanic male" attended the meeting, and Brian Clarke attended via teleconference. Colon assumed the "young Hispanic male" was Hispanic "based on his appearance."  Princella Jamerson is African American.  Lippman Dec., Exhibit 5 (Colon Dep. Tr. at 128:7-129:2, 130:11-15, 131:8-19, 155:12-13); Exhibit 10 (June 13, 2019 Clarke Dep. Tr. at 132:21-25).

**Plaintiff's Response**

132.     Disputed.   The reference to a young Hispanic male in the statement distorts Plaintiff's testimony.  Plaintiff concluded that she didn't know if it was a Hispanic male, and further stated that her reasons for thinking it might be a Hispanic male included being married to a Puerto Rican for 18 years and having a Hispanic son.  Lippman Dec., Exhibit 5 at 128:14-129:2

         Not otherwise disputed.

**NYCHA Statement**

133.     Colon claims that during the July 30, 2015 meeting, the Former Speaker "said that she wanted a Spanish manager [at Mill Brook Houses] about three times."  Lippman Dec., Exhibit 5 (Colon Dep. Tr. at 136:1-3, 136:10-21, 137:15-16, 139:8-10, 190:1-6); Exhibit 1 (Complaint at ¶¶ 29, 31-32).

**Plaintiff's Response**

133.     Objection.  The use of the term "claims" is argumentative and inappropriate for a motion for summary judgment.

         Not otherwise disputed.

**NYCHA Statement**

134.     The Colon Complaint, which is verified, alleges that at the outset of the July 30, 2015 meeting, the Former Speaker asked, "How are your handling your Spanish speaking residents at Millbrook Houses?"  However, Colon testified at her deposition that the Former Speaker commenced the meeting by asking Williams, "What are you doing for the Spanish residents at Mill Brook Houses."  Lippman Dec., Exhibit 1 (Complaint at ¶ 26); Exhibit 5 (Colon Dep. Tr. at 132:3-10).

**Plaintiff's Response**

134.    Objection.  This is a blatant effort to impugn Plaintiff's credibility by attempting to contrast two innocuous assertions and is inappropriate for a motion for summary judgment.

Not otherwise disputed.

**NYCHA Statement**

135.    Colon concedes that during the July 30, 2015 meeting, Artis asked the Former Speaker "are there issues with translations services here" and mentioned the language bank. Artis also confirmed with Williams that Williams used the language bank for translation services.   Lippman Dec., Exhibit 5 (Colon Dep. Tr. at 135:14-23).

**Plaintiff's Response**

135.    Objection.  The use of the term "concedes" is argumentative and inappropriate on a motion for summary judgment.

Not otherwise disputed.

**NYCHA Statement**

136.    The language bank is staffed by volunteer NYCHA employees who are certified translators.  In person translation services are available only by appointment.  Lippman Dec., Exhibit 5 (Colon Dep. Tr. at 133:10-135:13).

**Plaintiff's Response**

136.    Objection.  The manner of operation of the NYCHA language bank is immaterial.  The material facts are that NYCHA policy provides that the language bank should be used if translation services are required, and the Speaker found this policy unacceptable. Lippman Dec., Exhibit 5 at 132:3-137:20; Exhibit 9 at 38:4-39:10; Florestal Dec., Exhibit 4 at 27:5-27:11, 28:9-32:13.

**NYCHA Statement**

137.     Colon never used the NYCHA language bank during her tenure working at

NYCHA.  Lippman Dec., Exhibit 5 (Colon Dep. Tr. at 135:10-13).

**Plaintiff's Response**

137.     Objection.  Plaintiff's use of the NYCHA language bank is immaterial.  The

material facts are that NYCHA policy provides that the language bank should be used if

translation services are required, and the Speaker found this policy unacceptable.   Lippman

Dec., Exhibit 5 at 132:3-137:20; Florestal Dec., Exhibit 4 at 27:5-27:11, 28:9-32:13.

**NYCHA Statement**

138.     Colon claims that the word "Spanish" in the alleged phrase "Spanish manager"

means "all sorts of Spanish people . . . It's hard for me to say what I interpret as Spanish.  My

husband was Spanish."  Colon's husband was from Puerto Rico and was "Indian."  Lippman

Dec., Exhibit 5 (Colon Dep. Tr. at 139:8-25, 144:3-4).

**Plaintiff's Response**

138.     Objection.  Plaintiff's use or understanding of the words "Spanish" or "Latino"

is immaterial.

              Objection.  The statement is also a blatant effort to impugn Plaintiff's credibility

on an immaterial issue, which is inappropriate on a motion for summary judgment.  The material

facts are: the Speaker's demand to replace Allison Williams, an African-American woman, who

did not speak Spanish, with a Spanish/Hispanic person who spoke Spanish; and the perception

by the three African-American NYCHA employees who attended the July 30, 2015 meeting,

Sybil Colon, James Artis and Allison Williams, that the Speaker's demand was racist and

discriminatory.  Florestal Dec., Exhibit 1 at 135:24-137:20, 156:4-158:6; Exhibit 4 at 37:15-39:4.

**NYCHA Statement**

139.     Colon's son, who is half African American and half Puerto Rican, refers to himself as "Spanish."  Lippman Dec., Exhibit 5 (Colon Dep. Tr. at 140:23-25).

**Plaintiff's Response**

139.     Objection.   The national origin and ethnicity of Plaintiff's son and the manner in which he refers to himself is immaterial.

Objection.  This is a blatant, highly inappropriate and frankly, outrageous effort to impugn Plaintiff's credibility on an immaterial issue.

**NYCHA Statement**

140.     Colon told Luis Ponce, "And everybody thinks I'm Spanish" because of her "last name."  By "Spanish," Colon meant "Hispanic."  Lippman Dec., Exhibit 13 (Ponce Dep. Tr. at 53:3-8, 54:7-12); Exhibit 5 (Colon Dep. Tr. at 287:1-9, 290:23-291:3).

**Plaintiff's Response**

140.     Objection.  Plaintiff's use or understanding of the words "Spanish" or "Latino" are immaterial.

Objection.  The statement is also a blatant effort to impugn Plaintiff's credibility on an immaterial issue, which is inappropriate on a motion for summary judgment.  The material facts are: the Speaker's demand to replace Allison Williams, an African-American woman, who did not speak Spanish, with a Spanish/Hispanic person who spoke Spanish; and the perception by the three African-American NYCHA employees who attended the July 30, 2015 meeting, Sybil Colon, James Artis and Allison Williams, that the Speaker's demand was racist and discriminatory.  Florestal Dec., Exhibit 1 at 135:24-137:20, 156:4-158:6, Exhibit 4 at 37:15-39:4.

**NYCHA Statement**

141.     Colon equates the word "Spanish" with "someone of Hispanic or Latino origin" and believes that "Hispanic and Spanish" are "interchangeable."  Lippman Dec., Exhibit 5 (Colon Dep. Tr. at 142:25-143:2, 164:25-165:3, 166:18-20).

**Plaintiff's Response**

141.     Objection.  Plaintiff's use or understanding of the words "Spanish" or "Latino" are immaterial.

Objection.  The statement is also a blatant effort to impugn Plaintiff's credibility on an immaterial issue, which is inappropriate on a motion for summary judgment.  The material facts are: the Speaker's demand to replace Allison Williams, an African-American woman, who did not speak Spanish, with a Spanish/Hispanic person who spoke Spanish; and the perception by the three African-American NYCHA employees who attended the July 30, 2015 meeting, Sybil Colon, James Artis and Allison Williams, that the Speaker's demand was racist and discriminatory.  Florestal Dec., Exhibit 1 at 135:24-137:20, 156:4-158:6, Exhibit 4 at 37:15-39:4.

**NYCHA Statement**

142.     Colon concedes that during the meeting with the Former Speaker, the possibility of hiring a bilingual Housing Assistant was discussed.  Colon further concedes that it was her understanding that the Former Speaker's alleged demand for a "Spanish Manager" meant someone who spoke the Spanish language.  Lippman Dec., Exhibit 5 (Colon Dep. Tr. at 145:2-146:12).

**Plaintiff's Response**

142.     Objection.  The use of the term "concedes" is argumentative and inappropriate on a motion for summary judgment.

Objection.  The statement is also a blatant effort to impugn Plaintiff's credibility on an immaterial issue, which is inappropriate on a motion for summary judgment.   The material facts are: the Speaker's demand to replace Allison Williams, an African-American woman, who did not speak Spanish, with a Spanish/Hispanic person who spoke Spanish; and the perception by the three African-American NYCHA employees who attended the July 30, 2015 meeting, Sybil Colon, James Artis and Allison Williams, that the Speaker's demand was racist and discriminatory.  Florestal Dec., Exhibit 1 at 135:24-137:20, 156:4-158:6, Exhibit 4 at 37:15-39:4.

**NYCHA Statement**

143.     Colon concedes that "some Spanish people don't speak Spanish."  Lippman Dec., Exhibit 5 (Colon Dep. Tr. at 143:6-15).

**Plaintiff's Response**

143.     Objection.  The use of the term "concedes" is argumentative and inappropriate on a motion for summary judgment.

Objection.  Plaintiff's use or understanding of the words "Spanish" or "Latino" are immaterial.

Objection.  The statement is also a blatant effort to impugn Plaintiff's credibility on an immaterial issue, which is inappropriate on a motion for summary judgment.  The material facts are: the Speaker's demand to replace Allison Williams, an African-American woman, who did not speak Spanish, with a Spanish/Hispanic person who spoke Spanish; and the perception by the three African-American NYCHA employees who attended the July 30, 2015 meeting, Sybil Colon, James Artis and Allison Williams, that the Speaker's demand was racist and discriminatory.  Florestal Dec., Exhibit 1 at 135:24-137:20, 156:4-158:6, Exhibit 4 at 37:15-39:4.

**NYCHA Statement**

144.     Colon believes that a language requirement for a job is illegal.  Lippman Dec.,
Exhibit 5 (Colon Dep. Tr. at 288:21-289:1).

**Plaintiff's Response**

144.     Objection.  Plaintiff's belief regarding language requirements for a job
immaterial.

Objection.  The statement is also a blatant effort to impugn Plaintiff's credibility
on an immaterial issue, which is inappropriate on a motion for summary judgment.  The material
facts are: the Speaker's demand to replace Allison Williams, an African-American woman, who
did not speak Spanish, with a Spanish/Hispanic person who spoke Spanish; and the perception
by the three African-American NYCHA employees who attended the July 30, 2015 meeting,
Sybil Colon, James Artis and Allison Williams, that the Speaker's demand was racist and
discriminatory.  Florestal Dec., Exhibit 1 at 135:24-137:20, 156:4-158:6, Exhibit 4 at 37:15-39:4.

**NYCHA Statement**

145.     After the July 30, 2015 meeting with the Former Speaker, Artis and Colon
discussed the meeting and "came to the conclusion that Ms. Viverito wanted a Spanish speaking
manager at [Mill Brook Houses]."  Lippman Dec., Exhibit 14 (Artis Dep. Tr. at 37:17-25, 38:14-
17).

**Plaintiff's Response**

145.     Disputed.  Plaintiff, Allison Williams and James Artis met directly after the
meeting at the Former Speaker's office and agreed that what the Former Speaker requested was
"racist," i.e., she wanted "a Spanish manager," and that "it was heartbreaking that I [Plaintiff]

was being directed to discriminate."  Florestal Dec., Exhibit 1 at 156:4-158:6, Exhibit 4 at 37:15-39:4.

**NYCHA Statement**

146.     Williams recalls that the Former Speaker, Sibyl Colon, James Artis, Princella Jamerson, Brian Honan, Gloria Cruz, and an "unknown Hispanic man" on the Former Speaker's staff attended the meeting, and Brian Clarke attended telephonically.  She does not remember if anyone attended whom she had not previously met.  Lippman Dec., Exhibit 32 (Williams Amended Complaint at ¶ 16); Exhibit 6 (Williams Dep. Tr. at 193:10-196:18).

 **Plaintiff's Response**

146.     Disputed.   The reference to a young Hispanic male in the statement distorts Allison Williams's testimony.  Ms. Williams concluded that she didn't know if it was a Hispanic male, and further stated that her reasons for thinking it might be a Hispanic male included being married to a Puerto Rican for 18 years and having a Hispanic son.  Lippman Dec., Exhibit 5 at 128:14-129:2.

**NYCHA Statement**

147.     Williams concedes that the Former Speaker began the July 30, 2015 meeting by inquiring, "How are you handling your Spanish speaking residents at Mill Brook Houses?"  Lippman Dec., Exhibit 6 (Williams Dep. Tr. at 197:19-198:5); Exhibit 32 (Williams Amended Complaint at ¶ 17).

**Plaintiff's Response**

147.     Objection.  The use of the term "concedes" is argumentative and inappropriate on a motion for summary judgment.

Not otherwise disputed.

**NYCHA Statement**

148.    Williams responded to the Former Speaker's question, "we use the language

bank," and James Artis also mentioned the language bank.  Lippman Dec., Exhibit 6 (Williams

Dep. Tr. at 198:6-13, 198:22-199:7); Exhibit 32 (Williams Amended Complaint at ¶ 18).

**Plaintiff's Response**

148.    Not disputed.

**NYCHA Statement**

149.    Williams also told the Former Speaker during the July 30, 2015 meeting that

when she needs a Spanish language translator, she "sometimes goes to the maintenance

department downstairs to get someone who speaks Spanish."  Colon recalls Williams stating that

her superintendent speaks Spanish "and he helps as well."  Lippman Dec., Exhibit 6 (Williams

Dep. Tr. at 211:2-213:9); Exhibit 5 (Colon Dep. Tr. at 136:22-24, 153:7-8).

**Plaintiff's Response**

149.    Not disputed.

**NYCHA Statement**

150.    Williams told the Former Speaker that she asked the Supervisor of Caretakers to

translate for her "because the language bank for Spanish is usually very busy and they put you on

hold forever, and [she] did not feel it was fair to the tenants having them sit there.  They say we

will call you back, but you could be waiting and waiting and waiting and waiting and the tenant

is just sitting there."  "[I]t was not just disrespectful to the resident but disrespectful to me."

Lippman Dec., Exhibit 6 (Williams Dep. Tr. at 211:25-212:10, 220:24-221:14).

**Plaintiff's Response**

150.    Not disputed.

**NYCHA Statement**

151.    Williams concedes that the long wait for translation services through the language bank was "the nature of the beast."  Lippman Dec., Exhibit 6 (Williams Dep. Tr. at 224:10-13).

**Plaintiff's Response**

151.    Objection.  The use of the term "concedes" is argumentative and inappropriate on a motion for summary judgment.

Objection.  Additionally, issues concerning use of the NYCHA language bank is immaterial.  The material facts are that NYCHA policy provides that the language bank should be used if translation services are required, and the Speaker found this policy unacceptable. Lippman Dec., Exhibit 5 at 132:3-137:20; Florestal Dec., Exhibit 4 at 27:5-27:11, 28:9-32:13.

**NYCHA Statement**

152.    Williams would call "maintenance downstairs and upstairs" and "asked them to translate if the language bank did not get back to [her], and most of the time they did not get back to [her]."  Lippman Dec., Exhibit 6 (Williams Dep. Tr. at 212:11-24, 219:16-220:3).

**Plaintiff's Response**

152.    Not disputed.

**NYCHA Statement**

153.    Williams did not know how to obtain in-person translation services or translation of a document when she worked at NYCHA.  Lippman Dec., Exhibit 6 (Williams Dep. Tr. at 221:20-222:8).

**Plaintiff's Response**

153.   Objection.  Ms. Williams' knowledge of in-person translation services or translation of documents is immaterial.  The material facts are that NYCHA policy provides that the language bank should be used if translation services are required, and the Speaker found this policy unacceptable.   Lippman Dec., Exhibit 5 at 132:3-137:20; Florestal Dec., Exhibit 4 at 27:5-27:11, 28:9-32:13.

**NYCHA Statement**

154.   Williams claims that the only Housing Assistant at Mill Brook who spoke Spanish was Celeste Mangum, but "she was terminated" and "was not at Mill Brook a long time."  Lippman Dec., Exhibit 6 (Williams Dep. Tr. at 224:19-225:4).

**Plaintiff's Response**

154.   Objection.  The use of the term "claims" is argumentative and inappropriate on a motion for summary judgment.

Objection.  The presence or absence of Celeste Magnum is immaterial.  The material facts are: that NYCHA policy provides that the language bank should be used if translation services are required, and the Speaker found this policy unacceptable.   Lippman Dec., Exhibit 5 at 132:3-137:20; Florestal Dec., Exhibit 4 at 27:5-27:11, 28:9-32:13.

**NYCHA Statement**

155.   Williams claims that the Former Speaker stated during the July 30, 2015 meeting that the use of the language bank for translation services was "unacceptable."  Lippman Dec., Exhibit 6 (Williams Dep. Tr. at 211:9-14).

**Plaintiff's Response**

155.   Objection.  The use of the term "claims" is argumentative and inappropriate in a Rule 56.1 statement.

Not otherwise disputed.

**NYCHA Statement**

156.   Williams claims that during the July 30, 2015 meeting, the Former Speaker stated she wanted to replace her as the Manager of Mill Brook Houses "with a 'Spanish Manager.'"  Lippman Dec., Exhibit 6 (William Dep. Tr. at 199:16-200:5); Exhibit 32 (Williams Amended Complaint at ¶ 20).

**Plaintiff's Response**

156.   Objection.  The use of the term "claims" is argumentative and inappropriate in a Rule 56.1 statement.

Not otherwise disputed.

**NYCHA Statement**

157.   Williams concedes, however, that two days after the July 30, 2015 meeting, she attended a meeting where Colon and Artis were present, and she told them she "felt [she] was being bullied because [she] did not speak Spanish."  Colon and Artis told Williams that she "wasn't" being bullied.  Lippman Dec., Exhibit 6 (Williams Dep. Tr. at 213:17-214:2, 215:5-14) (emphasis added).

**Plaintiff's Response**

157.   Objection.  The use of the term "concedes" is argumentative and inappropriate in a Rule 56.1 statement.

Objection.  The statement is also a blatant effort to impugn Allison Williams credibility, which is inappropriate on a motion for summary judgment.

Objection.  The statement identifies a fact, here, a perception, that is disputed.

**NYCHA Statement**

158. Williams interprets the word "Spanish" as meaning Hispanic or Latino and equates the word "Spanish" with an ethnicity.  Lippman Dec., Exhibit 6 (Williams Dep. Tr. at 200:8-15); Exhibit 32 (Williams Am. Compl. at ¶¶ 20, 21, 23, 24).

**Plaintiff's Response**

158.     Not disputed.

**NYCHA Statement**

159.     Williams does not know whether the word "Spanish" indicates a language. Lippman Dec., Exhibit 6 (Williams Dep. Tr. at 200:16-201:11).

**Plaintiff's Response**

159.     Objection.  Ms. Williams' understanding of the word "Spanish" is immaterial. The material facts are: the Speaker's demand for a Spanish/Hispanic manager; Allison Williams, an African-American woman, who did not speak Spanish, should be replaced by a Spanish/Hispanic person who spoke Spanish; and the perception by the three African-American NYCHA employees who attended the July 30, 2015 meeting, Sybil Colon, James Artis and Allison Williams, that the Speaker's demand was racist and discriminatory.  Florestal Dec., Exhibit 1 at 135:24-137:20, 156:4-158:6, Exhibit 4 at 37:15-39:4.

Objection.  The statement distorts Plaintiff's testimony.  Lippman Dec., Exhibit 6 at 202:19-203:3.

Objection. The statement is also a blatant effort to impugn Ms. Williams' credibility on an immaterial issue, which is inappropriate on a motion for summary judgment.

**NYCHA Statement**

160. Williams claims that "Spanish means like if I perm my hair and the men start to speak Spanish to me," and she has a "full face" of makeup. Lippman Dec., Exhibit 6 (Williams Dep. Tr. at 201:21-202:18).

**Plaintiff's Response**

160. Objection. Ms. Williams' understanding of the word "Spanish" is immaterial. The material facts are: the Speaker's demand that Allison Williams, an African-American woman, who did not speak Spanish, be replaced by a Spanish or Latino person who spoke Spanish, and the perception by the three African-American NYCHA employees who attended the July 30, 2015 meeting, Sybil Colon, James Artis and Allison Williams, that the Speaker's demand was racist and discriminatory. Florestal Dec., Exhibit 1 at 135-37, 154-58, Exhibit 4 at 33-34, 38-39.

Objection. The statement also distorts Plaintiff's testimony. Compare Lippman Dec., Exhibit 6 at 202:19-203:3.

Objection. The statement is also a blatant effort to impugn Plaintiff's credibility on an immaterial issue, which is inappropriate on a motion for summary judgment.

**NYCHA Statement**

161. Williams does not know whether there are Black people who self-identify as Latino or Spanish. Williams agreed with her attorney Marcel Florestal when he questioned her during her deposition that he looks African American, and she would not know that he is one

half Dominican and "pretty fluent in Spanish."  Lippman Dec., Exhibit 6 (Williams Dep. Tr. at 203:4-7, 300:7-23).

**Plaintiff's Response**

161.    Objection.  Ms. Williams' understanding of whether there are Black people who self-identify as "Spanish" is immaterial.  The material facts are: the Speaker's demand for a Spanish/Hispanic manager; Allison Williams, an African-American woman, who did not speak Spanish, should be replaced by a Spanish/Hispanic person who spoke Spanish; and the perception by the three African-American NYCHA employees who attended the July 30, 2015 meeting, Sybil Colon, James Artis and Allison Williams, that the Speaker's demand was racist and discriminatory.  Florestal Dec., Exhibit 1 at 135:24-137:20, 156:4-158:6; Exhibit 4 at 37:15-39:4.

Objection.  The statement is also a blatant effort to impugn Plaintiff's credibility on an immaterial issue, which is inappropriate on a motion for summary judgment.

**NYCHA Statement**

162.    Williams claims that the Former Speaker "wanted a Spanish manager who speaks Spanish, but she just said Spanish.  If [Williams] spoke Spanish [she] [doesn't] know if [the Former Speaker] would have been happy with that."  Lippman Dec., Exhibit 6 (Williams Dep. Tr. at 205:16-25).

**Plaintiff's Response**

162.    Objection.  The use of the term "claims" is argumentative and inappropriate in a Rule 56.1 statement.

Objection.  The second sentence in the statement is speculative and inadmissible.  Not otherwise disputed.

**NYCHA Statement**

163.     The Former Speaker's question to NYCHA during the meeting was "there are needs that the Spanish-speaking residents have that management office is not addressing.  How are you going to address it?  Clearly, there was a lack of communication; there – there needed to be additional support."  Lippman Dec., Exhibit 12 (Mark-Viverito Dep. Tr. at 20:5-13).

**Plaintiff's Response**

163.     Objection.  The cited testimony is speculative and without foundation.

The statement contains inadmissible hearsay.

Disputed.  The Speaker's Office never provided any information in response to Plaintiff's discovery requests about the alleged complaints other than a refrigerator complaint.  Florestal Dec., Exhibit 1 at 137:14-138:17; Lippman Dec., Exhibit 5 at 153:11-:24.  James Artis testified that Gloria Cruz did not appear to have any documents in her hands at the meeting that pertained to Mill Brook Houses.  Florestal Exhibit 4  at 45:24-47:8.  Plaintiff asked the Former Speaker to produce copies of all complaints in the Former Speaker's files relating to Mill Brook Houses.  The only document produced was Lippman Dec., Exhibit 28, which as noted previously contains inadmissible hearsay.

**NYCHA Statement**

164.     The Former Speaker did not make the statement, "I want a Spanish manager." A "Spanish manager" or a "Spanish person" is "a person from Spain."  Lippman Dec., Exhibit 12 (Mark-Viverito Dep. Tr. at 21:19-21, 31:21-33:10).

**Plaintiff's Response**

164.     Disputed.  This distorts the testimony; the Former Speaker said she did not "recall" making the statement "I want a Spanish manager."  Lippman Dec., Exhibit 12 at 21:19-

21:21.  Others have testified that the Former Speaker demanded a "Spanish manager" at Mill Book Houses.  Lippman Dec., Exhibit 5 at 135:24-137:20.  Plaintiff, Allison Williams and James Artis met directly after the meeting at the Former Speaker's office and agreed that what the Former Speaker requested was "racist," i.e., she wanted "a Spanish manager," and that "it was heartbreaking that I [Plaintiff] was being directed to discriminate."  Florestal Dec., Exhibit 1 at 156:4-158:6, Exhibit 4 at 37:15-39:4.

**NYCHA Statement**

165.    The Former Speaker would "never use the term 'Spanish person' to reference [herself] or to reference a Latino or to reference a[n] African American – a Latino or Puerto Rican person.  That's not [her] terminology."  To the Former Speaker, "Spanish" only includes people from Spain.  Lippman Dec., Exhibit 12 (Mark-Viverito Dep. Tr. at 33:6-15, 39:11-20, 40:16-18, 41:2-16).

**Plaintiff's Response**

165.    Objection.  The Former Speaker's prior usage or not of "Spanish person" or like terminology is immaterial.  The material facts are: the Speaker's demand for a Spanish/Hispanic manager; Allison Williams, an African-American woman, who did not speak Spanish, should be replaced by a Spanish/Hispanic person who spoke Spanish; and the perception by the three African-American NYCHA employees who attended the July 30, 2015 meeting, Sybil Colon, James Artis and Allison Williams, that the Speaker's demand was racist and discriminatory. Florestal Dec., Exhibit 1 at 135:24-137:20, 156:4-158:6; Exhibit 4 at 37:15-39:4.

**NYCHA Statement**

166.    To the Former Speaker, "A Spanish person is not a Latino person."  Lippman Dec., Exhibit 12 (Mark-Viverito Dep. Tr. at 39:21-25).

**Plaintiff's Response**

166.    Objection.  The Former Speaker's understanding of the term "Spanish person" or like terminology is immaterial.  The material facts are: the Speaker's demand for a Spanish/Hispanic manager; Allison Williams, an African-American woman, who did not speak Spanish, should be replaced by a Spanish/Hispanic person who spoke Spanish; and the perception by the three African-American NYCHA employees who attended the July 30, 2015 meeting, Sybil Colon, James Artis and Allison Williams, that the Speaker's demand was racist and discriminatory.  Florestal Dec., Exhibit 1 at 135:24-137:20, 156:4-158:6; Exhibit 4 at 37:15-39:4.

**NYCHA Statement**

167.    The Former Speaker never "refuse[d] to hire somebody because they were not the right color," and never "hire[d] somebody because they were the right color."  Lippman Dec., Exhibit 12 (Mark-Viverito Dep. Tr. at 29:18-30:7).

**Plaintiff's Response**

167.    Objection.  The Former Speaker's prior hiring practices are immaterial.  The material facts are: the Speaker's demand for a Spanish/Hispanic manager; Allison Williams, an African-American woman, who did not speak Spanish, should be replaced by a Spanish/Hispanic person who spoke Spanish; and the perception by the three African-American NYCHA employees who attended the July 30, 2015 meeting, Sybil Colon, James Artis and Allison Williams, that the Speaker's demand was racist and discriminatory.  Florestal Dec., Exhibit 1 at 135:24-137:20, 156:4-158:6; Exhibit 4 at 37:15-39:4.

**NYCHA Statement**

168.     The Former Speaker never "refuse[d] to hire somebody because they were not the right ethnicity," and never "hire[d] somebody because they were the right ethnicity." Lippman Dec., Exhibit 12 (Mark-Viverito Dep. Tr. at 30:8-22).

**Plaintiff's Response**

168.     Objection.  The Former Speaker's prior hiring practices are immaterial.  The material facts are: the Speaker's demand for a Spanish/Hispanic manager; Allison Williams, an African-American woman, who did not speak Spanish, should be replaced by a Spanish/Hispanic person who spoke Spanish; and the perception by the three African-American NYCHA employees who attended the July 30, 2015 meeting, Sybil Colon, James Artis and Allison Williams, that the Speaker's demand was racist and discriminatory.  Florestal Dec., Exhibit 1 at 135:24-137:20, 156:4-158:6; Exhibit 4 at 37:15-39:4.

**NYCHA Statement**

169.     NYCHA exercises its discretion to determine whether to transfer Managers; NYCHA does not need to obtain the Housing Manager's consent before a transfer.  Provided there is a vacancy available, NYCHA may transfer a manager to another location.  NYCHA's Human Resources Department must check if there is a civil service list in case there is already a candidate for a vacancy or see if someone is coming back from leave.  If NYCHA transfers a Housing Management to another development, the employee does not lose seniority, and the salary remains the same.  Lippman Dec., Exhibit 10 (June 13, 2019 Clarke Dep. Tr. at 139:19-140:5, 141:22-142:13, 145:24-146:2); Exhibit 5 (Colon Dep. Tr. at 103:18-105:1); Exhibit 6 (Williams Dep. Tr. at 30:4-7, 32:6-24).

**Plaintiff's Response**

169.     Objection.  Whether or not the employee loses seniority and salary is immaterial. The material facts are: the Speaker's demand for a Spanish/Hispanic manager, to replace Allison Williams, an African-American woman, who did not speak Spanish, with a Spanish/Hispanic person who spoke Spanish; and the perception by the three African-American NYCHA employees who attended the July 30, 2015 meeting, Sybil Colon, James Artis and Allison Williams, that the Speaker's demand was racist and discriminatory.  Florestal Dec., Exhibit 1 at 135:24-137:20, 156:4-158:6; Exhibit 4 at 37:15-39:4.

**NYCHA Statement**

170.     On July 31, 2015, the day after the meeting with the Former Speaker, Colon met with Brian Clarke in his office.  Colon claims that Clarke told her he was going on vacation the following week, and in his absence, he wanted Colon to perform various assignments including "to remove and replace Allison [Williams] from Mill Brook Houses and replace her with a Spanish Hispanic manager."  Colon further claims that Clarke told her to "reach out to Kenya Salaudeen, the HR director to implement his directives regarding Allison Williams," "tell Kenya don't use the words Spanish Manager," "tell her it's for the cultural sensitivity needs of the development."  Colon did not say anything in response to Clarke; she just "listened" and "took notes."  Lippman Dec., Exhibit 5 (Colon Dep. Tr. at 159:21-162:22).

**Plaintiff's Response**

170.     Objection.  The use of the term "claims" is argumentative and inappropriate in a Rule 56.1 statement.

Objection.  The statement also distorts the testimony by omitting Plaintiff's testimony that she was "listening in shock" to Mr. Clarke's directives "and that I was once again being asked to discriminate."  Lippman Dec., Exhibit 5 at 162:4-6.

**NYCHA Statement**

171.    Brian Clarke wanted to "transfer [Allison Williams] out of the OPMOM program" to manage another NYCHA development.  The transfer was for performance reasons and poor customer service.  In particular, Brian Clarke "thought it was just unbelievable that a property manager would ridicule tenants because of their inability to speak English and violate a Mayoral order for language access for city services at a public meeting.  That was the straw that really kind of broke the camel's back for [him]."  Clarke also wanted to have Williams "disciplined for what she did at that meeting."  Lippman Dec., Exhibit 10 (June 13, 2019 Clarke Dep. Tr. at 137:14-138:21).

**Plaintiff's Response**

171.    Disputed.  The statement purports to address one of the ultimate issues of fact to be determined by the factfinder, here a jury, i.e., "the [proposed] transfer was for performance reasons and poor customer service" and is inappropriate on a motion for summary judgment. Brian Clarke's assessment of Allison Williams performance is contradicted by Plaintiff's assessment that "Allison Williams was thriving and doing extremely well under my leadership." Lippman Dec., Exhibit 5 at  210:17-18.  As the Manager of Mill Brook Houses, Allison Williams reported directly to Plaintiff.  Declaration of Sybil Colon, January 17, 2020, ¶ 2.  Allison Williams became a Housing Manager in 1999, became the Housing Manager at Mill Brook Houses in 2006 and remained the Housing Manager at Mill Brook Houses until she retired from NYCHA on May 1, 2017.  Lippman Dec., Exhibit 6 at 27:14 to 28:7, 232:10-12. Allison

Williams was not transferred from Mill Brook Houses before Plaintiff became Director of OPMOM or following Plaintiff's resignation from NYCHA on August 28, 2015.  *Id.*

**NYCHA Statement**

172.     Brian Clarke asked Colon to contact Human Resources to effectuate the transfer of Williams to another development.  This was "because all transfers go through HR.  And the reason why is, one, we need to know whether or not there is an open location to move her to.  There has to be a budget line.  Two, you know is somebody coming back from leave."  Lippman Dec., Exhibit 10 (June 13, 2019 Clarke Dep. Tr. at 142:14-22); Exhibit 11 (July 1, 2019 Clarke Dep. Tr. at 75:9-14, 77:24-78:7).

**Plaintiff's Response**

172.     Disputed.  Brian Clarke "told [Plaintiff] to call Kenya [Salaudeen, NYCHA's HR Director] and tell him [*sic*] that Mr. Kelly wants it done.  Melissa – Mr. Kelly wants it done, Melissa wants it done and I [Brian Clarke] want I done. . . . This is what Brian told me."  Florestal Dec., Exhibit 1 at 158:14-159:13.  Brian "told me to remove and replace Allison [Williams] from Mill Brook Houses . . . with a Spanish Hispanic manager.  He further stated I should reach out to Kenya Salaudeen, the HR Director to implement the directives regarding Allison Williams.  He said tell Kenya don't use the words "Spanish" manager.  He said tell her it's for the cultural sensitivity needs of the development."  Lippman Dec., Exhibit 5 at 160:24-161:22.

**NYCHA Statement**

173.     Brian Clarke never told Colon "to transfer Allison Williams because she didn't speak Spanish."  Clarke wanted to transfer Allison Williams "for performance issues," issues

87

which she had even before the OPMOM program.  Lippman Dec., Exhibit 11 (July 1, 2019

Clarke Dep. Tr. at 78:12-24).

**Plaintiff's Response**

173.    Disputed.  Brian Clarke "told [Plaintiff] to call Kenya [Salaudeen, NYCHA's HR

Director] and tell him [*sic*] that Mr. Kelly wants it done.  Melissa – Mr. Kelly wants it done,

Melissa wants it done and I [Brian Clarke] want I done. . . . This is what Brian told me."

Florestal Dec., Exhibit 1 at 158:14-159:13.  Brian "told me to remove and replace Allison

[Williams] from Mill Brook Houses . . . with a Spanish Hispanic manager.  He further stated I

should reach out to Kenya Salaudeen, the HR Director to implement the directives regarding

Allison Williams.  He said tell Kenya don't use the words "Spanish" manager.  He said tell her

it's for the cultural sensitivity needs of the development."  Lippman Dec., Exhibit 5 at 160:24-

161:22.

Brian Clarke "was pressuring [Plaintiff] like crazy" to "have [Allison Williams] removed

and replaced with a Hispanic Spanish manager."  *Id.* at 207:13-208:23.  "Before Brian went on

vacation he told me to identify some managers to go there."  Florestal Dec., Exhibit 1 at 220:4-

223:5.

Brian Clarke's assessment of Allison Williams performance is contradicted by Plaintiff's

assessment that "Allison Williams was thriving and doing extremely well under my leadership."

Lippman Dec., Exhibit 5 at  210:17-18.  As the Manager of Mill Brook Houses, Allison Williams

reported directly to Plaintiff.  Declaration of Sybil Colon, January 17, 2020, ¶ 2.  Allison

Williams became a Housing Manager in 1999, became the Housing Manager at Mill Brook

Houses in 2006 and remained the Housing Manager at Mill Brook Houses until she retired from

NYCHA on May 1, 2017.  Lippman Dec., Exhibit 6 at 27:14 to 28:7, 232:10-12. Allison

Williams was not transferred from Mill Brook Houses before Plaintiff became Director of OPMOM or following Plaintiff's resignation from NYCHA on August 28, 2015.  *Id.*

**NYCHA Statement**

174.    Sheila Pinckney emailed Colon on August 6, 2015, while Brian Clarke was on vacation, and asked her whether Williams had been moved from Mill Brook Houses.  Colon responded to Sheila Pinckney that "HR needs more information from us.  There is also an ig investigation going on.  HR wants to talk to the ig's office first."  The "ig" stands for the Inspector General.  Lippman Dec., Exhibit 5 (Colon Dep. Tr. at 192:19-194:8, 195:9-10); Exhibit 33 (August 6 and 7, 2015 Email Chain).

**Plaintiff's Response**

175.    Not disputed.

**NYCHA Statement**

175.    On August 7, 2015, Colon emailed Brian Clarke and copied Sheila Pinckney, stating that Richard Bennardo in Human Resources "wants to set up a meeting with the Manager, with myself in attendance to gather more facts.  I've also reached out to Gil Mazon to have Ms. Williams receive additional training."  The additional training related to the "meda meda" statement Williams made to the Mill Brook residents.  Lippman Dec., Exhibit 33 (August 6 and 7, 2015 Email Chain), Exhibit 5 (Colon Dep. Tr. at 187:2-188:5, 199:25-200:4).

**Plaintiff's Response**

175.    Disputed.  The statement omits critical contextual testimony.  Plaintiff was told by Luis Ponce, NYCHA's Senior Vice President of Operations, "'I don't know *supposedly* she [Allison Williams] had a meeting and said meda, meda something.  No speaking meda, meda, *I'm not quite sure.*'  And he said I don't know what it means.  He didn't seem bothered by it.  He

said just sign up for a class called satisfying the internal customer. . . . Ponce directed me what to do." Lippman Dec., Exhibit 5 at 187:2-188:25, Exhibit 13 at 11:11-11:22 (emphasis added).

## NYCHA Statement

176.    On August 12, 2015, Colon emailed Brian Clarke, "I have experienced difficulty with the transferring of the Manager at Mill Brook. HR is requesting information that I am unable to provide. I've spoken to both Mr. Ponce and Ms. Pinckney about this. The IG's are also involved as well and stated to 'not do any further action as they were in the middle of an investigation. We reached out to the local political office where we had the meeting at and they did not provide complaint documentation or specifics." Lippman Dec., Exhibit 33 (August 12, 2015 Email).

## Plaintiff's Response

176.    Not disputed.

## NYCHA Statement

177.    Colon claims that when she returned from her vacation on August 24, 2015, she told Brian Clarke that transferring Allison Williams from Mill Brook Houses was "illegal." Colon did not state why the transfer was illegal. Rather, "[She] said it's illegal. That's the why [she] gave him." Colon claims that it was "at this point" she was "expressing opposition to what [she] was being asked to do." Brian Clarke denies Colon told him this. Lippman Dec., Exhibit 5 (Colon Dep. Tr. at 216:2-217:16, 218:20-23); Clarke Dec. at ¶ 22.

## Plaintiff's Response

177.    Objection. The use of the term "claims" is argumentative and inappropriate on a motion for summary judgment.

Objection.  The statement omits critical testimony.  Plaintiff testified:  "I mean there was a lot of hostility towards me at this point because I was expressing opposition to what I was supposed to do.  So there was hostility towards me from Brian Clark[e] because I was not willing to discriminate."  Lippman Dec., Exhibit 5 at 217:13-217:18.

**NYCHA Statement**

178.     On August 25, 2015, Colon emailed Brian Clarke, "HR informed me that we needed more specific information in reference to the cultural needs of the residents, in order to transfer the Manager at Mill Brook.  Lippman Dec., Exhibit 33 (August 25, 2015 Email Chain).

**Plaintiff's Response**

178.     Objection.  The statement omits critical testimony and documents.  The "more specific information" referred to the "racial breakdown" of Mill Brook Houses that HR asked Plaintiff to provide.  Florestal Dec., Exhibit 1 at 226:19-228:20, Exhibits 27 and 28.

**NYCHA Statement**

179.     Colon claims that on August 26, 2015, she again told Brian Clarke the transfer was "illegal," and "it was along those lines that it was racial.  I can't do it and it just can't be done."  Brian Clarke denies that Colon ever told him the transfer was "illegal" or "along those lines that it was racial," and she never raised any concerns regarding the legality of the transfer.  Brian Clarke denies Colon told him this.  Lippman Dec., Exhibit 5 (Colon Dep. Tr. at 233:24-234:17); Clarke Dec. at ¶ 22.

**Plaintiff's Response**

179.     Objection.  The use of the term "claims" is argumentative and inappropriate on a motion for summary judgment.

Objection.  The statement identifies a factual dispute.

**NYCHA Statement**

180.     Colon claims that James Artis told her the Inspector General was investigating Allison Williams.  However, Brian Clarke called and met with the Inspector General after he returned from vacation and was told there was no investigation into Allison Williams.  Rather, the Inspector General was conducting an investigation of tenants at the property and told Clarke "they had less than a favorable experience working with [Williams]."  Lippman Dec., Exhibit 5 (Colon Dep. Tr. at 195:6-196:10, 203:25-204:22); Exhibit 11 (July 1, 2019 Clarke Dep. Tr. at 58:3-59:14, 61:18-62:9).

**Plaintiff's Response**

180.     Objection.  The use of the term "claims" is argumentative and inappropriate in a Rule 56.1 statement.

Objection.  The statement also purports to impugn Plaintiff's credibility, which is inappropriate on a motion for summary judgment.

Objection.  The statement omits critical testimony.  Richard Bennardo, NYCHA's Deputy Director of Employee and Labor Relations, told Plaintiff that he wanted to see the IG referral before moving forward on the transfer of Allison Williams because "everyone was trying to make Brian happy.  And he felt that we could not do a racial type transfer.  However, if there is something in the IG complaint that warrants a transfer, maybe we can do it. . . . Because he said let's humor them a little bit.  It can't be done.  Maybe we can do it through an IG." Lippman Dec., Exhibit 5 at 229:19-230:22.

**NYCHA Statement**

181.     The Complaint alleges that Brian Clarke yelled at [Colon], "'What's in [Allison Williams'] folder, you have to do this.'"  Colon claims she contacted James Artis "and ordered

him to go through Ms. Williams's folder and find any negative infraction, and report back to her
. . . James Artis called Ms. Colon later that day, and complained that he felt like he was being
forced to go on [sic] 'fishing expedition', because there was no infraction in Ms. Williams's
folder that would warrant a termination."  Colon further claims that James Artis looked in
Williams' "folder" and told Colon "'there's nothing there but one write up from a training class
that she didn't go up.'"  Lippman Dec., Exhibit 1 (Complaint at ¶¶ 50-52); Exhibit 5 (Colon Dep.
Tr. at 208:17-209:13).

**Plaintiff's Response**

181.    Objection.  The use of the term "claims" is inappropriate in a Rule 56.1
statement.

Not otherwise disputed.

**NYCHA Statement**

182.    James Artis denied that Colon asked him to "go through Ms. Williams'
employee file."  Instead, Colon asked Artis if Williams "had any memos," and he told her, "[He]
only wrote [Williams] up one time."  Artis has "a thing" that he "doesn't look into peoples [sic]
folders that [he] supervise[s] because [he] gives them a chance," and "looking in the folder,
that's, like, something [he] [doesn't] do."  Lippman Dec., Exhibit 14 (Artis Dep. Tr. at 39:11-13,
42:16-43:2).

**Plaintiff's Response**

182.    Disputed.  The statement distorts the cited testimony.  James Artis did not "deny"
that Colon asked him to go through Ms. William' employee folder; he "did not remember"
being asked to do so.  Lippman Dec., Exhibit 14 at 39:11-13; Florestal Dec., Exhibit 4 at 42:18-
19.

**NYCHA Statement**

183.    James Artis only started supervising Williams in January 2015.  Colon never spoke to any of Williams' previous supervisors about her performance.  Lippman Dec., Exhibit 5 (Colon Dep. Tr. at 209:14-24).

**Plaintiff's Response**

183.    Objection.  The statement omits critical testimony.  Plaintiff had no reason to look into Ms. Williams' prior performance because "she had no problems with Allison Williams" and she "was thriving and doing well under my leadership."  Lippman Dec., Exhibit 5 at 209:19-210:18.

**NYCHA Statement**

184.    At no time during Colon's NYCHA employment did she review Williams' personnel file or her location folder, and she never spoke to anyone in the Bronx Borough Office regarding Williams' performance.  James Artis did not tell Colon about Williams' 2009 or 2015 local disciplinary hearings or the counseling memoranda she had received, and Colon did not verify for herself whether Williams had a disciplinary history.  Lippman Dec., Exhibit 5 (Colon Dep. Tr. at 107:9-12, 210:2-18, 303:2-13); Exhibit 34 (Record of Local Hearings Against Allison Williams; Counseling Memoranda).

**Plaintiff's Response**

184.    Objection.  The statement omits critical testimony.  Plaintiff had no reason to look into Ms. Williams' prior performance because "she had no problems with Allison Williams" and she "was thriving and doing well under my leadership."  Lippman Dec., Exhibit 5 at 209:19-210:18.

**NYCHA Statement**

185.    Colon did not know before her deposition that Williams had a disciplinary record, including local disciplinary hearings in July 2009 and January 2015.  Williams' January 2015 Notice of Local Hearing/Specification of Charges was signed by James Artis.  Colon also did not know that Williams had also received many counseling memoranda from her supervisors.  Lippman Dec., Exhibit 5 (Colon Dep. Tr. at 106:5-12); Exhibit 34 (Record of Local Hearings Against Allison Williams and Counseling Memoranda).

**Plaintiff's Response**

185.    Objection.  The statement omits critical testimony.  Plaintiff had no reason to look into Ms. Williams' prior performance because "she had no problems with Allison Williams" and she "was thriving and doing well under my leadership."  Lippman Dec., Exhibit 5 at 209:19-210:18.

**NYCHA Statement**

186.    James Artis does not think that Colon "tried to remove Ms. Williams as [M]anager of the Mill Brook Houses."  Lippman Dec., Exhibit 14 (Artis Dep. Tr. at 39:7-10).

**Plaintiff's Response**

186.    Not disputed.

**NYCHA Statement**

187.    Brian Clarke emailed Colon on August 25, 2015 and asked her "where are we with moving the manager of Mill Brook."  Colon concedes that Clarke did not tell her to terminate Williams.  Lippman Dec., Exhibit 5 (Colon Dep. Tr. at 103:13-104, 226:5-17); Exhibit 33 (August 25, 2015 Email Chain).

**Plaintiff's Response**

187.     Objection.  The use of the term "concedes" is inappropriate in a Rule 56.1

statement.

Not otherwise disputed.

**NYCHA Statement**

188.     Colon alleges that she told Human Resources Director Kenya Salaudeen that

Brian Clarke "wanted to terminate Ms. Williams as the Manager of the Millbrook Houses, to be

transferred somewhere else, replaced with a Latino Manager, and that Manager Kelley [sic] and

the Council Speaker wanted it done immediately due to the 'cultural sensitivity' needs of the

residents."  Lippman Dec., Exhibit 1 (Colon Compl. at ¶ 36).

**Plaintiff's Response**

188.     Not disputed.

**NYCHA Statement**

189.     Colon alleges that Kenya Salaudeen, "who is also African American," told her,

"'I don't care if Obama wants it done, what you are proposing is illegal and you can be sued!'"

Colon alleges that Salaudeen "further stated that as an African American woman she felt

offended that she was being forced to terminate another African American woman, just because

she's African American, but, she nonetheless, would set up a meeting with HR Deputy Director

Richard Bennardo to see what they can do."  Lippman Dec., Exhibit 1 (Complaint at ¶ 37).

**Plaintiff's Response**

189.     Not disputed.

**NYCHA Statement**

190.     Kenya Salaudeen has no recollection of having a conversation with Colon "with respect to removing Allison Williams as the manager of Mill Brook Houses."  Lippman Dec., Exhibit 17 (Salaudeen Dep. Tr. at 25:16-22).

**Plaintiff's Response**

190.     Objection.  The statement omits critical testimony.  Kenya Salaudeen was NYCHA's Director of Human Resources and Labor Relations ("HR") during the period relevant to this action starting in 2015 until March 2017.  Florestal Dec., Exhibit 8 at 7:9-11:5.  Ms. Salaudeen had virtually no recollection of numerous matters, invoking the phrase "I don't recall" or "I do not recall" at least forty (40) times throughout her deposition.  [N.B.: The entire transcript of the deposition will be submitted to the Court pursuant to Judge Broderick's Individual Rules of Practice.]  She did not recall the size of her HR unit because "I blocked it out of my memory so I don't really recall."  *Id.* at 8:24-9:4.  Further, when asked why she left NYCHA, she responded:  "I was terminated."  *Id.* at 10:20-:21.  When asked why she was terminated, she responded,  "I  don't know why."  *Id.* at 10:22-:23.

**NYCHA Statement**

191.     Kenya Salaudeen has no recollection of Colon "telling [her] that Brian Clarke requested that she remove Allison Williams as the manager of Mill Brook Houses and say that if anybody asks, say that it was due to the cultural sensitivity of the residents."  Lippman Dec., Exhibit 17 (Salaudeen Dep. Tr. at 25:23-26:8).

**Plaintiff's Response**

191.     Objection.  The statement omits critical testimony.  Kenya Salaudeen was NYCHA's Director of Human Resources and Labor Relations ("HR") during the period relevant

to this action starting in 2015 until March 2017.  Florestal Dec., Exhibit 8 at 7:9-11:5.  Ms.

Salaudeen had virtually no recollection of numerous matters, invoking the phrase "I don't recall"

or "I do not recall" at least forty (40) times throughout her deposition.  [N.B.: The entire

transcript of the deposition will be submitted to the Court pursuant to Judge Broderick's

Individual Rules of Practice.]  She did not recall the size of her HR unit because "I blocked it out

of my memory so I don't really recall."  *Id.* at 8:24-9:4.  Further, when asked why she left

NYCHA, she responded:  "I was terminated."  *Id.* at 10:20-:21.  When asked why she was

terminated, she responded,  "I  don't know why."  *Id.* at 10:22-:23.

**NYCHA Statement**

192.    Kenya Salaudeen has no recollection of Colon "calling [her] specifically about

removing Allison Williams" and has no recollection of "having a specific conversation about

Allison Williams with Sibyl Colon."  Lippman Dec., Exhibit 17 (Salaudeen Dep. Tr. at 26:12-

25).

**Plaintiff's Response**

192.    Objection.  The statement omits critical testimony.  Kenya Salaudeen was

NYCHA's Director of Human Resources and Labor Relations ("HR") during the period relevant

to this action starting in 2015 until March 2017.  Florestal Dec., Exhibit 8 at 7:9-11:5.  Ms.

Salaudeen had virtually no recollection of numerous matters, invoking the phrase "I don't recall"

or "I do not recall" at least forty (40) times throughout her deposition.  [N.B.: The entire

transcript of the deposition will be submitted to the Court pursuant to Judge Broderick's

Individual Rules of Practice.]  She did not recall the size of her HR unit because "I blocked it out

of my memory so I don't really recall."  *Id.* at 8:24-9:4.  Further, when asked why she left

NYCHA, she responded:  "I was terminated."  *Id.* at 10:20-:21.  When asked why she was

terminated, she responded, "I don't know why." *Id.* at 10:22-:23.

**NYCHA Statement**

193.    Kenya Salaudeen has no recollection of telling Colon "that [she doesn't] care if President Obama wanted it done that she can't do it."  Lippman Dec., Exhibit 17 (Salaudeen Dep. Tr. at 27:2-7).

**Plaintiff's Response**

193.    Objection.  The statement omits critical testimony.  Kenya Salaudeen was NYCHA's Director of Human Resources and Labor Relations ("HR") during the period relevant to this action starting in 2015 until March 2017.  Florestal Dec., Exhibit 7 at 7:9-11:5.  Ms. Salaudeen had virtually no recollection of numerous matters, invoking the phrase "I don't recall" or "I do not recall" at least forty (40) times throughout her deposition.  [N.B.: The entire transcript of the deposition will be submitted to the Court pursuant to Judge Broderick's Individual Rules of Practice.]  She did not recall the size of her HR unit because "I blocked it out of my memory so I don't really recall." *Id.* at 8:24-9:4.  Further, when asked why she left NYCHA, she responded:  "I was terminated." *Id.* at 10:20-:21.  When asked why she was terminated, she responded, "I don't know why." *Id.* at 10:22-:23.

**NYCHA Statement**

194.    Kenya Salaudeen has no recollection of "telling Miss Colon that [she was] offended as a black woman for what she was asking."  Lippman Dec., Exhibit 17 (Salaudeen Dep. Tr. at 27:8-12).

**Plaintiff's Response**

194.    Objection.  The statement omits critical testimony.  Kenya Salaudeen was NYCHA's Director of Human Resources and Labor Relations ("HR") during the period relevant

to this action starting in 2015 until March 2017.  Florestal Dec., Exhibit 8 at 7:9-11:5.  Ms.

Salaudeen had virtually no recollection of numerous matters, invoking the phrase "I don't recall"

or "I do not recall" at least forty (40) times throughout her deposition.  [N.B.: The entire

transcript of the deposition will be submitted to the Court pursuant to Judge Broderick's

Individual Rules of Practice.]  She did not recall the size of her HR unit because "I blocked it out

of my memory so I don't really recall."  *Id.* at 8:24-9:4.  Further, when asked why she left

NYCHA, she responded:  "I was terminated."  *Id.* at 10:20-:21.  When asked why she was

terminated, she responded,  "I  don't know why."  *Id.* at 10:22-:23.

## NYCHA Statement

195.     Kenya Salaudeen has no recollection of "telling Miss Colon that Brian[]

[Clarke's] directives were illegal and discriminatory."  Lippman Dec., Exhibit 17 (Salaudeen

Dep. Tr. at 27:13-17).

## Plaintiff's Response

195.     Objection.  The statement omits critical testimony.  Kenya Salaudeen was

NYCHA's Director of Human Resources and Labor Relations ("HR") during the period relevant

to this action starting in 2015 until March 2017.  Florestal Dec., Exhibit 8 at 7:9-11:5.  Ms.

Salaudeen had virtually no recollection of numerous matters, invoking the phrase "I don't recall"

or "I do not recall" at least forty (40) times throughout her deposition.  [N.B.: The entire

transcript of the deposition will be submitted to the Court pursuant to Judge Broderick's

Individual Rules of Practice.]  She did not recall the size of her HR unit because "I blocked it out

of my memory so I don't really recall."  *Id.* at 8:24-9:4.  Further, when asked why she left

NYCHA, she responded:  "I was terminated."  *Id.* at 10:20-:21.  When asked why she was

terminated, she responded,  "I  don't know why."  *Id.* at 10:22-:23.

**NYCHA Statement**

196.     Kenya Salaudeen has no recollection of speaking with Richard Bennardo about conversations with Luis Ponce concerning Plaintiff Allison Williams, or about additional training for Williams.  Lippman Dec., Exhibit 17 (Salaudeen Dep. Tr. at 28:20-29:9).

**Plaintiff's Response**

196.     Objection.  The statement omits critical testimony.  Kenya Salaudeen was NYCHA's Director of Human Resources and Labor Relations ("HR") during the period relevant to this action starting in 2015 until March 2017.  Florestal Dec., Exhibit 8 at 7:9-11:5.  Ms. Salaudeen had virtually no recollection of numerous matters, invoking the phrase "I don't recall" or "I do not recall" at least forty (40) times throughout her deposition.  [N.B.: The entire transcript of the deposition will be submitted to the Court pursuant to Judge Broderick's Individual Rules of Practice.]  She did not recall the size of her HR unit because "I blocked it out of my memory so I don't really recall."  *Id.* at 8:24-9:4.  Further, when asked why she left NYCHA, she responded:  "I was terminated."  *Id.* at 10:20-:21.  When asked why she was terminated, she responded,  "I  don't know why."  *Id.* at 10:22-:23.

**NYCHA Statement**

197.     Colon alleges that Human Resources employee Marla Edmonson told her that transferring Allison Williams "would be illegal."  However, Marla Edmonson denied telling Colon this.  Lippman Dec., Exhibit 1 (Complaint at ¶ 39); Exhibit 15 (Edmonson Dep. Tr. at 13:15-14:3).

**Plaintiff's Response**

197.     Objection.  The statement identifies a factual dispute.

**NYCHA Statement**

198.    Colon claims that Luis Ponce told her that transferring Williams from Mill

Brook Houses was "illegal."  Lippman Dec., Exhibit 5 (Colon Dep. Tr. at 187:14-16).

**Plaintiff's Response**

198.    Objection.  The use of the term "claims" is inappropriate in a Rule 56.1 statement.

Not otherwise disputed.

**NYCHA Statement**

199.    Luis Ponce spoke to Colon about transferring Williams from Mill Brook Houses

to another development.  However, Ponce did not tell Colon that "it was [his] opinion that

Brian[] [Clarke's] directive to remove Ms. Williams as the Manager of Millbrook was illegal,"

and he did not tell Colon "that Brian Clark's [sic] directive to remove Ms. Williams as the

manager of the Millbrook Houses was discriminatory."  Lippman Dec., Exhibit 13 (Ponce Dep.

Tr. at 38:15-39:6, 40:7-11, 40:24-41:6).

**Plaintiff's Response**

199.    Objection.  The statement and the directly prior statement identify a factual

dispute.

Objection.  The statement mischaracterizes the testimony.  Mr. Ponce never

responded to the question whether he told Plaintiff that the directive to remove Ms. Williams

"was discriminatory."

**NYCHA Statement**

200.    Shortly after Michael Kelly joined NYCHA in April 2015, the Chair went on

maternity leave.  Upon the Chair's return from maternity leave in the end of July 2015, "she

approached [Michael Kelly] and asked if [he] knew Janet Abrahams.  [Kelly] told her [he had]

heard of her.  She said she was very impressed with [Janet Abrahams] and wanted [Kelly] to interview with her and see her appropriate level to be recruited and to pick up the discussions Cecil House had with her prior to his leaving."  Lippman Dec., Exhibit 8 (July 3, 2019 Kelly Dep. Tr. at 35:18-36:10).

**Plaintiff's Response**

200.    Objection.  The cited testimony is inadmissible hearsay.

**NYCHA Statement**

201.    Janet Abrahams "was the first choice to assume that position [managing OPMOM] long before [Kelly] got [to NYCHA.]"  Lippman Dec., Exhibit 8 (July 3, 2019 Kelly Dep. Tr. at 34:19-24, 39:3-5).

**Plaintiff's Response**

201.    Objection.  The cited testimony is inadmissible hearsay.

**NYCHA Statement**

202.    Prior to effectuating the Chair's decision to "aggressively recruit Janet Abraham[s]," Michael Kelly "checked with the human resources department at NYCHA" and confirmed that Colon "was an at-will employee and as such, it was within our privileges to make that offer to Janet at the time."  Kelly confirmed Colon's at will status with Kerri Jew, who was the Executive Vice President for Administration, which included the Human Resources Department.  Lippman Dec., Exhibit 8 (July 3, 2019 Kelly Dep. Tr. at 48:24-49:15).

**Plaintiff's Response**

202.    Not disputed.

**NYCHA Statement**

203.     The SLA numbers "were not part of the decision making" in removing Colon as Director of OPMOM.  Rather, Michael Kelly "saw a candidate that [he] knew had the experience and the ability to take the modeling, the 18 property modeling of OPMOM, and produce a program that would move it to the change of management for the entire portfolio; of which, Janet Abraham[s] successfully did."  Lippman Dec., Exhibit 8 (July 3, 2019 Kelly Dep. Tr. at 47:5-18).

**Plaintiff's Response**

203.     Disputed.  The statement purports to address one of the ultimate issues in this action, which is a matter to be determined by the factfinder, here, by a jury, and is inappropriate for determination on a motion for summary judgment.

**NYCHA Statement**

204.     On July 27, 2015, Kilsys Payamps-Roure, Kelly's Chief of Staff, emailed Juanita Acosta, Kelly's assistant, and asked her to call Janet Abrahams and request that she send a copy of her resume "as soon as possible."  Payamps-Roure made this request because "[i]n conversations with the [C]hair directly or the chair and [Kelly], [Kelly's] [C]hief of [S]taff was directed to get a copy of Janet's resume and she in turn asked [Kelly's] [S]ecretary to follow up." Lippman Dec., Exhibit 8 (July 3, 2019 Kelly Dep. Tr. at 57:3-58:14); Exhibit 35 (July 27, 2015 Email from Kilsys Payamps-Roure).

**Plaintiff's Response**

204.     Not disputed.

**NYCHA Statement**

205.     On July 28, 2015, Kilsys Payamps-Roure emailed the Chief of Staff for the Deputy Mayor for Housing & Economic Development and attached Janet Abrahams' resume to the email, stating, "attached is the resume of Janet Abrahams who we are considering for the position of EVP of Operations.  Would you like to meet with her before we make an official offer?"  Payamps-Roure then proceeded to schedule interviews.  Lippman Dec., Exhibit 8 (July 3, 2019 Kelly Dep. Tr. at 58:15-59:24); Exhibit 35 (July 28, 2015 Email from Kilsys Payamps-Roure).

**Plaintiff's Response**

205.     Not disputed.

**NYCHA Statement**

206.     Michael Kelly and others met with Janet Abrahams "and were very impressed. It was concluded that she would be an exceptional candidate to move OPMOM from the 18 units that were serving as the model program to a full-blown program that was looking to, in a phase manner, replace all of NYCHA's management protocols to this OPMOM Protocol because she was successful in doing specifically the same thing in Newark and in Chicago and the end of August 2015 a general offer was put out to Janet to assume those responsibilities and she accepted at the end of August and began work in September."  Lippman Dec., Exhibit 8 (July 3, 2019 Kelly Dep. Tr. at 36:10-24, 38:21-25).

**Plaintiff's Response**

206.     Not disputed.

**NYCHA Statement**

207.    The "short answer" to why Colon was removed as Director "is that a candidate has been pre-vetted by the [C]hair and the Authority prior to [Kelly's] arrival, and it was decided this professional would be better suited to manage OPMOM," and, "it was decided to remove Sibyl Colon from that position."  This decision was made by Kelly and the Chair.  Lippman Dec., Exhibit 8 (July 3, 2019 Kelly Dep. Tr. at 37:3-11).

**Plaintiff's Response**

207.    Disputed.  The statement purports to address one of the ultimate issues in this action, which is a matter to be determined by the factfinder, here, by a jury, and is inappropriate for determination on a motion for summary judgment.

**NYCHA Statement**

208.    On August 18, 2015, Natalie Rivers informed Brian Clarke and Kilsys Payamps-Roure by email that Janet Abrahams was scheduled to start on or about September 28th, 2015. Payamps-Roure forwarded the email to Michael Kelly and the Chair, among others.  Lippman Dec., Exhibit 36 (August 18, 2015 Email Chain).

**Plaintiff's Response**

208.    Not disputed.

**NYCHA Statement**

209.    On August 20, 2015, NYCHA communicated a formal written offer to Janet Abrahams, offering her the position of Vice President for the OPMD at the salary of $175,000. Lippman Dec., Exhibit 8 (July 3, 2019 Kelly Dep. Tr. at 39:10-15); Exhibit 36 (August 20, 2015 Email from Natalie Rivers to Janet Abrahams).

**Plaintiff's Response**

209.  Not disputed.

**NYCHA Statement**

210.     Colon reported to Brian Clarke, but when Janet Abrahams joined NYCHA as Vice President, she reported to the General Manager, Michael Kelly, and OPMOM was "moved out" from under Brian Clarke.  Lippman Dec., Exhibit 8 (July 3, 2019 Kelly Dep. Tr. at 59:25-60:13 and errata sheet); Exhibit 10 (June 13, 2019 Clarke Dep. Tr. at 57:22-23).

**Plaintiff's Response**

210.     Not disputed.

**NYCHA Statement**

211.     Janet Abrahams was hired as Vice President and then, "per design, she was promoted to [S]enior [V]ice [P]resident."  Janet Abrahams came to NYCHA as a Vice President to "oversee[] OPMOM," and she replaced Sibyl Colon in overseeing OPMOM.  Lippman Dec., Exhibit 8 (July 3, 2019 Kelly Dep. Tr. at 60:17-25, 61:2-9); Exhibit 13 (Ponce Dep. Tr. at 78:8-11); Exhibit 38 (Janet Abrahams' Human Resources Record Card).

**Plaintiff's Response**

211.     Disputed.  Janet Abrahams did not replace Plaintiff, as admitted by counsel for NYCHA in the conference before Magistrate Judge Wong held on March 6, 2019.  Florestal Dec., Exhibit 10 at 16.  Janet Abrahams replaced Brian Clarke.  Lippman Dec., Exhibit 8 at 59:25-60:13 and errata sheet; Exhibit 10 at 57:22-23.

**NYCHA Statement**

212.     Vice President is a higher title than Director.  As Vice President, Abrahams had "access" to "higher levels in the Authority, and had access to approve higher level [sic] of

monetary amounts for budgets and for contracts." Lippman Dec., Exhibit 13 (Ponce Dep. Tr. at 80:2-81:13).

**Plaintiff's Response**

212.   Not disputed.

**NYCHA Statement**

213.   In August 2015, Michael Kelly informed Brian Clarke that Janet Abrahams would be taking over OPMOM. Kelly told Clarke that Colon would be replaced because "[Kelly and the Chair] had recruited somebody who had successfully implemented asset management at two other Housing Authorities, and they had an opportunity to bring her on board, and they wanted to take advantage of that opportunity." Kelly also told Clarke that Abrahams "was with Newark Housing Authority . . . she ran operations there, and she had formally dealt with a similar position at the Chicago . . . Housing Authority." Lippman Dec., Exhibit 10 (Clarke June 13, 2019 Dep. Tr. at 51:9-54:4).

**Plaintiff's Response**

213.   Disputed. The NYCHA Defendants have admitted on the record before this Court that: "NYCHA did not claim that Ms. Abrahams took over for Ms. Colon. Ms. Abrahams was brought in a month, and she began working a month after Ms. Colon resigned from NYCHA at a higher title." Florestal Dec., Exhibit 10 at 16. Janet Abrahams replaced Brian Clarke. Lippman Dec., Exhibit 8 at 59:25-60:13 and errata sheet); Exhibit 10 at 57:22-23.

**NYCHA Statement**

214.   Michael Kelly told Brian Clarke that Janet Abrahams had "a different management approach to the property rather than the traditional type of NYCHA, and so wanted to bring in somebody who had different experiences, as well as, you know, implementing the

asset management program."  Kelly and the Chair "were looking for somebody who had

experience working . . . at a . . . public [h]ousing [a]uthority, having successfully implemented . .

. asset management."  Lippman Dec., Exhibit 10 (June 13, 2019 Clarke Dep. Tr. at 58:3-12,

59:23-60:8).

**Plaintiff's Response**

> 214.   Objection.  The statement is immaterial.

> Objection.  The statement contains inadmissible hearsay.

**NYCHA Statement**

215.   Brian Clarke was not involved in the decision to hire Janet Abrahams and had no

input in the decision.  In fact, Brian Clarke was surprised when Michael Kelly told him that Janet

Abrahams had been hired to take over OPMOM because he "wasn't involved in the [Janet

Abrahams] decision-making process and wasn't aware that that was going on."  Lippman Dec.,

Exhibit 10 (Clarke June 13, 2019 Dep. Tr. at 51:3-53:5, 56:6-14, 57:4-11); Clarke Dec. at ¶ 12.

**Plaintiff's Response**

215.   Disputed.  The statement purports to address the ultimate issues of fact to be

determined by the factfinder, here a jury, i.e., who made the decision to demote Plaintiff and

when was it made.

**NYCHA Statement**

216.   Brian Clarke's opinion of the decision to replace Colon with Janet Abrahams

was favorable.  Clarke had "done a tour of Newark Housing Authority" and was "very impressed

with the work that [Abrahams] had done there," so Clarke "knew that they were getting

somebody who successfully had done this . . . on the national stage."  Janet Abrahams "had

successfully implemented [asset management at] two other challenging . . . [h]ousing

[a]uthorities" and was "recruited" by NYCHA "to come in and really implement asset

management."  Lippman Dec., Exhibit 10 (June 13, 2019 Clarke Dep. Tr. at 56:7-57:3).

**Plaintiff's Response**

216.    Objection, Brian Clarke's opinion is immaterial and lacks foundation.  The

material facts are that Janet Abrahams replaced Brian Clarke.  Lippman Dec., Exhibit 8 at 59:25-

60:13 and errata sheet; Exhibit 10 at 57:22-23.

**NYCHA Statement**

217.    Brian Clarke also "understood why" Michael Kelly and the Chair had wanted to

bring in Janet to run OPMOM: The Chair's "vision for the program was really to manage things

differently than the way that it had been done.  She wanted to really bring in somebody who had

a really different point of view, somebody you didn't have – you know, wasn't brought up

through, you know, NYCHA, and, you know, frankly also someone like me who had been with

the agency for two decades, even though I came from the outside, still was kind of considered,

you know, a long time NYCHA employee, so the program was – not only was Sibyl [Colon]

reassigned, but the program was also moved out from under [Clarke]."  Lippman Dec., Exhibit

10 (June 13, 2019 Clarke Dep. Tr. at 57:11-23).

**Plaintiff's Response**

217.    Objection.  The statement is based on speculation.

**NYCHA Statement**

218.    Janet Abrahams is African American.  Chaitoff Dec. at ¶ 15.

**Plaintiff's Response**

218.     Not disputed.

**NYCHA Statement**

219.    On August 28, 2015, Colon met with Michael Kelly and Brian Clarke.  Lippman Dec., Exhibit 5 (Colon Dep. Tr. at 233:11-19, 237:14-238:3); Exhibit 1 (Colon Compl. at ¶¶ 56-57).

**Plaintiff's Response**

219.     Not disputed.

**NYCHA Statement**

220.     Colon claims that during the meeting on August 28, 2015, Michael Kelly stated, "'I've decided to go with someone else that I used to work with in Chicago.  This has nothing to do with your job performance.  You're doing a great job.  I just decided to go with someone else in Chicago.'"  Kelly told Colon that Brian Clarke was going to give her another position. Lippman Dec., Exhibit 5 (Colon Dep. Tr. at 239:1-13, 241:19-22).

**Plaintiff's Response**

220.    Objection.  The use of the term "claims" is inappropriate in a Rule 56.1 statement. Not otherwise disputed.

**NYCHA Statement**

221.     Brian Clarke offered Colon a Senior Administrator position in the Management Services Department run by Lillian Harris, with a salary of $122,000.  Lippman Dec., Exhibit 5 (Colon Dep. Tr. at 242:17-244:18-245:7, 301:20-22).

**Plaintiff's Response**

221.     Not disputed.

**NYCHA Statement**

222.     Colon claims that Senior Administrator is a "made up title."  However, Colon previously held an Administrator title in the Manhattan and Brooklyn Property Management Departments.  Lippman Dec., Exhibit 5 (Colon Dep. Tr. at 244:18-23); Exhibit 22 (April 8, 2015 Email Attaching Colon's Resume).

**Plaintiff's Response**

222.     Objection.  The use of the term "claims" is inappropriate in a Rule 56.1 statement.

Objection.  The statement also constitutes a blatant attempt to impugn Plaintiff's credibility, which is inappropriate on a motion for summary judgment.

Objection.  The purported comparison in the statement is also unintelligible.

**NYCHA Statement**

223.     Colon claims she "wrote the blueprint and the program" for the Management Services Department, served on a task force for this Department, and, "Wrote a whole lot of documents up for that department to be created."  Lippman Dec., Exhibit 5 (Colon Dep. Tr. at 246:6-23).

**Plaintiff's Response**

223.     Objection.  The use of the term "claims" is inappropriate in a Rule 56.1 statement.

Not otherwise disputed.

**NYCHA Statement**

224. Although Colon claims she "basically took the lead in creating [the Management Services Department," she declined the Senior Administrator position and resigned immediately because the position "was still under Brian [Clarke's] leadership," and "[she] was already

physically illed [sic] by being forced to create a racist act," and "Brian Clarke had asked [her] to commit a crime."  Lippman Dec., Exhibit 5 (Colon Dep. Tr. at 246:24-250:7).

**Plaintiff's Response**

224.    Objection.  The use of the terms "Although" and "claims" are inappropriate in a Rule 56.1 statement.

Objection.  The statement is a blatant attempt to undermine Plaintiff's credibility, which is inappropriate on a motion for summary judgment.

**NYCHA Statement**

225.    Colon claims she would not have supervised anyone in the Management Services Department, which was a new department.  However, Colon testified that she does not know the current size of the Management Services Department and does not know whether she would have had supervisory responsibilities had she accepted the position.  Lippman Dec., Exhibit 5 (Colon Dep. Tr. at 245:6-11, 257:24-258:9).

**Plaintiff's Response**

225.    Objection.  The use of the terms "claims" and "However" are inappropriate in a Rule 56.1 statement.

Objection.  The statement is a blatant attempt to undermine Plaintiff's credibility, which is inappropriate on a motion for summary judgment.

Objection.  The current size of the Management Services Department is immaterial.

**NYCHA Statement**

226.     Although the verified Complaint claims that Lillian Harris "doesn't know her own department as well as [Colon]," Colon does not know whether that is true and had never worked with Harris before Colon resigned.  Lippman Dec., Exhibit 5 (Colon Dep. Tr. at 258:21-259:12); Exhibit 1 (Complaint at ¶ 59).

**Plaintiff's Response**

226.     Objection.  The use of the terms "Although" and "claims" are inappropriate in a Rule 56.1 statement.

Objection.  The statement is a blatant attempt to undermine Plaintiff's credibility, which is inappropriate on a motion for summary judgment.

**NYCHA Statement**

227.     Colon believes that Regional Asset Manager Octavia Hayward immediately replaced her as the Director.  Colon claims she knows this because she "talk[s] to many people in the Housing Authority."  Lippman Dec., Exhibit 5 Colon Dep. Tr. at 253:7-254:11); Exhibit 1 (Complaint at ¶ 59).

**Plaintiff's Response**

227.     Objection.  The use of the term "claims" is inappropriate in a Rule 56.1 statement.

Objection.  The statement is a blatant attempt to undermine Plaintiff's credibility, which is inappropriate on a motion for summary judgment.

**NYCHA Statement**

228.     After Colon left NYCHA, there was no acting Director of OPMOM, and NYCHA did not hire another OPMOM Director until May 2016.  NYCHA hired Janet Abrahams as Vice President of OPMOM, and she reported to General Manager Michael Kelly.  Lippman

Dec., Exhibit 14 (Artis Dep. Tr. at 56:4-57:22); Exhibit 37 (August, September, and October

2015 Organization Charts; May 20, 2016 email from Lorraine Roman on behalf of Janet

Abrahams).

**Plaintiff's Response**

228.     Disputed.  Octavia Hayward represented herself as the acting director of OPMOM

shortly after the removal of Colon in August 2015.  Florestal Dec., Exhibit 26.

**NYCHA Statement**

229.     Octavia Hayward became OPMOM Director in May 2016.  Lippman Dec.,

Exhibit 37 (August, September, and October Organization Charts; May 20, 2016 email from

Lorraine Roman on behalf of Janet Abrahams).

**Plaintiff's Response**

229.     Disputed to the extent Ms. Hayward was the Acting Director following

Plaintiff's demotion.  Florestal Dec., Exhibit 26.

**NYCHA Statement**

230.     Octavia Hayward was an "effective" Director.  Lippman Dec., Exhibit 9 (Sept.

23, 2019 Kelly Dep. Tr.at 34:5-35:4 and errata sheet).

**Plaintiff's Response**

230.     Objection.  The statement is immaterial.  *Cf.* Florestal Dec., Exhibit 10 at 16.

Objection.  There is no foundation for the statement.

**NYCHA Statement**

231.     In October 2016, Janet Abrahams was promoted to Senior Vice President for

NextGen Operations.  Lippman Dec., Exhibit 38 (Janet Abrahams' Human Resources Record

Card).

**Plaintiff's Response**

231.     Objection.  The statement is immaterial.  The NYCHA Defendants admitted before this Court that Ms. Abrahams performance was not relevant.  See Florestal Dec., Exhibit 10 at 16.

**NYCHA Statement**

232.     Janet Abrahams successfully expanded the OPMOM property modeling from the 18-development pilot program.   Lippman Dec., Exhibit 8 (July 3, 2019 Kelly Dep. Tr. at 47:13-18).

**Plaintiff's Response**

232.     Objection.  The statement is immaterial.

**NYCHA Statement**

233.   In July 2017, Janet Abrahams left NYCHA to become the Executive Director of the Baltimore Housing Authority.  Lippman Dec., Exhibit 8 (July 3, 2019 Kelly Dep. Tr. at 47:19-22); Exhibit 38 (Janet Abrahams' Human Resources Record Card).

**Plaintiff's Response**

233.     Objection.  The statement is immaterial.

**NYCHA Statement**

234.     NYCHA's Equal Employment Opportunity Policy provides equal opportunities for all qualified applicants and personnel and prohibits discrimination on the basis of, inter alia, race, in all terms and conditions of employment, including but not limited to work assignments, salary and benefits, performance evaluations, and promotions, and prohibits retaliation for complaining of unlawful discrimination.  Lippman Dec., Exhibit 39 (NYCHA Equal Employment Opportunity Policy Statements).

**Plaintiff's Response**

234.    Objection. The statement is vague as to whether it refers to written or enforced policy.

**NYCHA Statement**

235.    Colon is aware of NYCHA's equal opportunity policies and acknowledged receipt of the policy statements online.  Lippman Dec., Exhibit 5 (Colon Dep. Tr. at 329:14-22).

**Plaintiff's Response**

236.    Not disputed, to the extent it refers to written policies.

**NYCHA Statement**

236.    Colon filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") dated September 28, 2015, indicating race and national origin discrimination and retaliation.  Colon filed another Charge of Discrimination with the EEOC dated December 1, 2015; this Charge indicated race, retaliation, color, and national origin as the cause of discrimination.  On January 27, 2016, NYCHA received the Charges with a Notice of Charge of Discrimination dated January 8, 2016; the Notice of Charge indicated race, national origin, and retaliation as the bases of alleged discrimination.  The EEOC issued a Notice of Right to Sue dated April 26, 2016.  Lippman Dec., Exhibit 40 (EEOC Charges, Notice of Charge, and Notice of Right to Sue).

**Plaintiff's Response**

236.    Not disputed.

**NYCHA Statement**

237.    Colon filed a Complaint on June 17, 2016.  Lippman Dec., Exhibit 1 (Complaint).

**Plaintiff's Response**

237.   Not disputed.

**NYCHA Statement**

238.   In a March 26, 2018 Opinion & Order, the Court granted the NYCHA

Defendants' motion to dismiss Colon's hostile work environment claim against NYCHA,

Section 1985 claim against Michael Kelly and Brian Clarke, First Amendment retaliation claim

against NYCHA, and intentional infliction of emotional distress claim against Michael Kelly and

Brian Clarke; and denied the NYCHA Defendants' motion to dismiss Colon's retaliation claims

under Title VII, the NYSHRL, and the NYCHRL against NYCHA; retaliation claim under 42

U.S.C. Section 1983 against Kelly and Clarke; and aiding and abetting claim under the NYSHRL

against Kelly and Clarke.  The Court dismissed all claims against the City Defendants.  See

docket entry no. 43.

**Plaintiff's Response**

238.   Not disputed.

**NYCHA Statement**

239.   The NYCHA Defendants answered the Complaint on May 9, 2018.  Lippman

Dec., Exhibit 2 (The NYCHA Defendants' Answer).

**Plaintiff's Response**

239.   Not disputed.

**NYCHA Statement**

240.   In a March 22, 2019 Opinion & Order, the Court granted Colon's motion for

reconsideration as to her claim for aiding and abetting under the NYSHRL against the Former

Speaker and reinstated the Former Speaker as a Defendant in the case.  See docket entry no. 76.

**Plaintiff's Response**

240.    Not disputed.

**NYCHA Statement**

241.    The Former Speaker answered the Complaint on April 5, 2019.  Lippman Dec.,

Exhibit 3 (Defendant Melissa Mark-Viverito's Answer).

**Plaintiff's Response**

241.    Not disputed.

Dated:  New York, New York
        April 17, 2020

                                        Respectfully submitted,

                                        /s/Marcel Florestal, Esq.
                                        FLORESTAL LAW FIRM,
                                        PLLC
                                        *Trial Counsel for Plaintiff*
                                        48 Wall Street, Suite 11
                                        New York, NY 10005
                                        (212) 918-4416  - Voice
                                        (646) 417-7777  - Fax