**8**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
SIBYL COLON,

                          PLAINTIFF,


          -against-        Case No.:
                           16-CV-4540


THE CITY OF NEW YORK, ET AL,
                          DEFENDANT.
-----------------------------------------X
ALLISON WILLIAMS,

                          PLAINTIFF,


          -against-        Case No.:
                           16-CV-8193
THE CITY OF NEW YORK, ET AL,
                          DEFENDANT.
-----------------------------------------X
                    DATE:  June 20, 2019
                    TIME:  11:20 A.M.


          DEPOSITION of a non-party
witness, KENYA SALAUDEEN, taken by the
Plaintiffs, pursuant to a Subpoena and to
the Federal Rules of Civil Procedure, held
at the office of Lexitas Court Reporting
Service, 48 Wall Street, New York, New York
10005, before Vanessa L. Kennedy, a Notary
Public of the State of New York.

```
 1

 2   A P P E A R A N C E S:

 3

 4   FLORESTAL LAW FIRM
        Attorney for the Plaintiffs
 5      SIBYL COLON
        ALLISON WILLIAMS
 6      48 Wall Street
        New York, New York 10005
 7      BY:  MARCEL FLORESTAL, ESQ.
              LESLIE K. BENNETT, ESQ.
 8            of Counsel

 9

10   NEW YORK CITY HOUSING AUTHORITY
     GENERAL COUNSEL
11      Attorney for the Defendants
        BRIAN CLARKE
12      MICHAEL KELLY
        250 Broadway
13      New York, New York 10007
        BY:  JANE E. LIPPMAN, ESQ.

14
              *         *         *
15

16

17

18

19

20

21

22

23

24

25
```

```
 1
 2        F E D E R A L    S T I P U L A T I O N S
 3
 4        IT IS HEREBY STIPULATED AND AGREED by
 5   and between (among) counsel for the
 6   respective parties herein, that filing and
 7   sealing be and the same are hereby waived.
 8
 9        IT IS FURTHER STIPULATED AND AGREED
10   that all objections, except as to the form
11   of the question, shall be reserved to the
12   time of the trial.
13
14        IT IS FURTHER STIPULATED AND AGREED
15   that the within deposition may be sworn to
16   and signed before any officer authorized to
17   administer an oath, with the same force and
18   effect as if signed and sworn to before the
19   Court.
20
21             *     *     *     *
22
23
24
25
```

```
 1                    SALAUDEEN
 2   K E N Y A   S A L A U D E E N, called as a
 3   witness, having been first duly sworn by a
 4   Notary Public of the State of New York, was
 5   examined and testified as follows:
 6   EXAMINATION BY
 7   MR. FLORESTAL:
 8        Q.    Good morning, Miss Salaudeen.
 9        A.    Good morning.
10        Q.    The court reporter is taking
11   down everything that is being said in this
12   room today.  She can only take down one of
13   us at a time so please try to let me finish
14   my question before you answer.  Even if you
15   can anticipate where I'm going with my
16   question please let me finish the question
17   so that we can have a nice and clean
18   record.  The court reporter cannot take
19   down a nod of your head or other utterance
20   like mm-hmm's or uh-huh's.  Please make
21   sure to state your responses clearly.  If
22   you don't understand any of my questions
23   please tell me and I will try to rephrase.
24   If you answer a question, I will presume
25   that you understood the question.  If you
```

```
 1                   SALAUDEEN
 2        A.    Yeah.  I mean, I'd have to
 3   confirm.  I think that's the name.
 4        Q.    How long were you there for?
 5        A.    Four months, maybe.
 6        Q.    Prior to that?
 7        A.    I was with the New York City
 8   Housing Authority.
 9        Q.    Let's talk about that; how long
10   were you with the New York City Housing
11   Authority otherwise known as NYCHA?
12        A.    '15, '16 about -- just shy of
13   two and a half years.
14        Q.    Can you tell us what role you
15   served in during those two and a half years
16   at NYCHA?
17        A.    My title was director of human
18   resources and labor relations.  Director of
19   human resources and labor relations.
20        Q.    What exactly does that entail?
21        A.    I had primary responsibility
22   for all of the services that came out of
23   the human resources department which
24   included employee and labor relations.
25        Q.    What sort of employee and labor
```

```
 1                    SALAUDEEN
 2   relations services would you be tending to
 3   in the HR department?
 4        A.    Generally I would become
 5   involved in employer (sic) relations and
 6   matters that were escalated from my staff.
 7        Q.    You said employee relations
 8   matters?
 9        A.    Yes.
10        Q.    That were escalated from your
11   staff?
12        A.    Yes.
13        Q.    What exactly does that mean?
14        A.    That means that we had an
15   employee relations unit and concerns,
16   complaints, questions, primarily came
17   through that unit and if it was of a series
18   or egregious enough nature, they would
19   escalate it to me.
20        Q.    Do you recall who were members
21   of that unit, the names of the individuals
22   who made up that unit?
23        A.    I don't recall.
24        Q.    How large was that unit; how
25   many employees did it contain?
```

```
 1                      SALAUDEEN
 2        A.    It's been a while.  I blocked
 3   it out of my memory so I really don't
 4   recall.
 5        Q.    Does the name Richard Bennardo
 6   mean anything to you?
 7        A.    Yes.
 8        Q.    Was he a member of that unit?
 9        A.    Yes.
10        Q.    Does the name Marla Edmonson
11   mean anything to you?
12        A.    Yes.
13        Q.    Was she a member of that unit?
14        A.    Yes.
15        Q.    What do you currently do at in
16   your current position?
17        A.    I am responsibile for human
18   resources services.
19        Q.    What does that entail?
20        A.    A litany of services; would you
21   like me to go through all of them?
22        Q.    Absolutely.
23        A.    Employee relations, benefits,
24   administration, new hire orientation,
25   guidance, advisement.
```

```
 1                    SALAUDEEN
 2        Q.    When you say employer
 3   relations, does it entail disciplining
 4   employees if the need should arise?
 5             MS. LIPPMAN:  Objection.
 6        A.    I don't discipline any
 7   employees.
 8        Q.    Who would do that?
 9        A.    It would be the manager.
10        Q.    Do you advise the manager as to
11   the proper protocol?
12        A.    I do.
13        Q.    Do you have a legal background
14   Miss Salaudeen?
15        A.    I do not.
16        Q.    What is your educational
17   background?
18        A.    Master's degree in
19   organizational leadership.
20        Q.    Why did you leave NYCHA?
21        A.    I was terminated.
22        Q.    Why were you terminated?
23        A.    I don't know.
24        Q.    Do you recall your last day at
25   NYCHA?
```

```
 1                    SALAUDEEN
 2        A.    The end of March.  I don't
 3   recall what --
 4        Q.    Of what year?
 5        A.    2017.
 6        Q.    Are you familiar with
 7   Sibyl Colon the former director of OPMOM?
 8        A.    I remember her.
 9              MS. LIPPMAN:  Objection.
10        A.    I remember her name.
11        Q.    How are you familiar with
12   former director of OPMOM Sibyl Colon?
13              MS. LIPPMAN:  Objection.
14        A.    I can't say I'm familiar with
15   her aside from her name.
16        Q.    Do you recall ever dealing at
17   NYCHA with Sibyl Colon?
18              MS. LIPPMAN:  Objection.
19        A.    What do you mean by dealing?
20        Q.    Have you ever spoken to her?
21        A.    I would assume yes.
22        Q.    Have you ever worked on a
23   matter with her during your tenure at
24   NYCHA?
25        A.    Not that I recall; nothing
```

```
 1                    SALAUDEEN
 2  opportunity to finish.
 3       Q.    My apology.
 4       A.    So then there's another
 5  exchange between Laurence Wilensky and
 6  Sybille Louis and Sibyl Colon and then an
 7  email from Sibyl Colon to Richard Bennardo
 8  and Marla Edmonson.
 9       Q.    Richard Bennardo and
10  Marla Edmonson you stated both reported to
11  you; correct?
12            MS. LIPPMAN:  Objection.
13       A.    At various points in time yes.
14       Q.    Now can you tell us; does NYCHA
15  keep data tabulations of race and ethnicity
16  of their residences?
17       A.    I have no idea.  I do not know.
18       Q.    Do you know why
19  Richard Bennardo and Marla Edmonson would
20  need data tabulations of the racial
21  breakdown of Mill Brook Houses?
22            MS. LIPPMAN:  Objection.
23       A.    I don't know that they did
24  needed it.  If they needed it, I don't know
25  why.  According to this email, Sibyl
```

```
 1              SALAUDEEN
 2   initiated a communication to
 3   Richard Bennardo and Marla Edmonson
 4   forwarding them the attachment, which is
 5   the demographics of residents.  So I don't
 6   see that request came from them, but I see
 7   Sibyl Colon forwarding it to them based on
 8   this Exhibit that you gave me.
 9        Q.    Why would your department, the
10   department that you head, why would they
11   have need of the racial breakdown of the
12   Mill Brook Houses -- well any project
13   property rather?
14        A.    Development.
15        Q.    Development.  Sorry.
16              MS. LIPPMAN:  Objection.
17        A.    I don't know why HR would have
18   a need for demographics about residents at
19   any of the developments.
20        Q.    Have you ever requested
21   demographics of racial breakdown of
22   developments?
23        A.    I would say no.
24        Q.    Why would you say no?
25              Why would HR not need the
```

```
 1                      SALAUDEEN
 2    racial breakdown of developments?
 3              MS. LIPPMAN:  Objection.
 4         A.    Well, I can tell you why I
 5    wouldn't need the breakdown of residents.
 6    So I would not need the breakdown of the
 7    demographics of residents because my
 8    responsibility was employees not residents.
 9         Q.    When you say I, you led the HR
10    department; correct?
11         A.    Correct.
12              MS. LIPPMAN:  Objection.
13         A.    I was one of the leaders.
14         Q.    Who was the other leader?
15         A.    Well, ultimate responsibility
16    was CAOs, chief administration officers.
17         Q.    Do you recall that person's
18    name?
19         A.    In August of 2015?
20         Q.    In '15, yes.
21         A.    It could have been
22    Natalie Rivers.
23         Q.    So you've never requested
24    during your tenure at NYCHA a racial
25    breakdown of any development for NYCHA?
```

```
 1                    SALAUDEEN
 2              C E R T I F I C A T E
 3
 4   STATE OF NEW YORK       )
                             :  SS.:
 5   COUNTY OF KINGS         )
 6
 7         I, VANESSA L. KENNEDY, a Notary
 8   Public for and within the State of
 9   New York, do hereby certify:
10         That the witness whose examination is
11   hereinbefore set forth was duly sworn and
12   that such examination is a true record of
13   the testimony given by that witness.
14         I further certify that I am not
15   related to any of the parties to this
16   action by blood or by marriage and that I
17   am in no way interested in the outcome of
18   this matter.
19         IN WITNESS WHEREOF, I have hereunto
20   set my hand this 6th day of July 2019.
21
22
23   _____
                    VANESSA L. KENNEDY
24
25
```