UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
SIBYL COLON,

                        **Plaintiff,**                              **CIVIL ACTION**
     **-against -**                                  **Index No.: 16-CV-04540**

THE CITY OF NEW YORK, *et al*.,

                        **Defendants.**
-------------------------------------------------------------X


# PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Marcel Florestal, Esq.
**FLORESTAL LAW FIRM, PLLC**
*Trial Counsel for Plaintiff*
48 Wall Street, Suite 11
New York, NY 10005
(212) 918-4416

Dated: May 15, 2020

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT ……………………………………………………………1

ARGUMENT....................................................................................................................5

    I.     PLAINTIFF HAS MET HER BURDEN FOR RETALIATION UNDER
        TITLE VII, SHRL & CHRL IN ACCORDANCE WITH
        MCDONNELL DOUGLAS ……………………………………………………5

    II.    NYCHA DEFENDANTS HAVE FAILED TO MEET THEIR BURDEN
        TO ESTABLISH A NON-RETALIATORY REASON UNDER
        MCDONNELL DOUGLAS ……………………………………………………8

    III.   PLAINTIFF HAS ESTABLISHED MICHAEL KELLY'S
        AND BRIAN CLARKE'S LIABILITY UNDER 42 U.S.C. § 1983 …………….9

    IV.   PLAINTIFF HAS ESTABLISHED MELISSA MARK-VIVERITO,
        MICHAEL KELLY, AND BRIAN CLARKE AIDED AND ABETTED
        DISCRIMINATORY CONDUCT AND ARE LIABLE UNDER
        NYSHRL 296[6] …………………………………………………………...10

CONCLUSION ……………………………………………………………………………11

i

# TABLE OF AUTHORITIES

**CASES**                                                                                     **Page**

*Albunio v. City of New York,* 16 N.Y.3d 472  (2011) …………………………….…..………… 6

*Ameer v. Fleet Mechanical Systems*, 2019 WL 1949858 (S.D.N.Y.) ……………..…………. 1

*Butler v. Raytel Medical Corp.,* 150 Fed. Appx. 44 (2d Cir. 2005) ……………………..…….3

*Fattoruso v. Hilton Grand Vacations Co.*, 873 F. Supp. 2d 569 (S.D.N.Y. 2012),
    *aff'd*, 525 Fed. App'x 26 (2d Cir. 2013) …………………………………………….…..6

*Fiedler v. Incandella*, 222 F. Supp. 3d 141 (E.D.N.Y. 2016) …………………………….…..…1

*Garrigan v. Ruby Tuesday, Inc.*, 2014 WL 2134613 (S.D.N.Y.) …………………….……….. 6

*Mihalik v. Credit Agricole Cheuvreux v. N. Am., Inc.,* 715 F.3d 102 (2d Cir. 2013) …………… 7

*Palazzo ex rel Delmage v. Corio*, 232 F.3d 38 (2d Cir. 2000) …………………………………3

*Smith v. City of Suffolk*, 776 F.3d 114 (2d Cir. 2015) …………………………………….7

*Winston v. Verizon Servs. Corp.*, 633 F. Supp. 2d 42 (S.D.N.Y 2009) …………………..……. 6

## STATUTES

42 U.S.C. § 1983  …………………………………………………………………………… 9

N.Y. City Admin. Code § 8-107 *et seq.* ("CHRL") ……………………………….............1, 5-7

N.Y. Executive Law § 296 *et seq.* ("SHRL")……….……………………………………...…1

N.Y. Executive Law 296[6] ("SHRL") ……………………………………….…..1, 5, 10-11

## RULES

SDNY Local Civil Rule 7.1 ………………………………………………………………1

## PRELIMINARY STATEMENT

Sibyl Colon ("Plaintiff" or "Ms. Colon") respectfully submits this reply memorandum of law in further support of Plaintiff's motion for summary judgment against the New York City Housing Authority ("NYCHA"), Michael Kelly ("Manager Kelly") and Brian Clarke ("SVP Clarke") (collectively, "NYCHA Defendants") and Melissa Mark-Viverito ("Council Speaker") (collectively "Defendants").

As an initial matter, NYCHA Defendants argue in their memorandum of law in opposition, without citation to any authority, that Plaintiff has in fact moved for partial summary judgement with respect to her retaliation claims, as both her notice of motion and SDNY Local Rule 56.1 Statement refer only to the New York State Human Rights Law ("SHRL") and New York City Human Rights Law ("CHRL") and not Title VII of the federal Civil Rights Act. NYCHA Defendants' Memorandum of Law in Opposition to Plaintiff Sibyl Colon's Motion for Summary Judgment ("NYCHA Mem. in Opp.") at 1. NYCHA Defendants' argument is unavailing and should be rejected, as it simply identifies a scrivener's error. Notably, Plaintiff argued Title VII retaliation in her memorandum of law, and indeed, as acknowledged by NYCHA Defendants, the SHRL and Title VII analyses are identical. *Id.* Also, courts in this circuit have invariably recognized that an oversight in a notice of motion does not preclude the movant from obtaining the relief sought as long as the opposing party is "fairly and adequately apprised" of the relief sought, e.g., as expressed in movant's memorandum of law. *Fiedler v. Incandella*, 222 F. Supp. 3d 141, 155 (E.D.N.Y. 2016); *Ameer v. Fleet Mechanical Systems*, 2019 WL 1949858 at *1 n.1 (S.D.N.Y.). *See* SDNY Local Civil Rule 7.1 ("Except . . . as otherwise permitted by the Court").

Faced with overwhelming empirical data[1] in support of Plaintiff's "convincing mosaic" of evidence of retaliation, NYCHA Defendants have shamelessly resorted to relying on spurious allegations extracted from two (2) non-parties who are currently under their dominion and control. One such allegation from NYCHA's current Employee Relations Coordinator, Marla Edmonson ("Ms. Edmonson") professes: "[h]owever, as I mentioned during my deposition, Plaintiff had informed me that the transfer was the result of Ms. Williams'[s] poor treatment of Spanish-speaking Mill Brook tenants, an issue which Plaintiff told me was raised during a meeting." Declaration of Marla Edmonson dated April 3, 2020, ¶ 7. Ms. Edmonson's allegation is not only unsupported by the record, but is easily dispelled, as nowhere in her forty-six (46) page deposition, including her errata, does she make the statement alleged in her declaration. Indeed, when Plaintiff asked Ms. Edmonson the global question of what she recalled with respect to her conversation with Ms. Colon on removing Ms. Williams, Ms. Edmonson replied: "[j]ust the calling in reference to having to remove Allison Williams from that particular location . . . in reference to − I can't remember if it's Spanish speaking or having to remove Allison Williams." Declaration of Marcel Florestal dated January 17, 2020 ("Florestal Dec."), Exhibit 11 at 11. Ms. Edmonson's April 23, 2019 deposition testimony is incongruent with her April 3, 2020 declaration, as she made no mention in her deposition that "Plaintiff had informed me that the transfer was the result of Ms.

---

[1] Defendants erroneously claim that Exhibits 18, 39 and 40 were not produced in discovery, lack foundation and are inadmissible hearsay, and that Exhibit 18 is immaterial. Response of the NYCHA Defendants to Plaintiff Sybil Colon's Local Civil 56.1 Statement ("NYCHA Response to Plaintiff's 56.1 Statement"), ¶ 30, Def. Mem. in Opp. at 21-22. Exhibits 39 and 40 were produced on March 5, 2019, as acknowledged by NYCHA Defendants on March 6, 2019. Reply Declaration of Marcel Florestal dated May 15, 2020 ("Florestal Reply Dec."), Exhibit 46; Exhibit 18 is a publicly available U.S. Census document, which was not required to be identified until submission of the Joint Pre-Trial Order. The exhibits are self-authenticating documents pursuant to Federal Rules of Evidence ("FRE") 902(5) (Exhibits 18, 39 and 40) and (6) (Exhibits 18 and 40), and SVP Clarke authenticated Exhibit 39. Declaration of Marcel Florestal dated January 17, 2020, Exhibit 5 at 76-79. *See* FRE 901(a) and (b)(1). Exhibit 18 is admissible under the public records exception FRE 803(8) and FRE 201(b)(2), and Exhibits 39 and 40 are admissible against NYCHA Defendants under FRE 801(d)(2)(A)-(D). Exhibit 18 , is material, as it addresses the issue of the practical insignificance of requesting a "Spanish" versus a "Spanish-speaking" manager.

2

Williams'[s] poor treatment of Spanish-speaking Mill Brook tenants," as newly declared by Ms. Edmonson.  This Court should summarily reject Ms. Edmonson's declaration under the "sham affidavit" rule, to the extent that it contradicts her prior deposition testimony and/or create new issues of fact.  *Butler v. Raytel Medical Corp.,* 150 Fed. Appx. 44, 45 (2d Cir. 2005) (concluding district court properly disregarded affidavit that contradicted employee's deposition and supplied information that had been conspicuously omitted during deposition); *Palazzo ex rel Delmage v. Corio*, 232 F.3d 38, 43 (2d Cir. 2000) ("in opposing summary judgment, a party who has testified to a given fact in his deposition cannot create a triable issue merely by submitting an affidavit denying the fact").

Also, NYCHA and Octavia Hayward ("Ms. Hayward"), Plaintiff's successor as Director of the Optimal Property Management Department ("OPMOM"), currently NYCHA's Director of Manhattan Property Management Department, boldly ask this Court to reject Plaintiff's argument that Ms. Hayward became OPMOM's Acting Director upon Plaintiff's removal.  Declaration of Octavia Hayward dated March 9, 2020, ¶ 6; NYCHA Mem. in Opp. at 18, 20.  Their contention flies in the face of (1) Ms. Hayward's own admission that she was OPMOM's Acting Director as early as September 2015, and (2) the sworn declarations of two (2) former NYCHA Directors who personally observed SVP Clarke introduce Ms. Hayward at executive level meetings as OPMOM's Acting Director immediately after NYCHA Defendants removed Ms. Colon in August 2015.

Notwithstanding Defendants' attempt to obfuscate a clear record, no reasonable jury could return a verdict for Defendants here, as the following material facts are irrefutable, supported by empirical evidence, and present this Court with no genuine issues to resolve:

1 – Ms. Hayward, who was Plaintiff's former subordinate on August 28, 2015, Florestal Dec., Exhibit 4 at 79, served as OPMOM's **Acting Director**, commencing in September 2015,

Florestal Reply Dec., Exhibit 45 (emphasis added) (Hayward represented herself as OPMOM's Acting Director in September 2015); Declarations of Robert Knapp, former NYCHA Director of Heating dated April 22, 2020 ("Knapp Dec.") and Louis Nieves, former Acting Director of NYCHA's Manhattan Property Management Department dated May 1, 2020 ("Nieves Dec.") (attesting that they personally observed SVP Clarke introduce Ms. Hayward at Director's meetings as OPMOM's Acting Director in September 2015 and Ms. Hayward represented herself as such)[2];

2 – NYCHA Defendants officially appointed Ms. Hayward OPMOM's **Director** on May 26, 2016.  Florestal Dec., Exhibit 42 (emphasis added);

3 – Janet Abrahams ("Ms. Abrahams") began working at NYCHA in September 2015 as Vice President ("VP") and replaced SVP Clarke in leading OPMOM, Response of the NYCHA Defendants to Plaintiff Sybil Colon's Local Civil 56.1 Statement ("NYCHA Response to Plaintiff's 56.1 Statement"), ¶ 23, ¶ 19, last paragraph of NYCHA Response ("OPMOM was 'moved out' from under Brian Clarke"); and

4 – Ms. Abrahams never served as OPMOM's Director, NYCHA Response to Plaintiff's 56.1 Statement, ¶ 20, and NYCHA Defendants admitted in open court that Ms. Abrahams did not replace Ms. Colon as OPMOM's Director, Florestal Dec., Exhibit 16 at 15-16.

### ARGUMENT

I.   **PLAINTIFF HAS MET HER BURDEN FOR RETALIATION UNDER TITLE VII, SHRL & CHRL IN ACCORDANCE WITH MCDONNELL DOUGLAS**

---

[2] Mr. Knapp and Mr. Nieves both declare under penalty of perjury that in their thirty plus (30+) years working at NYCHA they have always observed NYCHA appointing an Acting Director to address a formal vacancy in the position of Director, Knapp Dec., ¶ 6, Nieves Decl., ¶ 7, which is in accord with NYCHA's designation of Shinay Jones as OPMOM's Acting Director directly prior to Plaintiff's formal appointment as OPMOM's Director, Declaration of Natalie S. Marcus dated April 17, 2020 ("Marcus Dec.,"), Exhibit B at 50, 56-57, and indeed, thereafter, Octavia Hayward, Knapp Dec.,¶¶ 2-5, Nieves Decl., ¶¶ 4-6.

Plaintiff has established that she engaged in protected activity, or opposition, as demonstrated by the following: first, she reasonably believed as discriminatory, and opposed, Council Speaker's request to remove Ms. Williams from Mill Brook and replace her with a "Spanish," or "Spanish-speaking manager"; she boldly communicated to Council Speaker that's not the way things are done at NYCHA, people are not chosen that way.[3]  Florestal Dec., Exhibit 10 at 29-33.  Plaintiff testified that she was in shock at Council Speaker's request and cried because she thought what she was being asked to do was racist.  Florestal Dec., Exhibit 4 at 136, 156. James Artis and Allison Williams who are both African-American also viewed Council Speaker's request as "racist," and/or an attack on Ms. Williams's ethnicity.  Florestal Dec., Exhibit 4 at 135-37, 154-58, Exhibit 10 at 33-34, 38-39, Exhibit 15 at 213-14, 294-97.  It is worth noting that the distinction between "Spanish" and "Spanish speaking" is irrelevant for purposes of this analysis, as the law simply looks at whether a plaintiff had a "good faith reasonable belief" that she was opposing a discriminatory practice, *Fattoruso v. Hilton Grand Vacations Co*., 873 F. Supp. 2d 569, 581 (S.D.N.Y. 2012), *aff'd,* 525 F. App'x 26 (2d Cir. 2013), and the facts here clearly show that she did.[4]  *See also Garrigan v. Ruby Tuesday, Inc.*, 2014 WL 2134613 at *5 (S.D.N.Y.) (citing and quoting from *Albunio v. City of New York,* 16 N.Y.3d 472, 478-79 (2011) (stating that under CHRL "'oppos[ing] any practice can include situations where a person, before the retaliatory conduct occurred, merely made clear her disapproval of [the defendant's] discrimination by communicating to [him], in substance, that she thought [his] treatment of [the victim] was wrong.'") (brackets in original).

---

[3] Presciently, James Artis, who also attended the meeting, stated that he chose not to speak out against Council Speaker because he feared that had he spoken out his career at NYCHA would have been negatively affected.  Marcus Dec., Exhibit J at 50-54.

[4] It is irrelevant for the further reason that replacement of Ms. Williams, as directed by the Defendants, would, as a practical matter result in a new manager who was not African-American, a result that was clearly recognized by the three NYCHA African-American employees who attended the July 30 meeting.  *See* Plaintiff's Mem. at 4-5 & n.1.

Second, Plaintiff has established that she placed NYCHA Defendants on notice of her opposition on multiple occasions, including during the July 30 meeting at Council Speaker's office when she openly criticized the Speaker's discriminatory request to remove Ms. Williams from Mill Brook.  Florestal Dec., Exhibit 10 at 29-33.

Also, on July 31, 2015, Plaintiff requested to meet with SVP Clarke to raise her concerns about Council Speaker's request, and critically stated to him, "did you hear the meeting?"  Florestal Dec., Exhibit 4 at 161.

On August 3, 2015, Plaintiff expressed her opposition to NYCHA's Director of Human Resources and Labor Relations, Kenya Salaudeen, by stating "Kenya how do you think I feel? I feel the same way . . . [t]his is racism and discriminatory and I don't like it."  Florestal Dec., Exhibit 4 at 169.  *See Winston v. Verizon Servs. Corp.*, 633 F. Supp. 2d 42, 51 (S.D.N.Y 2009) (concluding that raising concerns to a human resources department "is quintessential protected activity").

Lastly, on August 24, 2015 and August 26, 2015, Plaintiff expressed to SVP Clarke that his request was "illegal" and could not be done along those lines.  Florestal Dec., Exhibit 4 at 216-17, 233-3.

Plaintiff may establish the final element of retaliation, causation, either directly through a showing of retaliatory animus, or indirectly by showing that her protected activity was followed closely in time by an adverse action.[5]  *Smith v. City of Suffolk*, 776 F.3d 114, 118 (2d Cir. 2015). Under the CHRL, the protected activity need only have been "a motivating factor" in the adverse action.  *Mihalik v. Credit Agricole Cheuvreux N. Am, Inc*., 715 F.3d 102, 115 (2d Cir. 2013).

---

[5] Notably, NYCHA Defendants recognized the futility of arguing against the third prong: adverse employment action, and have conceded that element to Plaintiff.  NYCHA Defendants Memorandum of Law in Support of Their Motion for Summary Judgment Against Plaintiff Sybil Colon dated January 17, 2020 at 9 n.4, Dkt. No. 123.

Here, it is it is beyond cavil that Plaintiff has established causation indirectly through temporal proximity, as NYCHA Defendants removed her as Director two (2) days after her final oppositional act against Ms. Williams's removal as manager, thus establishing her prima facie case.

However, the record also supports causation through retaliatory animus.  Specifically, throughout the month of August 2015, SVP Clarke pressured Plaintiff to remove Ms. Williams from Mill Brook.  Florestal Dec., Exhibit 4 at 207-08, 219-22, 236-237, 247.  Ms. Colon was extremely stressed and fearful for her own job security throughout this period and thereafter. Declaration of Jane E. Lippman dated April 17, 2020, Exhibit 1, ¶¶ 45, 47, 53; Florestal Dec., Exhibit 4 at 154, 211-12, 236-37.  SVP Clarke called and/or emailed Ms. Colon consistently, including while he was on vacation, to seek assurance that she had removed Ms. Williams from Mill Brook.  Florestal Dec., Exhibit 4 at 192-93, 207-08, 236-37, 247.  Upon SVP Clarke's return from vacation, and in response to an email Ms. Colon sent him on August 12, 2015, he "started up again" and told Ms. Colon that she had "failed" him.  Florestal Dec., Exhibit 4 at 200-01, 208, Exhibit 29.  On August 26, 2015, SVP Clarke became hostile with Plaintiff for not transferring Ms. Williams and exclaimed "I'll do it myself."  Florestal Dec., Exhibit 4 at 234.

Accordingly, the facts here presented are sufficient for a reasonable fact finder to conclude that NYCHA Defendants had a retaliatory motive in removing Ms. Colon on August 28, 2015, as SVP Clarke perceived Ms. Colon "had failed him" by not removing Ms. Williams, and thus, they did not need her anymore, and SVP Clarke was intent on "do[ing] it [himself]."

## II.   NYCHA DEFENDANTS HAVE FAILED TO MEET THEIR BURDEN TO ESTABLISH A NON-RETALIATORY REASON UNDER MCDONNELL DOUGLAS

NYCHA Defendants have failed to support their only relevant argument, i.e., that they replaced Ms. Colon with Ms. Abrahams, because Ms. Abrahams was the former Chair & CEO's "first choice" to run OPMOM.[6]  It is confounding to follow NYCHA Defendants' argument on this issue, especially in light of the fact that they unwittingly make so many admissions against their own interest in the record that they are now attempting to claw back.  The evidence clearly shows, and NYCHA Defendants admit, that they removed SVP Clarke as the lead executive in OPMOM one (1) month prior to Ms. Abrahams's arrival in September 2015 and accordingly, Ms. Abrahams took over for SVP Clarke and became OPMOM's new lead executive.  NYCHA Response to Plaintiff's 56.1 Statement, ¶¶ 17-18, 20, 23; ¶ 19, last paragraph of NYCHA Response ("OPMOM was 'moved out' from under Brian Clarke").

Moreover, NYCHA Defendants admitted in open court that Ms. Abrahams did not replace Ms. Colon.  Florestal Dec., Exhibit 16 at 15-16.  Indeed, in September 2015, Ms. Colon's former subordinate Octavia Hayward admitted in an official NYCHA email that she was OPMOM's Acting Director.  Florestal Reply Dec., Exhibit 45.

Lastly, Plaintiff has proffered sworn declarations from two (2) former NYCHA directors, Robert Knapp and Louis Nieves, who personally observed SVP Clarke introduce Ms. Hayward as OPMOM's Acting Director in September 2015, and they dealt with her at that level.  Thus, in September 2015, arguably less than one (1) month after Ms. Colon's removal, NYCHA Defendants had in place Ms. Abrahams as OPMOM's new V.P. and lead executive, replacing SVP Clarke, and Ms. Hayward, as OPMOM's Acting Director, replacing former Director Ms. Colon.

---

[6] Plaintiff concedes that NYCHA's former Chair & CEO considered Ms. Abrahams for a strong senior operations position to run OPMOM as early as November or December 2014. Pl. Mem. at 17; Plaintiff's Statement Pursuant to Local Civil Rule 56.1 ("Pl. 56.1"), ¶ 21.

Accordingly, NYCHA Defendants have failed to even meet their minimal burden under *McDonnell Douglas* to rebut Plaintiff's prima facie case by establishing a "legitimate" non-retaliatory reason for removing Plaintiff, and thus, Plaintiff is not required to establish pretext.

## III.   PLAINTIFF HAS ESTABLISHED MICHAEL KELLY'S AND BRIAN CLARKE'S LIABILITY UNDER 42 U.S.C. § 1983

Notably, SVP Clarke did not direct Ms. Colon to remove Ms. Williams from Mill Brook and replace her with a "Spanish" or "Spanish speaking" manager until the day after the July 30 meeting when Council Speaker mandated that action.[7]  SVP Clarke made the linkage between all of the NYCHA Defendants and Council Speaker crystal clear to Plaintiff at his meeting with her on July 31 by stating: "Melissa -- Mr. Kelly wants it done, Melissa wants it done and I want it done. . . Mr. Kelly wants Melissa's agenda carried out."  Florestal Dec., Exhibit 4 at 158.  When Ms. Colon failed to carry out the Defendants' "agenda" by stating "I can't do it.  It just can't be done," *id.* at 234, Manager Kelly and SVP Clarke coordinated their efforts to punish Ms. Colon and remove her as Director, as illustrated by Manager Kelly's Chief of Staff's email: "Sybille [*sic*] will stay in your shop so it's important that you maintain a good relationship with her.  Because of this [Manager Kelly] is willing to talk to her and take ownus [*sic*] for the change so that you don't take the hit."  Marcus Dec., Exhibit BBB.  As argued in more detail in Plaintiff's memorandum of law, it is clear from the facts that Manager Kelly was an active participant in this matter, and SVP Clarke made it clear that they shared the same goal, i.e., to "carry out Melissa's agenda," and, as

---

[7]  NYCHA has not offered any explanation why it initiated this action on July 31, even though it was fully aware of the allegation against Ms. Williams in the Spring of 2015, Declaration of Brian Clarke dated April 17, 2020, ¶ 19; Declaration of Marcela Medina dated April 17, 2020 ("Medina Dec."), ¶ 4; NYCHA Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment Against Allison Williams at 4, 16, Dkt. No. 77 in the companion *Williams* case.  The absence of such an explanation is particularly glaring since the allegation about Ms. Williams was not even mentioned at the July 30 meeting, i.e., "the insulting things didn't come up"  ¶  Medina Dec., ¶ 4, contrary to SVP Clarke's claim that "it was the straw that broke the camel's back."  NYCHA Mem. in Opp. at 24.

reflected in Manager Kelly's Chief of Staff's email, Manager Kelly was willing to be the front

man and "take onus" for removing Ms. Colon so that SVP Clarke would not be implicated.

## IV.   PLAINTIFF HAS ESTABLISHED MELISSA MARK-VIVERITO, MICHAEL KELLY, AND BRIAN CLARKE AIDED AND ABETTED DISCRIMINATORY CONDUCT AND ARE LIABLE UNDER NYSHRL 296[6]

As stated in more detail in Plaintiff's memorandum of law, and supported by the

documentary evidence, Plaintiff has established that Council Speaker incited, aided and

abetted the predicate discriminatory act that ultimately caused Plaintiff harm, i.e., Ms.

Williams's attempted removal from Mill Brook because she was African-American and

Council Speaker wanted a Spanish manager for the predominantly Spanish-speaking

residents.  On July 30, 2015, Council Speaker utilized the power of her office, including the

manager of her Bronx office, Gloria Cruz, Florestal Dec., Exhibit 9 at 16, to try to effectuate

Ms. Williams's removal.

SVP Clarke aided and abetted the discriminatory conduct by instructing, and

attempting to coerce Ms. Colon to remove Ms. Williams pursuant to Council Speaker's

request and coordinating with Manager Kelly in removing Ms. Colon as Director of OPMOM

for not effectuating Ms. Williams's removal.

Manager Kelly attempted to cover up SVP Clarke's involvement in removing Ms.

Colon, which would have been too obvious, as Ms. Colon is SVP Clarke's direct report, and

offered his assistance to "take onus" for Ms. Colon's removal so that SVP Clarke is not

implicated.[8]

---

[8] Indicative of their ruse, Manager Kelly could not remember something so significant as whether he had appointed an Acting Director immediately after removing Ms. Colon, and only answered in the negative after returning from a break having conferred with counsel.  Florestal Dec., Exhibit 8 at 39-40.

10

## CONCLUSION

For the reasons set forth herein, and in the papers previously submitted in support of this motion, this Court should grant Plaintiff's motion for summary judgment in its entirety and such other and further relief as this Court finds just and proper.

Dated:  New York, New York
         May 15, 2020

Respectfully submitted,

/s/Marcel Florestal, Esq.
FLORESTAL LAW FIRM, PLLC
*Trial Counsel for Plaintiff*
48 Wall Street, Suite 11
New York, NY 10005
(212) 918-4416 - Voice
(646) 417-7777  - Fax