**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x

**SIBYL COLON,**

        **Plaintiff,**

      -against-           **Civ. No.:  1:16-cv-04540 (VSB)(OTW)**

**NEW YORK CITY HOUSING AUTHORITY,**
**BRIAN CLARKE, and MICHAEL KELLY,**

        **Defendants.**

------------------------------------------------------------x

## <u>MEMORANDUM OF LAW IN SUPPORT</u><br><u>OF DEFENDANTS' MOTION IN LIMINE</u>

JACKSON LEWIS P.C.
44 South Broadway, 14th Floor
White Plains, New York 10601
Tel: (914) 872-8060
Rebecca M. McCloskey
Rebecca.McCloskey@jacksonlewis.com
Joseph A. Saccomano, Jr.
Joseph.Saccomano@jacksonlewis.com
*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS .................................................................................................... 2

ARGUMENT .................................................................................................................. 2

I.    Evidence Relating to A Recommendation By The "Law Department" Should Be
Excluded. ......................................................................................................................2

      A.    Clarke's Statement Is Highly Prejudicial And Not Probative Of Any Relevant
Issue. ............................................................................................................2

      B.    Clarke's Deposition Statement Is Protected By The Attorney-Client Privilege...3

      C.    Clarke's Deposition Statement Constitutes Inadmissible Hearsay. ......................5

II.    Williams' Testimony Must Be Limited In Scope To The Period Of Time Plaintiff
Worked For NYCHA. ......................................................................................................6

III.    Testimony And Documentary Evidence Relating To NYCHA's Practices Regarding
Lead Paint Inspections Must Be Excluded. ....................................................................7

      A.    Testimony And Documentary Evidence Relating To Lead Paint Is Irrelevant. ...8

      B.    Testimony And Documentary Evidence Relating To Lead Paint Is Unfairly
Prejudicial. ....................................................................................................8

IV.    Plaintiff's Emotional Distress Damages Claim Must Be Limited To Garden Variety.....9

V.    Dr. Papanna Ravichandra Must Be Precluded From Offering Expert Opinion
Testimony. ..................................................................................................................11

VI.    Testimony From Regina Chu And Rosie Mendez Must Be Excluded Because It Is
Irrelevant And Character Evidence Is Not Essential To Any Claim Or Defense...........12

VII.    Calculation Of Economic Damages Should Be Determined By The Court And Not
Submitted To The Jury................................................................................................13

      A.    Plaintiff's Alleged Constructive Discharge Should Be Determined By The Court
And Not Submitted To The Jury....................................................................14

          1.    Plaintiff Failed To Avail Herself Of NYCHA's Internal Complaint
Procedure....................................................................................... 15

2.    A Reasonable Person Would Not Have Found Plaintiff's Working
Conditions "So Intolerable" Making Her Feel "Compelled To Resign." .. 16

B.    Plaintiff's Failure To Mitigate Limits Her Claim For Back Pay. .......................18

VIII.    NYCHA's Language Requirements Are Not Discriminatory Under Title VII,
NYSHRL, And NYCHRL. ..............................................................................................19

IX.    Punitive Damages Are Unavailable As To NYCHA. .....................................................20

X.    Punitive Damages Should Be Bifurcated To After A Finding Of Liability. .................21

XI.    Defendants Clarke And Kelly Are Protected By Qualified Immunity. .........................24

CONCLUSION ....................................................................................................................... 25

## **TABLE OF AUTHORITIES**

**Page(s)**

### Cases

*Allen v. Colgate-Palmolive Co.*,
   No. 79-cv-1076-CSH, 1985 U.S. Dist. LEXIS 21532 (S.D.N.Y. Mar. 21,
   1985) ...................................................................................................................................17

*Almighty Supreme Born Allah v. Milling*,
   876 F.3d 48 (2d Cir. 2017).................................................................................................24

*Anderson v. NY City Health & Hosps. Corp.*,
   No. 16-cv-1051 (GBD) (KHP), 2020 U.S. Dist. LEXIS 36772 (SDNY Mar. 2,
   2020) ...........................................................................................................................19, 25

*Annis v. Cty. of Westchester*,
   136 F.3d 239 (2d Cir. 1998)................................................................................................10

*Ashcroft v. al-Kidd*,
   563 U.S. 731, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011)....................................................24

*Atkins v. Cty. of Orange*,
   372 F. Supp. 2d 377 (S.D.N.Y. 2005), *aff'd Bellotto v. Cty. of Orange*, 248 F.
   App'x 232 (2d Cir. 2007)...................................................................................................12

*Balko v. Ukranian Nat'l Fed. Credit Union*,
   2014 U.S. Dist. LEXIS 42427 (S.D.N.Y. Mar. 28, 2014) ......................................................23

*Bick v. City of New York*,
   No. 95-cv-8781, 1998 U.S. Dist. LEXIS 5543 (S.D.N.Y. Apr. 21, 1998) .............................10

*Bovell v. City of Mount Vernon*,
   No. 21-cv-1621 (AEK), 2023 U.S. Dist. LEXIS 87445 (S.D.N.Y. May 18,
   2023) .............................................................................................................................6

*Broadnax v. City of New Haven*,
   415 F.3d 265 (2d Cir. 2005)................................................................................................13

*Brutton v. United States*,
   687 F. App'x 56 (2d Cir. 2017) ...........................................................................................12

*Bus. Integration Servs. v. AT&T Corp.*,
   251 F.R.D. 121 (S.D.N.Y. 2008) ...........................................................................................4

*Butts v. NY City Dept. of Hous. Preserv. & Dev.*,
    No. 00-CV-6307 (KMK), 2007 U.S. Dist. LEXIS 6534 (S.D.N.Y. Jan. 29,
    2007) ............................................................................................................................18

*Campo v. City of NY*,
    2022 U.S. Dist. LEXIS 60288 (E.D.N.Y. Mar. 31, 2022) ......................................................16

*Cayetano v. Fed. Express Corp.*,
    2022 U.S. Dist. LEXIS 119102 (S.D.N.Y. July 6, 2022) .......................................................15

*Chertkova v. Conn. Gen. Life Ins. Co.*,
    92 F.3d 81 (2d Cir. 1996)....................................................................................................14

*Colson v. Cablevision MFR, Inc.*,
    No. 05-cv-5639 (PGS), 2008 U.S. Dist. LEXIS 18488 (D.N.J. Mar. 11, 2008) ....................19

*Cook County v. United States ex rel. Chandler*,
    538 U.S. 119, 155 L. Ed. 2d 247, 123 S. Ct. 129 (2003)........................................................20

*Cooper v. City of New Rochelle*,
    925 F. Supp. 2d 588 (S.D.N.Y. 2013)...................................................................................24

*Crookendale v. N.Y.C. Health & Hosps. Corp.*,
    175 A.D.3d 1132, 107 N.Y.S.3d 282 (App. Div. 2019) .........................................................15

*Dailey v. Societe Generale*,
    108 F.3d 451 (2d Cir. 1997)..................................................................................................18

*Dallas v. Goldberg*,
    143 F. Supp. 2d 312 (S.D.N.Y. 2001)...................................................................................22

*Davila v. City of New York*,
    139 A.D.3d 890, 33 N.Y.S.3d 306 (2d Dep't 2016) ..............................................................24

*Davis v. Dep't of Educ. of New York*,
    No. 10-cv-05213 (DF), 2012 U.S. Dist. LEXIS 141288 (S.D.N.Y. Sept. 28,
    2012) ................................................................................................................................19

*DeFelice v. Amer. Int'l Life Assurance Co. of New York*,
    112 F.3d 61 (2d Cir. 1997).....................................................................................................8

*Ford Motor Co. v. EEOC*,
    458 U.S. 219, 102 S. Ct. 3057, 73 L. Ed. 2d 721 (1982)........................................................18

*Galindo v. Vanity Fair Cleaners*,
    No. 09-cv-6990 (KBF), 2012 U.S. Dist. LEXIS 91005 (S.D.N.Y. June 29,
    2012) ..................................................................................................................................3

*Garcia v. Doe*,
    779 F.3d 84 (2d Cir. 2015)..........................................................................................24

*Golston-Green v. City of New York*,
    123 N.Y.S.3d at 671...................................................................................................15

*Hamza v. Saks Fifth Ave., Inc.*,
    2011 U.S. Dist. LEXIS 139132 (S.D.N.Y. Dec. 5, 2011) .......................................14

*Harewood v. NY City Dept. of Educ.*,
    No. 18-cv-05487 (KPF) (KHP), 2020 U.S. Dist. LEXIS 226140 (S.D.N.Y.
    Nov. 30, 2020) ..........................................................................................................16

*Hawkins v. 1115 Legal Serv. Care*,
    163 F.3d 684 (2d Cir. 1998).......................................................................................18

*Krohn v. NY City Police Dept.*,
    372 F.3d 83 (2d Cir 2004)..........................................................................................20

*Lavien Sales v. NY City Tr. Auth./Manhattan*,
    2011 U.S. Dist. LEXIS 99048 (S.D.N.Y. Aug. 26, 2011) .......................................21

*Lynch v. City of NY*,
    No. 16-cv-7355 (LAP), 2021 U.S. Dist. LEXIS 213938 (S.D.N.Y. Nov. 4,
    2021) ...........................................................................................................................3

*Majer v. Metro. Transp. Auth.*,
    No. 90-cv-4608 (LLS), 1992 U.S. Dist. LEXIS 6239 (S.D.N.Y. May 6, 1992) ....................20

*Maragh v. Roosevelt Is. Operating Corp.*,
    No. 16-cv-7530 (JMF), 2018 U.S. Dist. LEXIS 210481 (S.D.N.Y. Dec. 12,
    2018) ...........................................................................................................................21

*Matthews v. Hewlett-Packard Co.*,
    2017 U.S. Dist. LEXIS 214075 .................................................................................11

*McGrory v. City of New York*,
    No. 99-cv-4062, 2004 U.S. Dist. LEXIS 20425 (S.D.N.Y. Oct. 8, 2004)...............10

*MF Global Holdings Ltd. v. PricewaterhouseCoopers LLP*,
    232 F. Supp. 3d 558 (S.D.N.Y. 2017)........................................................................4

*Mullen v. Princess Anne Volunteer Fire Co.*,
    853 F.2d 1130 (4th Cir. 1988) ....................................................................................9

*Newport v. Fact Concerts, Inc.*,
    453 U.S. 247, 69 L. Ed. 2d 616, 101 S. Ct. 2748 (1981)..........................................20

*Nobler v. Beth Israel Medical Center*,
  702 F. Supp. 1023 (S.D.N.Y. 1988)................................................................15

*Pa. State Police v. Suders*,
  542 U.S. 129, 124 S. Ct. 2342, 159 L. Ed. 2d 204 (2004)...........................15

*Perry v. Ethan Allen, Inc.*,
  115 F.3d 143 (2d Cir. 1997)...........................................................................6

*Pritchard v. County of Erie (In re County of Erie)*,
  473 F.3d 413 (2d Cir. 2007)............................................................................3

*Puglisi v. Town of Hempstead Sanitary Dist. No. 2*,
  2013 U.S. Dist. LEXIS 111972 ....................................................................12

*Ravina v. Columbia Univ.*,
  2019 U.S. Dist. LEXIS 56556 (S.D.N.Y. Mar. 31, 2019) ...........................10

*Robinson v. Metro-North Commuter R.R.*,
  267 F.3d 147 (2d Cir. 2001)..........................................................................13

*Rodriguez v. Graham-Windham Servs. to Families & Children*,
  2001 U.S. Dist. LEXIS 362, No. 99 CIV. 10447 (S.D.N.Y. Jan. 18, 2001)...........................16

*Romain v. Great Expressions Dental of NY LLP*,
  No. 16-cv-1966 (KMK), 2018 U.S. Dist. LEXIS 122454 (S.D.N.Y. July 20,
  2018) ......................................................................................................17, 18

*Rooney v. Capital Dist. Transp. Auth.*,
  109 F. Supp. 2d 86 (NDNY 2000)................................................................21

*Russo v. City of Bridgeport*,
  479 F.3d 196 (2d Cir. 2007)..........................................................................24

*Scott v. Chipotle Mexican Grill, Inc.*,
  94 F. Supp. 3d 585 (S.D.N.Y. 2015)...............................................................4

*Scott v. Harris Interactive, Inc.*,
  512 F. App'x 25 (2d Cir. 2013) .....................................................................17

*Sharkey v. J.P. Morgan Chase & Co.*,
  No. 10-cv-3824 (DLC), 2018 U.S. Dist. LEXIS 35538 (S.D.N.Y. Mar. 5,
  2018) ......................................................................................................10, 18

*Silva-Markus v. NY City Dept. of Educ.*,
  2020 U.S. Dist. LEXIS 180999 (S.D.N.Y. Sep. 30, 2020)...........................15

*Silverman v. City of New York*,
216 F. Supp. 2d 108 (E.D.N.Y. 2002), *aff'd*, 64 F. App'x 799 (2d Cir. 2003) ......................16

*Smith ex. rel. Smith v. Islamic Emirate of Afghanistan*,
262 F. Supp. 2d 224 (S.D.N.Y. 2003) ...........................................................................................5

*Smith v. Lightning Bolt Prods.*,
861 F.2d 363 (2d Cir. 1988) ..........................................................................................................22

*Tardiff v. City of New York*,
344 F. Supp. 3d at 603 ..................................................................................................................11

*Thomas v. Istar Financial, Inc.*,
652 F.3d 141 (2d Cir. 2010) ..........................................................................................................13

*TVT Records v. Island Def Jam Music Grp.*,
257 F. Supp. 2d 737 (S.D.N.Y. 2003), *rev'd in part*, 412 F.3d 82 (2d Cir.
2005) ................................................................................................................................................23

*Wills-Hingos v. Raymond Corp.*,
104 F. App'x 773 (2d Cir. 2004) ....................................................................................................18

*Zubulake v. UBS Warburg LLC*,
382 F. Supp. 2d 536 (SDNY 2005) ................................................................................................13

**Statutes**

42 U.S.C. § 1981 ..........................................................................................................................20

42 U.S.C. § 1983 ............................................................................................................................1

## PRELIMINARY STATEMENT

Plaintiff Sibyl Colon ("Plaintiff") alleges her former employer, New York City Housing Authority ("NYCHA"), demoted her in title and salary in retaliation for opposing discrimination in violation of Title VII, the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). Plaintiff also claims two of her supervisors are individually liable for aiding and abetting retaliation under NYSHRL, and for retaliation in violation of 42 U.S.C. § 1983. Defendants NYCHA, Brian Clarke ("Clarke") and Michael Kelly ("Kelly") (referred to collectively as "Defendants") dispute these allegations, and state Plaintiff's retaliation claims must fail because she did not engage in protected activity and even if she did, Plaintiff cannot establish a causal connection between what she considers an adverse employment action and her alleged protected activity.

Defendants submit this memorandum in support of their motion in limine to preclude Plaintiff from introducing the following purported evidence at trial: (1) any testimony or documentary evidence relating to Clarke's deposition statement on June 13, 2019, that it was recommended to him by the "Law Department" not to transfer Allison Williams ("Williams"); (2) any testimony or documentary evidence relating to Williams' experiences with NYCHA after Plaintiff resigned; (3) any testimony or documentary evidence relating to NYCHA's failure to conduct lead paint inspections; (4) any testimony or documentary evidence from Dr. Papanna Ravichandra as a purported expert for Plaintiff; and (5) any testimony from Regina Chu and Rosie Mendez.

Defendants further request rulings that: (6) Plaintiff's claim for emotional distress damages must be limited to garden variety; (7) if Plaintiff is successful at trial on the issue of liability, the calculation of economic damages should be determined by the Court and not

submitted to the jury, and should be limited based on Plaintiff's failure to mitigate; (8) Plaintiff cannot argue that language requirements are discriminatory; (9) Plaintiff cannot seek punitive damages against NYCHA because it is a public benefit corporation; (10) evidence or jury instructions related to punitive damages, if any, should be bifurcated to after a finding of liability; and (11) Plaintiff cannot assert any claims against Clarke and Kelly based on the qualified immunity doctrine.

## STATEMENT OF FACTS[1]

## ARGUMENT

I.  ## Evidence Relating to A Recommendation By The "Law Department" Should Be Excluded.

Plaintiff should be foreclosed from introducing evidence of Clarke's statement during his deposition on June 12, 2019. Clarke stated, "[The transfer] didn't occur because it was recommended to me not to transfer at this time." When asked who "it" was, Clarke stated, "Law Department." NYCHA's counsel immediately objected based on the attorney-client privilege. (Clarke Dep. 146.)  It is apparent Plaintiff would likely seek to introduce Clarke's deposition statement to support the validity of Plaintiff's alleged belief the transfer of Williams was discriminatory. However, Clarke's statement concerning the "Law Department" is not probative of any relevant issue in this case, is highly prejudicial, and is subject to attorney-client privilege and hearsay limitations.

A.  ## Clarke's Statement Is Highly Prejudicial And Not Probative Of Any Relevant Issue.

To start, the underlying conversation between Clarke and an unidentified member of the "Law Department" occurred *after* Plaintiff quit. This after-the-fact comment is irrelevant to the

---

[1]    A full rendition of the facts relevant to this motion is set forth in Defendants' Pre-Trial Memorandum of Law.

decision to change Plaintiff's position *during* her employment. More importantly, the meaning of this statement is unclear and was not further explored at the time of Clarke's deposition. The statement "it was recommended to me not to transfer at this time" by the "Law Department" is rife with vagueness and can be interpreted several different ways. It is unclear from this statement what exactly was "recommended" or why. It is also unclear what the import of "at this time" has on this alleged recommendation. Furthermore, the "Law Department" is extremely broad and could include several different individuals.

**B.    Clarke's Deposition Statement Is Protected By The Attorney-Client Privilege.**

Any inquiry into Clarke's discussions with the "Law Department" is protected by the attorney-client privilege. The attorney-client privilege protects from disclosure "(1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice." *Pritchard v. County of Erie (In re County of Erie)*, 473 F.3d 413, 419 (2d Cir. 2007). "The privilege protects both the advice of the attorney to the client and the information communicated by the client that provides a basis for giving advice." *Id.*

Any discussions Clarke might have had with NYCHA in-house counsel would fall under the attorney-client privilege. Furthermore, NYCHA asserted attorney-client privilege. (Clarke Dep. 146); *see Lynch v. City of NY*, No. 16-CV-7355 (LAP), 2021 U.S. Dist. LEXIS 213938, at *17 (S.D.N.Y. Nov. 4, 2021) (stating "when the 'client' is an entity rather than a person, no employee of the entity falls outside of the ambit of attorney-client privilege when consulting in-house counsel for legal advice within the scope of their employment"). Any attempt by Plaintiff's counsel now to further inquire into these communications would be improper. *See Galindo v. Vanity Fair Cleaners*, No. 09-cv-6990 (KBF), 2012 U.S. Dist. LEXIS

3

91005, at *4 (S.D.N.Y. June 29, 2012) (finding "It is certainly the case that if there are areas into which plaintiffs prevented inquiry at a deposition on the basis that they were protected from disclosure by the attorney-client privilege, plaintiffs may not at trial attempt to present evidence on those precise areas [*e.g.* the content of communications with lawyers]").

Moreover, Clarke's testimony did not waive the privilege. Although Clarke answered the question posed by Plaintiff's counsel, any attempt to inquire into his answer was immediately objected to. *Cf. MF Global Holdings Ltd. v. PricewaterhouseCoopers LLP*, 232 F. Supp. 3d 558, 569 (S.D.N.Y. 2017) (finding knowing waiver of the attorney-client privilege where the witness answered *several* questions regarding communications with counsel) (emphasis added). In determining waiver, the Court must first assess whether NYCHA either (1) provided Clarke with actual authorization to waive the privilege on NYCHA's behalf, (2) made a manifestation before the act of disclosure, "through written or spoken words or other conduct," which may have led third parties to "reasonably believe [] [that] the actor [was] authorized," or (3) engaged in conduct after the act of disclosure that "justifies a reasonable assumption" NYCHA "assent[ed] to the act." *Bus. Integration Servs. v. AT&T Corp.*, 251 F.R.D. 121, 126 (S.D.N.Y. 2008).

Here, any purported claim of waiver originates from Clarke's deposition response. *Business Integration Services, Inc.* is instructive. *See Business Integration Services, Inc.,* 251 FRD 121, 126 (S.D.N.Y. 2008). In that case, the plaintiff argued the company defendant waived a privileged communication based on a company officer's deposition answer regarding concerns raised by the "law department." *See id*. The Court found the company defendant's lack of response to the officer's deposition answers and failure to assert the privilege amounted to its assent to waive the attorney-client privilege. *See id.*; s*ee also Scott v. Chipotle Mexican Grill,*

*Inc.*, 94 F. Supp. 3d 585, 597 (S.D.N.Y. 2015) (finding the officer's deposition response did not waive attorney-client privilege because "Nowhere in the deposition transcript pages provided to the Court does [the officer] state what legal advice [legal] provided to her or to Chipotle, and Chipotle's counsel carefully objected to the legal aspects of [the officer's] conversation with [legal]"). In this case, upon Clarke's response that he was advised by the "Law Department," further questioning was immediately objected to on the grounds of attorney-client privilege. Thus, it cannot be said NYCHA actually assented to waiver of this privilege, nor can there be a "reasonable assumption" NYCHA assented to this disclosure, and therefore Clarke's response remains subject to the attorney-client privilege.

### C. Clarke's Deposition Statement Constitutes Inadmissible Hearsay.

Finally, Clarke's deposition statement is inadmissible hearsay. *See*, *e.g.*, Fed. R. Evid. 801 ("Hearsay means a statement that the declarant does not make while testifying at the current trial or hearing, and a party offers in evidence to prove the truth of the matter asserted in the statement."); *Smith ex. rel. Smith v. Islamic Emirate of Afghanistan*, 262 F. Supp. 2d 224 (S.D.N.Y. 2003) ("[H]earsay is inadmissible except in certain situations where there are sufficient indicia of trustworthiness"). Plaintiff should not be permitted to introduce an out-of-court statement (Clarke's deposition statement concerning the "Law Department") which discusses another out of court statement (recommendations made to Clarke by the "Law Department") in order to prove the content of the recommendations made to Clarke. This constitutes impermissible hearsay within hearsay. Further underlying the untrustworthiness of this statement is the fact the date, identity of the declarant, content, and other specifics of this conversation are unknown. Clarke's deposition statement related to any advice he received from the "Law Department" should therefore not be permitted into evidence under Fed. R. Evid. 802.

## II.   <u>Williams' Testimony Must Be Limited In Scope To The Period Of Time Plaintiff Worked For NYCHA.</u>

Williams' witness testimony must be limited to only cover the relevant time period for Plaintiff's retaliation claim, namely the temporal period Plaintiff was employed by NYCHA. Williams is separately asserting her own discrimination claims against NYCHA based on incidents that allegedly occurred after Plaintiff's employment ended. Plaintiff should not be permitted to use Williams's subsequent claims to support her own claim that NYCHA previously directed her to discriminate against Williams, and then retaliated against her. Notably, Williams was unaware of any directive or attempt to transfer her until after Plaintiff resigned. Any testimony relating to experiences Williams had with NYCHA that occurred after Plaintiff resigned would be irrelevant and unfairly prejudicial. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Evidence which does not serve to prove any fact that is of consequence to the action is irrelevant and should be excluded. *See* Fed. R. Evid. 402; *see also Perry v. Ethan Allen, Inc.*, 115 F.3d 143 (2d Cir. 1997) (holding a Court has broad discretion over the admission of evidence and its evaluation of relevance is entitled to substantial deference).

Plaintiff seeks to introduce Williams as one of Plaintiff's witnesses. Although Williams might have relevant knowledge surrounding the incidents underlying certain occurrences at Mill Brook at the time of Plaintiff's resignation, any experiences Williams had with NYCHA occurring *after* Plaintiff resigned in August 2015 are irrelevant to the incidents underlying Plaintiff's resignation. Any testimony covering Williams' experiences after Plaintiff's resignation would not make Plaintiff's retaliation claim more probable and could only serve to impermissibly color the jury's opinion of NYCHA. *Bovell v. City of Mount Vernon*, No. 21-cv-

1621 (AEK), 2023 U.S. Dist. LEXIS 87445, at *22 (S.D.N.Y. May 18, 2023) (limiting the evidence to be admitted at trial to only cover the period of time where the allegedly retaliatory conduct occurred). Accordingly, Williams' testimony should be limited in scope to only cover the time period up until Plaintiff's resignation and should exclude any testimony relating to Williams' experiences after Plaintiff resigned.

### III.    Testimony And Documentary Evidence Relating To NYCHA's Practices Regarding Lead Paint Inspections Must Be Excluded.

At the deposition of Michael Kelly on July 3, 2019, Plaintiff's counsel questioned Kelly regarding the testing of lead paint. (Kelly Dep. 33-34). Specifically, these questions focused on the logistics of lead paint testing and whether NYCHA was "in possession of testing equipment in 2015." (*Id*. at 34). NYCHA's counsel objected to this questioning. *Id*. Then, at Kelly's deposition on September 23, 2019, Kelly discussed different reductions of service levels throughout NYCHA around 2015. (Kelly Dep. 92). Plaintiff's counsel questioned Kelly on whether these reductions "include lead paint inspections." *Id*. This question was again objected to. *Id*. Plaintiff's counsel made four further attempts to discuss these lead paint inspections and New York City's investigation into lead paint inspections. (Kelly Dep. 99-101, 123, 137, 138). Each attempt at raising these lead paint inspections and New York City's investigation was objected to by NYCHA's counsel.

Plaintiff will likely seek to introduce this evidence to demonstrate Kelly and NYCHA are generally bad actors, and therefore, must have also retaliated against Plaintiff. In other words, Kelly and NYCHA have a propensity to act in an improper fashion. However, any alleged impropriety related to the testing of lead paint is unrelated and irrelevant to the incidents underlying Plaintiff's retaliation claim. Furthermore, the introduction of this evidence would be unfairly prejudicial to Defendants.

### A.   Testimony And Documentary Evidence Relating To Lead Paint Is Irrelevant.

Any attempt at introducing testimony and/or documentary evidence relating to

NYCHA's practices and purported failures concerning lead paint inspections must be excluded.

*See* FRE 401.  Here, any evidence alleging NYCHA failed to conduct lead paint inspections,

even accepted as true, has no bearing on Plaintiff's retaliation claim. Plaintiff's claim hinges on

her alleged objection to the transfer of Williams, and the reasons underlying Plaintiff's transfer

from OPMOM Director. Plaintiff's role was completely unrelated to lead paint inspections and

her removal had nothing to do with lead paint inspections or investigations. The transfer of

Williams was similarly unrelated to lead paint inspections. NYCHA's practices and procedures

regarding lead paint are distinct from anything related to Plaintiff's employment and resignation.

Thus, that NYCHA allegedly failed to inspect for lead paint is of no consequence to determining

whether Plaintiff was retaliated against. As a result, any testimony or documentary evidence

regarding lead paint inspections and/or related investigations must be excluded under Federal

Rule of Evidence 402.

### B.   Testimony And Documentary Evidence Relating To Lead Paint Is Unfairly Prejudicial.

Evidence referring to NYCHA's practices and New York City investigation

covering lead paint inspections should be excluded because any possible probative value is far

outweighed by the potential for confusion of the issues and the unfair prejudice to Defendants.

FRE 403 provides that even potentially relevant evidence may be excluded if "its probative value

is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or

misleading the jury, or by considerations of undue delay, waste of time, or needless presentation

of cumulative evidence." Fed. R. Evid. 403; *see also DeFelice v. Amer. Int'l Life Assurance Co.

of New York*, 112 F.3d 61, 67 (2d Cir. 1997) ("relevant evidence is often excluded due to the risk

of confusing or distracting the jury"). Any probable value of NYCHA's failure to inspect for lead paint and subsequent investigation into this failure, if any, is substantially outweighed by the danger of unfair prejudice, confusion, or distraction of the jury.  Introduction of this evidence could inflame some jurors, evoke undue prejudice against NYCHA, and would add an unfair burden onto Defendants to dispel juror bias relating to a contentious issue like lead paint. The jury may also be misled into believing that the mere fact NYCHA failed to investigate for lead paint somehow means they should be found guilty of retaliating against Plaintiff.

If the jury were prejudiced by the introduction of such irrelevant matters, its determination on the actual issue in this case – whether Plaintiff objected to an act she had a good faith belief was discriminatory, and whether her alleged objection caused NYCHA to transfer her out of the OPMOM Director postion – would be compromised. *See, e.g., Mullen v. Princess Anne Volunteer Fire Co.*, 853 F.2d 1130, 1134 (4th Cir. 1988) (defining unfair prejudice as "the possibility that the evidence will excite the jury to make a decision on the basis of a factor unrelated to the issues properly before it"). Because of the substantial risk of confusion and distraction of the jury's focus, the prejudice to Defendants outweighs any probative value of evidence relating to NYCHA's practices and New York City's investigation into lead paint inspection. Such evidence, and any references to it, should be excluded at trial.

## IV.    Plaintiff's Emotional Distress Damages Claim Must Be Limited To Garden Variety.

As part of her compensatory damages, Plaintiff asserts that because of her transfer and immediate resignation, she suffered emotional distress. As a result, she will likely seek to offer testimony and other evidence related to the extent of her emotional distress damages. Plaintiff however does not have any diagnosis relating to her mental health, and neither received treatment from a mental health professional, nor received a referral to see a mental health

professional. Plaintiff only spoke to her general practitioner. Plaintiff never spoke to a psychologist or a psychiatrist. Instead, she relayed a personal narrative of her experiences to her treating physician. This speculative evidence of mental suffering that is "generally limited to the testimony of the plaintiff, who describes his or her injury in vague or conclusory terms" is the prototypical garden variety claim for emotional distress damages. *Ravina v. Columbia Univ.*, 2019 U.S. Dist. LEXIS 56556, at *11 (S.D.N.Y. Mar. 31, 2019). Therefore, Plaintiff's testimony must be limited to describing her condition in conclusory terms with little detail regarding the duration, severity, and consequences of this emotional distress.

Where a plaintiff seeking compensatory damages only asserts a "garden variety" emotional distress claim, "the evidence of mental suffering is generally limited to the testimony of the plaintiff, who describes his or her injury in vague or conclusory terms, without relating either the severity or consequences of the injury." *McGrory v. City of New York*, No. 99-cv-4062, 2004 U.S. Dist. LEXIS 20425, *46 (S.D.N.Y. Oct. 8, 2004) (*citing Bick v. City of New York*, No. 95-cv-8781, 1998 U.S. Dist. LEXIS 5543, *72-74 (S.D.N.Y. Apr. 21, 1998)); *Annis v. Cty. of Westchester*, 136 F.3d 239, 249 (2d Cir. 1998) (finding garden variety emotional distress damages, because of their inherent malleability, are substantially limited in amount unless the plaintiff presents objective evidence). Because evidence of Plaintiff's emotional distress was limited to her own personal account, Plaintiff's claim for emotional distress must be limited to garden variety. *See Sharkey v. J.P. Morgan Chase & Co.*, No. 10-cv-3824 (DLC), 2018 U.S. Dist. LEXIS 35538, at *32 (S.D.N.Y. Mar. 5, 2018) ("If [Plaintiff] is entitled to recover emotional distress damages at all, she at most would be entitled to a garden-variety award to reflect the emotional distress that typically accompanies a wrongful firing").

## V.    Dr. Papanna Ravichandra Must Be Precluded From Offering Expert Opinion Testimony.

Plaintiff's witness list includes Dr. Papanna Ravichandra ("Dr. Ravichandra"), Plaintiff's primary care physician. In addition, Plaintiff's Response to NYCHA Defendants' First Set of Interrogatories on August 20, 2018 lists Dr. Ravichandra as "a person who will present expert testimony on [Plaintiff's] behalf." Plaintiff presumably intends to offer Dr. Ravichandra's testimony to support her claim for emotional distress damages. Dr. Ravichandra is a physician, not a psychologist or psychiatrist. As a result, Dr. Ravichandra cannot express any opinion about Plaintiff's mental condition. Dr. Ravichandra likewise cannot testify about the cause of Plaintiff's mental condition, because he did not conduct a psychological examination and any testimony he might offer on Plaintiff's mental condition would be based on inadmissible hearsay, namely Plaintiff's beliefs about her alleged symptoms and what caused them.

Should Dr. Ravichandra attempt to offer opinions in this case, they must be precluded as unreliable because they are based entirely on statements Plaintiff made herself. Dr. Ravichandra did not independently confirm any of the information Plaintiff told him, and he failed to examine any other issues Plaintiff might have in her life.  Dr. Ravichandra's testimony must be excluded insofar as it is simply a recitation of the facts Plaintiff shared during the physician's examination, and a factual narrative from him as a purported expert is unnecessary and not helpful to the jury.  *See Tardiff v. City of New York*, 344 F. Supp. 3d at 603 (excluding pages of an expert report that are a mere recitation of the facts according to the plaintiff); *Matthews v. Hewlett-Packard Co.*, 2017 U.S. Dist. LEXIS 214075 at *10 (precluding psychologist's testimony that consisted of a "bald recitation" of facts the plaintiff told him).

Furthermore, there is neither an expert report nor deposition transcript relating to Dr. Ravichandra. Thus, Plaintiff failed to properly disclose and qualify Dr. Ravichandra under

Fed. R. Civ. P. 26 and any attempt by Plaintiff to offer expert testimony from Dr. Ravichandra must be excluded based on Fed. R. Civ. P. 37(c)(1). A party "must make" expert disclosures "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2). "To avoid ambush, Federal Rule of Civil Procedure 26(a)(2)(B) requires a witness retained to provide expert testimony to produce an expert report giving, among other things, a complete statement of all opinions the witness will express and the basis and reasons for them." *Brutton v. United States*, 687 F. App'x 56, 57-58 (2d Cir. 2017) (internal quotation marks and citation omitted); *see also* Fed. R. Civ. P. 26(a)(2)(B)(i). *See also Puglisi v. Town of Hempstead Sanitary Dist. No. 2*, 2013 U.S. Dist. LEXIS 111972, at *4 ("Defendants could not reasonably have been expected to infer from [Plaintiff's] Initial Disclosures, which identified [the expert] as [Plaintiff's] treating physician…that [Plaintiff] intended to call [him] as an expert witness ….").

Under Rule 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) . . . the party is not allowed to use that information or witness to supply evidence…at a trial, unless the failure was substantially justified or is harmless." "Rule 37 is self-executing" and "the non-disclosing party has the burden to demonstrate that the failure to disclose was substantially justified or that the failure was harmless." *Atkins v. Cty. of Orange*, 372 F. Supp. 2d 377, 395-96 (S.D.N.Y. 2005), *aff'd on other grounds sub nom. Bellotto v. Cty. of Orange*, 248 F. App'x 232 (2d Cir. 2007). Therefore, Plaintiff should be precluded from offering any expert testimony or other documentary evidence by Dr. Ravichandra.

## VI.    Testimony From Regina Chu And Rosie Mendez Must Be Excluded Because It Is Irrelevant And Character Evidence Is Not Essential To Any Claim Or Defense.

Regina Chu and Rosie Mendez are listed as witnesses for Plaintiff in the Joint Pretrial Order. According to Plaintiff, Regina Chu will testify about, "working with Plaintiff" and Rosie Mendez will testify about, "interacting with Plaintiff as a City Council member."

Neither of these issues, "working with Plaintiff" or "interacting" with her, are at issue in this case or relevant to any of the parties' claims or defenses. Regina Chu and Rosie Mendez should therefore be excluded from testifying under Fed. R. Evid. 403 as irrelevant. Furthermore, it would be a waste of both the Court's and the jury's time to hear what appear to be nothing more than superfluous character witnesses who have nothing substantive to offer in this case. *See Zubulake v. UBS Warburg LLC*, 382 F. Supp. 2d 536, 540, n 1 (S.D.N.Y. 2005) ("A plaintiff's character is not an essential element of any claim or defense in an employment discrimination case. The prohibitions of Rule 404 therefore apply"). Therefore, this Court should exclude testimony from Regina Chu and Rosie Mendez under Fed. R. Evid. 403 and 404.

## VII.    Calculation Of Economic Damages Should Be Determined By The Court And Not Submitted To The Jury.

To the extent Plaintiff is successful on the merits at trial, the determination of the proper remedy for Plaintiff's wage damage claims, *i.e.*, the calculation of any award of back pay from August 28, 2015 to date or front pay must be made by the Court and not the jury.

As stated by the Second Circuit, "[b]ecause a lost wages award – whether in the form of back pay or front pay – is an equitable remedy, a party is generally not entitled to a jury determination on the question." *Broadnax v. City of New Haven*, 415 F.3d 265, 271 (2d Cir. 2005) (*citing Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147, 157 (2d Cir. 2001)). The Second Circuit further held that only when the defendant fails to object to sending the lost wages issue to the jury should the District Court submit the lost wages issue for a jury determination. *Broadnax*, 415 F.3d at 272. Further, the Second Circuit unequivocally clarified that this concept applies to retaliation claims in *Thomas v. Istar Financial, Inc.*, 652 F.3d 141, 152 (2d Cir. 2010), when it held that, without consent of both parties, the issue of economic damages was one to be decided by the Court. Here, Defendants specifically object to sending any lost wages issue to the

jury because the proper remedy and calculation of any wage damages would more appropriately be determined by the Court. *See Hamza v. Saks Fifth Ave., Inc.*, 2011 U.S. Dist. LEXIS 139132, at *10-11 (S.D.N.Y. Dec. 5, 2011) (granting defendant's motion in limine determining front and/or back pay damages would not be submitted to the jury and preventing the introduction of related testimony or exhibits).

Because economic damages are an issue for the Court to decide, Plaintiff should also be precluded from testifying about what she would have earned at NYCHA but-for the alleged adverse employment action. Not only is this an issue to be decided by the Court, but also based entirely on speculation. Notably, Plaintiff assumes in her Joint Pretrial Order she would have remained as OPMOM Director in perpetuity. However, the OPMOM program ended after Janet Abrahams left NYCHA only a few years after Plaintiff's resignation in 2015. It is also unclear whether there were any other Director positions Plaintiff would have been qualified for. Therefore, Plaintiff should be precluded from testifying about what she would have earned at NYCHA in relation to any claim of backpay or front pay.

### A.    Plaintiff's Alleged Constructive Discharge Should Be Determined By The Court And Not Submitted To The Jury.

Plaintiff claims she suffered a "constructive discharge" when NYCHA offered her a new position at a slightly lower salary and title, and thus alleges she is entitled to back pay damages as if her employment was terminated. However, she cannot meet the high standard for constructive discharge, so she is not entitled to full back pay damages after she resigned from NYCHA.

"Constructive discharge of an employee occurs when an employer, rather than directly discharging an individual, intentionally creates an intolerable work atmosphere that forces an employee to quit involuntarily." *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 89

(2d Cir. 1996). For purposes of Title VII, a constructive discharge occurs when "working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign." *Pa. State Police v. Suders*, 542 U.S. 129, 141, 124 S. Ct. 2342, 159 L. Ed. 2d 204 (2004). The standard for finding a constructive discharge is a high one and involves something more than hostile work environment allegations. *See, e.g.*, *Silva-Markus v. NY City Dept. of Educ.*, 2020 U.S. Dist. LEXIS 180999 (S.D.N.Y. Sep. 30, 2020) ("Constructive discharge is, in effect, 'an aggravated case of . . . hostile work environment.'") (internal citation omitted); *Nobler v. Beth Israel Medical Center*, 702 F. Supp. 1023, 1030 (S.D.N.Y. 1988) (employee's "subjective feeling" her situation is intolerable is insufficient to show constructive discharge).[2]

### 1.    Plaintiff Failed To Avail Herself Of NYCHA's Internal Complaint Procedure.

Plaintiff's failure to take advantage of NYCHA's internal complaint procedure prior to resigning prevents her from asserting a constructive discharge claim. *See Cayetano v. Fed. Express Corp.*, 2022 U.S. Dist. LEXIS 119102, at *23 (S.D.N.Y. July 6, 2022) (finding the plaintiff "cannot, therefore, state a cause of action for discrimination or retaliation predicated on a theory of constructive discharge" where the plaintiff "failed to take advantage of [the company's] internal complaint procedures prior to resigning" under the NYCHRL and NYSHRL). The Court in *Cayetano* adopted the defendant's argument that "[C]ourts in this [C]ircuit generally have refused to find a constructive discharge where an employee had an avenue through which [s]he could seek redress for the allegedly intolerable work atmosphere

---

[2]    Similarly, the Appellate Division of the New York State Supreme Court has held in numerous cases that a constructive discharge for purposes of the NYCHRL only occurs when an employer "deliberately create[s] working conditions so intolerable that a reasonable person in the plaintiff's position would have felt compelled to resign." *Golston-Green v. City of New York*, 123 N.Y.S.3d at 671; *see also Crookendale v. N.Y.C. Health & Hosps. Corp.*, 175 A.D.3d 1132, 107 N.Y.S.3d 282, 283 (App. Div. 2019).

leading up to h[er] resignation, but failed to take advantage thereof." *Id*; *see also Rodriguez v. Graham-Windham Servs. to Families & Children*, 2001 U.S. Dist. LEXIS 362, No. 99 CIV. 10447, at *6 (S.D.N.Y. Jan. 18, 2001) (refusing to find constructive discharge where, *inter alia,* plaintiff "was on notice of [the company's] Complaint Resolution Procedure, but made no complaint to [the company's] Human Resources Department alleging discrimination or mistreatment"); *Silverman v. City of New York*, 216 F. Supp. 2d 108, 115 (E.D.N.Y. 2002), *aff'd*, 64 F. App'x 799 (2d Cir. 2003) (finding Courts regularly refuse to find constructive discharge "where an employee had an avenue through which [s]he could seek redress for the allegedly 'intolerable' work atmosphere . . . but failed to take advantage thereof").

Furthermore, Plaintiff's immediate resignation, instead of filing an internal complaint, prevented NYCHA from taking prompt and appropriate remedial action, which usurped its ability to assert remedial action as an affirmative defense under the NYCHRL.[3] Plaintiff had an obligation to report to NYCHA's human resources department any issues she had relating to her transfer. Plaintiff failed to raise this issue internally before she resigned.  As a result, Plaintiff's failure to avail herself of NYCHA's internal complaint procedure before she resigned prevents her from now alleging constructive discharge as a matter of law.

## 2. <u>A Reasonable Person Would Not Have Found Plaintiff's Working Conditions "So Intolerable" Making Her Feel "Compelled To Resign."</u>

Whether a resignation can be deemed a constructive discharge "is determined based on an objective inquiry: 'Did the working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign?" *Harewood v.*

---

[3]    Under the NYCHRL, "[t]he appropriateness of an employer's remedial action must be assessed from the totality of the circumstances." *Campo v. City of NY*, 2022 U.S. Dist. LEXIS 60288 (E.D.N.Y. Mar. 31, 2022).

*NY City Dept. of Educ.*, No. 18-cv-05487 (KPF) (KHP), 2020 U.S. Dist. LEXIS 226140, at *52 (S.D.N.Y. Nov. 30, 2020). Besides Plaintiff's failure to avail herself of NYCHA's internal complaint procedure, the question here is whether Plaintiff's reassignment from OPMOM Director to Senior Administrator in the Management Services Department, and a decrease in pay of $13,000 (to a salary level that was still greater than her pay prior to her role as OPMOM Director three months earlier) was so "intolerable" that a "reasonable person" would have felt "compelled to resign." Starting with Plaintiff's reassignment to Senior Administrator, "it is clear that demotion, in and of itself, is not a sufficient basis for a finding of constructive discharge – even if that demotion was based on a discriminatory motive." *Allen v. Colgate-Palmolive Co.*, No. 79-cv-1076-CSH, 1985 U.S. Dist. LEXIS 21532, at *9 (S.D.N.Y. Mar. 21, 1985).

Furthermore, the Second Circuit has held that the question of discharge or resignation cannot be resolved simply by concluding there was a loss of pay or change in title. *See Scott v. Harris Interactive, Inc.*, 512 F. App'x 25 (2d Cir. 2013). Instead, "The percentage of the reduction and the reasonable expectations of the parties are also relevant to the factual determination whether an employee was forced into an involuntary resignation." *Id*. The minimal reduction in Plaintiff's pay does not support a finding that Defendants intended to push her out of her job. Here, Plaintiff's salary was reduced by $13,000 to $122,000 per year.[4] No reasonable jury could conclude this reduction in pay was objectively intolerable. *See Romain v. Great Expressions Dental of NY LLP*, No. 16-CV-1966 (KMK), 2018 U.S. Dist. LEXIS 122454, at *22 (S.D.N.Y. July 20, 2018) (holding "no reasonable juror could conclude that plaintiff's reduction in pay of approximately $10,000 created working conditions so intolerable that a reasonable person in [her] position would have felt compelled to resign"). In order to find constructive

---

[4]    Notably, this was still $22,000 more than the position she held three months earlier.

discharge based on Plaintiff's loss of pay, a much larger pay cut must have existed. *See, e.g.*, *id.* at *23 (holding a "slight" decrease in pay of 10% coupled with some loss of supervisory responsibilities is insufficient to constitute constructive discharge); *Butts v. NY City Dept. of Hous. Preserv. & Dev.*, No. 00-CV-6307 (KMK), 2007 U.S. Dist. LEXIS 6534 (S.D.N.Y. Jan. 29, 2007) at *20 ("A single reduction in pay, without additional evidence of malicious intent, is insufficient to establish a claim of constructive discharge").

  **B.**  <u>**Plaintiff's Failure To Mitigate Limits Her Claim For Back Pay.**</u>

   "[A] prevailing plaintiff in a Title VII case must attempt to mitigate her damages by using 'reasonable diligence in finding other suitable employment.'" *Dailey v. Societe Generale*, 108 F.3d 451, 455 (2d Cir. 1997) (quoting *Ford Motor Co. v. EEOC*, 458 U.S. 219, 231, 102 S. Ct. 3057, 73 L. Ed. 2d 721 (1982)). The ultimate question "is whether the plaintiff acted reasonably in attempting to gain other employment or in rejecting proffered employment." *Wills-Hingos v. Raymond Corp.*, 104 F. App'x 773, 775 (2d Cir. 2004) (quoting *Hawkins v. 1115 Legal Serv. Care*, 163 F.3d 684, 695 (2d Cir. 1998)). Thus, Plaintiff bears the burden of demonstrating she actively engaged in a diligent job search, otherwise her back pay award will be cut off.

   Plaintiff has not produced an expert to speak on her mitigation efforts. In fact, she testified that she took the first job she found in the course of her search. As a result, the evidence compels the conclusion that Plaintiff did not make reasonable efforts to seek alternative employment. Her claims for back pay must therefore cease on the date at which it is decided she stopped making reasonable efforts to seek alternative employment and failed to mitigate her damages. *See Sharkey*, 2018 U.S. Dist. LEXIS 35538, at *29-30 (S.D.N.Y. Mar. 5, 2018) (cutting off Plaintiff's back pay claims and noting "hearsay evidence regarding her search for

employment offered for the truth of out of court statements will not be permitted"). Therefore, any award of back pay must be limited based on Plaintiff's failure to mitigate her damages.

## VIII.   NYCHA's Language Requirements Are Not Discriminatory Under Title VII, NYSHRL, And NYCHRL.

Plaintiff will likely argue that a language requirement for an employment position is discriminatory based on race. Plaintiff should be precluded from making this argument because it is contrary to well settled case law. For example, based on the communities NYCHA serves, certain positions, like "Housing Assistant," require the applicant be bilingual because speaking Spanish is an essential function of the job. This ensures employees can effectively communicate with residents and NYCHA's community is fully served.

Bilingual requirements are permissible under Title VII, the NYSHRL, and the NYCHRL. *See Anderson v. NY City Health & Hosps. Corp.*, No. 16-CV-1051 (GBD) (KHP), 2020 U.S. Dist. LEXIS 36772, at *56-57 (S.D.N.Y. Mar. 2, 2020) (dismissing plaintiff's claim under Title VII and the NYCHRL that he was discriminated against based on a Spanish language requirement); *see also Davis v. Dep't of Educ. of New York*, No. 10-cv-05213 (DF), 2012 U.S. Dist. LEXIS 141288, at *13 (S.D.N.Y. Sept. 28, 2012) (plaintiff failed to show defendant's decision not to promote her was pretextual where defendant provided evidence showing the area in question had a high proportion of Spanish-speaking children); *Colson v. Cablevision MFR, Inc.*, No. 05-cv-5639 (PGS), 2008 U.S. Dist. LEXIS 18488, at *6 (D.N.J. Mar. 11, 2008) (plaintiff failed to make prima facie case in discriminatory failure to promote claim where she was not bilingual and "[t]here is nothing in the record that shows that the bilingual requirement was not added in the regular course of business or was a pretext for retaliation"). Furthermore, NYCHA's decision to enact a bilingual requirement is entitled to substantial deference. *See Anderson*, 2020 U.S. Dist. LEXIS 36772, at *56-57 (S.D.N.Y. Mar. 2, 2020) ("[I]t would be

inappropriate for this Court to second-guess Defendant['s] [] reasoning for requiring that eligible candidates be able to speak Spanish…").  Based on this, NYCHA's bilingual requirement for certain positions is not discriminatory and this Court should preclude Plaintiff from arguing that bilingual requirements are discriminatory.

## IX.    <u>Punitive Damages Are Unavailable As To NYCHA.</u>

Plaintiff must be precluded from seeking punitive damages against NYCHA as a matter of law because it is a public benefit corporation that cannot be liable for punitive damages. The Supreme Court has noted "since municipalities' common law resistance to punitive damages still obtains, 'the general rule today is that no punitive damages are allowed unless expressly authorized by statute.'" *Cook County v. United States ex rel. Chandler*, 538 U.S. 119, 129, 155 L. Ed. 2d 247, 123 S. Ct. 129 (2003) (quoting *Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 260 n. 2, 69 L. Ed. 2d 616, 101 S. Ct. 2748 (1981)). Plaintiff therefore cannot recover punitive damages against NYCHA. *See* 42 U.S.C. § 1981a(b)(1); *Krohn v. NY City Police Dept.*, 372 F.3d  83, 84 (2d Cir 2004) (holding that the New York City counsel intended to preserve municipal immunity when it enacted the NYCHRL and that "under New York law, municipalities may not be held liable for punitive damages on state law claims unless a statute has clearly, expressly and specifically waived sovereign immunity").

Public benefit corporations have been found to enjoy the same immunity from punitive damages awards as municipalities, because "immunizing public benefit corporations, which like municipalities are charged with promoting the public good, serves the same policy goals identified by the Supreme Court in *Newport* as justifying the immunity afforded to municipalities." *Majer v. Metro. Transp. Auth.*, No. 90-cv-4608 (LLS), 1992 U.S. Dist. LEXIS 6239 (S.D.N.Y. May 6, 1992) (finding punitive damages cannot be awarded against a public

benefit corporation under 42 U.S.C. §1983). As a result, NYCHA, a public benefit corporation, is immune from punitive damages. *See Rooney v. Capital Dist. Transp. Auth.*, 109 F. Supp. 2d 86, 88 (NDNY 2000) (granting defendant's motion for summary judgment as to punitive damages because punitive damages cannot be assessed against a public benefit corporation); *see also Lavien Sales v. NY City Tr. Auth./Manhattan*, 2011 U.S. Dist. LEXIS 99048, at *24, n 13 (S.D.N.Y. Aug. 26, 2011) (dismissing plaintiff's claims for punitive damages against the New York City Transit Authority ["NYCTA"] because "As a public benefit corporation, the NYCTA is immune from such damages"); *Maragh v. Roosevelt Is. Operating Corp.*, No. 16-CV-7530 (JMF), 2018 U.S. Dist. LEXIS 210481, at *18 (S.D.N.Y. Dec. 12, 2018) (granting defendant's motion to strike plaintiff's request for punitive damages under Title VII and the NYSHRL because "punitive damages are unavailable against [defendant], as it is a public benefit corporation"). Plaintiff concedes NYCHA is a New York State public benefit corporation. *See* Compl. ¶ 8 (NYCHA "is a New York State public benefit corporation…"). As a result, Plaintiff cannot seek or obtain punitive damages from NYCHA.

## X.    Punitive Damages Should Be Bifurcated To After A Finding Of Liability.

If the Court determines Kelly or Clarke could be held liable for punitive damages, the issue of punitive damages should be bifurcated unless and until after the jury finds liability against Kelly and Clarke and determines Plaintiff is entitled to some award of punitive damages. Plaintiff should be precluded from introducing evidence related to Kelly's and Clarke's earnings or other financial information because, at this stage of the trial, the potential probative value of such evidence is far outweighed by the danger of unfair prejudice. In addition, the jury should not be instructed with respect to the issue of punitive damages until after a finding of liability against Kelly and Clarke. Rule 403 of the Federal Rules of Evidence provides that even

otherwise relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *See* Fed. R. Evid. 403. The Second Circuit has acknowledged that it would "often be prejudicial to a defendant to attempt to litigate its financial conditions during the trial on the issues of liability and compensatory damages. . ." *Smith v. Lightning Bolt Prods.*, 861 F.2d 363, 373-74 (2d Cir. 1988). It has been further acknowledged that the best method of accommodating a plaintiff's interest in submitting evidence regarding a defendant's financial condition and the potential prejudice that may arise out of such evidence "is to delay trial as to the amount of an award of punitive damages until the usual issues of liability and compensatory damages have been tried, along with the matter of whether the defendant's conduct warrants any award of punitive damages at all." *Id.* at 374. Bifurcation of the issue of punitive damages in this case is entirely appropriate. To the extent applicable, any attempt by Plaintiff to offer financial information related to Clarke and Kelly, prior to any liability determination, is essentially asking the jury to award a level of damages to Plaintiff simply because Defendants "can afford it" and not because the conduct warrants such an award.

Bifurcation also is appropriate under Fed. R. Civ. P. 42(b). That Rule states that, "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues [or] claims…." *Id.* In determining whether bifurcation is appropriate, courts consider the following factors: (1) whether the issues to be bifurcated are significantly different from each other; (2) whether the issues are to be tried by a jury or the court; (3) whether the posture of discovery on the issues favors a single trial or bifurcation; (4) whether the documentary and testimonial evidence on the issues overlap; and (5) whether the party opposing bifurcation will be prejudiced if it is granted. *Dallas v. Goldberg*, 143 F. Supp. 2d 312, 315 (S.D.N.Y. 2001).

It is well-settled that bifurcation of the punitive damages phase of trial from the liability and compensatory damages phase of trial is particularly appropriate. This Court has endorsed the view that bifurcation of punitive damages is appropriate to prevent undue prejudice and foster efficient resolution of the case. *See Balko v. Ukranian Nat'l Fed. Credit Union*, 2014 U.S. Dist. LEXIS 42427, at *120 n. 47 (S.D.N.Y. Mar. 28, 2014), *quoting TVT Records v. Island Def Jam Music Grp.*, 257 F. Supp. 2d 737, 746-47 (S.D.N.Y. 2003), *rev'd in part on other grounds*, 412 F.3d 82 (2d Cir. 2005). In *TVT Records*, the Court recognized that "[i]t is undisputed that New York courts and courts of this Circuit have expressed a preference to bifurcate determinations of the availability and the amount of punitive damages so that financial information does not unduly influence the former determination." 257 F. Supp. 2d at 746-47 (collecting cases).

Applying these analytical standards, the punitive damages phase of the trial in this matter should be bifurcated from the liability and compensatory damages phase. Bifurcation will expedite the proceedings, as there will be no need for a trial on punitive damages if Plaintiff fails to prove liability. Bifurcation also is necessary because the jury will be confused and distracted from its primary purpose of determining liability for retaliation if they were presented with facts and evidence, including financial data regarding Defendants, that are relevant only to the issue of punitive damages. Most significantly, Defendants will be prejudiced if Plaintiff were permitted to present financial and other evidence related solely to punitive damages at this phase of trial. Such evidence is unduly suggestive that damages should be awarded, or that Clarke and Kelly are somehow deserving of paying some or all of the compensatory damages Plaintiff seeks (which is not the case).

Defendants respectfully submit that given the potential prejudice of financial evidence, including jury instructions on the issue of the availability of a punitive award, the Court should bifurcate the present trial to prevent the jury from considering Kelly's and Clarke's financial information unless and until the jury has found in favor of Plaintiff on liability and determined that punitive damages are appropriate.

## XI.    Defendants Clarke And Kelly Are Protected By Qualified Immunity.

Qualified immunity supports the proposition that federal and state law shield individual government employees, like Clarke and Kelly, from personal liability for conduct undertaken on behalf of the government when such personal liability could have a "chilling effect" on their performance of government duties. *See, e.g., Davila v. City of New York*, 139 A.D.3d 890, 33 N.Y.S.3d 306, 310 (2d Dep't 2016) (describing qualified immunity as necessary to give "breathing room to make reasonable but mistaken judgments"). The doctrine of qualified immunity protects officials from liability for civil damages when, "(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Garcia v. Doe*, 779 F.3d 84, 92 (2d Cir. 2015) (*quoting Russo v. City of Bridgeport*, 479 F.3d 196, 211 (2d Cir. 2007)).

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Almighty Supreme Born Allah v. Milling*, 876 F.3d 48, 59 (2d Cir. 2017) (*quoting Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011)). If an official's belief that his action does not violate clearly established law is "objectively reasonable," he is shielded from liability by qualified immunity. *Cooper v. City of New Rochelle*, 925 F. Supp. 2d 588, 608 (S.D.N.Y. 2013); *see also*

*Anderson*, 2017 U.S. Dist. LEXIS 8358, at *48 (S.D.N.Y. Jan. 19, 2017) (Even when clearly established, qualified immunity may still bar a plaintiff's suit "if it was objectively reasonable for the public official to believe that his acts did not violate the plaintiff's rights"). Where individual defendants establish they are subject to qualified immunity, the Court must dismiss the claims against them. *See id.*, at *44-45 (dismissing equal protection retaliation claims against the individual defendants based on qualified immunity).

In essence, qualified immunity depends on whether the facts alleged show the official's conduct violated a right, and, if so, whether that right was "clearly established" at the time of the events at issue. Here, Clarke and Kelly reasonably performed their duties for NYCHA. In so doing, neither Clarke nor Kelly violated Plaintiff's statutory rights. Clarke was not involved in the decision to transfer Plaintiff from the OPMOM Director position, and it is this transfer which forms the basis of Plaintiff's retaliation claim. Kelly was unaware of the comments allegedly made by Melissa Mark-Viverito or Clarke's request to transfer Williams. Any action taken by either Clarke or Kelly was objectively reasonable and based on legitimate, non-retaliatory reasons, so they are each entitled to the defense of qualified immunity based on their objectively reasonable belief that neither violated Plaintiff's rights.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that their Motion in Limine be GRANTED.

25

JACKSON LEWIS P.C.

By: _____
Rebecca M. McCloskey
Joseph A. Saccomano, Jr.
44 South Broadway, 14th Floor
White Plains, New York 10601
Tel: (914) 872-8060
Rebecca.McCloskey@jacksonlewis.com
Joseph.Saccomano@jacksonlewis.com
*Attorneys for Defendants*

Dated:  September 8, 2023
        White Plains, New York

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x

**SIBYL COLON,**

    **Plaintiff,**

    **-against-**       **Civ. No.:  1:16-cv-04540 (VSB)(OTW)**

**NEW YORK CITY HOUSING AUTHORITY,**
**BRIAN CLARKE, and MICHAEL KELLY,**

    **Defendants.**

------------------------------------------------------------------x

## CERTIFICATE OF SERVICE

    This is to certify that a true and correct copy of the foregoing Memorandum of

Law in Support of Defendants' Motion in Limine has been filed and served via ECF on the 8th

day of September, 2023 on counsel below:

Marcel Florestal
The Florestal Law Firm, PLLC
48 Wall Street, Suite 11
New York, NY 10005
marcel@florestallaw.com
*Attorney for Plaintiff*

                          Michelle Provost

4853-4922-4568, v. 6

27