UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
                                    :

SIBYL COLON,                              :
                                    :

                       Plaintiff,    :
                                    :             16-CV-4540 (VSB)
          - against -           :
                                    :       **OPINION & ORDER**
THE CITY OF NEW YORK et al.,    :
                                    :
                    Defendants.  :
                                    :
----------------------------------------------------------X

<u>Appearances</u>:

Marcel Florestal
Florestal Law Firm, PLLC
New York, New York

Leslie R Bennett
Leslie R Bennett LLC
Meville, New York
*Counsel for Plaintiff*

Greg Anthony Riolo
Joseph Anthony Saccomano , Jr
Rebecca Marie McCloskey
Jackson Lewis LLP
White Plains, New York

Sean-Patrick Wilson
Donna Marie Murphy
New York City Housing Authority
New York, New York
*Counsel for Defendants NYCHA, Michael Kelly, and Brian Clarke*

Heather Marie Martone
Reed Smith LLP
New York, New York

John Corbin Carter
Mintz Levin Cohn Ferris Glovsky & Popeo, P.C.
New York, New York

Jacob Ari Englander
Lazare Potter Giacovas & Moyle LLP
New York, New York

Maria Fernanda Decastro
New York City Law Department
New York, New York

Natalie Sharon Marcus
Fire Department of the City of New York
New York, New York
*Counsel for Defendant the City of New York*

VERNON S. BRODERICK, United States District Judge:

In anticipation of trial in this case, Plaintiff Sibyl Colon ("Plaintiff" or "Colon") and

Defendants New York City Housing Authority ("NYCHA"), Brian Clarke ("Clarke"), and

Michael Kelly ("Kelly," together with Clarke, the "Individual Defendants," collectively,

"Defendants") filed motions *in limine*.  Below are my rulings on the motions.

## I.      Background and Procedural History

In anticipation of trial, the parties filed motions *in limine* along with memoranda of law

and declarations in support.  (Docs. 275–282.)  In Plaintiff's motion, she requests that I enter an

order (1) taking judicial notice of certain materials; (2) precluding evidence regarding the

performance of the NYCHA department known as the Optimal Property Management

Department ("OPMOM") or Next Generation ("NextGen") after the arrival of Janet Abrahams as

vice president on September 28, 2015, and (3) precluding Individual Defendants from asserting a

qualified immunity defense.  (Doc. 281.)

Defendants' motion seeks to exclude (1) testimony or evidence relating to a statement

Clarke made during his deposition on June 13, 2019, that it was recommended to him by the

"Law Department" not to transfer Allison Williams ("Williams"); (2) testimony or evidence

relating to Williams' experiences with NYCHA after Plaintiff resigned; (3) testimony or evidence relating to NYCHA's failure to conduct lead paint inspections; (4) any testimony or documentary evidence from Dr. Papanna Ravichandra as a purported expert for Plaintiff; and (5) any testimony from Regina Chu and Rosie Mendez.  (Doc. 276.)  Defendants' motion also requested I enter an order finding that:  (6) Plaintiff's claim for emotional distress damages must be limited to garden variety damages; (7) if Plaintiff is successful at trial on the issue of liability, the calculation of economic damages should be determined by me and not submitted to the jury, and should be limited based on Plaintiff's failure to mitigate; (8) Plaintiff cannot argue that language requirements are discriminatory; (9) Plaintiff cannot seek punitive damages against NYCHA because it is a public benefit corporation; (10) evidence or jury instructions related to punitive damages, if any, should be bifurcated to after a finding of liability; and (11) Plaintiff cannot assert any claims against Clarke and Kelly based on the qualified immunity doctrine. (*Id.*)

## II.   **Legal Standards**

"The purpose of an *in limine* motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial . . . Evidence should not be excluded on a motion in limine unless such evidence is clearly inadmissible on all potential grounds."  *Doe v. Lima*, No. 14 CIV. 2953 (PAE), 2020 WL 4731418, at *3 (S.D.N.Y. Aug. 14, 2020) (citation omitted).  A court's ruling "is 'subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in a party's proffer.'"  *Id.* (quoting *Luce v. United States*, 469 U.S. 38, 41 (1984)) (cleaned up).

Pursuant to Federal Rule of Evidence 401, evidence is "relevant" if "it has any tendency

to make a fact more or less probable than it would be without the evidence" and that fact "is of

consequence in determining the action." Fed. R. Evid. 401.  Rule 403 authorizes a court to

exclude relevant evidence "if its probative value is substantially outweighed by a danger of one

or more of the following:  unfair prejudice, confusing the issues, misleading the jury, undue

delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.

### III.   <u>Discussion</u>

#### A.  *Plaintiff's Motion in Limine*

##### 1.  **Judicial Notice**

Plaintiff requests that I take judicial notice of certain facts and documents, including:

> (a) that approximately 7% of NYCHA's operating budget in 2015 (approximately
> $283 million) was derived from funds provided by the City of New York,
> (b) that as of 2011, approximately 2% of Black Americans over the age of 5 with
> no Hispanic origin speak Spanish,
> (c) of life expectancy and work expectancy tables for consideration by the jury in
> determining Plaintiff's claims of economic loss and pain and suffering,
> (d) of Mayoral orders for purposes of calculating Plaintiff's economic loss.

(Doc. 281 at 1.)  Defendants oppose Plaintiff's request, arguing that the evidence is not

indisputable or relevant.  (Doc. 283 at 2.)

Pursuant to Fed. R. Evid. 201(b) "[t]he court may judicially notice a fact that is not

subject to reasonable dispute because it:  (1) is generally known within the trial court's territorial

jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot

reasonably be questioned."  The court "must take judicial notice if a party requests it and the

court is supplied with the necessary information."  Fed. R. Evid. 201(c)(2).  "Because the effect

of judicial notice is to deprive a party of the opportunity to use rebuttal evidence, cross-

examination, and argument to attack contrary evidence, caution must be used in determining that

a fact is beyond controversy under Rule 201(b)."  *Int'l Star Class Yacht Racing Ass'n v. Tommy*

*Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998).  Courts need not take judicial notice of irrelevant facts or documents.  *See United States v. Byrnes*, 644 F.2d 107, 112 (2d Cir. 1981) (affirming district court's decision to not take judicial notice of certain regulations because the "relevance of the [regulations] was minimal"); *see also Anthes v. New York Univ.*, No. 17CV2511 (ALC), 2018 WL 1737540, at *4–5 (S.D.N.Y. Mar. 12, 2018), *aff'd sub nom. Anthes v. Nelson*, 763 F. App'x 57 (2d Cir. 2019).

### a. *Funding*

The first fact that Plaintiff seeks judicial notice of is that roughly seven percent of NYCHA's budget is derived from city funds.  (Doc. 281 at 3.)  In support, Plaintiff explains that the Second Circuit took judicial notice of this statistic in *Williams v. City of New York*, 61 F.4th 55, 61 & n.2 (2d Cir. 2023).  (*Id.*)  This statistic is derived from The Council of the City of New York, Report on the 2015-2019 Operating and Capital Budget & the Fiscal 2015 Preliminary Mayor's Management Report, New York City Housing Authority ("Budget Report").  (*Id.*)  Defendants oppose judicial notice of this statistic because it is not undisputed and "is not probative of any material issue."  (Doc. 283 at 3–4.)  I find that this statistic is not the sort of "undisputed" fact subject to judicial notice.

The fact that the Second Circuit made an inference based on this statistic in a different case with different causes of action that contain different elements does not mean that it is relevant to this case.  The Second Circuit's inference that it was "reasonable to infer that NYCHA wished to please Mark-Viverito and ensure her satisfaction with its management in order to maintain city funding," *Williams*, 61 F.4th at 61, is not relevant to, or necessary for Plaintiff to establish, her claims of retaliation.  This inference was made in *Williams*, and there is nothing to suggest that it applies to any other case or cause of action.

"The burden-shifting framework laid out in [*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)] governs retaliation claims under both Title VII and the NYSHRL." *Summa v. Hofstra Univ.*, 708 F.3d 115, 125 (2d Cir. 2013).  The elements of a retaliation claim under NYSHRL, Title VII, and Section 1983 are that:  "(1) she engaged in a protected activity; (2) her employer was aware of this activity; (3) the employer took adverse employment action against her; and (4) a causal connection exists between the alleged adverse action and the protected activity."  *Id*. (citation omitted); *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 91 (2d Cir. 2015) ("[T]he elements of a retaliation claim based on an equal protection violation under § 1983 mirror those under Title VII.")  "[T]o prevail on a retaliation claim under the NYCHRL, the plaintiff must show that she took an action opposing her employer's discrimination. . . . and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action."  *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (citations omitted).

To establish that she engaged in protected activity, Plaintiff "need not establish that the conduct she opposed was actually a violation of Title VII, but only that she possessed a good faith, reasonable belief that the underlying employment practice was unlawful under that statute."  *Galdieri–Ambrosini v. Nat'l Realty & Dev. Corp*., 136 F.3d 276, 292 (2d Cir. 1998) (internal quotation marks omitted).  "Neither must the plaintiff formally oppose the alleged discriminatory behavior."  *Hubbard v. Total Commc'ns, Inc.*, 347 F. App'x 679, 681 (2d Cir. 2009).  In other words, Plaintiff need not prove that the underlying employment practice was in fact unlawful.  It is not disputed that Plaintiff was asked to transfer Williams.  "Evidence having the singular purpose of proving the truth of the underlying discrimination is [] presumptively irrelevant to retaliation claims."  *Perez v. Consol. Edison Corp. of New York*, No. 02 CIV. 2832

6

PKC/FM, 2008 WL 194615, at *1 (S.D.N.Y. Jan. 23, 2008).  NYCHA's state of mind is not relevant to the issue of whether or not Plaintiff reasonably believed that she was asked to do something unlawful or that she was retaliated against for it.  Plaintiff's motion for judicial notice of this statistic is DENIED.

### b.  *Census Data*

Defendants argue that the proffered census data is misleading because it measures the percentage of individuals by demographic for whom Spanish is the "language spoken at home," rather than the percentage who can speak Spanish.  (Doc. 283 at 7.)  Defendants also argue that the statistic is irrelevant to the area and community at issue here.  (*Id.*)  I agree.  Plaintiff claims that "The Census Bureau information underscores the racial implications of the proposed transfer.  If NYCHA improperly bowed to the Speaker's demand to replace Williams, it should be apparent from the Census data that the likelihood of finding an African-American who could speak Spanish was slim and unlikely (only 2% of African-Americans with no Hispanic heritage can speak Spanish)."  (Doc. 281 at 6.)  The census data simply does not lead to this conclusion.  The data represents national statistics, not those of the New York metropolitan area, and is not in any way tied to the demographics from which a potential NYCHA employee might be drawn.  The data also only represents whether or not Spanish was spoken at home, which is not a proxy for whether or not someone is proficient in Spanish.  Finally, there is no rational basis—and Plaintiff does not provide any—to limit the statistics to African Americans with no Hispanic background who speak Spanish.  In addition, there is also no evidence that Melissa Mark-Viverito knew anything about Williams other than that she did not speak Spanish.  Accordingly, Plaintiff's motion is DENIED and I decline to take judicial notice of these statistics because they are not relevant to Plaintiff's claims and are likely to cause juror confusion.

### c.  *Life Expectancy and Work Expectancy Tables*

Plaintiff requests that I take judicial notice of certain life and work expectancy tables. (Doc. 281 at 6.)  Defendants oppose because the tables are only relevant to economic damages, which Defendants assert are not for the jury to determine.  (Doc. 283 at 8.)  As explained below, Plaintiff raises claims under NYSHRL and NYCHRL, (Doc. 277 at 3), and under both statutes, economic damages are determined by the jury.  *Olaechea v. City of New York*, No. 17-CV-4797 (RA), 2022 WL 3211424, at *9 (S.D.N.Y. Aug. 9, 2022); *see also Thomas v. iStar Fin., Inc.*, 508 F. Supp. 2d 252, 258 (S.D.N.Y. 2007).  Courts may take judicial notice of "life expectancy tables published by reputable organizations, especially where the table is detailed and specific." *Dumitrescu v. Gen. Mar. Mgmt., Inc.*, No. 08 CIV.5461 (PAC), 2009 WL 4823945, at *4 (S.D.N.Y. Dec. 15, 2009).  The charts that Plaintiff identifies are from reputable sources, including the US Census, the N.Y. Pattern Jury Instructions (produced with data from the US Department of Labor), and the National Vital Statistics Reports published by the US Department of Health and Human Services.  Other courts have taken judicial notice of these documents.  *See e.g. Coolidge v. United States*, 2020 WL 3467423 at *30 (W.D.N.Y. June 15, 2020) (taking judicial notice of the National Vital Statistics Report); *Mathews v. ADM Milling Co.*, No. 1:15-CV-00969 EAW, 2019 WL 2428732, at *4 (W.D.N.Y. June 11, 2019) (taking judicial notice of Department of Labor statistics).  Accordingly, the tables may be used by the jury to determine economic damages.  However, as explained below, it is premature to determine the extent of Plaintiff's emotional damages or whether future emotional damages will be proven.  Therefore, I defer ruling on whether the tables may be relied upon by the jury to determine Plaintiff's emotional distress damages.  Plaintiff's motion for judicial notice is GRANTED IN PART as to the life and work expectancy tables attached as Exhibits 3–6 of the Florestal Declaration at Doc.

282.

### d.   *Mayoral Orders*

Plaintiff requests that I take judicial notice of New York City "Mayor Orders that set forth required increases for covered workers, including NYCHA employees." (Doc. 281 at 7.) Plaintiff wishes to use these orders to calculate lost compensation. (*Id.*) Defendants argue that Plaintiff is making speculative assumptions in support of her damages calculation, therefore I "need not take judicial notice of any Mayoral Orders related thereto." (Doc. 283 at 9.)

It is not unusual for a court to take judicial notice of Mayoral Orders "as they are publicly available documents, the contents of which can be 'readily determined from sources whose accuracy cannot readily be questioned.'" *Chefs' Warehouse, Inc. v. Emps. Ins. Co. of Wausau*, No. 20 CIV. 4825 (KPF), 2021 WL 4198147, at n.1 (S.D.N.Y. Sept. 15, 2021) (citing Fed. R. Evid. 201(b)). Defendants do not dispute the underlying accuracy of the data, but instead dispute how Plaintiff seeks to use it. The Mayor Orders are relevant and proper subjects for judicial notice of pursuant to Fed. R. Evid. 201(b). Plaintiff's motion for judicial notice of the Mayoral Orders is GRANTED.

### 2.   **Preclusion of OPMOM Evidence After Arrival of Abrahams**

Plaintiff seeks to preclude Defendants from offering evidence or testimony related to the performance of OPMOM/NextGen after the arrival of Janet Abrahams on September 28, 2015, arguing that it is irrelevant to her claims. (Doc. 281 at 8.) Defendants

> agree with Plaintiff that the performance of the OPMOM program after Plaintiff left NYCHA is irrelevant, with the exception of the employment of Janet Abrahams as Vice President of OPMOM, effective September 28, 2015, and the appointment of Octavia Hayward as Director of OPMPOM on May 23, 2016 including the reasons for Ms. Hayward's appointment at that time.

(Doc. 283 at 10.) At this time, I find that Defendants proposed scope regarding this testimony is

acceptable; however, I will consider any specific objections to the relevance of testimony that Plaintiff raises during trial.  Accordingly, Plaintiff's motion *in limine* to preclude the performance of OPMOM/NextGen after the arrival of Janet Abrahams is DENIED as moot.

### 3.  Waiver of Qualified Immunity Defense

Defendants argue that Clarke and Kelly are protected by qualified immunity, (Doc 276 at 24), but Plaintiff asserts that Defendants have waived this defense by failing to raise it prior to their pretrial order, (Doc. 281 at 10).  Qualified immunity is an affirmative defense that may be waived if it is not timely raised.  *McCardle v. Haddad*, 131 F.3d 43, 51 (2d Cir. 1997); *Harris v. Miller*, 818 F.3d 49, 63 (2d Cir. 2016).  Plaintiff is correct that Defendants did not raise qualified immunity in their motion to dismiss, (*see* Doc. 24), answer, (*see* Doc. 56), or motion for summary judgment, (*see* Doc. 123).  However, neither of the cases that Plaintiff cites in support of their waiver argument require that I find waiver here.  In *Brown v. City of New York*[1], the court affirmed a district court's decision that defendants had not waived qualified immunity when they pled it in their answer and raised it on summary judgment.  862 F.3d 182, 187 (2d Cir. 2017).  In *Blissett v. Coughlin*, the court affirmed a district court's ruling that qualified immunity was waived when defendants did not raise the defense at all until after the district court judge raised it *sua sponte* the morning of trial.  66 F.3d 531, 538–39 (2d Cir. 1995).

The circumstances here are not consistent with either *Brown* and *Couglin*, and those cases do not dictate that I find the Individual Defendants waived qualified immunity.  Although Defendants did not raise qualified immunity in their motion to dismiss, answer, or motion for summary judgment, they did raise it in the pretrial order.  There is no existing legal requirement that the defense of qualified immunity be raised prior to the pretrial order.  In fact, "[w]here

---

[1] Referred to by Plaintiff as "United States v. Brown."  (Doc. 281 at 10.)

summary judgment is inappropriate, and the case proceeds to trial, the defense of qualified immunity may be presented to the jury or may be decided by the court in a motion for judgment as a matter of law." *Coughlin*, 66 F.3d at 538.  I decline to find that Defendants have waived the defense of qualified immunity.  Plaintiff's motion to preclude Defendants from asserting qualified immunity is DENIED.

### B.  *Defendants' Motion in Limine*

#### 1.  **Preclusion of Evidence of Clarke's Testimony Concerning the "Law Department"**

Defendants assert that "Plaintiff should be foreclosed from introducing evidence of Clarke's statement during his deposition" that the "Law Department" recommended that he not transfer Williams.  (Doc. 276 at 2.)  In support, Defendants assert that the statement is "not probative of any relevant issue in this case, is highly prejudicial, and is subject to attorney-client privilege and hearsay limitations."  (*Id.*)  In opposition, Plaintiff argues that the testimony is admissible because the evidence is relevant, probative, not prejudicial, not protected by privilege, and not hearsay.  (Doc. 284 at 4–10.)

The attorney-client privilege protects "communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice."  *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011).  The privilege that Plaintiff asserts was waived belongs to NYCHA, not Clarke, and NYCHA has refused to waive the privilege.  "Attorney-client privilege [] can be waived if the privileged communications are placed 'at-issue' in the litigation and a party asserts reliance on counsel as a defense to justify its actions."  *Kleeberg v. Eber*, No. 16CV9517LAKKHP, 2019 WL 2085412, at *8 (S.D.N.Y. May 13, 2019).  Under the circumstances presented, I do not find that Clarke waived privilege.  During his deposition, Clarke testified that "[transfer of Ms. Williams] didn't

11

occur because it was recommended to [him] not to transfer at this time." (Doc. 284 at 3.)  In

response, he was asked "[w]hen you say 'it', who's it?  Is it a person?" to which Clarke

responded, 'Law Department.'" (*Id.*)  When Clark was asked who he spoke with, defense

counsel objected and instructed "the witness not to answer . . . because the disclosure of the

information calls for attorney-client privilege information." (*Id.*)  Neither party sought any relief

with regard to this testimony.  I do not find that Clarke waived privilege because Clarke did not

disclose the substance of the advice provided by the Law Department or his underlying

communications with the Law Department. *See Deutsche Bank Tr. Co. of Americas v. Tri-Links

Inv. Tr.*, 43 A.D.3d 56, 69, 837 N.Y.S.2d 15, 27 (2007); *Soho Generation of N.Y. v. Tri–City Ins.

Brokers*, 236 A.D.2d 276, 277, 653 N.Y.S.2d 924 (1997) ("By merely mentioning at his

deposition that he had withdrawn plaintiff's claim upon the advice of counsel, plaintiff's

president . . . did not waive any attorney-client privilege by placing the subject matter of

counsel's advice in issue or by making selective disclosure of such advice.")

     Further, even if Clarke's statement did constitute a limited waiver, I would still exclude it

as unfairly prejudicial.  The statement is not relevant to Plaintiff's claims or any of the

Defendants' proposed defenses.  As explained above, none of Plaintiff's claims require that she

prove that the underlying employment practice she claims to have opposed was in fact unlawful.

It is not disputed that Plaintiff was asked to transfer Williams.  Even if the recommendation of

someone in the Law Department, at some unknown time, speaks to Clarke's state of mind, this is

not relevant to any of the elements of Plaintiff's claims of retaliation.  As to the defenses raised,

"the argument for waiver is strongest where a party expressly relies on the advice of its counsel

as either a defense or in mitigation of damages." *In re Keurig Green Mountain Single Serve

Coffee Antitrust Litig.*, No. 14MD2542VSBHBP, 2019 WL 2724269, at *3 (S.D.N.Y. July 1,

2019).  Neither Clarke nor Kelly relies on advice of counsel as a defense and, as explained

below, advice of counsel is not relevant to their qualified immunity defense.  To allow the

statement to come in would require Defendants to waive privilege to explain the complete

context behind it.  This would result in a trial within the trial of an issue that is not relevant.

*Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 609 (2d Cir. 2006) ("The relevant inquiry for

[Plaintiff's] retaliation claim must focus on the retaliation she suffered for complaining about the

harassment, not on the initial harassment itself."); *Perez*, 2008 WL 194615, at *1 ("Evidence

having the singular purpose of proving the truth of the underlying discrimination is, however,

presumptively irrelevant to retaliation claims.")  Defense counsel clearly objected to questions

seeking to evoke these details of Clarke's discussions with the Legal Department.  (Doc. 284 at

3.)  Because the statement has little to no probative value as to any of Plaintiff's claims or

Defendants' defenses, and has a high risk of prejudice, Defendants' motion to preclude evidence

of the advice of the Law Department is GRANTED.

## 2.   Limitation of Williams' Testimony

Defendants request that Williams' testimony be "limited to only cover the relevant time

period for Plaintiff's retaliation claim, namely the temporal period Plaintiff was employed by

NYCHA."  (Doc. 276 at 6.)  In support, Defendants claim such evidence is irrelevant and

unfairly prejudicial under Fed. R. Evid. 401 and 402.  (*Id.*)  Plaintiff opposed Defendants'

motion, arguing that the experiences Williams had with NYCHA after Plaintiff's resignation are

relevant to Clarke's state of mind regarding the discriminatory nature of his conduct.  (Doc. 284

at 11.)  I do not find that all testimony by Williams must be limited to the period of time that

Plaintiff was employed by NYCHA, as it is possible that Williams did not become aware of facts

that are relevant to the alleged retaliation against Plaintiff until after the retaliation occurred.

However, Plaintiff is warned that this is not Williams' trial and all testimony should be relevant to Plaintiff's claims. Accordingly, Defendants' motion to limit Williams' testimony to the time period Plaintiff was employed by NYCHA is DENIED without prejudice to renewal at trial. In order to avoid delays in the trial, I direct Plaintiff to provide a proffer to me concerning the testimony it intends to elicit from Williams after Plaintiff's resignation by Friday, October 13, 2023. This proffer may be submitted *ex parte*.

### 3. Evidence Related to Lead Paint Inspections

Defendants request that testimony and documentary evidence related to NYCHA's practices regarding lead paint inspections be excluded as irrelevant and unfairly prejudicial. (Doc. 276 at 7.) Plaintiff asserts that "NYCHA's false certifications regarding their compliance with lead inspections undermine the credibility of the NYCHA principals who were responsible for and knowledgeable about the conduct of those inspections." (Doc. 284 at 11.) I agree with Defendants that whether or not Defendants were involved in false certification of lead paint inspections bears no relevance to Plaintiff's claims. Moreover, the probative value of such evidence is substantially outweighed by the danger of unfair prejudice and confusion. Accordingly, Defendants' motion to exclude evidence regarding lead paint inspections is GRANTED.

### 4. Emotional Distress Damages

Defendants seek to limit Plaintiff's emotional distress damages to "garden variety" because she "does not have any diagnosis relating to her mental health, and neither received treatment from a mental health professional, nor received a referral to see a mental health professional." (Doc. 276 at 9–10.) Plaintiff asserts that her emotional distress claims are more serious than "garden variety" and it is premature to place a limitation of her damages. (Doc. 284

at 12.)

"Emotional distress awards within the Second Circuit can generally be grouped into three categories of claims: garden-variety, significant and egregious." *Olsen v. Cnty. of Nassau*, 615 F. Supp. 2d 35, 46 (E.D.N.Y. 2009) (cleaned up). "In garden variety emotional distress claims, the evidence of mental suffering is generally limited to the testimony of the plaintiff, who describes his or her injury in vague or conclusory terms, without relating either the severity or consequences of the injury." *Id.* (cleaned up). Significant emotional distress claims are based on more offensive conduct and allege greater harm, which sometimes can be supported by evidence of treatment by a medical professional. *Id.* At this point, it is premature to determine what the evidence will reveal about Plaintiff's emotional distress damages; however, Plaintiff is directed to provide me with a proffer of what sources of evidence of emotional distress she will provide at trial by Friday, October 13, 2023. This proffer may be submitted *ex parte*. Defendants motion to limit Plaintiff's emotional distress damages to "garden variety" is DENIED.

### 5. Testimony from Dr. Ravichandra

Defendants seek to preclude Plaintiff from offering Dr. Ravichandra as an expert witness. (Doc. 276 at 11.) Dr. Ravichandra is Plaintiff's primary care physician. (*Id.*) Defendant asserts that Dr. Ravichandra is not qualified to opine on Plaintiff's mental condition. (*Id.*) In response, Plaintiff explains that Dr. Ravichandra will not be offered as an expert witness and will only "testify as to what he saw, observed and concluded regarding Plaintiff's health and well-being." (Doc. 284 at 13.) Accordingly, since Plaintiff is not offering Dr. Ravichandra as an expert, Defendants' motion to preclude Plaintiff from offering him as expert is DENIED as moot.

Defendant also asserts that any testimony Dr. Ravichandra may offer on Plaintiff's mental condition is based on inadmissible hearsay and any opinions he offers would be

unreliable because they are based on Plaintiff's statements.  (Doc. 276 at 11.)  Non-expert

treating physicians may offer testimony so long as it is "properly limited to his personal

knowledge developed during the course of his treatment of [the patient]."  *In re Fosamax Prods.*

*Liab. Litig.*, 509 F. App'x 69, 74 (2d Cir. 2013) (citing Fed. R. Evid. 602).  Plaintiff's description

of Dr. Ravichandra's expected testimony falls within this scope.  At this time, a specific ruling

on Dr. Ravichandra's testimony would be premature; however, if his testimony exceeds the

scope of acceptable treating physician testimony, Defendants may raise such an objection at trial.

### 6.   Regina Chu and Rosie Mendez

Defendants seek to exclude testimony from Regina Chu ("Chu") and Rosie Mendez

("Mendez") as irrelevant character evidence.  (Doc. 276 at 12.)  In the parties' joint pretrial

order, Plaintiff states that Chu will testify about "working with Plaintiff" and Mendez will testify

about "interacting with Plaintiff as a City Council member."  (Doc. 277 at 7.)  Plaintiff asserts

that the testimony from Chu and Mendez is relevant to Plaintiff's performance as Director of

OPMOM.  (Doc. 284 at 15.)  "Evidence should be excluded on a motion in limine only when the

evidence is clearly inadmissible on all potential grounds."  *E. Point Sys., Inc. v. Maxim*, No.

3:13-CV-00215 (VAB), 2015 WL 8023569, at *1 (D. Conn. Dec. 4, 2015) (citation omitted).

Defendants have not shown that Chu and Mendez have no admissible testimony to offer.  At this

time, I decline to exclude Mendez or Chu; however, Plaintiff is ordered to provide me with a

more detailed proffer explaining the nature of the anticipated testimony of Mendez and Chu by

Friday, October 13, 2023.  This proffer may be submitted *ex parte*.

### 7.   Economic Damages

Defendant argues that any economic damages should be determined by me, not the jury.

(Doc. 276 at 13.)  Plaintiff disagrees and asserts that "the jury should hear and determine all

claims for monetary relief, including economic damages under 42 U.S.C. § 1983" and "should

hear and determine claims for economic damages under Title VII as an advisory jury." (Doc.

284 at 15.)

### a. *Section 1983*

Plaintiff argues that they are entitled to a jury trial for their request for monetary relief

under Section 1983. (Doc. 284 at 16.) Defendants do not discuss Plaintiff's Section 1983 claims

for economic damages at all. (*See generally* Doc. 276.) Accordingly, I see no reason that the

jury should not determine Plaintiff's economic damages for claims made pursuant to Section

1983. Defendants motion to preclude the jury from determining economic damages is DENIED

as to Plaintiff's Section 1983 claims.

### b. *Title VII*

"Because a lost wages award—whether in the form of back pay or front pay—is an

equitable remedy, a party is generally not *entitled* to a jury determination on the question."

*Broadnax v. City of New Haven*, 415 F.3d 265, 271 (2d Cir. 2005) (emphasis in original). Courts

have consistently found that "the issue of back and front pay damages in a Title VII retaliation

case is to be resolved by [the] Court rather than a jury." *Hamza v. Saks Fifth Ave., Inc.*, No. 07

CIV. 5974 FPS, 2011 WL 6187078, at *3 (S.D.N.Y. Dec. 5, 2011); *see also Thomas v. Istar

Financial, Inc.*, 652 F.3d 141, 152 (2d Cir. 2010); *Vernon v. Port Auth. of N.Y. and NJ*, 220

F.Supp.2d 223, 234 (S.D.N.Y. 2002). Accordingly, the issue of whether Plaintiff is entitled to

front and/or back pay damages pursuant to Title VII and the amount of those damages will be

determined by me if the jury finds liability pursuant to Title VII. Accordingly, Defendants'

motion for me to determine economic damages is GRANTED as to Plaintiff's Title VII claims.

Plaintiff requests that I try the economic damage claims under Title VII with an advisory

jury pursuant to Fed. R. Civ. P. 39(c)(1).  (Doc. 284 at 17.)  Pursuant to Fed. R. Civ. P. 39(c),

"[i]n an action not triable of right by a jury, the court, on motion or on its own:  (1) may try any

issue with an advisory jury."  I am "free to adopt in whole or in part or to totally disregard" the

advisory jury's findings.  *Ragin v. Harry Macklow Real Estate Co.*, 6 F.3d 898, 907 (2d

Cir.1993).  Because the jury will already be reviewing evidence and making factual findings

related to economic damages for Plaintiff's non-Title VII claims, I find that it is in the interest of

judicial efficiency to allow the jury to make an advisory determination with respect to Title VII

economic damages.  Accordingly, Plaintiff's request for an advisory jury to assist with the

determination of economic damage claims under Title VII is GRANTED.

 Plaintiff will not "be precluded from testifying about what she would have earned at

NYCHA but-for the alleged adverse employment action."  (Doc. 276 at 14.)  The jury will be

determining economic damages related to Plaintiff's Section 1983 claims and, as Plaintiff notes,

"the underlying core of facts is the same for the claims for relief under both Title VII and section

1983."  (Doc. 284 at 16.)  Further, Plaintiff maintains that for claims brought under NYSHRL

and NYCHRL, (Doc. 277 at 3), both back pay and front pay are legal remedies to be determined

by the jury.  *See Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176, 1189 (2d Cir. 1992) (affirming

jury verdict on lost wages because "all money damage awards under [NYSHRL] are legal

remedies"); *Dodd v. City Univ. of New York*, 541 F. Supp. 3d 318, 321 (S.D.N.Y. 2021); *Sass v.

MTA Bus Co.*, 6 F. Supp. 3d 238, 254 (E.D.N.Y. 2014) ("In light of the well-established

principle that back pay, like all money damages, is considered to be a legal remedy under the

NYSHRL, the Court treats back pay as a legal remedy under the parallel NYCHRL.").

Accordingly, Defendants' request to preclude Plaintiff from testifying about what she would

have earned at NYCHA is DENIED.

Defendants also seek to limit Plaintiff's claims for back pay based on a failure to mitigate damages.  (Doc. 276 at 18.)  "The burden of proving a defense of failure to mitigate rests [ . . . ] squarely on the defendant."  *Zornoza v. Terraform Glob., Inc.*, No. 16-MD-2742 (PKC), 2023 WL 2838584, at *13 (S.D.N.Y. Apr. 7, 2023) (internal citation and quotation marks omitted). Whether Defendants establish that Plaintiff failed to mitigate will be determined by the jury at trial and it is premature for me to determine now.  Accordingly, Defendants' request to limit Plaintiff's damages based on failure to mitigate is DENIED.

### 8.  Language Requirements

Defendants seek to preclude Plaintiff from arguing that language requirements for an employment position are discriminatory.  (Doc. 276 at 19.)  Plaintiff asserts that she has never maintained that NYCHA's language requirements are discriminatory.  (Doc. 284 at 23.) Accordingly, Defendants' motion is DENIED as moot as to this issue.

### 9.  Punitive Damages

Defendants seek to preclude Plaintiff from seeking punitive damages against NYCHA because it is a public benefit corporation.  (Doc. 276 at 20.)  Plaintiff does not dispute this point. Accordingly, Defendants' motion is DENIED as moot as to this issue.

### 10. Bifurcation

Defendants seek bifurcation of the trial into a liability phase and, if necessary, a punitive damages phase.  (Doc. 276 at 21.)  Plaintiff opposes bifurcation because but for evidence related to Defendants financial information, "the core evidence supporting punitive damages is the same as the evidence supporting damages and economic losses."  (Doc. 284 at 23.)  Plaintiff does not object to deferring information related to Defendants financial information and posits that the "jury should hear the entire case and receive jury charges on punitive damages before hearing

testimony regarding the financials of the individual defendants." (*Id.*)

Pursuant to Fed. R. Civ. P. 42(b), "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims."  "[W]hether to bifurcate a trial into liability and damages phases is a matter within the sound discretion of the trial court."  *Getty Petroleum Corp. v. Island Transp. Corp.*, 862 F.2d 10, 15 (2d Cir. 1988).  When determining whether to bifurcate, courts will consider "whether bifurcation is needed to avoid or minimize prejudice, whether it will produce economies in the trial of the matter, and whether bifurcation will lessen or eliminate the likelihood of juror confusion."  *Crown Cork & Seal Co. Master Ret. Tr. v. Credit Suisse First Bos. Corp.*, 288 F.R.D 335, 337 (S.D.N.Y. 2013).  The parties have agreed that presentation of evidence related to financial condition will take place if the jury first finds liability so as to prevent the risk of prejudice.  Accordingly, Defendants' motion in limine to bifurcate trial is GRANTED in so far as evidence related to the Individual Defendants' economic condition will be presented after they have been found liable.

## 11. Qualified Immunity

### a. *Viability of Defense*

Defendants assert that Clark and Kelly are entitled to qualified immunity.  (Doc. 276 at 24.)  Plaintiff argues that Defendants have waived this defense and, even if it is not waived, there are factual questions that need to be resolved relating to this defense.  (Doc. 284 at 23.)  As explained above, I do not find that the Individual Defendants have waived the defense of qualified immunity.

The doctrine of qualified immunity protects officials from liability for civil damages when, "(a) the defendant's action did not violate clearly established law, or (b) it was objectively

20

reasonable for the defendant to believe that his action did not violate such law." *Garcia v. Doe*, 779 F.3d 84, 92 (2d Cir. 2015) (quoting *Russo v. City of Bridgeport*, 479 F.3d 196, 211 (2d Cir. 2007)).  Defendants assert that "[a]ny action taken by either Clarke or Kelly was objectively reasonable and based on legitimate, non-retaliatory reasons." (Doc. 276 at 25.)  Whether the qualified immunity defense ultimately prevails will depend upon the factual findings of the jury. Accordingly, Defendants motion to find that the Individual Defendants are protected by qualified immunity is DENIED.  The parties are directed to meet and confer concerning special interrogatories to be submitted to the jury that address the factual issues underlying the defense of qualified immunity and provide proposals no later than Friday, October 13, 2023.

### b.   *Waiver of Privilege*

Additionally, Plaintiff argues that "Defendants should not be permitted to maintain a qualified privilege defense in light of their refusal to disclose the substance of their discussions with counsel on the propriety of carrying through with the proposed transfer of Williams at the direction of the Speaker." (*Id.* at 24.)

As to the issue of whether the qualified immunity defense waives privilege, the court in *United States v. Wells Fargo Bank, N.A.* was faced with a similar question:  "whether an employee can pursue an advice-of-counsel defense that requires disclosure of his employer's privileged communications where the employer will not waive the privilege."  132 F. Supp. 3d 558, 561 (S.D.N.Y. 2015).  In *Wells Fargo Bank*, the court was persuaded by the Sixth Circuit's analysis in *Ross v. City of Memphis*, 423 F.3d 596 (6th Cir. 2005).  "In *Ross*, a police officer sued the City of Memphis and its former police director, Walter Crews, for discrimination. Crews (who was sued in his individual capacity) sought to rely on the advice of counsel as a basis for his qualified immunity defense, but the City—which held the applicable privilege—

objected." *Wells Fargo Bank, N.A.*, 132 F. Supp. at 563.  In both *Wells Fargo Bank* and *Ross*, the courts decided that allowing any disclosure over the privilege holder's objections would introduce far too substantial uncertainty over the reliability of attorney-client privilege.

As the court recognized in *Ross*, "reliance on the advice of counsel is not usually a component of the qualified immunity defense, which rests on objective considerations."  423 F.3d at 603–04.  This Circuit has also acknowledged that because qualified immunity relies on an "objective, not a subjective, test," "reliance upon advice of counsel therefore cannot be used to support the defense of qualified immunity."  *In re Cnty. of Erie*, 546 F.3d 222, 229 (2d Cir. 2008).  Individual Defendants have not relied upon advice of counsel in support of their qualified immunity defense.  (*See generally* Doc. 276.)  Instead, Defendants argue that "[a]ny action taken by either Clarke or Kelly was objectively reasonable and based on legitimate, non-retaliatory reasons" because "Clarke was not involved in the decision to transfer Plaintiff from the OPMOM Director position" and "Kelly was unaware of the comments allegedly made by Melissa Mark-Viverito or Clarke's request to transfer Williams."  (Doc. 276 at 25.)  I will allow Clarke and Kelly to raise the defense of qualified immunity without compelling NYCHA to waive attorney-client privilege.

## IV.  <u>Conclusion</u>

For the foregoing reasons, Plaintiff's motion *in limine* are GRANTED IN PART and DENIED IN PART as follows:

- DENYING request for judicial notice of percentage of NCYHA's budget that is derived from city funds;

- DENYING request for judicial notice of census data related to non-Hispanic black individuals who speak Spanish at home;

- GRANTING request for judicial notice of life and work expectancy tables;

- GRANTING request for judicial notice of Mayoral Orders;

- DENYING as moot the motion to preclude evidence regarding the performance of OPMOM/NextGen after September 28, 2015;

- DENYING motion to preclude Individual Defendants from asserting a qualified immunity defense.

Defendants' motions in limine are GRANTED IN PART and DENIED IN PART as follows:

- GRANTING motion to exclude testimony or evidence relating to a statement Clarke made during his deposition on June 13, 2019, that it was recommended to him by the "Law Department" not to transfer Williams;

- DENYING motion to exclude testimony or evidence relating to Williams' experiences with NYCHA after Plaintiff resigned;

- GRANTING motion to exclude testimony or evidence relating to NYCHA's failure to conduct lead paint inspections;

- DENYING as moot motion to exclude evidence from Dr. Ravichandra as an expert for Plaintiff;

- DENYING motion to exclude testimony from Chu and Mendez;

- DENYING motion to limit Plaintiff's emotional distress damages to garden variety damages;

- GRANTING motion for me to determine economic damages as to Plaintiff's Title VII claims but DENYING as to Plaintiff's remaining claims and Defendants' requests to find failure to mitigate and preclude testimony of potential earnings

but-for retaliation;

- DENYING as moot motion to preclude Plaintiff from arguing that language requirements are discriminatory;

- DENYING as moot motion to preclude Plaintiff from seeking punitive damages against NYCHA;

- GRANTING motion for bifurcation insofar as evidence related to the Individual Defendants' economic conditions will not be presented until after a finding of liability;

- DENYING motion to find that Individual Defendants are protected by qualified immunity, but allowing Individual Defendants to raise the defense.

The Clerk's Office is respectfully directed to terminate the motions pending at Documents 275 and 278.

SO ORDERED.

Dated: October 5, 2023
        New York, New York

Vernon S. Broderick
United States District Judge